UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EUGENE D. O'HALLORAN, SR.,

                                Petitioner,

        v.

PAUL GONYEA,

                            Respondent.
_____

9:11-CV-0346
(GTS/TWD)

APPEARANCES:                         OF COUNSEL:

EUGENE D. O'HALLORAN, SR., 07-B-1216
Petitioner pro se
Riverview Correctional Facility
P.O. Box 247
Ogdensburg, New York 13669

HON. ERIC T. SCHNEIDERMAN         PAUL B. LYONS, ESQ.
Office of the Attorney General          Assistant Attorney General
State of New York
Counsel for Respondent
120 Broadway
New York, New York 10271

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

      This action has been referred to the undersigned by United States District Judge Glenn T.

Suddaby for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Northern District

of New York Local Rule 72.3(c).  Petitioner Eugene D. O'Halloran, a New York state prison

inmate, has commenced this habeas corpus proceeding, pursuant to 28 U.S.C. § 2254,

challenging his conviction.  For the following reasons, I recommend that the Court deny and

dismiss the petition.

## I. THE HABEAS PETITION

On March 29, 2011, Petitioner filed a petition for a writ of habeas corpus. (Dkt. No. 1.) Petitioner challenges the judgment entered on September 13, 2006, in Broome County Court convicting him, after a jury trial, of sodomy in the first degree, sodomy in the second degree, and endangering the welfare of a child. *Id.* at 2. Plaintiff was sentenced to concurrent prison terms of five to fifteen years for sodomy in the first degree, two to six years for sodomy in the second degree, and one year for endangering the welfare of a child. *Id.* Petitioner's conviction was affirmed by the Appellate Division, Third Department, and leave to appeal to the Court of Appeals was denied. *People v. O'Halloran,* 852 N.Y.S.2d 471 (N.Y. App. Div. 3d Dep't 2008); *leave denied* 10 N.Y.3d 868 (May 13, 2008). Petitioner filed a petition for a writ of error *coram nobis* and the appellate division reinstated his appeal. (Dkt. No. 33 at 12.) On October 28, 2010, after a reconstruction hearing, the appellate division again affirmed the judgment of conviction. *People v. O'Halloran*, 910 N.Y.S.2d 569 (N.Y. App. Div. 3d Dep't 2010); *leave denied* 15 N.Y.3d 954 (Dec. 15, 2010).

## II. THE CLAIMS

Petitioner seeks relief on the following grounds:

1. The conviction was obtained by an unconstitutional amendment to the indictment by the trial court after the evidence was submitted;

2. The conviction was obtained because the prosecutor failed to disclose favorable evidence;

3. The conviction was obtained as a result of the ineffective assistance of trial

counsel;

4.     The conviction was obtained as the result of the ineffective assistance of appellate

counsel;

5.     The conviction was obtained as the result of the ineffective assistance of counsel

in state court collateral proceedings.

(Dkt. No. 1; Text Order May 9, 2013.)

## III.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Underlying Incident and Pretrial Proceedings

On November 18, 2004, the New York State Police arrested E.D., an eighteen year old

male.  (Ex. A at 577.)  E.D. was transported to the New York State Police Barracks in

Binghamton, New York.  *Id.*  E.D. was read his *Miranda* rights and agreed to be interviewed by

Investigator Franz and Investigator Mastronardi.  *Id.*

In both a videotaped interview and a written statement, E.D. admitted that he had engaged

in oral sexual conduct with L.D., his younger female cousin, on approximately October 25, 2004.

(Ex. A at 577, 585-86.)  E.D. also admitted to having had an ongoing sexual relationship with

L.D. when they were younger.  *Id.*

During the videotaped interview, E.D. also disclosed that he had been sexually molested

by Petitioner for several years.  (Ex. A at 71-72.)  E.D. stated that on thirty to forty occasions,

when E.D. was six years old, and again, when he was between eleven and fourteen years old,

Petitioner had subjected him to oral sexual conduct.  *Id.*  E.D. also disclosed that Petitioner had

provided him with alcohol and shown him pornography while he was visiting Petitioner's

residence.  *Id.*

On January 4, 2005, Petitioner voluntarily accompanied investigators to the New York State Police Barracks in Binghamton for questioning. (Ex. A at 69.) Petitioner was read his *Miranda* rights and agreed to speak voluntarily with Investigator Franz. *Id.* The interview was videotaped. *Id.* Investigator Franz questioned Petitioner regarding the allegations made by E.D. *Id.* Petitioner denied having had sexual contact with E.D. and denied providing E.D. with alcohol. *Id.* After the interview, Petitioner was arrested and charged with sodomy in the second degree. *Id.* He was arraigned later that day. *Id.*

On March 4, 2005, a grand jury indicted Petitioner on four counts. (Ex. A at 26-29.) The first count charged Petitioner with violating New York Penal Law §130.50(3), Criminal Sexual Act in the First Degree, for subjecting "a six year old male child (d.o.b. 10/2/86) to oral sexual conduct" in the summer of 1993. *Id.* at 26. The second count charged Petitioner with violating Penal Law § 130.50(2), Criminal Sexual Act in the First Degree, for engaging "in deviate sexual intercourse with a ten year old male (d.o.b. 10/2/86) who was incapable of consent by reason of being physically helpless" in the summer of 1997. *Id.* at 27. The third count charged Petitioner with violating Penal Law § 130.50(4) for subjecting "a ten year old male (d.o.b. 10/2/86) to oral sexual conduct" in the Summer of 1997. *Id.* at 28. The fourth count charged Petitioner with violating Penal Law § 260.10, Endangering the Welfare of a Child, for conduct "between the Summer of 1993 and the end of 1999." *Id.* at 29.

The grand jury issued a superseding indictment on January 25, 2006. (Ex. A at 87-98.) The new indictment added counts involving C.B. and N.D, both males under the age of eighteen. *Id.* The new indictment did not change the charges as to E.D. *Id.* The counts involving C.B. and N.D. were dismissed before trial for lack of jurisdiction because the conduct was not alleged to

have occurred in Broome County. *Id.* at 15-18.

The prosecution brought a pretrial motion to admit evidence regarding C.B. and N.D. during their case-in-chief to show "a clear and recurring modus operandi." (Ex. A at 83.) The county court ruled that the evidence was inadmissible because the alleged modus operandi was insufficiently unique, the prosecution was not required to prove intent in order to obtain a conviction, and the alleged events occurred too long after the conduct for which Petitioner was indicted. *Id.* at 22-24.

### B.    Trial

The trial began on September 11, 2006. (Ex. A at 158.) Petitioner was represented by James Barber. *Id.* at 167:12-13. Before opening statements, the People produced *Rosario*[1] material. *Id.* at 253:13-17. These documents included, among other things: Investigator Franz's handwritten notes of his November 18, 2004, interview of E.D. (*id.* at 580-84); E.D.'s written statement to the police on November 18, 2004, in which E.D. admitted to sexually abusing L.D. (*id.* at 585-86); a "short form" police report incident report updating the case, dated December 9, 2005 (*id.* at 588-91); Investigator Franz's handwritten notes of his November 15, 2004, interviews with N.D., C.B., E.D., Sr. (E.D.'s father), and E.D. (*id.* at 593-604); N.D.'s grand jury testimony (*id.* at 606-614), C.B.'s grand jury testimony (*id.* at 616-625), E.D., Sr.'s grand jury testimony (*id.* at 627-640), and E.D.'s grand jury testimony (*id.* at 642-657). Defense counsel had not received Investigator Franz's notes or E.D.'s written statement before they were produced as *Rosario* material. *Id.* at 525 ¶ 10. These documents did not include two tapes of

---

[1]    *People v. Rosario*, 9 N.Y.2d 286 (1961), holds that, under New York law, the prosecution must provide the defense with statements by any witnesses who will testify at trial. The rule is codified as New York Criminal Procedure Law §§ 240.44-240.45.

Investigator Franz's interview with L.D. (*id.* at 527 ¶ 16) or audio and video recordings of E.D., Sr., and E.D. (*id.* at 528 ¶ 19, 534 ¶ 46). Defense counsel was granted an adjournment until the next morning to review the material. *Id.* at 253:19-22, 254:12-16, 268:3-10.

In his opening statement, delivered the next morning, defense counsel spoke about the burden of proof, questioned whether E.D.'s assertion that Petitioner molested him made any sense given the lack of privacy at either of the homes where the conduct allegedly occurred, and reminded the jury that Petitioner was not required to take the stand. (Ex. A at 279-85.) Defense counsel also spoke about credibility issues:

> Other witnesses are going to testify, I'm not sure as to exactly what they're going to say, you'll hear them, I'll be able to cross-examine them to test their voracity, test their truthfulness to see if perhaps they have a motive for testifying in the manner in which they're testifying.

*Id.* at 280:22-281:4.

The prosecution called four witnesses: E.D., Investigator Franz, Ronee Brimberg-Clark, and E.D., Sr. (Ex. A at 128:21-368:4.) E.D. testified that Petitioner was a "[g]ood friend of the family." *Id.* at 287:6-10. E.D. stated that he knew Petitioner as "Uncle Dave." *Id.* at 288:19-23. E.D. testified that when he was six years old, he visited Petitioner at his residence on Conklin Road because he was friends with Petitioner's son, Geno. *Id.* at 290:2-24. E.D. recalled a day in the summer of 1993 when he slept at Petitioner's residence. *Id.* at 291:21-23. E.D. and Geno slept on a pull-out sofa couch. *Id.* at 291:24-292:6, 292:15-293:2. E.D. recalled he "woke up to [Petitioner] sucking on [his] penis." *Id.* at 292:6. E.D. stated that he opened his eyes briefly but closed them again because he did not want Petitioner to know he was awake. *Id.* at 293:10-294:17. E.D. testified that Geno was sleeping right next to him when this happened. *Id.* at

294:21-22.

E.D. further testified that, in 1997, when he was approximately ten-and-a-half years old, he performed construction with Geno and Petitioner on their house on Dunbar Road. (Ex. A at 297:3-298:3.) E.D. testified that approximately fifteen to twenty times, Petitioner provided E.D. and Geno with alcohol. *Id.* at 302:22-24. E.D. testified that the alcohol included "40s, Smirnoff's, Mike's Hard Lemonade, that kind of stuff, basically whatever me and Geno asked for." *Id.* at 301:3-5. E.D. recalled a specific night in the summer of 1997 when Petitioner provided both E.D. and Geno with 40-ounce bottles of Old English. *Id.* at 301:1-23. E.D. recalled drinking approximately three-quarters of a bottle, which made him drunk. *Id.* at 301:24-302:3. E.D. testified that he and Geno went to sleep on the pull-out sofa. *Id.* at 305:18-306:5. E.D. testified that when he woke up, he "felt someone on there, sucking on my penis." *Id.* at 304:17-18. The person kept asking E.D. if he was done yet. *Id.* at 306:13-16. E.D. recognized Petitioner's voice. *Id.* at 306:17-18.

E.D. further testified that Petitioner showed him and Geno pornographic movies three times in the living room at the house on Dunbar Road. (Ex. A at 312:22-313:24.)

E.D. testified that, inclusive of those two specific incidents, Petitioner molested him between thirty and forty times. (Ex. A at 311:8-17.) About fifteen of those incidents, he testified, involved alcohol. *Id.* at 312:14-17.

E.D. admitted during direct examination that he had been arrested in November 2004. (Ex. A at 317:8-14.) He testified that he was charged with sexual criminal act in the second degree for having oral sex with his fifteen year old cousin when he was eighteen years old. *Id.* at 318:14-319:3. E.D. testified that he pleaded guilty. *Id.* at 319:4-21.

On cross-examination, defense counsel established that E.D. received only probation as a result of his conviction. (Ex. A at 320:17-23.) Defense counsel asked E.D. if he expected to receive leniency regarding his own conduct by telling Investigator Franz about Petitioner. *Id.* at 324:9-23. E.D. testified that he did not. *Id.* at 324:14-325:1. Defense counsel asked E.D. why he never told Geno that Petitioner was molesting him. *Id.* at 329:23-330:8. E.D. testified that he "didn't want to hurt his feelings like that." *Id.* at 330:9-10.

Investigator Franz testified. (Ex. A at 333:1-349:2.) He described his January 4, 2005, interview of Petitioner in detail. *Id.* at 335:9-347:7. He testified that Petitioner was the first one to bring up the topic of giving alcoholic beverages to E.D. *Id.* at 343:16-21. He testified that Petitioner stated that he had never given E.D. alcoholic beverages, just soft drinks. *Id.* at 343:21-23.

On cross-examination, Investigator Franz testified that he never applied for a search warrant for Petitioner's home, that Petitioner insisted "over and over and over" during the course of the two-hour interview that he had not done anything wrong, that Petitioner was cooperative during the interview, and that Petitioner never stated that he had had sexual relations with E.D. (Ex. A at 347:12-348:7.)

Ronee Brimberg-Clark testified. (Ex. A at 351:1-362:4.) Ms. Brimberg-Clark is a clinical social worker. *Id.* at 351:9-19. Before testifying, she had not met any of the participants in the case, reviewed any documentation in the case, or reviewed any grand jury or other testimony from the case. *Id.* at 354:14-22. She testified about child abuse accommodation syndrome, which is the clinical explanation for why victims of childhood sexual abuse sometimes delay reporting the abuse. *Id.* at 355:6-359:19.

On cross-examination, defense counsel had Ms. Brimberg-Clark reiterate that she had never spoken to E.D. and did not know anything about him. (Ex. A at 361:3-15.) He then moved to strike her entire testimony as irrelevant. *Id.* at 361:16-18. The court denied the motion. *Id*. at 361:21-22.

E.D.'s father, E.D., Sr., testified. (Ex. A at 362:8-368:2.) He testified that E.D. spent the night at Petitioner's house on many occasions when he was six years old and then again when he was ten or eleven years old. *Id.* at 364:2-5, 366:11-19. He testified that the first time he learned about the sexual abuse was in November 2004, when E.D. was arrested. *Id.* at 367:11-18.

Defense counsel did not cross-examine E.D., Sr. (Ex. A at 367:21-23.)

The People rested at the conclusion of E.D., Sr.'s testimony. (Ex. A at 368:4.) Defense counsel moved to dismiss the charges against Petitioner for lack of evidence. *Id.* at 368:13-23. The court denied the motion. *Id.* at 369:15.

Defense counsel called four witnesses: Geno (Ex. A at 375:1-397:6), Petitioner's wife (*id.* at 397:10-408:2), Petitioner's daughter (*id.* at 409:1-413:17), and one of Geno's friends (*id.* at 414:1-418:1).

Geno testified that E.D. only stayed over at his house on Dunbar Road a "couple times." (Ex. A at 377:3-11.) He testified that his father generally drank only one beer a day, before bed. *Id.* at 377:16-378:2. The beer was Michelob and came in twelve ounce containers. *Id.* at 379:6-13. He testified that he never saw E.D. consume alcohol at his father's house. *Id.* at 378:24-379:2. He testified that his father never gave him and E.D. alcohol to drink. *Id.* at 379:14-18. He testified that he was a light sleeper, but that if people were talking low and quiet it would not wake him up. *Id.* at 378:5-12. He testified that he never woke up on the nights that E.D. slept

over to find anyone in the same room with them. *Id.* at 378:13-17. He testified that one of his sisters was still living at home when he and E.D. were ten and a half. *Id.* at 380:8-18. He testified that he never viewed pornography with his father or E.D. *Id.* at 381:4-6. He testified that there was no pornography stored on top of the television and that all of the videos stored in that spot were known to all of the members of his family, including his sisters and his mother. *Id.* at 385:11-23. He testified that his mother was always there at night. *Id.* at 381:15-17. He testified that when he and E.D. slept on the couch, they turned off the lights but kept the television on. *Id.* at 382:8-11. He testified that sometimes he heard his sister come downstairs to use the bathroom on the nights when E.D. slept over. *Id.* at 382:17-384:8.

On cross-examination, Geno admitted that he had been arrested for tampering with a witness after calling E.D., Sr., and threatening him. (Ex. A at 386:13-16, 388:9-18.) He reiterated that he never saw E.D. drink at his house. *Id.* at 389:8-23. He testified that E.D. had only come over to his house one time when they were six, and that he did not spend the night. *Id.* at 392:7-393:1. He testified that Investigator Franz had him call E.D. after Petitioner's arrest and that during that phone call, E.D. said "it only happened once." *Id.* at 395:7-22.

Petitioner's wife testified that E.D. was at the house on Conklin Road only once, with his father. (Ex. A at 398:15-20.) She testified that E.D. was at the house on Dunbar Road a "couple of weekends out of the month." *Id.* at 399:2-15. She also testified that E.D. slept over at the house "[e]very weekend." *Id.* at 400:17-21. She testified that there was Genny Cream Ale in the house occasionally, which she used for cooking. *Id.* at 401:6-9, 24. She testified that Petitioner drank one Michelob or perhaps two at a time, once or twice a month. *Id.* at 401:18-21, 402: 6-13. She testified that she usually went to bed earlier than Petitioner and the boys when E.D. slept

over. *Id.* at 404:12-16. Petitioner would usually come to bed between 10:30 p.m. and 11:00 p.m. *Id.* at 404:17-19. She testified that she would not wake up when he came to bed. *Id.* at 404:24-405:2. However, she characterized herself as a very light sleeper. *Id.* at 405:3-5. She testified that she was never aware of Petitioner getting out of bed in the night. *Id.* at 405: 6-14. She testified that she did hear her daughters when they got up in the night. *Id.* at 405:15-17. She testified that when her nephew lived with them for a while, there were a couple of occasions when he, her son, and E.D. all slept together on the couch. *Id.* at 406:10-17.

On cross-examination, Petitioner's wife testified that the boys did not sleep upstairs in her son's room when E.D. slept over because they were quite loud and so she had them sleep downstairs. (Ex. A at 407:10-22.)

Petitioner's daughter testified that E.D. came to the house on Dunbar Road a lot on weekends beginning in 2001. (Ex. A at 410:7-11.) After that, he visited "[m]ostly every weekend." *Id.* at 411:1-6. She testified that there was beer in the house, but never hard liquor. *Id.* at 411:7-16. She testified that when E.D. spent the night, she and her parents always woke up before the boys did and she never smelled alcohol downstairs. *Id.* at 412:5-18. She never saw E.D. or her brother drinking alcohol at the family home. *Id.* at 412:19-23. She never saw any six-packs of beer or bottles of alcohol in the house. *Id.* at 413:6-11.

The prosecutor did not cross-examine Petitioner's daughter. Ex. A at 413:13-14.

Geno's friend testified that he was never served alcohol at Petitioner's house. Ex. A at 414:23-415:1. He rarely saw alcohol in the house. *Id.* at 415:2-3. He initially testified that he "never" saw Petitioner drink. *Id.* at 415:4-5. He testified that he regularly stayed at Petitioner's home beginning in sixth grade. *Id.* at 415:11-22. He testified that he stayed there three or four

times a week, every week, if not more. *Id.* at 416:8-11. He testified that he never spent the night when E.D. was there. *Id.* at 416:5-7.

On cross-examination, the friend testified that he had seen Petitioner drink a beer. (Ex. A at 417:5-11.) He denied ever telling L.D. that he wanted to fight E.D. *Id.* at 418:11-19.

The defense rested after the friend's testimony. (Ex. A at 419:2-3.)

Before closing arguments, the court advised counsel that it intended to sua sponte amend the indictment. As to Count Three, the court stated:

> [C]ount three of the indictment is entitled . . . criminal sexual act, first degree, formerly sodomy, first degree, in violation of Section 130.50, subdivision 4.
>
> The law and its allegations, to make the record complete, that count alleges that the conduct occurred in the Town of Windsor during the summer of 1997 and specifically alleges that during that period of time, the Defendant being 18 years old or more, date of birth 4/1/47, subjected a ten-year-old male, date of birth 10/2/86, to oral sexual conduct. The law in existence at the time of the commission of this alleged commission of this crime, summer of '97, makes that conduct sodomy in the second degree, not sodomy in the first degree, as charged in the indictment . . . .
>
> Sodomy in the first degree, that section of the sex offense, Article 130 of the Penal Law, was amended by the laws of 2000, Chapter One, Section 37, and it made sodomy in the first degree apply to a situation where the defendant, being 18 years old or more, engages in deviate sexual intercourse with a person less than 13 years old. However, the law that was in effect in 1997 made that conduct a D felony, sodomy in the second degree, Defendant being more than 18 years old engaged in deviate sexual intercourse with someone less than 14.
>
> Had that been caught, if you will, by the Court on the motion to inspect the grand jury proceedings, evidence before the grand jury being sufficient to support a charge of sodomy, second degree, it would have been the Court's decision, it would have reduced it to sodomy in the second degree and we would have gone forward. That's what has occurred here . . . so it's my intent at this juncture to

12

> submit to the jury count three, sodomy, second degree, not sodomy in the first degree.

(Ex. A at 427:19-429:8.)  Defense counsel agreed to the amendment.  *Id.* at 429:8-10.

In his closing argument, defense counsel argued that E.D.'s testimony was not believable because there was no alcohol in Petitioner's house and because the open floor plan and presence of other people, particularly that of Geno sleeping next to him, made what E.D. alleged to have occurred highly improbable.  (Ex. A at 431:13-436:2.)  He further argued that E.D. lied so that he could escape severe punishment for raping his cousin.  *Id.* at 436:3-437:4.  He noted that the evidence showed that Petitioner had denied the charges against him.  *Id.* at 438:1-20.  He noted that because E.D. had never alleged any specific dates on which conduct occurred, it was difficult for Petitioner to provide an alibi that he was elsewhere at the time.  *Id.* at 438:21-439:11.

In his closing argument, the prosecutor argued that E.D. was telling the truth, stated that he had not gotten any sort of deal in his own criminal case for implicating Petitioner, noted inconsistencies between the testimony of Geno and Petitioner's wife about how often E.D. was at the house, and asked the jury to remember Investigator Franz's testimony that Petitioner was the one who initially raised the subject of E.D. and alcohol.  (Ex. A at 449:1-471:18.)

During deliberations, the jury asked for a reread of E.D.'s testimony "from 1997 on." (Ex. A at 509:21-22.)  The jury also asked for a reread of the definition of physical helplessness from the second count and further explanation of the term if possible.  *Id.* at 509:23-510:2.

The jury found Petitioner not guilty of the second count and guilty on all other counts. (Ex. A at 514:7-515:10.)

### C.    Post-Trial Motion to Vacate the Verdict

Petitioner moved, through attorney Ronald R. Benjamin, to vacate the verdict pursuant to New York Criminal Procedure Law § 330.30.  (Ex. A at 522.)  Petitioner argued that (1) new evidence showed that E.D. fabricated the charges against Petitioner; and (2) the prosecution had failed to turn over a variety of exculpatory or impeaching materials pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).  *Id.* at 523-697.

The new evidence was comprised of affidavits from three individuals.  (Ex. A at 541-557.)  Matthew Rolles declared that he was a friend of both E.D. and Geno and was in the courtroom when the testimony requested by the jury was read back.  *Id.* at 542 ¶¶ 6, 11, 15, 543 ¶ 15.  That was the first time he heard any details about what E.D. alleged Petitioner had done.  *Id.* at 543-544 ¶¶ 16, 19-20.  The testimony greatly upset him because the details seemed very similar to his own history of childhood sexual abuse, which he had confided to E.D. over the course of their friendship.  *Id.* at 542-543 ¶¶ 7-10, 12-13.  E.D. had never mentioned anything to Mr. Rolles about being molested, despite the confidences that Mr. Rolles shared with him.  *Id.* at 543 ¶ 17.  Mr. Rolles approached defense counsel after the verdict was entered and told him he had information that might show that E.D. fabricated his claims against Petitioner.  *Id.* at 544 ¶ 21.

Mr. Rolles' mother, Connie Sue Terrell, declared that E.D. told her in November 2004 that he intended to lie and say Petitioner had molested him in order to obtain leniency for his own crime.  (Ex. A at 551 ¶ 20.[2])  According to Ms. Terrell, E.D., Sr., N.D., and C.B. were present for

---

[2]     Page 550, which contains the beginning of the pertinent paragraph, is missing from the record.  Instead the record contains two copies of page 549.

the conversation. *Id.* at 529 ¶ 24. Ms. Terrell also declared that E.D. married a fourteen-year-old when he was only sixteen and then abused his wife and children. *Id.* at 551-52 ¶¶ 23-29.

Mr. Rolles' fourteen year old sister declared that she was present for the same conversation as her mother and that she remembered E.D. "telling my Mom he was going to use what happened to my brother Matt when he was young, because he . . . was in trouble for what he did to his cousin . . . and he talked about getting leniency by getting Geno's dad in trouble." (Ex. A at 556 ¶ 10.)

The motion also asserted that Mike's Hard Lemonade and Smirnoff Ice, which E.D. testified were among the beverages that Petitioner gave him, were first distributed in the United States in 2000 and 2001, respectively. (Ex. A at 535-36 ¶¶ 51-53.) Counsel argued that this evidence conflicted with testimony that Petitioner provided E.D. with those beverages in 1997, and would have provided further evidence that E.D. was fabricating his claims. *Id.*

Petitioner argued that the prosecution failed to turn over (1) two tapes of Investigator Franz's interview with L.D. (Ex. A at 527 ¶ 16); (2) audio and video recordings of E.D.'s father, E.D., and C.B. (A. at 528 ¶ 19); and (3) video recordings of Investigator Franz's interview of E.D. (A. at 534 ¶ 46).

The prosecution argued that the taped interview of E.D. was not relevant to Petitioner's case because it involved E.D.'s conduct toward L.D. (Ex. A at 699.) The prosecution argued that, even if it was relevant, Investigator Franz's report included the relevant information and had been provided to defense counsel. *Id.* The prosecution provided the tape to the court and noted that a "careful review of the brief mentions of O'Halloran on the video tape clearly indicates that Investigator Franz captured the substance of those references in his report and that they contain

nothing even remotely exculpatory." *Id.* The prosecution argued that tapes of controlled calls to E.D. by C.B. were likewise not relevant. *Id.* Further, the prosecution argued that those tapes showed that E.D. and C.B. were not friendly enough to socialize or help fabricate a story, as Petitioner's new witnesses alleged. *Id.* The prosecution argued that the three new witnesses were not credible. *Id.* at 701-06. The prosecution also argued that the new evidence was factually inaccurate. *Id.* at 706-08.

The county court denied the motion to vacate the verdict, stating that:

> A review of the record, the pleadings, pre-trial disclosure, as well as the arguments the defense makes in the instant motion, all support the conclusion that the defense has failed to meet its burden in establishing any *Brady* violation has occurred. Specifically, as argued by the prosecution, the information pointed to by the defense was either known to the defense prior to trial, and/or is not *Brady* material.

(Ex. A at 14.)

### D. Direct Appeal

On direct appeal, Petitioner, represented by Mr. Benjamin, argued that he was entitled to a new trial because of *Brady* violations. (Ex. D at 24-30.) He further argued that trial counsel rendered ineffective assistance by (1) failing to use the police records turned over at trial to impeach E.D. and Investigator Franz regarding E.D.'s own history of bad acts and incentive to lie to reduce his own punishment; (2) failing to discover or call exculpatory witnesses; (3) failing to seek dismissal of the endangering count on statute of limitations grounds; and (4) failing to object that the prosecutor's closing arguments misstated or relied on untimely disclosure of *Brady* material. *Id.* at 31-33.

Regarding Petitioner's *Brady* argument, the appellate court stated that:

> [T]here is no dispute that the People withheld statements made by the victim about the charges against him, including one recorded on videotape. The withholding of those statements would constitute a *Brady* violation if they could have assisted the defense in impeaching the victim's credibility. If so, we would then consider whether the violation was material. Since defendant made only a generalized demand for disclosure, the materiality of the violation would depend upon whether there is a reasonable probability that the result at trial would have been different if the statements had been disclosed. The withheld recorded statements, however, are not included in the record before us despite their having been reviewed by County Court. As a result, we cannot review the court's finding that the information contained therein was known to the defense before trial or would not have aided the defense. Since it was defendant's obligation to prepare a complete record for appeal and there is no evidence that he sought to have the withheld statements included in the record, his failure to do so renders the record insufficient for meaningful appellate review.

*People v. O'Halloran*, 852 N.Y.S.2d 471, 472 (N.Y. App. Div. 3d Dep't 2008) (citations omitted).

The appellate court also rejected Petitioner's ineffective assistance of counsel claims. *People v. O'Halloran*, 852 N.Y.S.2d 471, 472 (N.Y. App. Div. 3d Dep't 2008). Specifically, the court stated that because "counsel did call the jury's attention to the victim's prior bad acts, his potential motive to fabricate and his having received no jail time for his sexual offense, we are persuaded that the defendant received meaningful representation under all the circumstances." *Id*.

Petitioner sought leave to appeal to the New York Court of Appeals. (Ex. H.) That court denied leave to appeal on May 13, 2008. *People v. O'Halloran*, 10 N.Y.3d 868 (2008).

### E.    First *Coram Nobis* Proceeding

Petitioner, proceeding pro se, sought a writ of error *coram nobis* in the Appellate

Division, Third Department.  (Ex. M.)  Petitioner argued that appellate counsel rendered

ineffective assistance by (1) failing to properly investigate, recognize, identify, and raise *Brady*

and *Rosario* violations; (2) failing to properly investigate, recognize, identify, and raise the

inconsistencies in E.D.'s testimony; (3) failing to properly investigate, recognize, identify, and

raise the ineffective assistance of trial counsel; and (4) failing to pursue "the speedy trial

violation and show the prejudice that the defendant incurred."  *Id*.

The appellate division granted the motion, stating that:

> Defendant contends on this motion that he was denied the effective
> assistance of appellate counsel on appeal from his judgment of
> conviction.  More specifically, defendant argues that his CPL 330.30
> motion to set aside the verdict should have been granted on the
> ground that the People withheld statements made by the victim about
> the charges against him, including one recorded on videotape, and
> that the withholding of those statements constituted a *Rosario* and/or
> material *Brady* violation.  We agree that this issue may have merit,
> and although it was raised by appellate counsel on appeal, counsel
> failed to include the materials at issue in the record on appeal,
> rendering the record insufficient for meaningful review by this Court.
> Accordingly, the instant motion for coram nobis relief should be
> granted . . . and defendant's appeal reinstated.  Upon the reinstated
> appeal, defendant may raise only the issue of whether the People's
> withholding of statements of the victim constituted a *Rosario* and/or
> material *Brady* violation.

(Ex. P, citations omitted.)

Petitioner moved to renew or reargue his *coram nobis* motion.  (Ex. Q.)  Essentially, he

requested that he be allowed to appeal issues other than the *Rosario* and *Brady* issues.  *Id*.  The

appellate division denied the motion to renew or reargue on November 12, 2009.  (Ex. T.)

Petitioner moved for leave to appeal the Appellate Department's denial of the motion to renew or

reargue.  (Ex. U.)  The Court of Appeals dismissed the application "because the order sought to

be appealed is not appealable under Criminal Procedure Law, section 450.90(1)." (Ex. V.)
Petitioner moved for reargument and reconsideration. (Ex. W.) The Court of Appeals denied the
application on February 18, 2010. (Ex. X.) Petitioner never sought leave to appeal the
underlying decision by the appellate division granting his motion in part and denying it in part.

### F. Reconstruction Hearing

The videotape of the interview with E.D. was destroyed on October 3, 2008, pursuant to
New York State Police policies and procedures. (Ex. Y.) Petitioner filed a motion in the
appellate division, requesting an order enlarging the record on appeal and extending the time to
perfect the appeal. (Ex. Z.) The appellate division denied the motion to enlarge the record. (Ex.
BB.) The appellate division, however, granted the motion for an extension of time to perfect the
appeal and directed Petitioner to apply to the county court for a reconstruction hearing "as to the
contents of the recorded statements at issue." *Id.*

The reconstruction hearing was conducted on February 11, 2010. (Ex. DD.) At the
reconstruction hearing, Investigator Franz testified that the videotape did, in fact, reflect that
when E.D. raised the subject of Petitioner while admitting to his own conduct regarding L.D.,
Franz said something to the effect of "you're going to jail . . . but I am already thinking of
making this less. I do want to hear what you've got, but later." *Id.* at 36:13-37:24. Investigator
Franz testified that the videotape did not show that he "made any promises or commitment to
him for his – any sort of sentence that he would get in connection with his own criminal charge if
he were able to cooperate against Mr. O'Halloran." *Id.* at 43:9-16. Indeed, Investigator Franz
testified that "[n]o promises or any consideration were ever offered." *Id.* at 43:17-18.
Investigator Franz also testified that the videotape, but not his written statement, showed E.D.

admitting to using crack cocaine "during relevant time periods." *Id.* at 38:21-25.  Investigator

Franz testified that the videotape showed that these time periods were just "a sliver of his life"

compared to the long period of time over which he alleged that Petitioner abused him. *Id.* at

39:12-13.

Regarding the audiotapes, Investigator Franz testified that one was a controlled call from

C.B. (L.D.'s boyfriend) to E.D.  (Ex. DD at 15:14-22.)  E.D. said that he did not want to talk

about it but that he would meet with C.B.  *Id.* at 15:23-16:5.  C.B. wore a wire to the meeting.

*Id.* at 16:6-10.  At that meeting, E.D. admitted to being involved in a sexual relationship with

L.D. and apologized to C.B. for that involvement.  *Id.* at 16:21-17:1.  E.D. stated that he was

aware of the consequences if his illegal sexual conduct with L.D. was discovered, including jail

time.  (A. at 577.)

The trial judge placed his own recollection of the E.D. videotape on the record:

> The thrust of the taped interview was that [E.D.] was a defendant.
> And . . . he was the one who brought it up, the matter of Mr.
> O'Halloran, he was told on the tape no.  We'll get to that later.  And
> it was never covered.  There were no details made.  And also my
> recollection is there was absolutely no promises whatsoever made by
> the police officer Investigator Franz to [E.D.] on that tape not
> recorded.  In that regard – and I could vividly recall this – the only
> thing that was . . . the one thing that did stick out in my mind and
> does today was [E.D.] saying if – and in short and almost verbatim,
> if you want me to testify against my Uncle Dave I will.  That's it.

(Ex. DD at 47:16-48:11.)

### G.  Reinstated Direct Appeal

Petitioner, represented by attorney Mitch Kessler, pursued a reinstated direct appeal.  (Ex.

EE.)  Petitioner argued that the prosecution's failure to timely disclose E.D.'s videotaped and

written statements was a material *Brady* violation.  *Id.*

The appellate division found that:

> The victim's written confession, along with the handwritten notes of
> the investigator who interviewed him, were disclosed . . . as part of
> the . . . material delivered after jury selection was completed.  That,
> together with the open file disclosure that took place prior to
> [Petitioner's] request for *Brady* material, enabled trial counsel to
> question the victim about whether he expected leniency for revealing
> the allegations against [Petitioner], and to repeatedly refer in
> summation to the victim's alleged motive to fabricate the accusations
> against [Petitioner] . . . . We have considered [Petitioner's] remaining
> contentions and find them to be unavailing.

*People v. O'Halloran*, 910 N.Y.S.2d 569, 570 (N.Y. App. Div. 3d Dep't 2010).

### H.    Motion to Vacate the Judgment Pursuant to CPL § 440.10

Petitioner, proceeding pro se, moved to vacate the judgment under Criminal Procedure

Law § 440.10. (Ex. MM.)  Petitioner argued that his due process rights were violated when (1)

the prosecutor issued "office subpoenas" to two defense witnesses; (2) the prosecutor made a

comment about Petitioner's "modus operandi" during grand jury instructions; (3) the prosecution

concealed exculpatory evidence; and (4) he received ineffective assistance of trial and appellate

counsel.  *Id.*

The county court denied the motion.  (Ex. PP.)  The court found that only Petitioner's

argument regarding the "office subpoenas" was both properly raised on a § 440.10 motion and

supported by factual allegations.  *Id.* at 2.  The court found that Petitioner had "failed to establish

that the people 'willfully and intentionally' issued any subpoena to defense witnesses or that they

did 'abuse that subpoena by harassment and coercion and allegedly tried to get defendant's

nephew to like and claim that he too was a victim of the defendant's.'" *Id.* at 3.  The court found

that Petitioner had "provided no sworn or affirmed <u>facts</u> apart from what already is part of the record that had been available for appellate review" supporting his ineffective assistance of counsel claims. *Id.* (emphasis in original). The court noted, however, that were it to consider the ineffective assistance of counsel claims, "it would find that [Petitioner] was indeed provided with meaningful representation under both the New York and federal constitutional standards." *Id.* The Third Department denied leave to appeal. (Ex. TT.)

> **I.** **Second Motion for Writ of Error *Coram Nobis***

Petitioner, proceeding pro se, filed a second motion for writ of *coram nobis*. (Ex. UU.) He argued that appellate counsel was ineffective for failing to argue that the amendment to the indictment was impermissible. *Id.* The appellate division denied the motion without analysis. (Ex. XX.) The Court of Appeals denied leave to appeal. (Ex. BBB.)

## IV. <u>ANALYSIS</u>

> **A.** **Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a one-year statute of limitations applies to a petition for a writ of habeas corpus challenging the judgment of a state court. 28 U.S.C. § 2244(d) (2006). Before filing in federal court, a petitioner must generally exhaust state court remedies by 'fairly presenting' the issues in state court. *Picard v. Connor*, 404 U.S. 270, 275 (1971). If the petition is timely and the issues have been exhausted, the federal court turns to the merits of the petitioner's claims. *Id.*

Under AEDPA, a federal court may not grant habeas relief to a state prisoner on a claim that was adjudicated on the merits in state court proceedings unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court." 28 U.S.C. § 2254(d)(1) (2006).

A decision is adjudicated "on the merits" when it finally resolves the claim, with res judicata effect, based on substantive rather than procedural grounds. *Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001). To determine whether a state court has adjudicated a claim "on the merits," a federal habeas court must classify the state court decision as either (1) fairly appearing to rest primarily on federal law or to be interwoven with federal law; or (2) fairly appearing to rest primarily on state procedural law.[3] *Jimenez v. Walker*, 458 F.3d 130, 145 (2d Cir. 2006). Decisions in the first category are deemed to have been made "on the merits" of the federal claim. *Id.*

A decision "on the merits" is contrary to clearly established federal law when it is either contrary to Supreme Court precedent on a question of law or opposite to a relevant Supreme Court case with materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court unreasonably applies federal law when the state court correctly identifies the governing legal rule in a particular case but applies the rule to the facts in an "objectively unreasonable" manner. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citations omitted). Although "[s]ome increment of incorrectness beyond error is required" in order to grant a federal habeas application, that increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (citations omitted); *see also Hawkins v. Costello*, 460 F.3d 238, 243 (2d Cir. 2006). The state court's determination of a factual issue is presumed to be

---

[3]     To make this determination, the court examines three "clues": (1) the face of the state-court opinion; (2) whether the state court was aware of a procedural bar; and (3) the practice of state courts in similar circumstances. *Jimenez*, 458 F.3d at 145 n. 16.

correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254 (e)(1) (2006); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005), *cert. denied* 546 U.S. 884 (2005); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

**B.      Amendment of the Indictment**

Petitioner claims that the amendment to the indictment violated his rights under New York Penal Law § 200.70 and the Fifth Amendment to the United States Constitution.  (Dkt. No. 1 at 5; Dkt. No. 1-2 at 13-18.[4])  Respondent concedes that this claim is timely.  (Dkt. No. 12 at 28.[5])  Respondent argues that the claim is (1) unexhausted; and (2) plainly meritless.  *Id.* at 29-30, 38-46.  Respondent is correct.

1.      <u>Exhaustion</u>

In order to be eligible for federal habeas relief, a petitioner's federal constitutional claim must have been "fairly presented" to the state courts.  *Picard v. Connor*, 404 U.S. 270, 275 (1971).  This is to ensure that the state is given the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Id*. (citations omitted).  In order to give state courts this opportunity:

> a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'

---

[4]      Citations to page numbers in Petitioner's memorandum of law in support of the petition refer to the page numbers assigned by the Court's electronic filing system.

[5]      Citations to page numbers in Respondent's memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

*Baldwin v. Reese*, 541 U.S. 27, 32 (2004). In order to satisfy this exhaustion requirement, state prisoners must present their claims to a state's highest court in a petition for discretionary review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40 (1999). Habeas corpus petitioners bear the burden of demonstrating that they have exhausted available state remedies. *Colon v. Johnson*, 19 F. Supp. 2d 112, 119-20 (S.D.N.Y. 1998).

Here, Petitioner did not raise the issue of the indictment amendment in his first direct appeal, either to the appellate division (Ex. D) or in his application for leave to appeal to the New York Court of Appeals (Ex. H). Petitioner did not raise the issue of the indictment amendment in his reinstated direct appeal, either to the appellate division (Ex. EE) or in his application for leave to appeal to the New York Court of Appeals (Ex. JJ). Therefore, Petitioner did not exhaust the issue of the indictment amendment.

When a claim has not been fairly presented to the state courts, a federal court may nonetheless deem it exhausted "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Reyes v. Keane*, 188 F.3d 136, 139 (2d Cir. 1997)); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000), *cert. denied*, 532 U.S. 943 (2001). "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." *Aparicio*, 269 F.3d at 91 (citing N.Y. Crim. Proc. Law § 440.10(2)(c)). Thus, because he did not raise the issue of the amendment to the indictment on direct appeal, Petitioner cannot now raise his claim in a motion to vacate his judgment of conviction pursuant to Criminal Procedure Law § 440.10. *See Aparicio*, 269 F.3d at 91; *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995). Therefore, the

claim is "deemed exhausted" for purposes of Petitioner's habeas application. *See Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *Senor v. Greiner*, Civ. No. 00-5673 JG, 2002 U.S. Dist. LEXIS 17710, at *21, 2002 WL 31102612, at *10 (E.D.N.Y. Sept. 18, 2002).[6]

"This apparent salve, however, proves to be cold comfort" to Petitioner, as it does to "most petitioners because it has been held that when 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted." *Aparicio*, 269 F.3d at 90 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

Federal courts may only consider the substance of procedurally barred claims where the petitioner can establish both cause for the procedural bar and prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review. *See St. Helen v. Senkowski*, 374 F.3d 181, 184 (2d Cir. 2004) ("[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (citations omitted); *see generally Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

To establish "cause," a petitioner must show that some objective external factor impeded his ability to fully exhaust his federal claims. *See Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*,

---

[6]     The Court will provide Plaintiff with a copy of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

178 F.3d 634, 638 (2d Cir. 1999); *Doleo v. Reynolds*, Civ. No. 00-7927, 2002 WL 922260, at *3 (S.D.N.Y. May 7, 2002). Examples of external factors include interference by officials, ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal. *Murray*, 477 U.S. at 488 (citing *Reed v. Ross*, 468 U.S. 1, 16 (1984) and quoting *Brown v. Allen*, 344 U.S. 443, 486 (1953)). *See also Bossett*, 41 F.3d at 829 (citing *Murray*, 477 U.S. at 488); *United States v. Helmsley*, 985 F.2d 1202, 1206 (2d Cir. 1993); *Lovacco v. Stinson*, Civ. No. 97-5307, 2004 WL 1373167, at *3 (E.D.N.Y. June 11, 2004) (citing *Murray*, 477 U.S. at 488).

Here, Petitioner argues that ineffective assistance of appellate counsel was the cause of his failure to exhaust the indictment amendment issue. (Dkt. No. 1 at 6.) A "petitioner may not bring an ineffective assistance claim as cause for a default when that ineffective assistance claim itself is procedurally barred." *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997). Here, Petitioner raised an ineffective assistance of appellate counsel claim regarding the amendment of the indictment *as to Count Three only* in his *coram nobis* petition. (Ex. UU.) He did not argue that appellate counsel was ineffective by failing to argue that the amendment of Counts One and Two was unconstitutional. *Id.* Therefore, Petitioner has not shown cause for failing to exhaust his indictment amendment claim regarding Counts One and Two.

Regarding Count Three, Petitioner has not established ineffective assistance of appellate counsel as cause for the procedural default because, as discussed below, his ineffective assistance of appellate counsel claim is also procedurally barred.

As a result, this Court need not decide whether Petitioner suffered prejudice because, absent proof that the failure to consider the merits of the claims would result in a fundamental

miscarriage of justice, federal habeas relief is unavailable as to procedurally barred claims unless both cause and prejudice are established. *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

The undersigned can find no basis to conclude that the denial of Petitioner's procedurally barred claims would result in a fundamental miscarriage of justice, which exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal quotation marks and citations omitted). Furthermore, "[i]t is important to note in this regard that 'actual innocence' means factual innocence, not mere legal sufficiency." *Id.* Petitioner has not met this burden.

Although Petitioner failed to exhaust his claim regarding the amendment to the indictment, this Court may exercise its discretion to review and deny the claim on its merits if the claim is "plainly meritless." *Contant v. Sabol*, 987 F. Supp. 2d 323, 348 (S.D.N.Y. 2013) (citing *Rhines v. Weber*, 544 U.S. 269, 277 (2005)). As discussed below, Petitioner's claim is plainly meritless. Therefore, it is recommended that the Court exercise its discretion to review and deny Petitioner's claim regarding the amendment to the indictment.

2.    Merits

Respondent argues that Petitioner's claim regarding the amendment of the indictment is plainly meritless because (a) the claim regarding Count Two is moot; (b) violations of state law are not cognizable on habeas review; (c) the Fifth Amendment has not been incorporated to the states; (d) the indictment was sufficient; (e) Petitioner has not demonstrated any prejudice resulting from the amendment; and (f) the amendment was not erroneous even under state law.

(Dkt. No. 12 at 38-46.)

a. *Mootness*

The jury acquitted Petitioner on Count Two, sodomy in the first degree, a count premised on the victim's physical incapability to consent. (Dkt. No. 1 at 2; A. at 88, 514:17-21.) Respondent argues that Petitioner's claim regarding the amendment to Count Two of the indictment is thus moot. (Dkt. No. 12 at 38.) Respondent is correct. *See Chambers v. Conway*, No. 09 Civ. 2175 (JGK), 2011 U.S. Dist. LEXIS 61327, at *31, 2011 WL 2226956, at *11 (S.D.N.Y. June 8, 2011[7]); *Nickel v. Ercole*, No. 9:06-CV-390 (LEK/RFT), 2009 U.S. Dist. LEXIS 131759, at *22-23, 2009 WL 1606092, at *8 (N.D.N.Y. May 11, 2009). Therefore, Petitioner's claim regarding the amendment to Count Two is plainly meritless.

b. *Not cognizable*

Petitioner claims that the amendment of the indictment violated New York Criminal Procedure Law § 200.70. (Dkt. No. 1-2 at 16.) Respondent argues that this claim is plainly meritless because it is not cognizable on federal habeas review. (Dkt. No. 12 at 38-39.) Respondent is correct. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The amendment of indictments is generally a matter of state law and is not ordinarily cognizable on habeas corpus review.[8] *Cooper v. Fischer*, No. 9:04-CV-0633 (LEK/GHL), 2008 WL 1766740,

---

[7] Lexis and Westlaw use different dates in citations for this decision. This Court has used the date listed by Westlaw, which was the date on which the magistrate judge's decision was adopted by the district court.

[8] Such claims are cognizable if analyzed under the Sixth Amendment. The Sixth Amendment implications of Petitioner's claims are discussed below.

at *8 (N.D.N.Y. Apr. 14, 2008)[9]; *Tirado v. Senkowski*, 367 F. Supp. 2d 477, 491 (W.D.N.Y. 2005). Therefore, Petitioner's claim regarding New York Criminal Procedure Law § 200.70 is plainly meritless.

<blockquote>

c.     *Fifth Amendment*

</blockquote>

Petitioner claims that the amendment of the indictment violated his Fifth Amendment right "to be charged only by a Grand Jury." (Dkt. No. 1-2 at 16.) Respondent argues that this claim is plainly meritless because the Fifth Amendment right to a grand jury indictment has not been incorporated to the states through the Fourteenth Amendment. (Dkt. No. 12 at 39.) Respondent is correct. "[W]hile the Fifth Amendment's grand jury indictment clause imposes certain constraints on prosecutions in federal courts," the right to a grand jury indictment has not been incorporated to the states. *Lanfranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002). Therefore, Petitioner's Fifth Amendment claim is plainly meritless.

<blockquote>

d.     *Sufficiency of Amendment*

</blockquote>

Petitioner claims that the amendment of the indictment violated his Sixth Amendment rights. (Dkt. No. 1-2 at 15.) Respondent argues that this claim is plainly meritless because Petitioner was not prejudiced by the amendment. (Dkt. No. 12 at 39-46.) Respondent is correct.

To avoid ex post facto issues, indictments should generally charge criminal defendants using the language of criminal statutes as they existed at the time the crime was allegedly committed. *See, e.g.*, *People v. Foster*, 927 N.Y.S.2d 92, 97 (N.Y. App. Div. 2d Dep't 2011); *White v. Conway*, No. 9:07-CV-1175 (FJS/GHL), 2011 U.S. Dist. LEXIS 35735, at *58 & n.17, 2011 WL 1315592, at *20 & n.17 (N.D.N.Y. Mar. 31, 2011). An indictment passes

---

[9]     This decision is not available on Lexis.

constitutional muster if "it charges a crime [1] with sufficient precision to inform the defendant of the charges he must meet and [2] with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *De Vonish v. Keane*, 19 F.3d 107, 108 (2d Cir. 1994) (internal quotation marks and citation omitted); *see also Beverly v. Walker*, 899 F. Supp. 900, 909 (N.D.N.Y. 1995) (quoting *De Vonish*); *Carroll v. Hoke*, 695 F. Supp. 1435, 1438 (E.D.N.Y. 1988) (noting that an indictment is constitutionally sufficient if it informs "the accused, in general terms, of the time, place and essential elements of the alleged crime") (citations omitted). "Courts within this Circuit have uniformly required petitioners to establish that they were prejudiced by an amendment to an indictment to prevail on a claim challenging such an amendment." *Cooper*, 2008 WL 1766740, at *8 (internal quotation marks and citation omitted).

Regarding Count One, the indictment charged Petitioner with violating New York Penal Law §130.50(3), Criminal Sexual Act in the First Degree, by engaging in oral sexual conduct or anal sexual conduct "with another person who was less than eleven years old." (A. at 26.) At the time of the conduct alleged, this crime was titled "sodomy in the first degree." It was defined as "deviate sexual intercourse" with a person (1) by forcible compulsion; or (2) who is incapable of consent by reason of being physically helpless; or (3) who is less than eleven years old. N.Y. Penal Law § 130.50 (McKinney 2000). After February 1, 2001, a new subsection was added defining sodomy in the first degree, additionally, as "deviate sexual intercourse" with a person "who is less than thirteen years old and the actor is eighteen years old or more." N.Y. Penal Law § 130.50 (McKinney 2001). In 2003, the crime was retitled as "Criminal Sexual Act in the First Degree" and the phrase "deviate sexual intercourse" was replaced with "oral sexual conduct or

31

anal sexual conduct." N.Y. Penal Law § 130.50 (McKinney 2004). Thus, the indictment charged Petitioner with the crime as it was defined at the time of the trial rather than as it was defined at the time of the crime. The state trial court amended the indictment before charging the jury to correct this error. (A. at 429:13-23.) Count One charged Petitioner with conduct that was substantively identical under the pre-2001 and post-2003 versions of the statute. Thus, Petitioner was informed of the charges he was required to meet with enough detail that he could plead double jeopardy in a future prosecution based on the same set of events. Therefore, the amendment of Count One satisfied the Sixth Amendment and Petitioner's claim is plainly meritless.

Regarding Count Three, the indictment charged Petitioner with violating Penal Law § 130.50(4) by engaging in "oral sexual conduct or anal sexual conduct with another person who was less than thirteen years old" in the summer of 1997, when he was over eighteen years old. (A. at 89.) That subsection and definition of criminal sexual act in the first degree did not exist in 1997. The subsection was added in 2001. At the time of the crime, "deviate sexual intercourse" with a person "less than fourteen years old" by a person over eighteen years old constituted sodomy in the second degree rather than sodomy in the first degree. N.Y. Penal Law § 130.45 (McKinney 2000). Thus, the indictment charged Petitioner with the crime as it was defined at the time of trial rather than as it was defined at the time of the crime. The trial court amended the indictment before charging the jury to correct this error. (A. at 427:19-429:8.) The indictment as originally charged and the indictment as amended by the trial court charged Petitioner with substantively the same conduct: engaging in oral or anal sexual relations with a person under the age of thirteen. Thus, the count as amended informed Petitioner of the charges

he was required to meet with enough detail that he could plead double jeopardy in a future

prosecution based on the same set of events.  Therefore, the amendment of Count Three satisfied

the Sixth Amendment and Petitioner's claim is plainly meritless.

## C.     *Brady*

Petitioner claims that his conviction "was obtained by unconstitutional failure of

prosecutor to disclose extremely favorable evidence."  (Dkt. No. 1 at 6.)  Petitioner states that

"[p]olice purposely . . . suppressed complainant's nefar[i]ous bad acts against a 8 year old girl for

6 long years, evidence proved he fabricated this crime against Petitioner for the leniency he

received, that Police portrayed his crime as only consensual sex when it was by forc[i]ble

compulsion, suppression of evidence gathered at reinterview, of the spoiliation of all evidence in

both cases prematurely."  *Id.*  Petitioner does not specify what pieces of evidence he contends

should have been disclosed.  Respondent, broadly construing the petition and Petitioner's

memorandum of law, divides the evidence into two categories: evidence regarding statements by

E.D. and evidence regarding statements by other individuals.  (Dkt. No. 12 at 46-70.)  In his

traverse, Petitioner discusses three pieces of evidence: (1) videotapes of police interviews with

E.D.; (2) statements by L.D. that E.D. raped her; and (3) Investigator Franz's handwritten notes

of his interview with E.D. (Dkt. No. 19 at 7-8.[10])  In the interest of completeness, the undersigned

will address all of the evidence identified by Respondent.

Respondent concedes that Petitioner's *Brady* claims are timely and exhausted.  (Dkt. No.

12 at 28-35.)  Respondent argues that the appellate division's denial of Petitioner's *Brady* claims

_____

[10]     Citations to page numbers in Petitioner's traverse refer to the page numbers in the
original document rather than to the page numbers assigned by the Court's electronic filing system.

was neither contrary to nor an unreasonable application of Supreme Court law. *Id.* at 46-70. Respondent is correct.

       1.    <u>E.D.'s Statements</u>

Broadly construed, the petition alleges that Petitioner's due process rights were violated under *Brady* because the prosecution either delayed producing or failed to produce evidence of E.D.'s statements to the police and the grand jury. (Dkt. No. 1 at 6; Dkt. No. 12 at 50-63.) This evidence falls into three categories: (a) evidence that was not produced until the first day of the trial; (b) a videotape and audiotapes that were not produced to Petitioner and were ultimately destroyed; and (c) evidence of a police reinterview with E.D.

       a.    *Evidence Not Produced Until After Jury Selection*

Petitioner claims that his due process rights were violated under *Brady* because the prosecution did not provide his trial attorney with Investigator Franz's handwritten notes of his November 18, 2004, interview with E.D., E.D.'s November 18, 2004, written statement to police, or E.D.'s grand jury testimony until just before opening statements. (A. at 253:13-254:11; Dkt. No. 1 at 6; Dkt. No. 1-2 at 7.) Petitioner raised this claim in his §330.30 motion. (A. at 534-37.) The county court denied the claim, stating that:

> A review of the record, the pleadings, pre-trial disclosure, as well as the arguments the defense makes in the instant motion, all support the conclusion that the defense has failed to meet its burden in establishing any *Brady* violation has occurred. Specifically, as argued by the prosecution, the information pointed to by the defense was either known to the defense prior to trial, and/or is not *Brady* material.

(A. at 14)

The appellate division found that it could not review the county court's determination

regarding the withholding of E.D.'s recorded statements because those statements were not included in the appellate record. *People v. O'Halloran*, 852 N.Y.S.2d 471, 472 (N.Y. App. Div. 3d Dep't 2008). The court did not explicitly address the issue of Investigator Franz's handwritten notes, E.D.'s written statement, or E.D's grand jury testimony. *Id.* However, the court affirmed the county court's decision in its entirety. *Id.*

On the reinstated appeal, the appellate division found that:

> The victim's written confession, along with the handwritten notes of the investigator who interviewed him, were disclosed . . . as part of the . . . material delivered after jury selection was completed. That, together with the open file disclosure that took place prior to [Petitioner's] request for *Brady* material, enabled trial counsel to question the victim about whether he expected leniency for revealing the allegations against [Petitioner], and to repeatedly refer in summation to the victim's alleged motive to fabricate the accusations against [Petitioner] . . . . We have considered [Petitioner's] remaining contentions and find them to be unavailing.

*People v. O'Halloran*, 910 N.Y.S.2d 569, 570 (N.Y. App. Div. 3d Dep't 2010).

Respondent argues that these decisions were neither contrary to nor involved an unreasonable application of clearly established federal law, as determined by the Supreme Court because (1) there is no clearly established Supreme Court law regarding belatedly produced *Brady* material (as opposed to material that was never produced at all); and (2) the state courts' decisions were reasonable even if the Court applies the Second Circuit's standard on belatedly produced *Brady* material. (Dkt. No. 12 at 50-54.)

Under the standard employed in the Second Circuit, there is no requirement that *Brady* evidence be disclosed well in advance of trial. However, the Second Circuit has found that due process requires that a defendant receive potential *Brady* material before it is too late for

him to make beneficial use of it at trial. *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007). Under this standard, delayed disclosure may under some circumstances violate due process. Respondent's argument that this standard does not constitute clearly established law is without merit for two reasons. First, the Second Circuit's analysis in delayed *Brady* production cases focuses on the "prejudice" prong of the *Brady* test, discussed in detail below, as set forth in Supreme Court cases and relies directly on quotes from those Supreme Court cases.[11] *See, e.g.*, *Payne v. LeFevre*, 825 F.2d 702, 707 (2d Cir. 1987) (quoting *United States v. Bagley*, 474 U.S. 667, 682 (1985) for proposition that "there must be a reasonable probability – one sufficient to undermine confidence in the outcome – that the jury would have resolved [the] case differently had the prosecution disclosed the [*Brady* material] on a timely basis."). Second, Respondent has not cited any cases rejecting a *Brady* delayed production claim on the ground that there was no clearly established federal law.[12]

---

[11]     Respondent cites *Renico v. Lett*, 559 U.S. 766, 779 (2010) for the proposition that courts cannot apply a standard set forth in a court of appeals decision on the ground that the decision "illuminates" a Supreme Court decision. (Dkt. No. 12 at 52.) The undersigned is not suggesting that the Second Circuit cases "illuminate" Supreme Court decisions. Rather, the Second Circuit's method of dealing with delayed *Brady* production cases *applies* Supreme Court prejudice prong precedent. This case is distinguishable from *Renico*. There, the relevant court of appeals decision set forth a three-factor test that did not appear in the Supreme Court precedent it purported to "illuminate." *Renico*, 559 U.S. at 779. Here, the Second Circuit cases on delayed *Brady* production quote directly from Supreme Court decisions.

[12]     Respondent cites *White v. Carroll*, 416 F. Supp. 2d 270, 277 (D. Del. 2006) as supporting the proposition that "there does not appear to be clearly established Supreme Court law regarding the standard to be applied in cases of belated disclosure." (Dkt. No. 12 at 51.) That case, in turn, cites *United States v. Higgs*, 713 F.2d 39, 43-44 (3d Cir. 1983) for the proposition that "the *Brady* rule does not generally apply to the delayed disclosure of exculpatory or impeachment evidence; rather it only applies to a complete failure to disclose." This Court is unable to find any support in *Higgs* for that proposition. *Higgs* held that the particular delayed production at issue in that case did not violate *Brady*, not that *Brady* does not apply to cases of delayed production.

Respondent correctly argues that the state courts reasonably applied federal law by determining that Petitioner was not prejudiced by the delayed production of Investigator Franz's notes, E.D.'s written statement, and E.D.'s grand jury testimony. A prosecutor's failure to turn over evidence that is favorable to the defense may constitute a due process violation. *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Brady*, 373 U.S. at 86-87. "However, not every failure to do so constitutes a 'true' *Brady* violation." *Thomas v. West*, No. 03 CIV. 1443, 2007 WL 541476, at *13 (S.D.N.Y. Feb. 22, 2007) (citing *Strickler v. Greene*, 527 U.S. 263, 280-82 (1999) and *United States v. Bagley*, 473 U.S. 667, 682 (1985)). To establish a *Brady* violation, a petitioner must show that: (a) the evidence in question was favorable to him, either because it was exculpatory or impeaching; (b) the prosecutor suppressed the evidence, either willfully or inadvertently; and (c) prejudice ensued. *Strickler*, 527 U.S. at 281-82. Prejudice results when there is a reasonable probability that the outcome of the trial would have been different had the evidence been disclosed. *Id.* at 281.

Here, the state courts reasonably found that Petitioner suffered no prejudice as a result of the belated disclosure. As the appellate division noted in its decision on reinstated appeal, the belated *Brady* disclosure was sufficient to "enable[] trial counsel to question the victim about whether he expected leniency for revealing the allegations against [Petitioner], and to repeatedly refer in summation to the victim's alleged motive to fabricate the accusations against [Petitioner]." *O'Halloran*, 910 N.Y.S.2d at 570. To the extent that Petitioner claims, as he did in his § 330.30 motion (A. at 534-35), that earlier production of E.D.'s grand jury testimony would have allowed his attorney to investigate and determine that Mike's Hard Lemonade and Smirnoff Ice were not available in 1997 (Dkt. No. 1-2 at 9-10), the state courts reasonably

applied clearly established federal law by rejecting this contention as "unavailing."  E.D.'s

written statement stated that Petitioner "used to buy [me] alcohol like Smirnoff's Ice, Mike's

Hard Lemonade or 40 ounce beer, pretty much anything [I] wanted."  (A. at 72.)  That statement

was provided to Petitioner's attorney eighteen months before trial.  (A. at 64.)  Petitioner's

attorney could have investigated the availability of Smirnoff Ice and Mike's Hard Lemonade

based on that evidence.  "It is well settled that evidence 'is not considered to have been

suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew,

or should have known of the essential facts permitting him to take advantage of that evidence.'"

*United States v. Torres*, 129 F.3d 710, 717 (2d Cir. 1997) (quoting *United States v. Gonzalez*,

110 F.3d 936, 944 (2d Cir. 1997)).  Therefore, I recommend that the Court deny the habeas

petition on this ground.

        b.     *Videotape and Audiotapes*

      Broadly construed, the petition claims that Petitioner's due process rights under *Brady*

were violated when the prosecution failed to produce a videotape of Investigator Franz's

November 18, 2004, interview with E.D. and audiotapes of E.D.'s conversations with C.B.

(Dkt. No. 1-2 at 17-19, 25-27; Dkt. No. 19 at 7.)  Petitioner raised this claim in his §330.30

petition.  (A. at 528 ¶ 19.)  The county court rejected the claim.  (A. at 11-14.)  Regarding the

videotape, that court noted that it had "reviewed the tape in question . . . . [T]here is absolutely

no possibility that the non-disclosure of this videotape materially contributed to the result of the

trial."  (A. at 13-14.)  The county court's decision did not mention the audiotapes specifically,

but, as noted above, addressed the *Brady* claim in general terms:

        A review of the record, the pleadings, pre-trial disclosure, as well as

the arguments the defense makes in the instant motion, all support the conclusion that the defense has failed to meet its burden in establishing any *Brady* violation has occurred. Specifically, as argued by the prosecution, the information pointed to by the defense was either known to the defense prior to trial, and/or is not *Brady* material.

(A. at 14.)

The appellate division affirmed, finding that:

> [W]e cannot agree . . . that the People's failure to turn over the video recording of the police interview of the victim . . . constitutes a material *Brady* violation requiring reversal . . . . [W]e conclude that there is no reasonable possibility that disclosure of the video would have altered the outcome of the case . . . . The victim's written confession, along with the handwritten notes of the investigator who interviewed him, were disclosed . . . as part of the . . . material delivered after jury selection was completed. That, together with the open file disclosure that took place prior to [Petitioner's] request for *Brady* material, enabled trial counsel to question the victim about whether he expected leniency for revealing the allegations against [Petitioner], and to repeatedly refer in summation to the victim's alleged motive to fabricate the accusations against [Petitioner] . . . . We have considered [Petitioner's] remaining contentions and find them to be unavailing.

*People v. O'Halloran*, 910 N.Y.S.2d 569, 570 (N.Y. App. Div. 3d Dep't 2010). The appellate division's decision did not explicitly mention the audiotapes, but stated that the court had "considered [Petitioner's] remaining contentions and find them to be unavailing." *Id.*

Respondent argues that the state courts' decisions were reasonable applications of established federal law because Petitioner was not prejudiced by the failure to turn over the videotape and audiotapes. (Dkt. No. 12 at 54-60.) Respondent is correct. Regarding the evidence in the videotape suggesting that E.D. had motive to falsely accuse Petitioner in exchange for leniency, as discussed above, Petitioner's attorney had sufficient information to

raise the issue at trial. Regarding the evidence in the videotape about E.D.'s drug use, there was

no evidence that the drug use coincided in time with E.D.'s accusations against Petitioner or

impaired his ability to testify. At most, Petitioner's trial attorney may have been able to elicit

information about the drug use on cross-examination to reflect poorly on E.D.'s character. Given

the wealth of information that Petitioner's attorney already had regarding E.D.'s character–

E.D.'s own crimes most importantly – it was not unreasonable for the state courts to conclude

that the evidence would not have changed the outcome of the case. Regarding the information in

the audiotapes, that information was available to Petitioner through other means and his attorney

used it effectively in Petitioner's defense. Therefore, I recommend that the Court deny the

habeas petition on this ground.

     c.     *E.D.'s 2005 Statements*

     Petitioner claims that his due process rights under *Brady* were violated because the

prosecution suppressed evidence regarding a reinterview of E.D. conducted in 2005. (Dkt. No. 1

at 6; Dkt. No. 1-2 at 7.) Petitioner raised this claim in his §440.40 motion. (Ex. MM at 9, 14,

18-19.) The county court denied the motion without explicitly mentioning the reinterview, but

stating that Petitioner's "remaining claims are conclusory in nature, unsupported by <u>factual</u>

allegations, belied by the record, or part of the record . . . . The . . . motion is denied is its

entirety." (Ex. PP at 3-4, emphasis in original.) Respondent argues that this decision was a

reasonable application of clearly established federal law. (Dkt. No. 12 at 62-63.) Respondent is

correct. There is no evidence in the record that the prosecution suppressed any evidence related

to the reinterview. There is no indication that the interview was recorded or that there were

written notes summarizing it. "Conclusory or speculative allegations that the Government failed

to disclose evidence are insufficient to support a *Brady* violation." *Verdel v. Cunningham*, No. 07 Civ. 837 (JGK), 2008 U.S. Dist. LEXIS 53358, at *11, 2008 WL 2755833, at *4 (S.D.N.Y. July 14, 2008). Therefore, I recommend that the Court dismiss the habeas petition on this ground.

## 2. Other Statements

Broadly construed, the petition asserts that Petitioner's due process rights under *Brady* were violated by the prosecution's delay in producing, or failure to produce, statements by individuals other than E.D. These individuals include (a) L.D.; (b) C.B. and N.D.; and (c) E.D., Sr.

### a. *L.D.*

Petitioner claims that his due process rights under *Brady* were violated when the prosecution withheld videotapes and handwritten notes of Investigator Franz's interview with L.D. on November 15, 2004. (Dkt. No. 1 at 6; A. at 575-78.) Petitioner raised this claim in his §330.30 motion and in his initial direct appeal. (A. at 527; Ex. D at 13-14.) Neither court expressly addressed this claim. However, the county court broadly denied Petitioner's *Brady* claims, noting that "the information pointed to by defense counsel was either known to the defense prior to trial, and/or is not *Brady* material." (A. at 14.) The appellate court affirmed that decision. *People v. O'Halloran*, 852 N.Y.S.2d at 472. These decisions were on the merits of Petitioner's *Brady* claim because they rested on or were interwoven with federal law, as demonstrated by the explicit references to *Brady*.[13] Thus, Petitioner is entitled to habeas relief

---

[13]     "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*,

41

only if the state courts' decisions were contrary to clearly established federal law. They were not.

Petitioner was not prejudiced by the failure to produce notes regarding Investigator Franz's interview with L.D. Petitioner's attorney was provided with E.D.'s own statement regarding his sexual relationship with L.D., which by his own admission lasted for many years. (A. at 585-86.) Petitioner's attorney was given this document before opening statements and granted an adjournment to review it, in time to use it for impeachment purposes at trial if E.D. testified that there had been only one incident with L.D. (A. at 253:13-254:11.) Therefore, I recommend that the Court deny the habeas petition on this ground.

<div style="text-align:center">b.     <em>C.B. and N.D.</em></div>

Broadly construed, the petition claims that Petitioner's due process rights under *Brady* were violated when the prosecution (1) belatedly produced C.B. and N.D.'s grand jury testimony at trial, before opening statements; (2) belatedly produced Investigator Franz's handwritten notes of his interviews with C.B. and N.D. at trial, before opening statements; (3) failed to produce videotapes of the November 15, 2004, interviews of C.B. and N.D.; and (4) failed to produce videotapes of reinterviews with C.B. and N.D. (Dkt. No. 1-2 at 9-10.) Petitioner raised these claims in his § 330.30 motion (A. at 529-33 ¶¶ 24-29, 34-35, 39-43), on direct appeal (Ex. D. at 16-18), and in his § 440.10 motion (Ex. MM). In his § 330.30 motion, Petitioner argued through counsel that comparisons of the handwritten notes to the grand jury testimony showed a number of inconsistencies in C.B. and N.D.'s stories. (A. at 523-39.) These inconsistencies, he argued,

---

___ U.S. ___, 131 S.Ct. 770, 784-85 (2011). The burden is on Petitioner to show that this decision did not involve a determination on the merits of his claim and is thus not entitled to AEDPA deference. *Id.*

showed that C.B. and N.D. fabricated their stories to buttress E.D.'s own fabricated story. *Id.* Petitioner also argued that he elected not to take the stand in his own defense because he feared that he could be cross-examined about C.B. and N.D.'s allegations as "prior bad acts." *Id.* at 537.

As discussed above, the county court broadly denied Petitioner's *Brady* claims, noting that "the information pointed to by defense counsel was either known to the defense prior to trial, and/or is not *Brady* material." (A. at 14.) The appellate court affirmed that decision. *People v. O'Halloran*, 852 N.Y.S.2d at 472. These decisions were on the merits of Petitioner's *Brady* claim because they rested on or were interwoven with federal law, as demonstrated by the explicit references to *Brady*. Thus, Petitioner is entitled to habeas relief only if the state courts' decisions were contrary to clearly established federal law. They were not.

Petitioner did not suffer prejudice for two reasons. First, the evidence of C.B. and N.D.'s statements would not have been admissible at trial. As discussed above, the county court issued a pretrial ruling barring the prosecution from raising evidence regarding C.B. and N.D. in their case-in-chief. (A. at 21-24.) There is no indication that the court would have reconsidered that decision. Second, counsel did, in fact, have access to the content of C.B. and N.D.'s police interviews and opportunity to compare those allegations with the grand jury testimony. The record shows that tapes of C.B. and N.D.'s interviews were turned over to Petitioner's trial counsel on May 19, 2005 – over a year before trial. (A. at 708; Ex. B.) Their grand jury testimony was turned over to counsel before opening statements, and counsel was granted an adjournment until the next morning to review it. (A. at 253:13-254:11.) Therefore, it is recommended that the Court deny the habeas petition on this ground.

c. *E.D., Sr.*

Broadly construed, the petition claims that Petitioner's due process rights under *Brady* were violated when the prosecution "concealed evidence of the true perpetrator of this case," who Petitioner contends was E.D., Sr. (Dkt. No. 1-2 at 7.) Petitioner does not expand on this allegation in his habeas petition, but he explained it at more length in his brief regarding the reinstated appeal. (Ex. EE.) There, Petitioner argued through counsel that:

> [E.D., Sr.] was the only other person present at the scene of both smelting trips in May 2004 when [C.B.] and [N.D.] alleged they were plied with alcohol and sodomized by defendant in much the same way [E.D.] claimed, when he was first interviewed, had happened to him on an alleged fishing trip in the Spring of 1997. [E.D., Sr.] self-exculpated himself when he was interviewed by Inv. Franz with respect to both incidents involving [C.B.] and [N.D.]. According to him he saw and heard nothing about either the alcohol or the molestation. It appears the only thing turned over to the defense prior to trial were the typed Incident Report and the signed statement [E.D., Sr.] made on November 18, 2004. In this regard, [E.D., Sr.] had been Mirandized by Inv. Franz, but never charged even though he was an adult present at both smelting trips involving [C.B.] and [N.D.]. No information was ever turned over to defense counsel concerning why the charges against [E.D., Sr.] were not pursued or were dropped early in this investigation.

(Ex. D. 14-15.)

As discussed above, the county court broadly denied Petitioner's *Brady* claims, noting that "the information pointed to by defense counsel was either known to the defense prior to trial, and/or is not *Brady* material." (A. at 14.) The appellate court affirmed that decision. *People v. O'Halloran*, 852 N.Y.S.2d at 472. These decisions were on the merits of Petitioner's *Brady* claim because they rested on or were interwoven with federal law, as demonstrated by the explicit references to *Brady*. Thus, Petitioner is entitled to habeas relief only if the state courts'

decisions were contrary to clearly established federal law. They were not.

Nothing in the record indicates that Petitioner established any of the three prongs of the *Brady* test regarding statements by E.D., Sr. First, it is not entirely clear what evidence Petitioner contends was withheld. Thus, it is impossible to determine whether that evidence was favorable to Petitioner. Second, it is not clear that the prosecutor actually suppressed the evidence. Third, there was no showing of prejudice to Petitioner. Even if, as he contended on direct appeal, there was some evidence showing that E.D., Sr. shared some culpability regarding the alleged crimes against C.B. and N.D., that evidence would not have been admissible at the trial regarding E.D.'s allegations because of the county court's pretrial ruling barring evidence regarding C.B. and N.D. Therefore, I recommend that the Court deny the habeas petition on this ground.

### D.    Ineffective Assistance of Trial Counsel

Petitioner contends that trial counsel rendered unconstitutionally ineffective assistance in eleven ways: (1) by allowing Petitioner to be arrested in his presence; (2) by failing to object to a comment by the prosecutor during grand jury proceedings; (3) by failing to move the endangering the welfare of a child count as barred by the applicable statute of limitations; (4) by accepting *Brady* materials as *Rosario* materials; (5) by failing to demand evidence regarding the "true perpetrator"; (6) by failing to effectively impeach witnesses; (7) by failing to move for a mistrial after Ms. Brimberg-Clark's testimony; (8) by failing to enter evidence into the record; (9) by failing to "know the law" regarding corroboration; (10) by failing to object to the amendment of the indictment; and (11) by failing to object to the prosecutor's comments during summation.

Respondent argues that three of these claims are unexhausted but should be deemed exhausted and procedurally defaulted: (1) the claim regarding Ms. Brimberg-Clark; (2) the

corroboration claim; and (3) the indictment amendment claim. (Dkt. No. 12 at 30.) Respondent argues that all of the ineffective assistance of trial counsel claims are without merit. *Id*. at 71-93. Respondent is correct.

1.     Arrest in Trial Counsel's Presence

Petitioner claims that trial counsel rendered ineffective assistance because "Petitioner was arrested on a falsely created crime without corroboration in the presence of counsel." (Dkt. No. 1 at 5.) Respondent has not addressed this claim. The undersigned has not been able to locate any reference to this claim in the state court record. Thus, it appears that the claim is unexhausted. I recommend, however, that the Court exercise its discretion to review and sua sponte deny the claim on its merits, as it is plainly meritless. *Contant*, 987 F. Supp. 2d at 348. A petitioner "cannot prevail on an ineffective assistance of counsel claim when the constitutional right to counsel has not attached." *Claudio v. Scully*, 982 F.2d 798, 802 (2d Cir. 1992). "The Sixth Amendment right to counsel 'attaches only at or after the time that adversary judicial proceedings have been initiated.'" *Id.* (quoting *Kirby v. Illinois*, 406 U.S. 682, 688 (1972)). An arrest does not constitute the initiation of adversary judicial proceedings. *United States v. Guido*, 704 F.2d 675, 676 (2d Cir. 1983). Rather, the Sixth Amendment right to counsel attaches only after the filing of formal charges through arraignment and indictment. *Id.* Here, Petitioner claims that trial counsel rendered ineffective assistance by allowing Petitioner to be arrested in his presence. (Dkt. No. 1 at 5.) Petitioner was not arraigned until later in the day (A. at 69) and was not indicted until two months later (A. at 26-29). Thus, the Sixth Amendment right to counsel had not attached and Petitioner's claim is plainly meritless. Therefore, I recommend that the Court deny the habeas petition on this ground.

2. <u>Failure to Object to Prosecution Comment During Grand Jury Instructions</u>

During his grand jury testimony, E.D. stated that Petitioner was "always" kneeling down when he molested him. (A. at 655:16.) When E.D. was finished testifying, the prosecutor instructed the grand jury that:

> I believe that, if my memory is correct, the witness said something about that's the way he always did it. I would ask when you consider the counts that I'm going to present to you at the conclusion of the testimony that you disregard the fact that he alluded to other instances apart from the ones we've discussed, apart from the ones that were just testified to. In other words, when the witness says, that's the way he always did it, you can't speculate as to how many other times there may have been or what other conduct there may have been. You can't take that into account. I just want you to confine your analysis to the specific instances testified to by the witness.

(A. at 657:3-21.)

Petitioner claims that trial counsel rendered ineffective assistance by failing "to object to the comment by ADA during grand jury instructions." (Dkt. No. 1 at 5.) Petitioner argues that the prosecutor's comment effectively made him a witness testifying to a modus operandi. (Dkt. No. 1-2 at 22-23.) Trial counsel, Petitioner argues, should have "object[ed] to this comment and request[ed] that all charges be dismissed with prejudice." *Id.* at 23. Petitioner contends that counsel's failure to do so deprived Petitioner of his rights under the Confrontation Clause. *Id.*

Petitioner raised this claim in his § 440.10 motion. (Ex. MM.) The court found that Petitioner's claim was not properly raised on such a motion because the claim appeared in the record available for appellate review. (Ex. PP at 3.) The court noted, however, that were it to consider Petitioner's ineffective assistance of counsel claim, "it would find that [Petitioner] was indeed provided with meaningful representation under both the New York and federal

constitutional standards." *Id.* The Third Department denied leave to appeal. (Ex. TT.)

Respondent concedes that the claim is timely (Dkt. No. 12 at 28) and exhausted (*id.* at 85). Respondent argues that "the jury verdict . . . rendered moot any claim relating to the grand jury procedure, including claims for the ineffectiveness of counsel." *Id.* Respondent is correct.

Claims regarding errors in grand jury procedure are not cognizable on federal habeas review where the petitioner was found guilty by a petit jury. *King v. Phillips*, No. 03-CV-6045 (NGG) (RB), 2009 U.S. Dist. LEXIS 27356, at *6-8, 2009 WL 891763, at *3 (E.D.N.Y. Mar. 31, 2009) (citing, *inter alia*, *United States v. Eltayib*, 88 F.3d 157, 173 (2d Cir. 1996) (holding that a claim of prosecutorial misconduct failed because "a guilty verdict by a petit jury remedies any possible defects in the grand jury indictment"); *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court.")); *Smith v. Edwards*, No. 98 Civ. 7962 (DLC), 2000 U.S. Dist. LEXIS 7414, at *12 n.2, 2000 WL 709005, at *8 n.2 (S.D.N.Y. May 31, 2000) (rejecting claim that trial counsel failed to object to grand jury testimony as noncognizable on federal habeas review where the petitioner was found guilty by a petit jury). Therefore, I recommend that the Court deny the habeas petition on this ground.

### 3. Failure to Move to Dismiss the Endangering Count

Petitioner was convicted of endangering the welfare of a child pursuant to New York Penal Law § 260.10(1), a Class A misdemeanor. (A. at 29, 513:3-7; N.Y. Penal Law § 260.10 (McKinney 2004).) Under New York law, a "prosecution for a misdemeanor must be commenced within two years after the commission thereof." N.Y. Crim. Proc. Law § 30.10(2)(c)

(McKinney 2004). In contrast to the rules governing charges for sexual offenses against minors, the statute of limitations for charges of endangering the welfare of a child is not tolled until the child reaches the age of eighteen or reports the conduct to a law enforcement agency. *People v. Wildrick*, 920 N.Y.S. 2d 540, 542 (N.Y. App. Div. 4th Dep't 2011). This is true even if the charge for endangering the welfare of a child concerns the same conduct as a charge for a sexual offense. *Id.* Here, the indictment charged Petitioner with conduct occurring "between the Summer of 1993 and the end of 1999." (A. at 29.) The indictment was issued more than two years later, on March 4, 2005. (A. at 26-29.) The charge for endangering the welfare of a child was thus barred by the statute of limitations.

Petitioner does not discuss this issue in the petition. (Dkt. No. 1.) However, he argues in his memorandum of law in support of the petition that "trial counsel failed to have Count IV dismissed as it was in violation with the Statute of Limitations of two (2) years for Misdemeanors." (Dkt. No. 1-2 at 22.) Petitioner raised this issue on direct appeal. (Ex. D. at 32.) The appellate court found that Petitioner "received meaningful representation under all the circumstances." (Ex. G. at 3.) Respondent argues that this decision was a reasonable application of clearly established federal law. (Dkt. No. 12 at 90-93.) Respondent is correct.

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "'[T]he purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation but simply to ensure that criminal defendants receive a fair trial.'" *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (punctuation deleted). To establish

49

a violation of this right to the effective assistance of counsel, a habeas petitioner must show both: (1) that counsel's representation fell below an objective standard of reasonableness, measured in the light of prevailing professional norms; and (2) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 688-90; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland.*). There is a strong presumption that counsel's conduct fell within the wide range of reasonable assistance and that counsel's actions constituted sound trial strategy under the circumstances. *Cuevas v. Henderson*, 801 F.2d 586, 589-90 (2d Cir. 1986). Indeed, "the benchmark for judgment any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 689. Likewise, a "reasonable probability" that the outcome would have been different "is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. That requires a finding that there was a "substantial" rather than simply a "conceivable" likelihood of a different result. *Pinholster*, 131 S.Ct. at 1403 (citing *Harrington v. Richter*, 562 U.S. 86, ___, 131 S.Ct. 770, 791 (2011)).

Because both the AEDPA standard and the *Strickland* standard are so deferential, the Supreme Court has referred to federal habeas review of ineffective assistance of counsel claims as "double deferential." *Pinholster*, 131 S.Ct. at 1403 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

It was reasonable for the state court to conclude that counsel's failure to move to dismiss the endangering the welfare of a child count did not constitute ineffective assistance of counsel.

Petitioner was not prejudiced by that failure. An error that neither impacts nor lengthens a petitioner's sentence is insufficient to show resulting prejudice. *See Figueroa v. Heath*, No. 10-CV-0121, 2011 U.S. Dist. LEXIS 51568, at *68-69, 2011 WL 1838781, at *24 (E.D.N.Y. May 13, 2011) (rejecting claim that counsel was ineffective for not objecting to multiplicitous indictment, as error resulted only in an additional one-year concurrent sentence) (collecting cases). Here, Petitioner received a one-year concurrent sentence on the endangering the welfare of a child conviction, to be served concurrently with his other sentences. (Dkt. No. 1 at 2.) Therefore, I recommend that the Court deny the petition on this ground.

### 4. Accepting *Brady* Material as *Rosario* Material

As discussed above, the prosecution provided Petitioner's trial counsel with some documents at trial, prior to opening statements (A. at 253:13-17) and failed to turn over some evidence that Petitioner contends was exculpatory or impeaching. Petitioner argues that trial counsel rendered ineffective assistance by "accept[ing] BRADY material as ROSARIO." (Dkt. No. 1 at 5, emphasis in original.) In his memorandum of law, Petitioner argues that counsel rendered ineffective assistance by failing to demand the videotapes of reinterviews with E.D. and C.B. (Dkt. No. 1-2 at 22.) In his reply, Petitioner argues that trial counsel rendered ineffective assistance because he "did not pursue the *Brady/Rosario* violations relating to the videotaped statements made by the alleged victim. These prior inconsistent statements were valuable, in the sense that, had the jury had the opportunity to hear the videotapes, it would have rebutted and impeached his testimony and that of the character witness that testified for the prosecution." (Dkt. No. 19 at 16.)

Petitioner raised this issue in his § 440.10 motion. (Ex. MM at 8, 28-32.) The court

found that the issue was not properly raised on a § 440.10 motion and supported by factual allegations.  (Ex. PP at 2.)  However, the court noted that if it were to consider the ineffective assistance of counsel claims, "it would find that [Petitioner] was indeed provided with meaningful representation under both the New York and federal constitutional standards."  *Id.* at 3.  Respondent argues that the state court's decision was a reasonable application of clearly established federal law.  (Dkt. No. 12 at 76-77.)  Respondent is correct.

Petitioner argues, essentially, that effective use of the belatedly produced or unproduced evidence would have shown that E.D. had a bad character and a motive to lie and that he did, in fact, lie.  But, as discussed above, trial counsel made those very arguments.  (A. at 431-439.)  The jury was not persuaded.  Under the doubly deferential standard of review applicable here, it was reasonable for the state court to conclude that trial counsel's conduct did not undermine the proper functioning of the adversarial process and that there was not a substantial likelihood of a different result if counsel had taken the actions that Petitioner contends he should have.  Therefore, it is recommended that the Court deny the petition on this ground.

5.     Failing to Demand Evidence Regarding the True Perpetrator

Petitioner contends that trial counsel was ineffective because he "failed to demand concealed evidence of the true perpetrator E.D. complainant's father."  (Dkt. No. 1 at 5.)  This evidence, Petitioner contends, appears in Investigator Franz's notes of his interviews with N.D. and C.B.  (Ex. MM. at 30.)  Petitioner contends that the notes of the interview with N.D. state that N.D. reported that E.D., Sr. "said I could have Smirnoff Bottle."  *Id.*  Petitioner contends that the notes of the interview with C.B. state that C.B. said something about what E.D., Sr. "done to

him when he was little, his son Eugene Jr. (sic).[14]"

Petitioner raised this issue in his § 440.10 motion. (Ex. MM at 30.) As with Petitioner's other claims of ineffective assistance of trial counsel, the court found that the issue was not properly raised on a § 440.10 motion and supported by factual allegations. (Ex. PP at 2.) However, the court noted that if it were to consider the ineffective assistance of counsel claims, "it would find that [Petitioner] was indeed provided with meaningful representation under both the New York and federal constitutional standards." *Id.* at 3. Respondent argues that the state court's decision was a reasonable application of clearly established federal law. (Dkt. No. 12 at 79.) Respondent is correct.

The state court reasonably found that trial counsel's failure to raise this issue did not constitute ineffective assistance. "The conduct of examination and cross examination is entrusted to the judgment of the lawyer, and an appellate court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken." *Eze v. Senkowski*, 321 F.3d 110, 127 (2d Cir. 2003) (citations and internal quotation marks omitted). Here, as discussed above, trial counsel had successfully defeated the prosecution's motion to introduce evidence about C.B. and N.D. during their case-in-chief. (A. at 21-24.) A decision not to introduce evidence about those individuals during the defense case was, at the very least, strategically and tactically justified by the desire keep evidence about very similar alleged incidents of sexual abuse perpetrated by Petitioner out of the hands of the jury.

---

[14]     Eugene, Jr. is Petitioner's son. It is not clear whether the reference to him is a typographical error in Petitioner's paperwork, a typographical error in Investigator Franz's notes, or truly an indication that C.B. reported that E.D., Sr., did something to Petitioner's son.

Therefore, I recommend that the Court deny the habeas petition on this ground.

6. Failing to Effectively Impeach Witnesses

Petitioner contends that trial counsel was ineffective because he "failed to use evidence given to him to support his strategy and to effectively impeach the witnesses." (Dkt. No. 1 at 5.) Specifically, he argues that trial counsel "failed to properly impeach [E.D.] using the Police Report and the complainant's confession" (Dkt. No. 1-2 at 19, citations omitted) and failed to effectively use evidence to establish that E.D. received leniency for his own crime in exchange for testifying against Petitioner (Dkt. No. 1-2 at 20). Petitioner raised this claim on direct appeal (Ex. D at 32) and in his § 440.10 motion (Ex. MM at 28-32).

On direct appeal, the appellate court rejected Petitioner's ineffective assistance of counsel argument, finding that because "counsel did call the jury's attention to the victim's prior bad acts, his potential motive to fabricate and his having received no jail time for his sexual offense, we are persuaded that the defendant received meaningful representation under all the circumstances." (Ex. G at 3.) As with Petitioner's other claims of ineffective assistance of trial counsel, the county court found that the issue was not properly raised on a § 440.10 motion and supported by factual allegations. (Ex. PP at 2-4.) However, the court noted that if it were to consider the ineffective assistance of counsel claims, "it would find that [Petitioner] was indeed provided with meaningful representation under both the New York and federal constitutional standards." *Id.* at 3. Respondent argues that the state courts' decisions were a reasonable application of clearly established federal law. (Dkt. No. 12 at 77-79.) Respondent is correct.

The state courts reasonably concluded that trial counsel rendered effective assistance by impeaching E.D. The evidence showed that E.D. had been convicted of a criminal sexual act

with his cousin.  (A. at 317:8-319:3.)  Counsel established on cross-examination that E.D. received only probation for his own crime.  (A. at 320:17-23.)  He used his closing argument to focus on E.D.'s crime and the light sentence he received, stating at one point that "as a result of what he did, he was placed on a term of probation.  Not bad for rape."  (A. at 436:21-24.)  The state courts reasonably found that counsel's representation did not fall below an objective standard of reasonableness.  Therefore, I recommend that the Court deny the habeas petition on this ground.

### 7.    Failing to Move for Mistrial After Ms. Brimberg-Clark's Testimony

Petitioner contends that trial counsel rendered ineffective assistance because he "failed to move for a mistrial for the irrelevant testimony of the People's self-proclaimed expert."  (Dkt. No. 1 at 5.)  Respondent argues that this claim should be denied and dismissed because it is unexhausted and plainly meritless.  (Dkt. No. 12 at 30, 88-90.)  Respondent is correct.

Each separate factual claim made in support of an ineffective assistance of counsel claim must be fairly presented to a state court before a federal habeas court may rule on it.  *See, e.g.*, *Rodriguez v. Hoke*, 928 F.2d 534, 538 (2d Cir. 1991).  Petitioner did not raise the claim that trial counsel was ineffective for failing to move for a mistrial after Ms. Brimberg-Clark's testimony on direct appeal (Ex. D) or on his reinstated direct appeal (Ex. EE).  The claim is therefore unexhausted.  Petitioner has not demonstrated cause for his failure to exhaust because his ineffective assistance of appellate counsel claims are also unexhausted.  I recommend, however, that the Court address the merits of the claim and deny it as plainly meritless.

On the merits, Respondent argues that counsel did not render ineffective assistance by failing to move for a mistrial.  (Dkt. No. 12 at 88-90.)  Respondent is correct for two reasons.

First, trial counsel cross-examined Ms. Brimberg-Clark, established that she knew absolutely nothing about the specifics of Petitioner's case, and moved to strike the testimony as irrelevant, and argued to the jury that her testimony added nothing to their understanding of the issues. (A. at 361:3-18, 437:7-20.) This conduct was objectively reasonable measured in light of prevailing professional norms. Second, under New York law, testimony on child sexual abuse accommodation syndrome is admissible to explain an alleged victim's delay in reporting childhood sexual abuse. *People v. Spicola*, 16 N.Y.3d 441, 460-67 (2011). Although the Second Circuit has affirmed the granting of habeas relief to an individual convicted of sexual abuse in a case involving expert testimony regarding child sexual abuse accommodation syndrome, that case is distinguishable. There, the petitioner's attorney "failed to consult or call on expert on the psychology or child sexual abuse, or to educate himself sufficiently on the scientific issues." *Gersten v. Senkowski*, 426 F.3d 588, 611 (2d Cir. 2005). This failure meant that counsel "was unable to mount an effective cross-examination, and missed an opportunity to rebut this attempt at bolstering the victim's credibility." *Id.* Here, counsel mounted an effective cross-examination. In a case similar to that before the Court, another district court in this Circuit has held that the admission of expert testimony regarding child sexual abuse accommodation syndrome does not violate the Due Process Clause, and habeas relief is not warranted, where "[t]he testimony was not offered to prove that the acts of sodomy . . . had, in fact, occurred" and "the jury [is] advised that it was not to be used for that purpose." *Miles v. Conway*, 739 F. Supp. 2d 324, 336-37 (W.D.N.Y. 2010). Here, the testimony was not offered to prove that the acts of sodomy had, in fact occurred, and counsel stressed that point to the jury. Therefore, Petitioner's constitutional rights were not violated and I recommend that the Court deny habeas relief on this

ground.

8.    Failing to Enter Evidence Into the Record

Petitioner contends that trial counsel rendered ineffective assistance by "fail[ing] to enter . . . evidence into the record." (Dkt. No. 1 at 5.) In his memorandum of law, he cites two specific examples: (1) counsel's failure to investigate and establish that Mike's Hard Lemonade and Smirnoff Ice were not available in the United States until 2000 and 2001 (Dkt. No. 1-2 at 21-22); and (2) counsel's failure to search for alibi witnesses (Dkt. No. 1-2 at 24).

Petitioner raised these claims on direct appeal (Ex. D at 16-19, 32) and in his § 440.10 motion (Ex. MM at 28-29, 32, 35, 40-41). On direct appeal, the court determined that Petitioner "received meaningful representation under all the circumstances." (Ex. G at 3.) As with Petitioner's other claims of ineffective assistance of trial counsel, the county court found that the issue was not properly raised on a § 440.10 motion and supported by factual allegations. (Ex. PP at 2-4.) However, the court noted that if it were to consider the ineffective assistance of counsel claims, "it would find that [Petitioner] was indeed provided with meaningful representation under both the New York and federal constitutional standards." *Id.* at 3. Respondent argues that the state courts' decisions were a reasonable application of clearly established federal law. (Dkt. No. 12 at 80-84.) Respondent is correct.

It was reasonable for the state courts to conclude that Petitioner was not prejudiced by trial counsel's failure to introduce evidence regarding the dates that Mike's Hard Lemonade and Smirnoff Ice were first distributed in the United States. E.D. testified that Petitioner molested him for "three and four years nonstop" after he was "around twelve years old," and thus the molestation lasted until he was "around fifteen." (A. at 326:5-327:6.) E.D., who was born on

October 2, 1986, turned fifteen on October 2, 2001. (A. at 26.) Petitioner asserts that Mike's Hard Lemonade and Smirnoff Ice were both distributed in the United States by 2001. (Dkt. No. 1-2 at 21-22.) Thus, the evidence regarding the beverages' distribution dates would not necessarily have contradicted E.D.'s testimony that Petitioner provided him with those and other alcoholic beverages. Accordingly, there is not a substantial likelihood that the evidence would have produced a different result.

Regarding the alibi witnesses, the state courts reasonably concluded that trial counsel's failure to call them was objectively reasonable. As Mr. Benjamin observed in his affirmation in support of Petitioner's § 330 motion to vacate the verdict, "these affidavits constitute new evidence that was not known to the defendant, or reasonably discoverable by his trial attorney during trial for the reasons explained in the three affidavits that caused these witnesses not to come forward and the defendant and his attorney not to know of their evidence." (A. at 524 ¶ 5.) Therefore, I recommend that the Court dismiss the habeas petition on this ground.

9.      Failing to "Know the Law" Regarding Corroboration

Petitioner claims that trial counsel rendered ineffective assistance when failed to "know the law" that there is a "requirement of corroboration." (Dkt. No. 1-2 at 10; Dkt. No. 1 at 5.) Respondent argues that the claim is unexhausted and meritless. (Dkt. No. 12 at 30, 88.) Respondent is correct. Regarding exhaustion, this claim is unexhausted for the same reasons discussed above regarding trial counsel's failure to move for a mistrial after Ms. Brimberg-Clark's testimony. On the merits, until 1984, New York Penal Law § 130.16 required corroboration for sex crimes based on the victim's lack of capacity to consent due to age. *Roe v. Senkowski*, No. 9:98-CV-0656 (NAM/GLS), 2001 U.S. Dist. LEXIS 23754, at *7-8, 2001 WL

1860884, at *2-3 (N.D.N.Y. Feb. 20, 2001). However, an amendment in 1984 eliminated the

corroboration requirement. *Id.* As a result of that amendment, the testimony of child victims is

sufficient to establish guilt beyond a reasonable doubt. *See Stewart v. Hunt*, No. 9:09-CV-712

(MAD/TWD), 2012 U.S. Dist. LEXIS 134715, at *30-31, 2012 WL 4107825, at *11 (N.D.N.Y.

Sept. 19, 2012); *Howard v. Potter*, No. 9:06-CV-0982 (GTS/GHL), 2009 U.S. Dist. LEXIS

93523, at *10, 2009 WL 3259080, at *6 (N.D.N.Y. Oct. 7, 2009). Thus, trial counsel did not

"fail to know" the law and I recommend that the Court deny the habeas petition on this ground as

plainly meritless.

          10.        <u>Failing to Object to the Amendment of the Indictment</u>

Petitioner contends that trial counsel rendered ineffective assistance by failing to object to

the amendment of the indictment. (Dkt. No. 1 at 5.) Respondent argues that this claim is

unexhausted and plainly meritless. (Dkt. No. 12 at 30, 76-77.) Respondent is correct.

Regarding exhaustion, this claim is unexhausted for the same reasons discussed above regarding

trial counsel's failure to move for a mistrial after Ms. Brimberg-Clark's testimony. On the

merits, as discussed above, Petitioner's arguments that the amendment to the indictment violated

his rights are plainly meritless. An attorney's failure to object to the amendment of an indictment

does not constitute ineffective assistance where the amendment itself is valid under New York

law and the Due Process Clause. *See, e.g., LanFranco v. Murray*, 313 F.3d 112, 118-20 (2d Cir.

2002). Therefore, I recommend that the Court deny the habeas petition on this ground as plainly

meritless.

          11.        <u>Failing to Object to Prosecutor's Comments During Summation</u>

Petitioner contended on direct appeal that trial counsel rendered ineffective assistance by

failing to object to the prosecutor's comments during summation that E.D. did not receive a deal for his testimony and that he was a good family man. (Ex. D at 32.) The state court found that Petitioner "received meaningful representation under all the circumstances." (Ex. G at 3.) Respondent argues that, to the extent that Petitioner has reasserted this claim, the state court reasonably applied clearly established federal law. (Dkt. No. 12 at 86-88.) Respondent is correct.

A petitioner may obtain habeas relief based on a claim of prosecutorial misconduct during summation only if the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). To meet his burden, Petitioner "must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). Three factors are considered by a habeas court in determining whether a prosecutor's summation created actual prejudice: "'the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.'" *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998) (quoting *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir. 1990) (quoting *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1982) (per curiam)). The court "must evaluate the challenged remarks in the context of the trial as a whole, for the government is allowed to respond to argument that impugns its integrity or the integrity of its case." *United States v. Rivera*, 22 F.3d 430, 438 (2d Cir.1994). *See Darden v. Wainwright*, 477 U.S. 168, 182 (1986) (finding no substantial prejudice, in part because "[m]uch of the objectionable content was invited by or was responsive to the opening summation of the defense") (citing *United States*

*v. Young*, 470 U.S. 1, 13 (1985)). *See Walker v. Cunningham*, No. 08-CV-2735, 2008 U.S. Dist. LEXIS 87064, at *13, 2008 WL 4737664, at *5 (E.D.N.Y. Oct. 28, 2008) ("A prosecutor has broad latitude during summation, particularly when responding to defense counsel's summation.").

Here, the record does not demonstrate prosecutorial misconduct. First, the prosecutor did not state that E.D. was a good family man. Rather, he referred to Investigator Franz's testimony that *Petitioner* initially referred to E.D. as "a good kid, you know, he's a hard worker, loves his family, solid guy." (A. at 463:14-16.) Second, the prosecutor's assertion that E.D. did not receive leniency for bringing charges against Petitioner was based on E.D.'s testimony that he did expect to get a deal. (A. at 324:9-23.) These comments, based on evidence, were insufficient to "infect" the proceedings.

Further, even if the prosecutor had engaged in misconduct, the state court reasonably concluded that Petitioner was not prejudiced. There is not a substantial likelihood that the result would have been different if trial counsel had objected to the summation. Therefore, I recommend that the Court deny the habeas petition on this ground.

### E.    Ineffective Assistance of Appellate Counsel

Petitioner asserts a number of ways in which he contends his two appellate attorneys rendered ineffective assistance. (Dkt. No. 1 at 6-7; Dkt. No. 1-2 at 10-11.) Respondent argues that Petitioner's ineffective assistance of appellate counsel claims are unexhausted. (Dkt. No. 12 at 29-34.) Respondent is correct. As discussed above, Petitioner raised his ineffective assistance of appellate counsel claims in his first *coram nobis* motion. (Ex. M.) The appellate division granted the motion solely as to the *Brady* issues involving E.D.'s statements. (Ex. P.) Petitioner

moved to renew or reargue the motion.  (Ex. Q.)  The Third Department denied the motion to

reargue and the Court of Appeals dismissed Petitioner's application for leave to appeal "because

the order sought to be appealed is not appealable."  (Exs. U-V.)  Petitioner never sought to appeal

the appellate division's substantive order granting coram nobis in part and denying it in part.

Petitioner thus never "fairly presented" his substantive issues regarding ineffective assistance of

appellate counsel to the Court of Appeals and his claims are unexhausted.  *See Perez v. Perrott*,

No. 9:04-CV-327 (DNH/GJD), 2008 U.S. Dist. LEXIS 117659, at *15-16, 2008 WL 2323360, at

*5 (N.D.N.Y. June 2, 2008[15]).  Therefore, I recommend that the Court deny the habeas petition as

to these claims.

     **F.**     **Ineffective Assistance of Counsel in State Collateral Proceedings**

Petitioner was granted leave to amend the petition to assert that his counsel in his CPL §

330 proceedings rendered ineffective assistance by (1) failing to object when the prosecutor

submitted E.D.'s videotaped statement to the trial court ex parte; (2) failing to argue that trial

counsel rendered ineffective assistance by failing to object to the amendment of the indictment;

and (3) failing to argue that trial counsel rendered ineffective assistance by failing to challenge

the entire indictment as time-barred.  (Dkt. No. 30.)  Respondent argues that these claims are

unexhausted and plainly meritless.  (Dkt. No. 32 at 15-24.[16])

---

[15]     Lexis and Westlaw lists different dates for this decision.  The undersigned has used
the date listed by Westlaw, which reflects the date that the district court judge adopted the
magistrate judge's report and recommendation.

[16]     Citations to page numbers in Respondent's Memorandum of Law in Opposition to
Petitioner's Motion to Amend His Petition for a Writ of Habeas Corpus refer to the page numbers in
the original document rather than to the page numbers assigned by the Court's electronic filing
system.

### 1. Failure to Object to Ex Parte Review of E.D.'s Videotaped Statement

Petitioner claims that Mr. Benjamin, who represented him in his CPL § 330 motion, rendered ineffective assistance by failing to object when the trial court reviewed E.D.'s videotaped statement. (Dkt. No. 33 at I, 3, 6, 9-10.) Petitioner argues that this violated the New York Code of Judicial Conduct and the Confrontation Clause. *Id.* Respondent argues that this claim is unexhausted and plainly meritless. (Dkt. No. 32 at 9-12, 18-20.) Respondent is correct.

This claim is unexhausted because Petitioner never raised it in any state forum. However, I recommend that the Court exercise its discretion and deny the claim on its merits, as it is plainly meritless.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68. The New York Code of Judicial Conduct authorizes judges to "consider any *ex parte* communications when authorized by law to do so." N.Y. Comp. Codes R. & Regs. tit. 22, § 100.3(B)(6)(e) (2014). New York law authorizes judges to examine discovery materials *ex parte*. N.Y. Crim. Proc. Law § 240.90 (McKinney 2004). The trial judge exercised his authority under New York law to examine the videotape *ex parte*, and it is not the province of this court to reexamine that decision. Such a decision violates neither *Brady* nor the Confrontation Clause in situations such as the case at bar. *See, e.g.*, *Dawkins v. New York*, No. 08-CV-2441(NGG), 2011 U.S. Dist. LEXIS 91150, 2011 WL 3625150 (E.D.N.Y. Aug. 16, 2011). Therefore, I recommend that the Court deny and dismiss the habeas petition on this ground.

### 2. Failure to Argue That Trial Counsel Was Ineffective

Petitioner asserts that Mr. Benjamin rendered ineffective assistance by failing to argue

that trial counsel was ineffective (a) for failing to object to the amendment of the indictment; and (b) for failing to challenge the entire indictment as time-barred. (Dkt. No. 30 at 10.) Respondent argues that these claims are unexhausted and plainly meritless. (Dkt. No. 32 at 9-12, 20-24.) Respondent is correct.

        a.     *Trial Counsel's Failure to Object to Indictment Amendment*

Petitioner asserts that Mr. Benjamin rendered ineffective assistance by failing to argue that trial counsel was ineffective for failing to object to the amendment of the indictment. (Dkt. No. 30 at 10.) This claim is unexhausted because Petitioner never raised it in any state forum. However, I recommend that the Court exercise its discretion and deny the claim on its merits, as it is plainly meritless. As discussed above, Petitioner's claim that the amendment to the indictment violated his constitutional rights is itself without merit. Thus, trial counsel's failure to object and appellate counsel's failure to assert trial counsel's ineffectiveness on appeal did not constitute ineffective assistance of counsel. *See, e.g.*, *LanFranco v. Murray*, 313 F.3d 112, 118-20 (2d Cir. 2002). Therefore, I recommend that the Court deny and dismiss the petition on this ground.

        b.     *Trial Counsel's Failure to Challenge the Indictment as Time-Barred*

Petitioner asserts that Mr. Benjamin rendered ineffective assistance by failing to argue that trial counsel was ineffective for failing to challenge the entire indictment as time-barred. (Dkt. No. 30 at 10.) This claim in unexhausted because Petitioner never raised it in any state forum. However, I recommend that the Court exercise its discretion and deny the claim on its merits, as it is plainly meritless. Petitioner argues that trial counsel rendered ineffective

assistance by failing to argue that the entire indictment was time-barred. (Dkt. No. 31-2 at 6-7, 9.) Petitioner argues that his prosecution was time-barred and violated the Ex Post Facto Clause because the relevant statute of limitations was amended after the date he committed the two felonies for which he was convicted. *Id.* Petitioner is incorrect. The Supreme Court has held that "a law enacted after expiration of a previously applicable limitations period violates the Ex Post Facto Clause when it is applied to revive a previously time-barred prosecution." *Stogner v. California*, 539 U.S. 607, 632-33 (2003). Petitioner was convicted of two felonies - one committed in 1993 and the other in 1997. (Ex. A at 87-98, 514:7-515:10.) Sodomy in the first degree is a Class B felony and sodomy in the second degree is a Class D felony. N.Y. Penal Law §§ 130.45, 130.50 (McKinney 2004). In 1993, the statute of limitations for Class B and Class D felonies was five years. N.Y. Crim. Proc. Law §30.10(2)(b) (McKinney 2003). In 1996, before the statute of limitations ran on the offense Petitioner committed in 1993, the New York legislature enacted Criminal Procedure Law § 30.10(3)(f), which tolls the statute of limitations for sexual abuse prosecutions until the victim turns eighteen or reports the crime to authorities, whichever is earlier. *See People v. Quinto*, 18 N.Y.3d 409, 412-13 (2012). E.D. turned eighteen on October 2, 2004. (Ex. A at 26.) The prosecution against Petitioner was commenced well within five years of that date. *Id.* at 87-98. Thus, the indictment was not time-barred, trial counsel was not ineffective for failing to raise a meritless argument, and appellate counsel was not ineffective for failing to argue that trial counsel was ineffective. Therefore, I recommend that the Court deny and dismiss this claim as plainly meritless.

      **WHEREFORE**, based upon the foregoing, it is hereby

      **RECOMMENDED** that the petition for a writ of habeas corpus (Dkt. No. 1) be

**DENIED** and **DISMISSED**; and it is further

**RECOMMENDED** that the Court find that Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) (2006) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). Therefore, it is recommended that no certificate of appealability issue with respect to any of Petitioner's claims; and it is further

**ORDERED** that the Clerk provide Petitioner with copies of *Senor v. Greiner*, Civ. No. 00-5673 JG, 2002 U.S. Dist. LEXIS 17710, 2002 WL 31102612 (E.D.N.Y. Sept. 18, 2002); *Chambers v. Conway*, No. 09 Civ. 2175 (JGK), 2011 U.S. Dist. LEXIS 61327, 2011 WL 2226956 (S.D.N.Y. June 8, 2011); *Nickel v. Ercole*, No. 9:06-CV-390 (LEK/RFT), 2009 U.S. Dist. LEXIS 131759, 2009 WL 1606092 (N.D.N.Y. May 11, 2009); *Cooper v. Fischer*, No. 9:04-CV-0633 (LEK/GHL), 2008 WL 1766740 (N.D.N.Y. Apr. 14, 2008); *White v. Conway*, No. 9:07-CV-1175 (FJS/GHL), 2011 U.S. Dist. LEXIS 35735, 2011 WL 1315592 (N.D.N.Y. Mar. 31, 2011); *Verdel v. Cunningham*, No. 07 Civ. 837 (JGK), 2008 U.S. Dist. LEXIS 53358, 2008 WL 2755833 (S.D.N.Y. July 14, 2008); *King v. Phillips*, No. 03-CV-6045 (NGG) (RB), 2009 U.S. Dist. LEXIS 27356, 2009 WL 891763 (E.D.N.Y. Mar. 31, 2009); *Smith v. Edwards*, No. 98 Civ. 7962 (DLC), 2000 U.S. Dist. LEXIS 7414, 2000 WL 709005 (S.D.N.Y. May 31, 2000); *Figueroa v. Heath*, No. 10-CV-0121, 2011 U.S. Dist. LEXIS 51568, 2011 WL 1838781 (E.D.N.Y. May 13, 2011); *Roe v. Senkowski*, No. 9:98-CV-0656 (NAM/GLS), 2001 U.S. Dist. LEXIS 23754, 2001 WL 1860884 (N.D.N.Y. Feb. 20, 2001); *Stewart v. Hunt*, No. 9:09-CV-712 (MAD/TWD), 2012 U.S. Dist. LEXIS 134715, 2012 WL 4107825 (N.D.N.Y. Sept. 19, 2012);

*Howard v. Potter*, No. 9:06-CV-0982 (GTS/GHL), 2009 U.S. Dist. LEXIS 93523, 2009 WL 3259080 (N.D.N.Y. Oct. 7, 2009); *Walker v. Cunningham*, No. 08-CV-2735, 2008 U.S. Dist. LEXIS 87064, 2008 WL 4737664 (E.D.N.Y. Oct. 28, 2008); and *Perez v. Perrott*, No. 9:04-CV-327 (DNH/GJD), 2008 U.S. Dist. LEXIS 117659, 2008 WL 2323360 (N.D.N.Y. June 2, 2008).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: September 23, 2014
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

**Westlaw Delivery Summary Report for MCKEON, COURTENA**

| | |
|---|---|
| Date/Time of Request: | Monday, September 22, 2014 15:56 Central |
| Client Identifier: | O'HALLORAN |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 455 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Not Reported in F.Supp.2d, 2008 WL 4737664 (E.D.N.Y.)
**(Cite as: 2008 WL 4737664 (E.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Russell WALKER, Petitioner,
v.
Raymond CUNNINGHAM, Superintendent, Wood-
bourne Correctional Facility, Respondent.

No. 08 CV 2735(JG).
Oct. 28, 2008.

West KeySummary**Criminal Law 110 ⟨⟩ 1969**

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)2 Particular Cases and Issues
            110k1966 Appeal
               110k1969 k. Raising Issues on Appeal; Briefs. Most Cited Cases

A prisoner's petition for writ of habeas corpus alleging ineffective assistance of appellate counsel was denied where the evidence indicated that the prisoner's appellate counsel's performance was reasonable. After being convicted of robbery in the second degree and assault in the second degree, the prisoner, through counsel, appealed his conviction. The prisoner's appellate counsel did not appeal the outcome of the prisoner's motion to suppress the victims' identification testimony at trial. Instead, appellate counsel argued unsuccessfully that the prosecutor misused the identification testimony when it was clear that the victim's description varied from an accurate description of the prisoner. 28 U.S.C.A. § 2254.

Russell Walker, Woodbourne, NY, pro se.

Richard A. Brown, District Attorney, Queens County, by: John M. Castellano, Nicoletta J. Caferri, Laura T. Ross, Kew Gardens, NY, for Respondent.

*MEMORANDUM AND ORDER*
JOHN GLEESON, District Judge.

**\*1** Russell Walker, a prisoner incarcerated in the Woodbourne Correctional Facility pursuant to a judgment of the New York State Supreme Court, Queens County, petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Walker challenges his conviction following a jury trial of one count of robbery in the second degree and one count of assault in the second degree. Appearing *pro se,* Walker seeks habeas relief on the grounds discussed below. Oral argument was held on October 22, 2008, at which Walker appeared by videoconference from the facility in which he is serving his sentence. For the reasons set forth below, the petition is denied.

BACKGROUND
A. *The Offense Conduct*

The government's evidence at trial established that at approximately 11:00 a.m. on May 5, 2003, Walker followed 60-year-old Gladys Rios into her apartment building in Jackson Heights, Queens and attacked her. Walker repeatedly struck Rios, hitting her face and causing her to fall to the floor. Before fleeing, Walker took a wallet containing $25 out of Rios's purse and grabbed at her neck, ripping off her two necklaces. As a result of Walker's attack, both sides of Rios's face were bruised and she experienced a great deal of pain. At the time of trial, Rios still felt pain in her face and her face was partially paralyzed.

B. *The Procedural History*

1. *The Trial Court Proceedings*

Walker was arrested and charged in New York Supreme Court, Queens County with one count of robbery in the first degree, two counts of robbery in the second degree, one count of assault in the second degree, one count of assault in the third degree, and one count of intimidating a witness in the third degree. A jury found Walker guilty of the charges with respect to the attack on Rios-robbery

in the second degree and assault in the second de-gree-and acquitted him of the other charges, which pertained to a similar attack of a 61-year-old man two weeks earlier in the same neighborhood. On August 24, 2004, Walker was sentenced to concurrent determinate terms of imprisonment of ten years for the second degree robbery conviction and five years for the second degree assault conviction.

### 2. *The Direct Appeal*

On appeal to the New York Supreme Court, Appellate Division, Second Department, Walker argued through his assigned attorney that certain comments in the prosecution's summation deprived him of due process and a fair trial. Walker argued that the prosecutor's summation (1) attempted to arouse the jurors' sympathies for the victims and fears of the defendant; and (2) improperly shifted the burden of proof.

On December 12, 2006, the Appellate Division unanimously affirmed Walker's convictions, holding that his challenges to the prosecutor's summation were "unpreserved for appellate review" and declining to review them "in the exercise of our interest of justice jurisdiction." *People v. Walker,* 35 A.D.3d 636, 824 N.Y.S.2d 740 (2d Dep't 2006). Walker sought leave to appeal, and the New York Court of Appeals denied that application on April 5, 2007. *People v. Walker,* 8 N.Y.3d 950, 836 N.Y.S.2d 561, 868 N.E.2d 244 (2007) (Pigott, J.).

### 3. *The Instant Petition*

**\*2** Walker filed this petition on June 30, 2008, claiming that he is entitled to a writ of habeas corpus under 28 U.S.C. § 2254 on the ground that allegedly improper comments made by the prosecutor in her summation deprived him of due process and a fair trial.

At oral argument, Walker asked that I hold his petition in abeyance in light of his intention to seek relief in state court via two proceedings: (1) a § 440 motion asserting that trial counsel was ineffective in failing to object to the prosecutor's summation; and (2) a petition for a writ of error *coram nobis* as-serting that appellate counsel was ineffective in failing to raise the foregoing ineffective assistance claim and in failing to appeal the denial of Walker's pretrial motion to suppress the victims' identification testimony on the ground that they had viewed a tainted line-up.

Walker's claim regarding the prosecutor's summation is in procedural default because the state court rejected it on an independent and adequate state procedural ground. Walker does not show cause for his procedural default or prejudice resulting therefrom. He also fails to show that a miscarriage of justice would result if I do not review his claim. In any event, this procedurally defaulted claim is without merit.

<div align="center">DISCUSSION</div>

### A. *The Standard of Review*

### 1. *Procedural Default*

Where there has been actual and explicit reliance upon procedural default to dispose of a claim in state court, there is an "adequate and independent state ground" for the judgment, prohibiting federal habeas review. *Harris v. Reed,* 489 U.S. 255, 261, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Galarza v. Keane,* 252 F.3d 630, 637 (2d Cir.2001) (reliance must be "unambiguous and clear from the face of the opinion"); *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 126 (2d Cir.1995); *see also Coleman v. Thompson,* 501 U.S. 722, 744, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting the state's interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having the opportunity to correct [their] own errors"); *but see Lee v. Kemna,* 534 U.S. 362, 376, 381, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002) (noting the existence of a "small category" of "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question").[FN1]

> FN1. In this case, the Appellate Division's decision is based on the contemporaneous

objection requirement and defendant's failure to challenge the prosecutor's summation remarks during trial. *People v. Walker,* 35 A.D.3d 636, 824 N.Y.S.2d 740 (2d Dep't 2006) (citing N.Y.Crim. Pro. Law § 470.05(2)). Accordingly, Walker has no plausible argument with respect to the adequacy of the state ground barring federal review of his claims. *See, e.g., People v. Nieves,* 2 A.D.3d 539, 767 N.Y.S.2d 913 (2d Dep't 2003) (challenges to prosecutor's summation were unpreserved for appellate review when they were not objected to at trial).

Where the state appellate court rejects a state prisoner's claim as procedurally defaulted, the claim may be considered on federal habeas review only upon a showing of "cause for the default and actual prejudice as a result of the alleged violation of federal law," or upon a showing that a miscarriage of justice will result if the claim is not reviewed. *Coleman,* 501 U.S. at 750; *Teague v. Lane,* 489 U.S. 288, 298, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). A petitioner may establish cause by showing " 'that the factual or legal basis for a claim was not reasonably available to counsel, ... or that some interference by officials ... made compliance impracticable.' " *Coleman,* 501 U.S. at 753 (internal quotation marks omitted) (quoting *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). To satisfy the prejudice requirement, the alleged error must have worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski,* 316 F.3d 147, 152 (2d Cir.2003) (internal quotation marks omitted).

**\*3** If the petitioner is unable to show cause and prejudice, his procedural default may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to hear the claim on the merits, *i.e.,* "that he is actually innocent of the crime for which he has been

convicted." *Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir.2002) (citing *Schlup v. Delo,* 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). The miscarriage of justice exception to the procedural default rule is "extremely rare," and should be applied only in "extraordinary circumstances." *Sweet v. Bennett,* 353 F.3d 135, 142 (2d Cir.2003) (citing *Schlup,* 513 U.S. at 321-22)).

2. *AEDPA Deference*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. 28 U.S.C. § 2254(d). Under the AEDPA standard, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*[FN2]

> FN2. Where a state court determination clearly and expressly relies on procedural grounds only and not on the merits of a petitioner's claims, as is the case here, AEDPA deference is not owed. Thus, if the procedural ground on which the state courts relied was found here not to be adequate, I would proceed to review the merits of Walker's claim *de novo. See Bell v. Miller,* 500 F.3d 149, 154-55 (2d Cir.2007).

B. *Walker's Claims*

1. *Prosecutorial Misconduct*

Walker seeks habeas relief based on the claims that the prosecutor's summation (1) attempted to arouse the jurors' sympathies for the victims and fears of the defendant, and (2) improperly shifted the burden of proof. As discussed above, Walker's claim is procedurally barred because the Appellate

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4737664 (E.D.N.Y.)
**(Cite as: 2008 WL 4737664 (E.D.N.Y.))**

Division explicitly held that Walker's challenges to the prosecutor's summation comments were unpreserved for appellate review.

The New York Court of Appeals' subsequent decision summarily rejecting Walker's application for leave to appeal the Appellate Division's decision does not alter the determination that the Walker's claim is procedurally barred from federal habeas review. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (finding that where "the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits"). Because the state court's decision actually and explicitly relied on a procedural default and was not based on the merits, there is an independent and adequate state law ground for the judgment, to which I must defer.

In addition, Walker has failed to demonstrate cause for the default,[FN3] prejudice therefrom or that a miscarriage of justice would result if the prosecutorial claim were not reviewed here. His assertion at oral argument that he is innocent falls far short of the requirement that he set forth "new reliable evidence" of innocence that was not presented at trial. *Schlup,* 513 U.S. at 324.

> FN3. Walker does not attempt to show cause for his default and conceivable bases based on the facts of his case are meritless. For example, any argument by Walker that his counsel's failure to object amounted to "cause," would have failed because "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it does not constitute cause for a procedural default." *Murray v. Carrier,* 477 U.S. 478, 486 (1986). Moreover, Walker would have been precluded from relying on an ineffective assistance of counsel claim as the basis for cause because this claim is itself unexhausted. Walker never

claimed in state court that his trial counsel was ineffective for failing to object to the prosecutor's summation remarks and thus, he has no such basis for cause. *See Edwards v. Carpenter,* 529 U.S. 446, 452-53, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). His belated application to stay this petition for that purpose is addressed below.

**\*4** Moreover, Walker's claim is meritless. Habeas relief based on a claim of prosecutorial misconduct during summation is unavailable unless the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *see also Pimentel v. Walsh,* No. 02 Civ. 570, 2003 WL 22493451, at \*7 (S.D.N.Y. Nov. 4, 2003) ("To obtain relief on a prosecutorial misconduct claim, a habeas petitioner must show that 'the prosecutor engaged in egregious misconduct ... amounting to a denial of constitutional due process.' " (ellipsis in original) (quoting *Floyd v. Meachum,* 907 F.2d 347, 353 (2d Cir.1991))). A petitioner "must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully,* 41 F.3d 818, 824 (2d Cir.1994). In making this determination, the habeas court should consider the severity of the prosecutor's conduct; the measures, if any, that the trial court took to remedy any prejudice; and the certainty of conviction absent the prosecutor's remarks. *Id.*

Walker argues that the prosecutor's summation amounted to prosecutorial misconduct for a number of reasons. Specifically, Walker argues that the prosecutor attempted to arouse the jurors' sympathies for the victims in her summation when she said, "this defendant committed two brutal assaults and robberies against two separate people, ... both approximately 60 years old ... just on their way home from work, trying to get home." Trial Tr. 378. Walker further argues that the prosecutor provoked

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

jurors' fears of him by repeatedly telling the jury that he "beat" and "attacked" Rios and by using emotionally laden terms like "brutal" to characterize the attacks. Trial Tr. 388-89, 391. Walker also asserts that the prosecutor improperly likened the victims to the jurors when she said, "They are people, people like you." Trial Tr. 392-93. In addition, Walker argues that the prosecutor impermissibly vouched for her witnesses when she said with respect to Rios's identification of Walker as her attacker that "negative events can be burned into your mind with emotion." Trial Tr. 392. Finally, Walker argues that the prosecutor made burden shifting remarks when she told the jurors that it was their duty to decide "who committed these brutal assaults and robberies" and that there was "no evidence that anyone other than the defendant is the person who committed these robberies." Trial Tr. 382, 393. Walker argues that these remarks shifted the burden of proof from the prosecution by faulting Walker for failing to prove that someone else had committed the crimes and also incorrectly implying to the jury that it was their duty to go on a truth-seeking mission rather than try to assess whether the prosecution had proven its case beyond a reasonable doubt.

**\*5** These comments are not constitutionally troublesome. A prosecutor has broad latitude during summation, particularly when responding to defense counsel's summation. In the challenged statements, the prosecutor was, for the most part, commenting fairly on the evidence or responding to the defense summation, which called into question the reliability of the victims' identifications. For example, it was not improper for the prosecutor to comment on the age of the victims, the manner in which they were beaten, the fact that the attacks were "brutal" and that both victims were returning from work when they were attacked. The evidence at trial supported those statements. Nor did the prosecutor's remark regarding "negative events [being] burned into [one's] mind with emotion" amount to impermissible vouching. Rather, it was a fair response to the defense summation, which challenged

the ability of the victims to identify Walker as their attacker. Similarly, the prosecutor's allegedly burden-shifting remarks were not improper but rather were appropriate comments on the sufficiency of the prosecution's proof of Walker's guilt.

I agree that a prosecutor should not ask jurors, in essence, to place themselves in the shoes of a victim. Personalizing events in that way runs the risk that jurors will act out of fear or sympathy, and not simply decide whether the elements of the offense have been proven beyond a reasonable doubt. For this reason, the prosecution in Walker's case should have refrained from describing the victims as "people like you." However, viewing the remark in context, I am persuaded that the prosecutor was attempting to get the jurors to understand the witnesses' ability to make accurate identifications, not to feel (or fear) their pain as victims. In any event, this remark does not come close to the level of "egregious misconduct" a petitioner must show to sustain a due process claim.

In sum, the challenged statements in the prosecutor's summation did not deprive Walker of a fair trial. Moreover, given the abundance of evidence of guilt, even if those statements were inappropriate, they would not warrant the grant of habeas relief because they did not have a substantial and injurious effect or influence on the jury's verdicts. *See Fry v. Pliler,* ---U.S. ----, ----, 127 S.Ct. 2321, 2328, 168 L.Ed.2d 16 (2007).

2. *The Claims Raised at Oral Argument*

Walker requested permission at oral argument to pursue two collateral attacks in state court-a § 440 claim alleging ineffective assistance of trial counsel (failure to object to summation) and a *coram nobis* alleging ineffective assistance of appellate counsel (failure to argue ineffectiveness of trial counsel and failure to challenge denial of motion to suppress identifications). Walker wants to exhaust those claims in state court. Though those claims are not included in the instant petition, and Walker has not couched his application as one seeking a "stay and abeyance" of the instant peti-

tion pursuant to *Rhines v. Weber,* 544 U.S. 269, 275, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), I deem his request to seek both forms of relief. I grant the request to amend the petition to assert the claims, deny the request for a stay and abeyance, and deny the claims on the merits.

**\*6** AEDPA permits the denial (though not the granting) of unexhausted claims on their merits. *See* 28 U.S.C. § 2254(b)(2). To the extent Walker claims ineffective assistance based on trial counsel's failure to object to the summation and the appellate counsel's decision not to complain about that failure, it follows from the preceding discussion that there was no such ineffective assistance. Specifically, since I do not find the summation objectionable, I conclude that trial counsel cannot properly be criticized for failing to object to it.

I also find without merit the claim that appellate counsel was ineffective in failing to challenge on appeal the denial of the motion to suppress the victims' identification testimony. The Supreme Court has established the following standard for claims that defense counsel provided ineffective assistance:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, to make out this type of claim, the petitioner must demonstrate both (1) that his attorney's perform-

ance "fell below an objective standard of reasonableness," *id.* at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

In assessing whether counsel's performance was deficient, judicial scrutiny "must be highly deferential," and the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted); *accord Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998); *see also Yarborough v. Gentry,* 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (*per curiam* ) ("[C]ounsel has wide latitude in deciding how best to represent a client...."). The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct," *Wiggins v. Smith,* 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), instead emphasizing that " 'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms,' " *id.* (quoting *Strickland,* 466 U.S. at 688), which requires "a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.' " *Wiggins,* 539 U.S. at 523 (quoting *Strickland,* 466 U.S. at 689).

**\*7** The same test applies to claims regarding the performance of appellate counsel. *See Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994); *Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir.1992). Appellate counsel need not present every nonfrivolous argument that could be made. *See Mayo,* 13 F.3d at 533 (citing *Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)); *see also Evitts v. Lucey,* 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (emphasizing that appellate counsel "need not advance *every* argument, regardless of merit, urged by the appellant"). Moreover, reviewing courts should not employ hindsight to

second-guess an appellate attorney's strategy choices any more than it may do so in evaluating the performance of trial counsel. *See Mayo,* 13 F.3d at 533 (citing *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)). A petitioner, however, may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing matters that were patently and significantly weaker. *Cf. Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998) ("[R]elief may be warranted when a decision by counsel cannot be justified as a result of some kind of plausible trial strategy.").

Appellate counsel's decision not to appeal the outcome of the suppression hearing was precisely the sort of strategic decision that warrants deference. The gist of Walker's complaint, as expressed both in the trial court and at the oral argument of this petition, is that the victims' descriptions of the perpetrator(s) of the two robberies Walker was charged with differed from an accurate description of Walker himself. That complaint is wholly legitimate, but it raises a trial issue, not a suppression issue. That is, the fact that the victims' post-crime descriptions may vary from an accurate description of the defendant does not render a line-up suggestive, but it is an important impeaching fact at trial. Appellate counsel's argument seized on precisely that fact by first challenging the prosecutor's summation in the manner discussed above and then arguing that the misconduct was significant precisely because the witness descriptions were incorrect:

> Nor can the prosecutor's misconduct be considered harmless. Most of the inflammatory remarks appealing to the jurors' sympathies regarded the Rios robbery, the only counts of which the jurors convicted appellant. The jurors rightly acquitted him of the robbery of Giordano and the intimidating a witness count. There were also significant discrepancies in the description given by Rios of the perpetrator and appellant. Rios said the robber was his mid-thirties, but appellant was only 26, that he was light-skinned,

though appellant was dark, and that he had a short Afro, when appellant, only a few months later at his arrest, had long hair. Given the stressfulness of the attack, the fact that the robber approached Rios from behind, and that appellant was wearing a hat during the lineup obscuring his hair, the evidence was questionable that appellant was Rios's robber.

**\*8** Walker's Brief on Direct Appeal, at 22. Thus, appellate counsel in fact asserted Walker's complaint about the identifications of him by the two victims, and chose to do so in tandem with the claims of prosecutorial misconduct. That this argument did not succeed does not render appellate counsel's performance ineffective.[FN4]

> FN4. Moreover, I have reviewed the transcript of the suppression hearing and the hearing court's memorandum decision dated October 23, 2003, which found that the challenged identification procedure was not unduly suggestive. I see no basis for a successful appellate challenge to that holding, and even if one were made, Walker would then need to prevail at the independent source hearing in order to obtain suppression of Rios's testimony. Appellate counsel's decision not to pursue those claims was entirely reasonable.

In sum, because I conclude that Walker's newly-announced claims plainly have no merit, I decline to stay the instant petition and instead deny them on the merits. *See Rhines,* 544 U.S. at 277. Accordingly, I need not address (or ask Walker to address) either the timeliness of those claims (*i.e.,* whether they relate back to the filing of the petition pursuant to *Mayle v. Felix,* 545 U.S. 644, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005)), or whether the contemplated § 440 claim should be deemed procedurally defaulted because it will assert a claim that could have been raised on direct appeal but was not.

CONCLUSION

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4737664 (E.D.N.Y.)
**(Cite as: 2008 WL 4737664 (E.D.N.Y.))**

For the foregoing reasons, the petition is denied. As Walker has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So ordered.

E.D.N.Y.,2008.
Walker v. Cunningham
Not Reported in F.Supp.2d, 2008 WL 4737664 (E.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Westlaw Delivery Summary Report for MCKEON, COURTENA**

Date/Time of Request:          Monday, September 22, 2014 15:42 Central
Client Identifier:             O'HALLORAN
Database:                      DCT
Citation Text:                 Not Reported in F.Supp.2d
Lines:                         1287
Documents:                     1
Images:                        0

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Not Reported in F.Supp.2d, 2011 WL 1315592 (N.D.N.Y.)
**(Cite as: 2011 WL 1315592 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Gregory A. WHITE, Petitioner,
v.
James CONWAY, Superintendent, Attica Correctional Facility, Respondent.

No. 9:07–CV–1175 (FJS/GHL).
March 31, 2011.

The Office of Donald M. Thompson, PC, Donald M. Thompson, Esq., of Counsel, Rochester, NY, for Petitioner.

Office of New York State Attorney General, Thomas B. Litsky, AAG, of Counsel, New York, NY, for Respondent.

**MEMORANDUM–DECISION AND ORDER**
FREDERICK J. SCULLIN, Senior District Judge.
**I. INTRODUCTION**
**\*1** On September 21, 2007, Petitioner commenced this proceeding pursuant to 28 U.S.C. § 2254, claiming that Petitioner's conviction was the product of various constitutional violations. In his petition, Petitioner set forth numerous grounds for relief, including challenges to certain evidentiary rulings, the sufficiency of the evidence against him, and the propriety of the sentence that the trial court imposed. *See* Dkt. No. 1. Respondent challenged the petition as untimely, as well as on the merits. *See* Dkt. No. 12.

In a Report–Recommendation & Order dated January 18, 2011, Magistrate Judge Lowe recommended that the Court dismiss the petition as untimely because Petitioner filed it one-day late and because Petitioner offered no basis to excuse his late filing. *See* Dkt. No. 17.

Currently before the Court are Petitioner's ob-

jections to the January 18, 2011 Report–Recommendation & Order. *See* Dkt. No. 18–19.

**II. BACKGROUND**[FN1]

> FN1. Unless otherwise noted, the Court has adopted the "Background" facts from the January 18, 2011 Report–Recommendation & Order. *See* Dkt. No. 17.

In 1995, Petitioner lived in Chittenango, New York, with his wife AW and his stepchildren JD, SD, and JS.[FN2] In 1999, Petitioner was charged in a six-count indictment with having committed various sexual acts in "the latter part of 1995" with his then-ten and thirteen-year-old stepdaughters. The indictment alleged that Petitioner forced both victims to engage in oral sexual conduct and had sexual intercourse with the thirteen-year-old victim, all while playing his version of a game of "Truth or Dare" in his home.

> FN2. In accordance with New York Civil Rights Law § 50–b, the Court has abbreviated the surnames of the alleged victims and their family members.

Following an investigation, Petitioner was arrested on August 13, 1998. After being given his *Miranda* warnings, Petitioner admitted to playing "Truth or Dare" with the children while they were naked. Moreover, he admitted that, during the game, JD performed a sexual act for him.

Following a jury trial in Madison County Court, the jury found Petitioner guilty of the charges. The trial court subsequently sentenced him on the most serious charges to two consecutive prison terms of 12–1/2 to 25 years. On March 16, 2006, the Appellate Division, Third Department, affirmed Petitioner's convictions, *see People v. White, 27 A.D.3d 884 (3d Dep't 2006)*; and, on June 22, 2006, the New York State Court of Appeals denied

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

leave to appeal, *see People v. White,* 7 N.Y.3d 764 (2006).

On September 21, 2007, Petitioner's counsel filed this petition on Petitioner's behalf. In his petition, Petitioner alleged that the trial court erred (1) by denying his motion for suppression of statements; (2) by denying his motion to dismiss the indictment; (3) by denying his speedy trial motion; (4) by unduly restricting cross-examination of prosecution witnesses; (5) by precluding him from presenting witness testimony; (6) by refusing to instruct the jury pursuant to New York Criminal Procedure Law § 710.70; and (7) by refusing to instruct the jury as to "prompt outcry." Petitioner also alleged that (1) the jury's verdict was not supported by legally sufficient evidence and was against the weight of the evidence; (2) the cumulative effect of all errors denied him a fair trial; and (3) the sentence imposed was harsh and excessive.

**\*2** In his January 18, 2011 Report–Recommendation & Order, Magistrate Judge Lowe found the petition untimely and, therefore, did not address the merits of Petitioner's arguments. *See* Dkt. No. 17 at 1–2. Specifically, the court found that "Petitioner's conviction became final ninety days after the June 22, 2006 denial of his application for leave to appeal, or on September 20, 2006." *See id.* at 4. As such, the court found that the petition, which was filed on September 21, 2007, was one-day late and, therefore, untimely. *See id.*

Moreover, Magistrate Judge Lowe found unpersuasive Petitioner's arguments that the mailbox rule should apply even though he was represented by counsel. *See id.* at 5. Magistrate Judge Lowe also determined that Petitioner presented no exceptional circumstances to warrant equitable tolling. *See id.* at 6–8. Magistrate Judge Lowe noted that the fact that the petition was filed only one-day late and that the late filing was because of an "unusual delay" in the mail did not constitute the "exceptional circumstances" necessary to warrant equitable tolling. *See id.* Finally, Magistrate Judge

Lowe held that Petitioner failed to come forward with any new evidence to support a claim of actual innocence and recommended that the Court decline to issue a certificate of appealability. *See id.* at 8–9.

### III. DISCUSSION
#### A. Timeliness of the petition

*1. Standard of review*

When a party makes specific objections to a magistrate judge's recommendations, the district court engages in *de novo* review of the issues raised in the objections. *See Farid v. Bouey,* 554 F.Supp.2d 301, 307 (N.D.N.Y.2008) (citation omitted). When a party fails to make specific objections, however, the court reviews the magistrate judge's recommendations for clear error. *See id.* at 306 (citation omitted); *see also Gamble v. Barnhart,* No. 02CV1126, 2004 WL 2725126, \*1 (S.D.N.Y. Nov. 29, 2004) (citations omitted).

*2. Mailbox rule*

Petitioner asserts that Magistrate Judge Lowe improperly concluded that, because he is represented by counsel, the mailbox rule is inapplicable. *See* Dkt. No. 18 at 4.[FN3] Petitioner argues that, had he mailed the petition to the Court instead of to his counsel, the Court would have considered the petition filed as of September 14, 2007—the date he gave the petition to prison officials to mail. *See id.*

> FN3. In the first set of objections that Petitioner filed, Petitioner argued that Magistrate Judge Lowe improperly concluded that, because he was represented by counsel, the " 'prison mailbox rule' " did not apply. *See* Dkt. No. 18 at 3. Specifically, Petitioner argued that "[t]he Magistrate's recommendation in this case presupposes the existence of an attorney-client relationship that sufficiently predated the filing deadline to allow for the timely drafting and filing of the petition, concomitantly inferring that the failure to timely file was avoidable, and therefore negligent[.]" *See*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*id.* Thereafter, Petitioner asserts that the record is bereft of facts that establish the length of the attorney-client relationship but then fails to set forth any information that would lead the Court to believe that this relationship was of such a short duration so as to justify the application of the mailbox rule to this action despite the fact that Petitioner is represented by counsel.

Under the prison-mailbox rule, the court deems a *pro se* prisoner's complaint filed on the date that the prisoner delivered the complaint to prison officials for transmittal to the court. *See Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993) (citing *Houston v. Lack,* 487 U.S. 266, 270, 108 S.Ct. 2379, 2382, 101 L.Ed.2d 245 (1988)). "This 'prison mailbox' rule is justified by the litigant's dependence on the prison mail system and **lack of counsel** to assure timely filing with the court." *Noble v. Kelly,* 246 F.3d 93, 97 (2d Cir.2001) (citation omitted) (emphasis added).

**\*3** As Magistrate Judge Lowe correctly held, the prison mailbox rule is inapplicable to the present matter because Petitioner was represented by counsel. *See* Dkt. No. 17 at 5 (citations omitted). Petitioner has presented no justification for extending this rule to petitioners who are represented by counsel. *See Brockway v. Burge,* 710 F.Supp.2d 314, 322 (W.D.N.Y.2010) (holding that, because the petitioner "was proceeding with the assistance of counsel with regard to the preparation and filing of his habeas Petition, ... [the] prisoner mailbox rule is inapplicable (citations omitted)).

Accordingly, the Court affirms Magistrate Judge Lowe's conclusion that the prison mailbox rule does not apply to the present matter.

### 3. Statute of limitations

Section 2254 of Title 28 of the United States Code, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs federal habeas corpus review of a state-court conviction. Since Petitioner filed his petition after the AEDPA was enacted, the petition is subject to a one-year statute of limitations that runs from the latest of the following four events:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

For Petitioner, like most habeas petitioners, section 2244(d)(1) (A) sets the applicable starting point for the one-year statute of limitations—that is, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" 28 U.S.C. § 2244(d)(1)(A).

Rule 6(a) of the Federal Rules of Civil Procedure governs the method for computing time periods, including the application of controlling statutes of limitations, in actions pending in federal court. *See United States v. Hurst,* 322 F.3d 1256, 1260 (10th Cir.2003) (quotation omitted); *see also Day v. Morgenthau,* 909 F.2d 75, 78 (2d Cir.1990) (quotation omitted).[FN4] Rule 6(a)(1) directs that when applying a prescribed time, "exclude the date of the event that triggers the period[,]" but include the last day unless it falls on a Saturday, Sunday, a legal holiday, or a day on which weather or other conditions make the clerk's office inaccessible. *See*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Fed.R.Civ.P. 6(a)(1) and (3).[FN5] "Under [Rule 6(a)(1) ], when a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the relevant act. The anniversary date is the 'last day to file even when the intervening period includes the extra leap year day.' " *Hurst,* 322 F.3d at 1260 (quoting *[United States v.] Marcello,* 212 F.3d [1005,] 1010 [ (7th Cir.2000) ] ); *see also Day,* 909 F.2d at 79 (quotation and other citation omitted).

> FN4. By their own terms, the Federal Rules of Civil Procedure apply to habeas cases. *See* Fed.R.Civ.P. 81(a)(4) (stating that "[t]hese rules apply to proceedings for habeas corpus ... to the extent that the practice in those proceedings: (A) is not specified in a federal statute, the Rules Governing Section 2254 Cases ... and (B) has previously conformed to the practice in civil actions"). In addition, Rule 12 of the Rules Governing Section 2254 cases in the United States District Courts provides that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules." Rule 12 of the Rules Governing Section 2254 Cases in the United States District Courts.

> FN5. To illustrate the point, assume that a claim bearing a two-week statute of limitations accrued on a Monday. By operation of Rule 6(a)(1), the Monday of accrual would be excluded as the day that triggers the event and then every day after that Monday would be counted, including the last day of the fourteen-day limitations period, in this case the second Monday.

**\*4** In the present matter, the New York Court of Appeals denied Petitioner's application for leave to appeal on June 22, 2006. *See People v. White,* 7 N.Y.3d 764 (2006); *see also* Dkt. No. 1 at 2. Since Petitioner did not file a petition for a *writ of certi-*

*orari* with the United States Supreme Court, his conviction became final on Wednesday, September 20, 2006, *i.e.,* ninety (90) days after the Court of Appeals denied him leave to appeal, which is the date his time to file a petition seeking a *writ of certiorari* from the Supreme Court expired. *See Williams v. Artuz,* 237 F.3d 147, 151 (2d Cir.2001) (citations omitted).

Petitioner does not contend that Magistrate Judge Lowe improperly determined the date that his conviction became final; rather, he contends that Magistrate Judge Lowe should have equitably tolled the statute of limitations because he filed his petition only one-day late, and that this late filing was a result of confusion stemming from language in several cases providing that the statute did not begin to run until the day after the conviction became final.

In *Day v. Morgenthau,* 909 F.2d 75 (2d Cir.1990), albeit in the civil rights context, the Second Circuit held that, even though the day that the action accrues is not counted pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, " '[w]hen the applicable limitations period is measured in years, ... the anniversary date [**of the date of accrual is**] the last day for instituting action.' " *Id.* at 79 (holding that Rule 6(a) should have the same result as New York General Construction Law § 20, which also provides that the first day to be counted is the day after the date of accrual (quotation and other citation omitted)) (emphasis added). As such, the Second Circuit held that the action, filed on December 13, 1988, alleging an unlawful arrest and search that occurred on December 12, 1985, was one-day late and dismissed the complaint. *See id.; see also Ross v. Artuz,* 150 F.3d 97, 103 (2d Cir.1998) (applying *Day* and Rule 6(a) of the Federal Rules of Civil Procedure in the context of a petition brought pursuant to 28 U.S.C. § 2254 (citations omitted)).

Here, Petitioner's date of accrual was September 20, 2006; and, therefore, pursuant to Rule 6 of the Federal Rules of Civil Procedure, Petitioner had

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1315592 (N.D.N.Y.)
**(Cite as: 2011 WL 1315592 (N.D.N.Y.))**

until September 20, 2007 (the anniversary of the date of accrual) to file his petition. Accordingly, the Court finds that Magistrate Judge Lowe correctly determined that Petitioner filed his petition one-day late.

### 4. Equitable tolling

Petitioner asserts that Magistrate Judge Lowe should have equitably tolled the statute of limitations because he filed his petition only one-day late and because of "the unsettled status of the law relative to the calculation of the applicable filing period." *See* Dkt. No. 19 at 3. Moreover, Petitioner contends that Magistrate Judge Lowe should have granted him a certificate of appealability on the issue of whether the statute of limitations should be equitably tolled where a petition is filed one-day late because of miscalculation of the relevant filing period—"an issue that is currently pending before the Second Circuit in *Dillon v. Conway* ... following the Second Circuit's order dated February 10, 2010 granting petitioner's motion for a certificate of appealability on this ground." *See id.*

**\*5** Since courts have construed the AEDPA's one-year period as a statute of limitations rather than a jurisdictional bar, courts may equitably toll the period. *See Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000) (citations omitted). However, "[e]quitable tolling applies only in the 'rare and exceptional circumstance[ ].' " *Id.* (quotation omitted).

"In order to equitably toll the one-year period of limitations, [the petitioner] must show that extraordinary circumstances prevented him from filing his petition on time." *Id.* (citation omitted). "In addition, the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll." *Id.* (citation omitted). Moreover, the petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time not-

withstanding the extraordinary circumstances." *Valverde v.. Stinson,* 224 F.3d 129, 134 (2d Cir.2000) (citations omitted).

In general, the difficulties attendant to prison life, such as "transfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents do not by themselves qualify as extraordinary circumstances." *Amante v. Walker,* 268 F.Supp.2d 154, 158 (E.D .N.Y.2003) (citation omitted). Moreover, simple ignorance of the applicable rules does not excuse a petitioner's failure to file a timely petition. *See Plowden v. Romine,* 78 F.Supp.2d 115, 120 (E.D.N.Y.1999).

In the present matter, Petitioner contends that his counsel mailed him the petition for his signature, by overnight mail, on September 12, 2007. *See* Dkt. No. 16 at 27. Petitioner signed the petition "and [it was] taken from him for mailing by prison officials on the morning of September 14, 200[7]." FN6 *See id.* The petition, however, did not arrive in counsel's office until September 21, 2007, and counsel filed it that same day. *See id.* Petitioner claims that such an "unanticipated, uncharacteristic, virtually unprecedented, and substantially longer than the normal and customary one-day mailing period for similar papers mailed from Attica Correctional Facility" warrants the application of equitable tolling. *See id.*

> FN6. Petitioner repeatedly refers to September 2008, rather than September 2007, in his memorandum of law. Magistrate Judge Lowe assumed that this was a typographical error.

Magistrate Judge Lowe concluded "that an alleged one-week lapse in time between the date that Petitioner signed the petition and the date that counsel received the petition is [not] an extraordinary circumstance warranting tolling." *See* Dkt. No. 17 at 7. Further, Magistrate Judge Lowe noted that, even if this were an unusual delay beyond Petitioner's control, Petitioner's counsel could have avoided

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

this problem by mailing the petition earlier or by personally bringing it to Petitioner for his signature. *See id.* (citing *Sandvik v. United States,* 177 F.3d 1269, 1272 (11th Cir.1999)) (holding that, "[w]hile the inefficiencies of the United States Postal Service may be a circumstances beyond [the petitioner's] control, the problem was one that [petitioner's] counsel could have avoided by mailing the [28 U.S.C. § 2255] motion earlier or by using a private delivery service or even a private courier")).

**\*6** Similarly, the fact that Petitioner filed only one day late does not warrant the application of equitable tolling. *See Richard v. Rock,* No. 9:08–CV–145, 2009 WL 383762, \*7 (N.D.N.Y. Feb. 10, 2009) (holding that "the fact that the filing was only one day late is not itself a basis for equitable tolling" (citations omitted)); *United States v. Locke,* 471 U.S. 84, 101 (1985) (holding that, "[i]f 1–day late filings are acceptable, 10–day late filings might be equally acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the filing deadline"). Moreover, the Second Circuit has held that "attorney error *normally* will not constitute the extraordinary circumstances required to toll the AEDPA limitations period [.]" *Baldayaque v. United States,* 338 F.3d 145, 152 (2d Cir.2003). FN7

> **FN7.** In *Baldayaque,* the Second Circuit acknowledged that "at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary." *Baldayaque,* 338 F.3d at 152. The court also noted, however, that "simple mistakes about the rules applied to the deadlines for filing of habeas petitions ... are ordinary," *id.,* and do not meet the "extraordinary" level required to apply equitable tolling.

Based on the foregoing, the Court finds that Petitioner failed to present extraordinary circumstances justifying the untimely filing of his petition and adopts Magistrate Judge Lowe's recommendation in this regard.

**B. Merits of the petition**FN8

> **FN8.** Although the Court finds that the petition is untimely, because of the confusion over the proper calculation of the one-year statute of limitations and because the Second Circuit has granted a certificate of appealability in *Dillon* to determine whether the petitioner in that matter was entitled to equitable tolling in a similar situation, the Court will also address the merits of the petition. *See Stevens v. United States,* Nos. 09 Civ. 4098, 03 Cr. 669, 2010 WL 3447900, \*2 (S.D.N.Y. Sept. 1, 2010) (considering untimely petition on the merits).

*1. Standard of review*

The enactment of the AEDPA brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254. In discussing this deferential standard, the Second Circuit noted in *Rodriguez v. Miller,* 439 F.3d 68 (2d Cir.2006), *cert. granted, judgment vacated and case remanded on other grounds by* 549 U.S. 1163 (2007), that

> a federal court may award habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication resulted in an outcome that: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Id.* at 73 (quoting 28 U.S.C. § 2254(d)) (footnote omitted); *see also DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005) (quotation omitted); *Miranda v. Bennett,* 322 F.3d 171, 178 (2d Cir.2003) (quotation omitted).

In providing guidance concerning the application of this test, the Second Circuit has observed

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

that

a state court's decision is "contrary to" clearly established federal law if it contradicts Supreme Court precedent on the application of a legal rule, or addresses a set of facts "materially indistinguishable" from a Supreme Court decision but nevertheless comes to a different conclusion than the Court did. [ *Williams v. Taylor,* 529 U.S. 362] at 405–06, 120 S.Ct. 1495 [ (2000) ]; *Loliscio v. Goord,* 263 F.3d 178, 184 (2d Cir.2001).... [A] state court's decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts" of the case before it. *Williams,* 529 U.S. at 413, 120 S.Ct. 1495.

**\*7** *Thibodeau v. Portuondo,* 486 F.3d 61, 65 (2d Cir.2007); *see also Williams v. Artuz,* 237 F.3d 147, 152 (2d Cir.2001) (citing *Francis S. v. Stone,* 221 F.3d 100, 108–09 (2d Cir.2000)).

Significantly, a federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." *Williams v. Taylor,* 529 U.S. 362, 409 (2000); *see also Sellan v. Kuhlman,* 261 F.3d 303, 315 (2d Cir.2001) (citation omitted). Courts have interpreted "objectively unreasonable" in this context to mean that " 'some increment of incorrectness beyond error' " is required for the habeas court to grant the application. *Earley v. Murray,* 451 F.3d 71, 74 (2d Cir.2006) (quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000)).

A state court determines a petitioner's federal claim "on the merits" and triggers the highly-deferential AEDPA standard of review when the state court "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan,* 261 F.3d at 312 (quotation omitted). In this regard, it is not necessary for the state court to refer explicitly to the particular federal claim or to relevant federal case law. *See id.*

If, however, a state court does not adjudicate a petitioner's federal claim "on the merits," the state court's decision is not entitled to AEDPA deference; and, instead, the federal habeas court must apply the pre-AEDPA standard of de novo review to the state court's disposition of the federal claim. *See Cotto v. Herbert,* 331 F.3d 217, 230 (2d Cir.2003) (quoting *Aparicio v. Artuz,* 269 F.3d 78, 93 (2d Cir.2001)).

### 2. The admissibility of Petitioner's statements to police on August 13, 1998

Petitioner claims that the state court erred in failing to suppress his statement to the police at the police station on August 13, 1998, in which he confessed to one of the crimes. Petitioner initially challenged the admissibility of his statement to the police in a pre-trial *Huntley* hearing.[FN9] In that hearing, the court determined that Petitioner's statement was admissible because he was given *Miranda* warnings before making his written statement; he knowingly, intelligently and voluntarily waived those rights; and no pressure or coercion was used to obtain the statement. Additionally, Petitioner claims that, on August 1, 1998, he invoked his right to counsel when the police questioned him; and, therefore, the police violated his *Miranda* rights when they questioned him outside the presence of his attorney on August 13, 1998.

FN9. *People v. Huntley,* 15 N.Y.2d 72 (1965).

Once "an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards v. Arizona,* 451 U.S. 477, 484 (1981) (footnote omitted). Regarding the right to counsel and pending state charges, the Second Circuit explained that

**\*8** [t]he Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Sixth Amendment right to counsel does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings—whether by way of indictment or information. *McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). Furthermore, the Sixth Amendment right "is offense specific" which means that it cannot be invoked once for all future prosecutions. *Id.*

*United States v. Mills,* 412 F.3d 325, 328 (2d Cir.2005).

On August 1, 1998, Officer Pfohl of the Village of Chittenango Police Department removed JD from Petitioner's home after seeing her strike Petitioner. At that point, Petitioner declined to talk to the police and stated that he wanted to consult with an attorney. *See* R.[FN10] at 389. At that time, Petitioner was not under arrest or in custody. On August 13, 1998, after Petitioner's arrest, he was read his *Miranda* rights and agreed to speak with Investigator Rainbow. *See id.* at 230–32. During that interview, Petitioner confessed to one of the alleged crimes.

> FN10. "R" refers to the record of the state-court proceedings filed in this matter.

The Appellate Division found, and the record supports, that Petitioner was not in "custody" when he asserted his right to counsel on August 1, 1998. *See White,* 27 A.D.3d at 886. In fact, he was not arrested until almost two-weeks later, at which time he received timely *Miranda* warnings and agreed to speak with police without an attorney present. *See id.* As such, Petitioner's attempt to invoke his right to counsel on August 1, 1998, had no effect on the statements he made to police on August 13, 1998. *See United States v. Bautista,* 145 F.3d 1140, 1149 (10th Cir.1998) (holding that, "[i]f [the defendant] was not in custody [ ] during the questioning, then

his attempts to invoke his right to remain silent and his *Miranda* right to counsel were ineffective"); *see also United States v. Zaleski,* 559 F.Supp.2d 178, 190 (D.Conn.2008) (holding that, "[b]ecause [the defendant] was not in custody when he told the officers that he wished to speak to a lawyer, he did not invoke his *Miranda* rights, and the officers did not violate *Edwards* when they interrogated him at the police station later in the day"). Furthermore, Plaintiff does not contend that the police did not give him *Miranda* warning prior to making his written statement on August 13, 1998.

Based on the foregoing, the Court finds that the state court's decision was not contrary to nor did it involve an unreasonable application of clearly established federal law and, therefore, denies the petition on this ground.[FN11]

> FN11. Even if the admission of this statement was in error because the police had violated Petitioner's *Miranda* rights, the error was harmless because the remaining evidence overwhelmingly supported the guilty verdict. *See Rollins v. Leonardo,* 938 F.2d 380, 382 (2d Cir.1991) (applying "harmless error analysis to *Miranda*-violation confessions" (citation omitted).

### 3. Petitioner's motion to dismiss the indictment for failing to provide sufficient specificity of the date and time of the alleged offense

Petitioner asserts that the state court erred in denying his motion to dismiss the indictment for failing to provide sufficient specificity of the date and time of the alleged offenses and because the prosecution failed to prove that the offenses occurred during the time specified in the bill of particulars. *See* Dkt. No. 1 at 156. Specifically, the Appellate Division found that the indictment, as supplemented by the bill of particulars, provided sufficient specificity to permit Petitioner to prepare a defense. *See White,* 27 A.D.3d at 885–86 (citations omitted).

**\*9** "It is well settled that 'an indictment is suf-

ficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.' " *United States v. Alfonso,* 143 F.3d 772, 776 (2d Cir.1998) (quoting *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974)). The " 'indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.' " *Id.* (quotation omitted).

"Challenges to state indictments are only cognizable on habeas review if the indictment falls below basic due process requirements. Due process requires that an indictment inform the defendant 'in general terms, of the time, place, and essential elements of the crime.' " *Parrilla v. Goord,* No. 02 Civ. 5443, 2005 WL 1422132, *9 (S.D.N.Y. June 20, 2005) (quotation and other citation omitted).

In the present matter, the indictment specified that, "on or about the latter part of 1995," Petitioner committed the acts alleged in the indictment. In a supplemental bill of particulars, the time-frame was narrowed to "on or about and including October and November 1995," while the victims' mother was working at P & C. The indictment, as narrowed by the bill of particulars, provides sufficient information to satisfy due process. *See Rodriguez v. Hynes,* No. CV–94–2010, 1995 WL 116290, *4 (E.D.N.Y. Feb. 27, 1995) (holding that, "[c]onsidering the fact that young victims often do not remember the exact date of when an alleged offense occurred, the time spans in the indictment[, June 1, 1991 through August 25, 1991,] are not unreasonable"); *see also Valentine v. Konteh,* 395 F.3d 626, 632 (6th Cir.2005) (holding that, "[t]his Court and numerous others have found that fairly large time windows[, in this case eleven months,] in the context of child abuse prosecutions are not in conflict with constitutional notice requirements" (collecting cases addressing time windows ranging from four months to three years)).

Based on the foregoing, the Court finds that the state court's decision was not contrary to nor did it involve an unreasonable application of clearly established federal law and, therefore, denies the petition on this ground.

### 4. Petitioner's speedy trial claim

Petitioner asserts that the state court erred in denying his speedy trial motion which he brought pursuant to New York State Criminal Procedure Law §§ 210.20(1)(g) and 30.30. *See* Dkt. No. 1 at 156.

Pursuant to New York State Criminal Procedure Law § 30.30, the court must grant a motion to dismiss the indictment when the prosecuting authority is not ready for trial within "six months of the commencement of a criminal action wherein a defendant" is charged with committing a felony. N.Y.Crim. Proc. Law § 30.30. A claim based upon a violation of section 30.30, however, does not raise a federal constitutional issue warranting federal habeas relief. *See Cadilla v. Johnson,* 119 F.Supp.2d 366, 374 (S.D.N.Y.2000) (holding that " C.P.L. § 30.30 requires only that the prosecution be ready for trial within a prescribed time frame, and not that the defendant be afforded a speedy trial" (citation omitted)).

**\*10** Based on the foregoing, the Court finds that the state court's decision was not contrary to nor did it involve an unreasonable application of clearly established federal law and, therefore, denies the petition on this ground.

### 5. Petitioner's claim that the state court's evidentiary rulings deprived him of a fair trial and the right to present a defense

Petitioner asserts that the trial court's evidentiary rulings deprived him of his right to a fair trial and of his right to present evidence. *See* Dkt. No. 1 at 156; *see also* Dkt. No. 16. In particular, Petitioner contends that the trial court unduly restricted his cross-examination of JD and JS, improperly denied his request to call certain witnesses, and inappropriately limited the testimony of other witnesses. *See*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*generally* Dkt. No. 16.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991) (citations and footnote omitted). Thus, a habeas petitioner must demonstrate that the allegedly erroneous state-court evidentiary rulings violated an identifiable constitutional right. *See, e.g., Rosario v. Kuhlman,* 839 F.2d 918, 924 (2d Cir.1988) (citations omitted); *Taylor v. Curry,* 708 F.2d 886, 891 (2d Cir.1983) (holding that "[e]rroneous [state-court] evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus[;] [r]ather, the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair* trial" (citations omitted)). This is a "heavy burden, for 'generally, rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a constitutional violation.' " *Bonet v. McGinnis,* No. 98 CIV. 6529, 2001 WL 849454, *2 (S.D .N.Y. July 27, 2001) (quotation omitted).

The first step in this analysis is to determine whether the state-court decision violated a state evidentiary rule because the proper application of a presumptively constitutional state evidentiary rule could not be unconstitutional. *See Williams v. Walker,* No. 00–CV–5912, 2001 WL 1352105, *3 (E.D.N.Y. Oct. 31, 2001) (holding that the habeas court must first determine if ruling was erroneous under state law and, if so, whether the erroneous ruling "amounted to the denial of the constitutional right to a fair trial" (citing *Dey v. Scully,* 952 F.Supp. 957, 969 (E.D.N .Y.1997)). Second, the petitioner must allege that the state evidentiary error violated an identifiable constitutional right. This necessarily eliminates consideration of purely state evidentiary errors not cognizable in the federal system. *See, e.g .,Landy v. Costello,* No. 97–2433, 141 F.3d 1151 (table), 1998 WL 105768, *1 (2d Cir. Mar. 9, 1998) (holding that, "[t]o the extent that

[petitioner's] claim is based on a *Rosario* violation, it must fail, because a habeas petition can only be granted to remedy some violation of federal law; the obligation to turn over *Rosario* material arises under *state* law. Thus, the only question is whether the prosecution violated *Brady*" ).

**\*11** Third, an erroneous state evidentiary ruling that is asserted to be a constitutional violation will merit habeas relief only " 'where [the] petitioner can show that the error deprived [him] of a *fundamentally fair* trial.' " *Rosario,* 839 F.2d at 925 (quotation omitted); *Jones v. Stinson,* 229 F.3d 112, 119–20 (2d Cir.2000) (citations omitted). To determine whether the petitioner was deprived of a fundamentally fair trial because of improperly excluded or included evidence, the court must determine whether the evidence was "material." *United States v. Agurs,* 427 U.S. 97, 112–13 (1976).

The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt.... Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record.... If there is no reasonable doubt about guilt whether or not the additional [evidence] is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

*Id.* (internal footnotes omitted). This "fundamental fairness" standard applies to both the erroneous exclusion and admission of evidence. *See, e.g., Dowling v. United States,* 493 U.S. 342, 352 (1990) (applying the fundamental fairness standard to the alleged erroneous introduction of evidence); *Agurs,* 427 U.S. at 112–13 (applying the fundamental fairness standard to the alleged erroneous omission of evidence).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1315592 (N.D.N.Y.)
**(Cite as: 2011 WL 1315592 (N.D.N.Y.))**

The final question is how to apply the AEDPA in the context of a fundamental fairness analysis; an issue that the Second Circuit addressed in *Jones v. Stinson,* 229 F.3d 112 (2d Cir.2000). In *Jones,* the state appellate court decided that the trial court's evidentiary rulings had not denied the defendant a fair trial. *See id.* at 116. The Second Circuit held that, although it might have found, under the *Agurs* standard, that one of the trial court's rulings "create[d] a reasonable doubt which did not otherwise exist," *See id.* at 114, the Second Circuit could not conclude that the excluded testimony "would so certainly have created new ground for reasonable doubt that the appellate division's decision [affirming the trial court's ruling] was objectively unreasonable." *Id.* at 120. As such, the Second Circuit denied habeas relief based on the AEDPA's deferential standard of review. *See id.* at 120–21.

### a. The trial court did not unduly restrict Petitioner's cross-examination of witnesses

Petitioner argues that the trial court erroneously denied him the right to cross-examine JD and JS about how JS had repeatedly made false complaints about people with whom he was living and how JD had destroyed Petitioner's home, which would have established JD's hostility towards him. *See* Dkt. No. 16 at 19. To establish this hostility, Petitioner sought to introduce photographs of his house to show the damage that JD had caused.

**\*12** Although a defendant's Sixth Amendment right to confront witnesses is guaranteed in both federal and state criminal proceedings, the right to cross-examination is not absolute. *See Delaware v. Van Arsdall,* 475 U.S. 673, 678–79 (1986) (citations omitted). "[T]he right to confront and cross examine witnesses is tempered by a trial judge's 'wide latitude' to impose 'reasonable limits' in order to avoid matters that are confusing or of marginal relevance." *United States v. Stewart,* 433 F.3d 273, 311 (2d Cir.2006) (quotation omitted). Moreover, the trial court may limit cross-examination " 'based on concerns about, among other things, harassment, prejudice, confusion of the is-

sues, the witness' safety, or interrogation that is repetitive or only marginally relevant.' " *Young v. McGinnis,* 411 F.Supp.2d 278, 302 (E.D.N.Y.2006) (quotation and other citations omitted).

"Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 20 (1985) (citation omitted). A court does not improperly curtail cross-examination if "the jury is in possession of facts sufficient to make a 'discriminating appraisal' of the particular witness's credibility." *United States v. Roldan–Zapata,* 916 F.2d 795, 806 (2d Cir.1990) (citation omitted); *see also Howard v.. Walker,* 406 F.3d 114, 129 (2d Cir.2005) (quotation omitted).

At trial and on appeal, Petitioner argued that JD began fabricating the story of Petitioner's sexual abuse as a means to avoid further action on JD's arrests during the summer of 1998. *See* Dkt. No. 1 at 63. Further, Petitioner alleged that JD's hostility towards him led JD to fabricate the alleged sexual abuse. *See id.*

The trial court excluded the photographs of Petitioner's house as collateral but allowed Petitioner to use them to refresh JD's recollection, if necessary. *See* Dkt. No. 1 at 64–65. The trial court properly excluded these pictures. JD testified extensively that she and her friends spray-painted interior walls of Petitioner's house, poked a hole in the wall, threw an axe through a wall or door, and threw garbage in the basement. *See* R. at 1273–85, 1338. Moreover, JD testified that, during the course of her stay at Petitioner's home, she permitted her friends to take what they wanted from his home and that they, in fact, removed numerous items, including Petitioner's washer and dryer, futon, and wedding ring. *See id.* at 1275–77. Although JD testified that she did not cause all of the damage to Petitioner's home, she admitted that it was her fault because she was living there and allowed it to happen. *See id.* at 1337. Finally, JD admitted that she did not like Pe-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

titioner and that she had cursed him and called him offensive names. *See id.* at 1338–39.

Considering that JD admitted to disliking Petitioner and that she caused extensive damage to his home, the photographs were unnecessary to establish her bias and hostility; and, therefore, the trial court properly excluded them. Even if the trial court improperly excluded the pictures, the error was harmless in light of the overwhelming evidence establishing Petitioner's guilt, including the signed admission.

**\*13** Moreover, with respect to JS, Petitioner's counsel attempted to cross-examine him about a variety of problems he had with a number of people with whom he had lived. *See* Dkt. No. 1 at 67. The trial court sustained the prosecutor's objections on the ground that the questions pertained to matters that were "all collateral." *See* Exhibit D at 1564–68. Petitioner was, however, permitted to examine JS about whether he had any animus towards him. *See id.* at 1570–73, 1575.

Again, Petitioner failed to establish that the trial court improperly excluded the testimony. It is unclear how JS's past behavioral issues towards other people were in any way relevant to Petitioner's case. Any bias JS may have had was thoroughly established through the questions regarding his animus towards Petitioner. Finally, even if it was error to preclude these questions, the error was harmless in light of the overwhelming evidence establishing Petitioner's guilt.

**b. The trial court did not prevent Petitioner from presenting a defense when it precluded or limited testimony concerning irrelevant and collateral matters**

Petitioner asserts that, on a number of occasions, he attempted to call witnesses who would have provided facts tending to show the complainants' motivation to lie, inconsistent statements, multiple recantations of the allegations, and an inability of the prosecution's witnesses to state a month or year in which the incidents allegedly occurred. *See*

Dkt. No. 1 at 70. Specifically, Petitioner made offers of proof as to Cheryl Darrow, an employee of the Madison County Department of Social Services ("DSS"), Officer Costello, Officer Ann Baum, the complainants' older sister MS, and Police Chief Paul. *See id.* Petitioner claims that the trial court improperly precluded him from calling Ms. Darrow, Officer Costello and Chief Paul as witnesses, and improperly limited the other witnesses' testimony. *See id.*

"The right to a fair trial, guaranteed to state criminal defendants by the Due Process Clause of the Fourteenth Amendment, imposes on States certain duties consistent with their sovereign obligation to ensure 'that " 'justice shall be done' " in all criminal prosecutions." *Cone v. Bell,* 129 S.Ct. 1769, 1772 (2009) (quotation omitted). Although "[t]he Constitution guarantees a fair trial through the Due Process Clauses, ... it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment," including the Confrontation Clause. *United States v. Gonzalez–Lopez,* 548 U.S. 140, 146 (2006) (quoting *Strickland [v. Washington,* 466 U.S. 668,] 684–685, 104 S.Ct. 2052, [80 L.Ed.2d 674 (1984)] ] ). A criminal defendant's right to confront and cross-examine adverse witnesses "helps assure the 'accuracy of the truth-determining process.' " *Chambers v. Mississippi,* 410 U.S. 284, 295 (1973) (quotation and other citation omitted). "The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." *Id.* at 294.

**i. Cheryl Darrow**

**\*14** Petitioner's counsel stated that he wanted to call Ms. Darrow to establish four things: (1) that Ms. Darrow was present when Officer Rainbow interviewed JD on August 10, 1998, and that Ms. Darrow recorded in her notes that JD said that she was ten-years old when the incident occurred; (2) that, on September 4, 1998, when Ms. Darrow arrived to speak with JD, she observed JD putting Petitioner's clothes and suitcases in the driveway and

that JD then informed Ms. Darrow that the Chittenango Police were "on her side;" (3) Investigator Rainbow or other members of the Chittenango Police made Ms. Darrow "aware on four different occasions" that JD was frequently intoxicated in her home between August and October of 1998; and (4) that it was not DSS or Child Protective Services' decision to have JD stay at home. *See* R. at 1803–06.

Regarding the second basis, the prosecutor noted that, if JD was confronted regarding why she put Petitioner's belongings in the driveway, she would simply state that Petitioner wanted his belongings. *See id.* at 1811. With regard to the third basis, the trial court sustained the prosecutor's objection on the ground that it was irrelevant and that it was extrinsic evidence being introduced to discredit both Officer Rainbow and JD. *See id.* at 1808–09. Regarding the fourth basis, the trial court found that the issue was collateral and irrelevant and sustained the prosecution's objection. *See id.* at 1807.

With regard to the first basis, the prosecutor alerted the state court and counsel of his concern that, if Ms. Darrow testified that JD said that she was ten-years old during the Truth or Dare game, in order to have a full and fair opportunity to cross-examine Ms. Darrow, the prosecutor might have to elicit information pertaining to other acts that Petitioner committed that JD discussed when she was interviewed. *See id.* at 1812. The trial court then permitted Ms. Darrow to testify outside the presence of the jury so that Petitioner's counsel could decide whether to call her. *See id.* at 1813.

Outside the presence of the jury, Ms. Darrow testified that, when the police interviewed JD on August 10, 1998, she said that she was ten-years old when she played Truth or Dare with her siblings and Petitioner. *See id.* at 1815. During cross-examination, however, Ms. Darrow conceded that her notes reflecting that JD was ten "[might] not, in fact, be accurate." *See id.* at 1816–27. The prosecutor also asked her whether, during her interviews

with JD, "various occasions [were] elicited ... at various ages where she alleged differing types of sexual conduct by the defendant towards her," to which Ms. Darrow replied "correct." *See id.* at 1825. Following Ms. Darrow's proffer, the trial court ruled that the prosecutor could ask Ms. Darrow the types of questions he had just asked if Petitioner questioned her about the entry in her notes discussing JD's age at the time of the alleged incident. *See id.* at 1831.

**\*15** The trial court properly determined that Ms. Darrow could testify regarding these other alleged acts. Petitioner was attempting to discredit JD by introducing evidence that she provided different dates for when the alleged sexual misconduct occurred. The fact that similar conduct occurred on several different occasions, in addition to JD's young age, would have properly rehabilitated JD's testimony after Petitioner attempted to impeach it with this extrinsic evidence. Although the trial court provided Petitioner with the option to examine Ms. Darrow, it would have been well within its authority to preclude the testimony entirely. *See People v. Brown,* 24 A.D.3d 884, 887–88 (3d Dep't 2005) (holding that the trial court properly excluded the testimony of the victim's former boyfriend because the defendant sought to introduce this testimony solely to attack the victim's credibility (citations omitted)).

Based on the foregoing, the Court finds that the trial court properly ruled on the admissibility of Ms. Darrow's testimony. Moreover, even if the court's decision was in error, the error was harmless because, even if Petitioner introduced Ms. Darrow's testimony to discredit JD, the remaining evidence overwhelmingly established Petitioner's guilt. Further, JD's age at the time of the incident, as well the approximate date on which the incident occurred, was thoroughly established by credible testimony throughout the trial.

*ii. Officer Costello*

Petitioner also alleges that the trial court erred in precluding Officer Costello from testifying. *See*

Dkt. No. 1 at 77–78. At trial, Petitioner argued that he wished to call Officer Costello to establish that (1) he took a complaint report on September 11, 1998, from Petitioner reporting damage and missing items from his home and that JD was involved; (2) Officer Rainbow found out about the complaint; and (3) JD benefitted by making accusations against Petitioner in that she was not arrested for her own misconduct. *See* R. at 1833–35. Petitioner's counsel explained that it was Petitioner's theory that JD was engaging in criminal acts and not getting arrested and that she was "us[ing] her status as a victim in order to get out of criminal trouble." *See id.* at 1835. The trial court found that these were "collateral matters" and that, if there was a relevancy objection, the court would have sustained the objection. *See id.* at 1835–36. As such, the court precluded Petitioner from pursuing this line of questioning. *See id.* at 1837.

Again, the court properly precluded this information as extrinsic evidence of collateral matters, introduced solely to impeach JD. *See Brown,* 24 A.D.3d at 887–88 (citations omitted).

### iii. Officer Baum

Petitioner also alleges that the trial court improperly ruled that he could not call Officer Baum to testify. *See* Dkt. No. 1 at 78–80. Petitioner argued that he wanted to call Officer Baum to establish that, (1) on August 10, 1998, when Officer Baum was interviewing SD, JD came in and out of the room and tried to tell SD the "dates when this occurred because [SD] didn't remember;" (2) after Petitioner's arrest, Officer Baum was called to JD's home for noise and underage drinking complaints, and that she referred the complaints back to Investigator Rainbow; (3) when Officer Baum responded to one of the complaints, JD began yelling at her and said that she should "fuck off" because JD was a juvenile and there was nothing that Officer Baum could do; (4) Officer Baum was involved in an investigation where a gun was retrieved from Pam Hart and that JD was found to have provided the gun; and (5) JD told Officer Baum that she hated

her grandparents because they were "rich." *See* R. at 1838–40.

**\*16** The prosecutor had no objection to Petitioner inquiring about JD being present when SD was being interviewed. *See id.* at 1844. However, the prosecutor argued that the other testimony discussed collateral matters and was irrelevant. *See id.* at 1845–46. The trial court allowed questions concerning JD entering the room when SD was being interviewed but held that, as to the other lines of questioning, if the prosecutor objected, the court would sustain those objections. *See id.* at 1848.

Again, the trial court properly limited Officer Baum's testimony. The offer of proof makes clear that Petitioner wished to question Officer Baum regarding collateral and irrelevant matters and that he was seeking to introduce prior bad acts to impeach JD. *See Brown,* 24 A.D.3d at 887–88 (citations omitted).

### iv. MS

Petitioner asserts that the trial court improperly limited MS's testimony. *See* Dkt. No. 1 at 80–84. Petitioner argues that he was prepared to call MS, JD's older sister, to testify that, in 1996, prior to making the allegations against Petitioner, JD made similar allegations against MS's boyfriend, Bob Peck. *See id.* at 80 (citing R. 1852). Specifically, Petitioner claims that MS was prepared to testify that JD lived with her in 1996 for approximately four months and that JD's conduct while living there was such that JD was forced to throw her out of the house. *See id.* at 81. Petitioner claims that MS would have testified that, upon being thrown out of the house, JD alleged that MS's boyfriend had raped her. *See id.* (citation omitted).

Petitioner alleges that, during her testimony, JD denied that MS asked her to leave her house; denied that there was any problem; denied fighting with MS; and testified that she left because of an argument that had ensued between MS and Mr. Peck when Mr. Peck touched her and asked her "to do sexual things." *See id.* at 81. Moreover, Petition-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

er asserts that JD claimed to have confronted Mr. Peck and that she was not asked to leave and did not leave MS's house. *See id.*

At trial, MS testified that JD's younger siblings told her that JD lied about Petitioner raping her. *See* R. at 1877. Specifically, MS testified that JD's younger siblings told her that Petitioner never penetrated JD. *See id.* at 1883–84. The court, however, did not allow Petitioner's counsel to ask MS about whether JD accused Mr. Peck of rape or whether JD was thrown out of her house. JD was asked during cross-examination whether she ever made this allegedly false allegation and denied that she had.

"Questioning concerning prior false allegations of rape or sexual abuse is not always precluded ..., and the determination whether to allow such questioning 'rests within the discretion of the trial court[.] ...' " *People v. Bridgeland,* 19 A.D.3d 1122, 1123 (4th Dep't 2005) (internal citations and quotation omitted). To be admissible, the defendant must demonstrate that " 'the particulars of the complaints, the circumstances or manner of the alleged assaults or the currency of the complaints were such as to suggest a pattern casting substantial doubt on the validity of the charges made by the [complainant] [.]' " *Id.* at 1124 (quotation omitted).

**\*17** In the present matter, Petitioner failed to establish that the particulars of the alleged false complaint against Mr. Peck and the circumstances of Petitioner's alleged sexual assaults were sufficiently similar to suggest that there was substantial doubt about the truthfulness of JD's charges. *See id.* JD's allegedly false allegations against Mr. Peck appear to be no more than a passing comment, which did not lead to any criminal action being taken. Petitioner did not allege in his proffer that criminal charges were ever filed against Mr. Peck or that this allegation was more than a single, isolated incident. Moreover, Petitioner was allowed to question JD regarding this alleged instance. Although JD's younger siblings allegedly told MS that Petitioner had not penetrated JD, MS implied that they did not suggest or state that none of the alleged sexual con-

tact occurred.

Based on the foregoing, the Court denies Petitioner's motion on this ground. Petitioner failed to establish that the alleged false complaint against Mr. Peck was in any way similar to present situation.

***v. Police Chief Paul***

Petitioner asserts that the trial court erred in precluding testimony from Police Chief Paul to establish that, since September 1998, Chief Paul and Officer Rainbow had refused to meet with Petitioner or take any complaints concerning the destruction of his home that JD has caused. *See* Dkt. No. 1 at 84 (citing R. 1858–59). Petitioner claims that this testimony would have established that the Chittenango Police were giving JD preferential treatment and that this testimony was relevant "to issues of credibility and bias, and Officer Rainbow's hostility toward [Petitioner]." *See id.* at 1.

Again, the state court properly precluded this testimony as extrinsic evidence on a collateral matter solely to impeach JD's and Officer Rainbow's credibility. *See* R. at 1858; *see also Brown,* 24 A.D.3d at 887–88 (citations omitted).[FN12]

> **FN12.** Even if the Court were to find error with any of these evidentiary rulings, the Court would still deny the petition because it is clear beyond a reasonable doubt that Petitioner would have been convicted even if the trial court had admitted the disputed evidence. *See Benn v. Greiner,* 402 F.3d 100, 105–06 (2d Cir.2005).

### 6. The trial court's refusal to instruct the jury pursuant to *CPL § 710.70*

Petitioner asserts that, both before and during trial, he challenged the voluntariness of his statements to Officer Rainbow upon arrest. *See* Dkt. No. 1 at 85–87. Specifically, Petitioner claims that, during trial, his counsel

brought out facts showing that four police of-

ficers surrounded and arrested [Petitioner] at his home (R. 1654); that [Petitioner] was handcuffed and brought to the police station in a police car (R. 1654); that [Petitioner] was placed in the officer's office at the police station and was not free to leave (R. 1655); that [Petitioner] appeared "startled" (R. 1655); that Officer Rainbow showed [Petitioner] statements made by his stepchildren making the allegations against him (R. 1656); and that Officer Rainbow did not tape record or attempt to tape record the interrogation even though the necessary equipment was available (R. 1656–1658); that [Petitioner] was crying when the officer turned the lights off in the interrogation room (R. 1693–1694); that the officer told [Petitioner] that he had all kinds of evidence against him in an effort to get him to confess, and that [Petitioner] was sobbing at that point (R. 1663); that Officer Rainbow did not give [Petitioner] the opportunity to write his own statement (R. 1670); that Officer Rainbow told the [Petitioner] that he didn't believe him and called [Petitioner] a liar when he denied the allegations against him (R. 1667; 1689); and that Officer Rainbow turned off the lights in his office during the interrogation before [Petitioner] gave any statements claiming that it was to make [Petitioner] more comfortable (R. 1690–1694); and that [Petitioner] did not give the officer a statement until the lights had been turned back on (R. 1689–1695).

**\*18** *See id.* at 86–87. Petitioner argues that, among other things, in light of this testimony, the trial court erred in failing to give a jury charge concerning the voluntariness of his confession pursuant to Criminal Procedure Law §§ 60.45 and 710.70. *See id.* at 88.

In his habeas petition, Petitioner claims that the trial court's refusal to deliver a voluntariness charge to the jury violated his due process rights. To support this claim, Petitioner cites, among other things, New York Criminal Procedure Law § 710.70(3), which requires the court to submit the voluntariness

issue to the jury. *See* N.Y.Crim. Proc. Law § 710.70 (3). The question of whether the trial court acted in accordance with New York state law when it refused to issue voluntariness instructions to the jury, however, is beyond the purview of this Court in deciding whether to issue a writ of habeas corpus. *See Estelle,* 502 U.S. at 67–68 (holding that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Rather, the Court must determine whether the failure to provide a voluntariness instruction to the jury amounts to a violation of Petitioner's constitutional rights.

In *Lego v. Twomey,* 404 U.S. 477 (1972), the Supreme Court explicitly rejected a state petitioner's "contention that, even though the trial judge ruled on his coercion claim, he was entitled to have the jury decide the claim anew." *Id.* at 489. The Court held that the Constitution does not require "submission of voluntariness claims to a jury as well as a judge." *Id.* Instead, the Constitution protects a defendant's right to have the judge, not a jury, determine the voluntariness of statements. *See id.* at 483. "Although in New York state courts a defendant is entitled to a voluntariness charge, *see* N.Y. C.P.L. 710.70(3); *People v. Cefaro,* 23 N.Y.2d 283, 296 N.Y.S.2d 345, 244 N.E.2d 42 (1968), there is no analogous requirement under the United States Constitution." *Zapata v. Greene,* No. 03–CV–5730, 2005 WL 1521186, \*13 (E.D.N.Y. June 27, 2005) (citations omitted).

Accordingly, the Court finds that the state court's decision not to give a jury instruction regarding the voluntariness of the Petitioner's statements is neither contrary to nor an unreasonable application of any clearly established federal law.

### 7. The trial court's refusal to instruct the jury as to prompt outcry FN13

> FN13. Respondent asserts that Petitioner did not fully exhaust this claim because "[P]etitioner did not present this claim ... in constitutional terms in state court." *See*

Dkt. No. 12 at 44–45. However, "[t]here is no need to resolve this question because the law is clear that a habeas court may deny a claim on the merits despite a petitioner's failure to exhaust it fully before the state courts." *Lucas v. Conway,* No. 08 Civ. 8405, 2009 WL 2525489, *5 (S.D.N.Y. July 16, 2009) (citing 28 U.S.C. § 2254(b)(2); *Rhines v.. Weber,* 544 U.S. 269, 277 (2005)).

Petitioner asserts that "[t]he trial court erred in refusing to instruct the jury that it could consider the complainants' delay in reporting the alleged sexual abuse because prompt outcry, or lack thereof, on the part of a complainant may be relevant in determining the complainants' credibility." *See* Dkt. No. 1 at 100 (citations omitted). Respondent claims that Petitioner did not exhaust this claim and that the claim is procedurally barred and otherwise meritless. *See* Dkt. No. 12 at 44–47.

**\*19** In *People v. Bessette,* 169 A.D.2d 876 (3d Dep't 1991), the defendant was convicted of sodomy in the first degree and sexual abuse in the first degree. *See id.* at 876. The defendant argued that the trial court erred in refusing to instruct the jury that the victim's delay in disclosing the alleged offense should be considered when assessing the victim's credibility. *See id.* at 877 (citations omitted). Disagreeing with the defendant, the court held that "the patterns of response among rape victims are not within the ordinary understanding of the lay jury." *Id.* at 878 (citation omitted). Moreover, the court noted that, in light of defense counsel's comments during summation and the prosecutor's in response, the court's comprehensive witness credibility charge was sufficient to inform the jury of the governing principle. *See id.* (citation omitted). The court also noted that the defendant was in a *"loco parentis"* relationship with the victim and threatened him if he disclosed what had happened. *See id.*

In the present matter, the court instructed the jury that,

[i]n deciding the credibility; that is the believability of any particular witness, you may use the same tests used in your everyday affairs to determine the reliability or unreliability of statements made to you by others.

Among the facts to be [taken] into account in evaluating and assessing the testimony of the witnesses are the interest or lack of interest of the witness that they may have in the outcome of this case; any bias or prejudice that a witness may have; the age; the appearance; and the manner in which the witness has testified; the opportunity that the witness has had to observe the facts testified to ...

The credibility; that is, the believability, of each witness is itself an issue of fact solely and exclusively within the province of the jury. With respect to each witness, you must determine to what extent you find the witness's testimony credible and acceptable. With respect to any individual witness, you may accept in whole or in part such testimony you find credible and worthy of belief or reject in whole or in part such testimony you find unworthy of credit or belief.

*See* R. at 1998–99.

Moreover, Petitioner's counsel specifically addressed JD's credibility, as well as the credibility of the other witnesses, and discussed why the jury should discredit their testimony. *See id.* at 1946–58. Petitioner's counsel also spent a significant amount of time discussing the complainants' motives for fabricating the offenses and various other reasons why the jury should not believe their allegations. *See id.*

Considering the jury instructions and Petitioner's counsel's arguments during summation, the Court finds that the trial court did not err in declining to instruct the jury regarding the complainants' delay in disclosing the offense. *See Bessette,* 169 A.D.2d at 878 (citation omitted).[FN14]

FN14. The Court notes that it is unclear what federal constitutional right this alleged error implicates.

### 8. The weight of the evidence and the sufficiency of the evidence

**\*20** Petitioner asserts that the jury's verdict was against the weight of the evidence and that the evidence was insufficient to establish his guilt. *See* Dkt. No. 1 at 101–09.[FN15]

FN15. As to complainant JD, the jury convicted Petitioner of Rape in the First Degree (New York Penal Law § 130.35), Rape in the Second Degree (New York Penal Law § 130.30), Sodomy in the First Degree (New York Penal Law § 130.50), and Sodomy in the Second Degree (New York Penal Law § 130.45). As to complainant SD, the jury convicted Petitioner of two counts of Sodomy in the First Degree.

Review of a conviction as against the "weight of the evidence" is a product of New York state statute and, therefore, merely a state-law issue. *See* N.Y.Crim. Proc. Law § 470.15; *Ward v. Herbert,* 509 F.Supp.2d 253, 264 & n. 3 (W.D.N.Y.2007) (citations omitted). Since federal habeas corpus review is not available to remedy mere errors of state law, *see Estelle,* 502 U.S. at 67–69, no cognizable federal issue is presented by a habeas claim challenging the weight of the evidence adduced at trial, *see Ward,* 509 F.Supp.2d at 264 & n. 3 (citations omitted). A challenge to the sufficiency of the evidence, however, is amenable to federal habeas review. *See Ponnapula v. Spitzer,* 297 F.3d 172, 179 (2d Cir.2002) (citing *Quirama v. Michele,* 983 F.2d 12, 14 (2d Cir.1993)).

To analyze the sufficiency of the evidence of a state conviction, " '[a] federal court must look to state law to determine the elements of the crime.' " *Id.* (quotation omitted). A habeas petition based on the evidentiary sufficiency of a state-court conviction fails if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). This standard places a " 'heavy burden' " on a habeas petitioner. *See United States v. Parkes,* 497 F.3d 220, 225 (2d Cir.2007) (quotation and other citations omitted).

To convict a defendant of rape in the first degree, as charged, the prosecution must prove that the defendant engaged in sexual intercourse with the victim by forcible compulsion. *See* N.Y. Penal Law § 130.35(1).[FN16] In order to convict a person of rape in the second degree, the prosecution must establish that a person, "being eighteen years old or more, ... engage[d] in sexual intercourse with another person less than fifteen years old[.]" N.Y. Penal Law § 130.30(1).

FN16. The Court has used the language contained in the relevant New York Penal Law section from the time of Petitioner's conviction. Although the title of the offenses and statutory language were amended, the elements for each of Petitioner's offenses has remained the same.

A person is guilty of sodomy in the first degree when he "engages in deviate sexual intercourse with another person [either] (1) By forcible compulsion; or ... (3) Who is less than eleven years old" N.Y. Penal Law § 130.50.[FN17] A defendant is guilty of sodomy in the second degree if the defendant was older than eighteen-years old and engaged in deviate sexual intercourse with another person less than fifteen-years old. *See* N.Y. Penal Law § 130.45 (1965).

FN17. This is the language of the statute under which Petitioner was convicted, prior to the October 19, 2000 amendment. *See* McKinney's 2000 Session Law News of N.Y. Ch. 1, § 37 (L.2000, c. 1, § 37, eff.Feb. 1, 2001). As amended, the statute is now entitled "criminal sexual act in the first degree."

Deviate sexual intercourse is defined, in relevant part, as "sexual conduct between persons not married to each other consisting of contact between ... the mouth and penis." N.Y. Penal Law § 130.00 (2) (1965). "Forcible compulsion" is defined, in part, as compelling another "by either ... use of physical force; or ... a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person [.]" *See* N.Y. Penal Law § 130.00(8). Finally, "sexual intercourse" "has its ordinary meaning and occurs upon any penetration, however slight." N.Y. Penal Law § 130.00(1).

**\*21** In the present matter, the testimony of AW, JD, and SD established that JD and SD were born on July 1, 1982, and January 13, 1985, respectively, *see* R. at 1119, 1174, 1414–15; and Officer Rainbow's testimony established that Petitioner's date of birth was September 29, 1956, *see id.* at 1641. Officer Rainbow's testimony also established that AW was married to Petitioner. *See id.* at 1753. Moreover, the testimony of AW, JD, and SD established that, while AW was at work, in 1995, JD, SD and JS played Spin the Bottle and Truth or Dare with Petitioner. *See id.* at 1125–28, 1130–31, 1490. During these games, the testimony established that both JD and SD engaged in oral sexual conduct with Petitioner and that Petitioner had sexual intercourse with JD. *See id.* at 1133, 1137–38, 1424, 1432, 1495. Moreover, regarding the forcible compulsion element, the children's testimony established that they were scared of Petitioner because in the past he had choked, hit and/or slapped them and that they did what they were told to do in Petitioner's home or they "got the worst of it." *See id.* at 1134–35, 1426, 1429. Finally, although the children's testimony provided sufficient evidence of Petitioner's guilt of the charged crimes, Petitioner also signed a written confession, admitting that he had engaged in conduct constituting sodomy with JD. *See id.* at 1633, 1638.

Based on the foregoing, Petitioner has failed to establish that no rational trier of fact could have

found that he engaged in conduct establishing the elements of each of the crimes of which he was convicted beyond a reasonable doubt. As such, the Court finds that Petitioner has failed to establish that there was insufficient evidence to support his convictions.

### *9. Petitioner's sentence*

Petitioner contends that his sentence was excessive and harsh.

For Petitioner's conviction for Rape in the First Degree under count one of the indictment, the court imposed an indeterminate prison sentence of twelve and one-half to twenty-five years. For his conviction for Rape in the Second Degree under count two of the indictment, the court imposed an indeterminate prison sentence of two-to-six years. For Petitioner's conviction for Sodomy in the First Degree under count three of the indictment, the court imposed an indeterminate prison sentence of twelve and one-half to twenty-five years. For Petitioner's conviction for Sodomy in the Second Degree under count four of the indictment, the court imposed an indeterminate prison sentence of two to six years. For Petitioner's conviction for Sodomy in the First Degree under count five of the indictment, the court imposed an indeterminate prison sentence of twelve and one-half to twenty-five years. Finally, for Petitioner's conviction for Sodomy in the First Degree under count six of the indictment, the court imposed an indeterminate prison sentence of twelve and one-half to twenty-five years. Counts one through four concerned victim JD, and counts five through six concerned victim SD. The court directed that the sentences it was imposing on counts one through four run concurrently with each other and that the sentences it was imposing on counts five through six run concurrently with each other but consecutively to the sentence it was imposing on counts one through four. *See* N.Y. Penal Law § 70.25 (authorizing consecutive terms of imprisonment).

**\*22** At the time that Petitioner was convicted, the crimes of Rape in the First Degree and Sodomy

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

in the First Degree were classified as B Violent Felonies. *See* N.Y. Penal Law §§ 130.35, 130.50. Moreover, Rape in the Second Degree and Sodomy in the Second Degree were classified as D Violent Felonies. *See* N.Y. Penal Law §§ 130 .30, 130.45. For Petitioner's B Violent Felony convictions, the court was authorized to impose an indeterminate prison sentence, the maximum term of which was required to be at least six years, but not to exceed 25 years. *See* N.Y. Penal Law § 70.20(2). Further, the minimum period of imprisonment under an indeterminate sentence for a B Violent Felony was required to be one-half the maximum term imposed. *See id.* With respect to Petitioner's D Violent Felony convictions, the court was authorized to impose an indeterminate prison sentence, the maximum term of which was required to be at least three years, but not to exceed seven years. *See* N.Y. Penal Law § 70.00(3)(b). Finally, the court was authorized to order Petitioner's sentences for the counts relating to JD to run consecutively to Petitioner's sentences for the counts relating to SD because the counts represented separate and distinct acts, impacting different victims. *See* N.Y. Penal Law § 70.25; *see also People v. Perkins,* 27 A.D.3d 890, 894 (3d Dep't 2006). As such, Petitioner's sentences fell within the permissible statutory range provided for under New York State Law.

It is well-established that no federal constitutional issue exists where the sentence a state court imposes is within the range that state law prescribes. *See, e.g., White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992) (citation omitted). Furthermore, to the extent that Petitioner is raising an Eighth Amendment challenge to this sentence, *see* Dkt. No. 1 at 111–12, "[a] sentence of imprisonment which is within the limits of a valid state statute is simply not cruel and unusual punishment in the constitutional sense," *Scheckells v. Cunningham,* No. 9:03–CV–1219, 2007 WL 1428472, *12 (N.D.N.Y. May 11, 2007) (citation omitted).

Based on the foregoing, the Court denies the petition on this ground.

**C. Certificate of appealability**

A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Since Petitioner has failed to make such a showing, the Court declines to issue a Certificate of Appealability in this matter. *See Hohn v. United States,* 524 U.S. 236, 239–40 (1998).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, Magistrate Judge Lowe's Report–Recommendation & Order, Petitioner's objections, and the applicable law, and for the reasons stated in Magistrate Judge Lowe's Report–Recommendation & Order as well as in this Memorandum–Decision and Order, the Court hereby

**ORDERS** that Magistrate Judge Lowe's January 18, 2011 Report–Recommendation & Order is **ACCEPTED in its entirety;** and the Court further

**\*23 ORDERS** that Petitioner's petition for a writ of habeas corpus is **DENIED** and **DISMISSED;** and the Court further

**ORDERS** that no Certificate of Appealability shall be issued with respect to any of Petitioner's claims.

**IT IS SO ORDERED.**

N.D.N.Y.,2011.
White v. Conway
Not Reported in F.Supp.2d, 2011 WL 1315592 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Westlaw Delivery Summary Report for MCKEON, COURTENA**

Date/Time of Request:                    Monday, September 22, 2014 15:39 Central
Client Identifier:                       O'HALLORAN
Database:                                DCT
Citation Text:                           Not Reported in F.Supp.2d
Lines:                                   747
Documents:                               1
Images:                                  0

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Not Reported in F.Supp.2d, 2011 WL 2226956 (S.D.N.Y.)
**(Cite as: 2011 WL 2226956 (S.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Vincent CHAMBERS, Petitioner,
v.
James T. CONWAY, Superintendent of Attica Correctional Facility, et al., Respondent.

No. 09 Civ. 2175(JGK).
June 8, 2011.

### MEMORANDUM OPINION AND ORDER

JOHN G. KOELTL, District Judge.

**\*1** The petitioner, Vincent Chambers, brings this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On September 17, 2001, the petitioner was convicted after a jury trial in New York State Supreme Court, Bronx County, of Manslaughter in the First Degree (N.Y. Penal Law § 125.20 [1] ). The petitioner was sentenced as a persistent felony offender to an indeterminate prison term of twenty-five years to life.

The petitioner appealed to the New York State Supreme Court, Appellate Division, First Department, which, on May 13, 2003, unanimously affirmed the petitioner's judgment of conviction. *People v. Chambers,* 758 N.Y.S.2d 799 (App.Div.2003). The petitioner's application for leave to appeal to the New York State Court of Appeals was denied on July 11, 2003. *People v. Chambers,* 796 N.E.2d 481 (N.Y.2003).

The petitioner subsequently moved in the New York State Supreme Court, Bronx County, to vacate his sentence pursuant to New York Criminal Procedure Law § 440.20. The court vacated the petitioner's sentence and ordered a re-sentencing hearing. After holding a re-sentencing hearing, the court re-sentenced the petitioner as a mandatory persistent violent felony offender pursuant to New York Penal Law § 70.08 and New York Criminal Proced-

ure Law § 400.16 to an indeterminate prison term of twenty-five years to life. (*See* Killian Decl. Exs. 12–15.)

The petitioner brought several additional collateral challenges in state court to his conviction and sentence. Each of these challenges is detailed below and was unsuccessful.

In his petition for habeas corpus in this case, the petitioner challenges his conviction on multiple grounds. First, the petitioner alleges judicial and prosecutorial misconduct with respect to a videotaped statement by the petitioner that was allegedly suppressed at the grand jury proceedings and at trial, and with respect to a witness that he alleges was improperly recalled to the stand and allowed to offer "false testimony." The petitioner also alleges prosecutorial misconduct based on the prosecutor allegedly "forcing" witnesses to testify through harassment and coercion, and making an "inflammatory" remark that "assassinated" the petitioner's character while he was on the stand. Next, the petitioner claims that he received ineffective assistance of trial counsel because trial counsel engaged in sidebar discussions outside of his presence and trial counsel failed to challenge the constitutionality of his original sentencing proceedings. The petitioner also claims that the grand jury proceeding was defective because the petitioner's videotaped statement was suppressed and therefore there was insufficient evidence to support the indictment, and the indictment improperly charged the petitioner with depraved indifference murder. Finally, the petitioner claims that his sentence as a persistent violent felony offender is unconstitutional under *Apprendi v. New Jersey,* 530 U.S. 466 (2000). The petitioner moves for an evidentiary hearing on all of his claims.

I.
A.

**\*2** The record reflects the following relevant facts. On May 14, 2000, the petitioner was riding

his bike and stopped to talk to some "associates" outside 15 Marcy Place in the Bronx. (Tr. 399.) While he was talking with his associates, Jafaar Booker, the victim, who the petitioner believed to be a gang member, attempted to speak to the petitioner. (Tr. 399–400, 402–03.) The petitioner asked Booker not to "say two words to [him]," after which the petitioner claims that Booker walked towards the petitioner and told him to get off of his bike. (Tr. 403.) According to the petitioner, as he was getting off his bike, Booker grabbed the petitioner's twenty-inch chain with a religious medal and took it from the petitioner. (Tr. 403.) At this point, the petitioner and Booker began to fight with one another, "tussling" and "wrestling ." (Tr. 404, 406.)

According to witnesses, in the course of the fight, the petitioner pulled out a knife. (Tr. 124, 317.) Booker ran from the petitioner and when the petitioner chased him Booker and two other men allegedly pinned the petitioner down on a car and attempted to take the knife from him. The petitioner claims that Booker beat him with a black metal cane and bit him in the face. (Tr. 406, 409). An eye-witness corroborated that Booker hit the petitioner twice in the head with the cane. (Tr. 316–17, 333–34, 351.) According to witnesses, however, Booker appeared to be using the cane to protect himself from the petitioner, who had broken free of the men holding him down on the car and was pursuing Booker with the knife. (Tr. 126, 316–317.) Raphael Vasquez, an eye-witness, heard Booker tell the petitioner that he would put down the cane if the petitioner put down the knife. (Tr. 317–19.) Vasquez testified that the petitioner responded by saying "Fuck that, I'm going to do what I got to do," and then ran at Booker, pushing him up against a gate and stabbing him in the chest. (Tr. 317–19, 351, 375–76.) The petitioner wiped off the knife, put it in his pocket, and began to ride his bike away from the scene. (Tr. 199, 319–20.) As he was riding his bike, the petitioner took off his shirt and threw it on the sidewalk. (Tr. 125, 135–36.)

After being stabbed, Booker ran towards Jerome Avenue, where a police precinct and fire department were located, holding his hand over his bleeding chest. (Tr. 135, 168–69, 219–20, 241.) Booker approached Police Officer David McNamee who was parked outside the fire department, and told Officer McNamee that he had been stabbed in the heart. (Tr. 220, 241–42.) After Officer McNamee radioed that somebody had been stabbed and requested medical assistance, Booker said he felt dizzy and sat down on the back of a fire truck. (Tr. 243.) Shortly after, Booker laid down on the ground. (Tr. 244.) Officer McNamee asked Booker twice who had stabbed him, but Booker was unable to answer before he lost consciousness. (Tr. 244–45.) Booker died and the petitioner was arrested two days later. (Tr. 282–86.)

**\*3** During the trial, the petitioner admitted to stabbing Booker, but asserted an affirmative defense of justification based on Booker's alleged conduct leading up to and during the fight. (Tr. 460–63, 487, 500, 507–09, 586–87.)

On August 3, 2001, the jury found the petitioner not guilty of Murder in the Second Degree based on intent or depraved indifference, but guilty of Manslaughter in the First Degree. (Tr. 595–96.) On September 17, 2001, the petitioner was sentenced as a persistent felony offender to an indeterminate sentence of twenty-five years to life in prison. (Sent. Tr. 32.)

**B.**

The petitioner appealed his conviction to the Appellate Division, First Department, and argued that the verdict was against the weight of the evidence. In an opinion dated May 13, 2003, the Appellate Division unanimously rejected the petitioner's claims. *People v. Chambers,* 758 N.Y.S.2d 799 (App.Div.2003). The court held that "[t]he verdict was based on legally sufficient evidence and was not against the weight of evidence." *Id.* It further held that the jury "properly credited evidence that disproved [the petitioner's] justification defense beyond a reasonable doubt," in part based on evid-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

ence that the petitioner pursued Booker when Booker was fleeing. *Id.* The petitioner's application for leave to appeal to the New York State Court of Appeals was denied on July 11, 2003. *People v. Chambers,* 796 N.E.2d 481 (N.Y.2003).

The petitioner moved in the New York Supreme Court, Bronx County, to vacate his sentence pursuant to New York Criminal Procedure Law § 440.20, claiming that his sentence violated *Apprendi* because the trial court "unintentionally" adjudicated him a "discretionary" persistent felony offender and that he received ineffective assistance counsel at the sentencing proceeding. (Killian Decl. Ex. 5.) Although the petitioner did not elaborate how counsel was ineffective at sentencing, the state court granted the petitioner's motion to vacate and ordered a re-sentencing hearing based on trial counsel's silence throughout the sentencing proceeding and the sentencing court's failure to make clear at the original proceeding that the petitioner was being sentenced as a mandatory persistent violent felony offender rather than a discretionary persistent felony offender. (Killian Decl. Ex 12.)

The petitioner also claimed that his sentence as a persistent violent felony offender should be vacated because he had not committed two prior violent felony offenses and his prior convictions were unconstitutional. (Killian Decl. Ex. 5.) The state court held an evidentiary hearing to determine if the petitioner had previously been convicted of the two violent felony offenses alleged by the prosecutor, and if those convictions were unconstitutional. In an order dated March 10, 2006, the state court found that the prosecutor had met his burden as to both issues. (Killian Decl. Ex. 14.) The court determined that the petitioner should be sentenced forthwith as a mandatory persistent violent felony offender pursuant to New York Penal Law § 70.08 and New York Criminal Procedure Law § 400.16. (*Id.*) The petitioner was sentenced to an indeterminate prison term of twenty-five years to life.

**\*4** After the state court issued the March 10, 2006 decision re-sentencing the petitioner as a per-

sistent violent felony offender, the petitioner filed pro se papers titled "Quantum of Proof and Notice of Allegations and Evidence Warranting Dismissal with Prejudice," in which he raised many of the same issues regarding the grand jury proceeding and the trial raised in this petition. In a supplemental order issued on March 30, 2006, the state court denied all of the petitioner's claims. (Killian Decl. Ex. 15.) The court specifically noted that the petitioner's complaints about his trial "to wit, prosecutorial misconduct, false testimony, conflicts of interest, abuse of process, character assassination, double jeopardy, judicial error, etc.," were "conclusory and insufficient to warrant either the relief requested or an evidentiary hearing." (*Id.* at 2.) The court also noted that "all of these concerns dealt with matters of record and could have been raised on direct appeal." (*Id.*)

While the petitioner's motion to vacate his sentence was still pending, he moved in the Appellate Division, First Department, for a writ of error *coram nobis,* alleging ineffective assistance of appellate counsel. (*See* Killian Decl. Ex. 16.) Specifically, the petitioner alleged that his appellate counsel was ineffective for failing to raise claims of ineffective assistance of trial counsel, prosecutorial misconduct, and judicial error. The petitioner also claimed ineffective assistance of appellate counsel based on counsel's alleged failure to advise the petitioner of his option to submit a supplemental brief to the Appellate Division on direct appeal. In an order dated December 9, 2004, the Appellate Division, First Department denied the petitioner's request. *People v. Chambers,* 787 N.Y.S.2d 674 (App.Div.2004).

Following his re-sentencing, the petitioner filed a second appeal, through assigned appellate counsel, with the Appellate Division, First Department. (Killian Decl. Ex. 18.) The petitioner claimed that the prosecution failed to prove beyond a reasonable doubt that he had at least two prior violent felony convictions, and that his sentence as a persistent violent felony offender was unconstitutional under

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Apprendi* and its progeny. On November 27, 2007, the court unanimously affirmed the trial court's judgment and found that the prosecution did establish beyond a reasonable doubt that the petitioner had committed two prior violent felonies, and that the procedure used pursuant to the persistent violent felony offender statute was not unconstitutional. *People v. Chambers,* 846 N.Y.S.2d 151 (App.Div.2007). The petitioner's application for leave to appeal to the New York Court of Appeals was denied on February 28, 2008. *People v. Chambers,* 883 N.E.2d 1259 (N.Y.2008).

The petitioner also filed a pro se motion to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10, alleging judicial error and misconduct, prosecutorial misconduct, ineffective assistance of counsel, and that the grand jury testimony was legally insufficient to support the indictment. (Killian Decl. Ex. 22.) The petitioner alleged that the trial court erred when it did not dismiss one of the two Murder in the Second Degree charges because intentional murder and depraved indifference murder are inconsistent with one another. The petitioner further claimed that the trial court committed judicial misconduct by including depraved indifference murder in the jury charge, allowing a witness to be recalled and thus testify twice after observing the trial, instructing the jury that the petitioner's videotaped statement which was only referenced at trial was insufficient evidence of justification, allowing the petitioner to be tried on charges not contained in the indictment, making "caustic remarks," failing to allow trial counsel to obtain a copy of the victim's criminal record for use at trial, and failing to include the lesser offense of Manslaughter in the Second Degree in the jury instructions. In his reply papers, the petitioner also alleged prosecutorial misconduct because the People omitted the petitioner's videotaped statement from the grand jury proceedings and the trial allegedly violating their *Brady* obligations, allegedly assassinated the petitioner's character when he was on the stand, allowed a witness to offer false testimony and inser-

ted its own views about the petitioner's guilt, made an inflammatory remark, and forced witnesses to testify. The petitioner claimed ineffective assistance of counsel alleging that trial counsel failed to urge the trial court to dismiss the depraved indifference murder count and that trial counsel failed to exercise the petitioner's right to be present at all sidebar discussions.

**\*5** In an order dated July 3, 2008, the court denied the petitioner's motion to vacate his conviction. (Killian Decl. Ex. 26.) Citing New York Criminal Procedure Law § 440.10(2)(c), the court ruled that "all of the [the petitioner's] arguments here (including *Antommarchi*-style [sidebar] issues) relate to matters of record—and, therefore, if not previously raised and already determined could have—with due diligence on [the petitioner's] part—been so raised, either on direct appeal or on a prior CPL 330 motion. Therefore, there is no basis for consideration and/or reconsideration at this time." (*Id.*) The court also noted that it was unnecessary to evaluate the petitioner's claims regarding the inclusion of depraved indifference and intentional Murder in the Second Degree in the indictment and jury charge because the petitioner was acquitted of both charges, so any concern regarding the charges would be "wholly academic." (*Id.*)

The petitioner sought leave to appeal from that order, and on October 23, 2008, petitioner's application was denied. (Killian Decl. Ex. 27.)

II.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also Hawkins v. Cos-*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*tello,* 460 F.3d 238, 242 (2d Cir.2006); *Muir v. New York,* No. 07 Civ. 7573, 2010 WL 2144250, at *3 (S.D.N.Y. May 26, 2010).

A state court decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Supreme Court's result. *Williams v. Taylor,* 529 U.S. 362, 405 (2000); *see also Jones v. Walsh,* No. 06 Civ. 225, 2007 WL 4563443, at *4 (S.D.N.Y. Dec. 27, 2007).

A state court decision involves "an unreasonable application of ... clearly established Federal law" when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case ...." *Jones,* 2007 WL 4563443, at *5 (quoting *Williams,* 529 U.S. at 407–08.) To meet that standard, "the state court decision [must] be more than incorrect or erroneous ... [it] must be objectively unreasonable." *Jones,* 2007 WL 4563443, at *5 (quoting *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). "[I]t is well established in [this] circuit that the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Cotto v. Herbert,* 331 F.3d 217, 248 (2d Cir.2003) (internal quotation marks omitted); *see also Jones,* 2007 WL 4563443, at *5.

**\*6** Because the petitioner is proceeding pro se, his petition is "read liberally and should be interpreted 'to raise the strongest arguments that [it] suggest[s].' " *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)); *see also Muir,* 2010 WL 2144250, at *4.

### III.

The petitioner raised his claims of prosecutorial misconduct and judicial misconduct, the claim that

the grand jury proceeding was insufficient to support the indictment, and the ineffective assistance of counsel claim based on trial counsel's failure to assert the petitioner's right to be present at sidebar discussions in his § 440.10 motion to vacate. All of these claims were rejected on procedural grounds because they should have been raised on direct appeal. Therefore, the various claims of prosecutorial and judicial misconduct and error, the claim that the indictment was defective, and the claim of ineffective assistance of counsel relating to sidebar discussions should be dismissed as procedurally barred because the state court's rejection of these claims pursuant to New York Criminal Procedure Law § 440.10 is an independent and adequate state law ground prohibiting review. *See Colon v. New York,* No. 08 Civ. 0170, 2009 WL 1116478, at *2 (S.D.N.Y. Apr. 27, 2009) ("[E]ven when a petitioner presents a colorable federal constitutional claim, federal habeas review is barred if the claim was denied by a state court on a state procedural ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision.") (quoting *Harris v. Reed,* 489 U.S. 225, 260–61 (1989)); *see also Muir,* 2010 WL 2144250, at *6. FN1

> FN1. New York Criminal Procedure Law § 440.10(2)(c) provides in relevant part that "the court must deny a motion to vacate a judgment when ... [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him."

It is well settled that where "a state prisoner has defaulted his federal claims in state court pursu-

Not Reported in F.Supp.2d, 2011 WL 2226956 (S.D.N.Y.)
**(Cite as: 2011 WL 2226956 (S.D.N.Y.))**

ant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Lee v. Kemma,* 534 U.S. 362, 375 (2002); *Cotto v. Herbert,* 331 F.3d 217, 238 (2d Cir.2003); *Muir,* 2010 WL 2144250, at *6.

In this case, the state court explicitly relied on an independent state procedural ground in rejecting the petitioner's claims. Indeed, the Court of Appeals for the Second Circuit has found that the failure to raise a claim on direct appeal that appeared on the face of the record is a procedural bar under New York law and, therefore, constitutes an independent and adequate state ground for the rejection of the petitioner's claim. *See Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 126 (2d Cir.1995).[FN2] Accordingly, for this Court to grant habeas relief on a defaulted claim, the petitioner must demonstrate either (1) cause for and prejudice from the default, or (2) that a fundamental miscarriage of justice will result if this Court fails to hear the federal claim. *See Colon,* 2009 WL 1116478, at *3 (collecting cases); *see also Muir,* 2010 WL 2144250, at *6.

> FN2. In its July 3, 2008 decision, the state court also pointed out that the court had previously rejected the petitioner's various claims in a decision and order dated March 30, 2006 (Killian Decl. Ex. 15.), in which the court found as follows: "[a]s for defendant's numerous complaints regarding the trial (to wit, prosecutorial misconduct, false testimony, conflicts of interest, abuse of process, character assassination, double jeopardy, judicial error, etc.) the court finds defendant's allegations to be conclusory and insufficient to warrant either the relief requested or an evidentiary hearing thereof. In addition, all of these concerns

dealt with matters of record and could have been raised on direct appeal." The prior rejection was thus also based on an independent and adequate state ground.

**\*7** The petitioner can demonstrate cause only if he "can show that some objective failure external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). This cause "must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman,* 501 U.S. at 753. While examples of such cause do include attorney error, "[a]ttorney error short of ineffective assistance of counsel does not constitute cause for a procedural default." *Murray,* 477, U.S. at 492; *see also Aparicio v. Artuz,* 269 F.3d 78, 91 (2d Cir.2001). To complete the cause and prejudice test, the petitioner must also establish that the ineffective assistance of counsel caused him actual prejudice. To establish actual prejudice, a petitioner must show that the constitutional violation alleged "worked to his *actual* and substantive disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170 (1982); *see also Muir,* 2010 2144250, at *7.

The petitioner has failed to establish either cause or actual prejudice to excuse his failure to comply with the state procedural rule. The petitioner alleges that his failure to comply with the state procedural rule was the result of ineffective assistance of appellate counsel. The petitioner claims that appellate counsel unreasonably failed to assert the defaulted claims on direct appeal. The petitioner has submitted a letter that he received from appellate counsel advising him that there was insufficient record evidence to support some claims and advising that raising the reasonable doubt claim alone would have the best chance of success. (Letter attached to the Petitioner's Reply.) However, this does not establish cause because the petitioner has not demonstrated that his ineffective assistance of appellate counsel claim is potentially meritorious. To establish a claim of ineffective assistance of

counsel, the petitioner must show both that (1) his counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time, and (2) his counsel's deficient performance was prejudicial to his case. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984) ; *Bunkley v. Meachum,* 68 F.3d 1518, 1521 (2d Cir.1995); *see also Redd v. Woughter,* No. 09 Civ. 9819, 2010 WL 4983169, at \*1 (S.D.N.Y. Dec. 3, 2010).

To meet the first prong of the *Strickland* test, the petitioner must establish that his appellate counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Strickland,* 466 U.S. at 687. There is a "strong presumption" that appellate counsel's conduct fell within the broad spectrum of reasonable professional assistance, and a petitioner "bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison,* 477 U.S. 365, 381 (1986) (citing *Strickland,* 466 U.S. at 688–89). Appellate counsel is not obligated to "raise every nonfrivolous issue that the defendant requests." *Jameson v. Coughlin,* 22 F.3d 427, 429 (2d Cir.1994) (quoting *Jones v. Barnes,* 463 U.S. 745, 754 n. 7 (1983)). Instead, the petitioner must demonstrate that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v. Stinson,* 214 F.3d 315, 322 (2d Cir.2000) (quoting *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994) .

**\*8** To meet the second prong of the *Strickland* test, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694; *see also Redd,* 2010 WL 4983169, at \*2.

Appellate counsel did not commit serious error

that prejudiced the petitioner by failing to raise these claims because, as discussed in detail below, each of them is without merit. Because the petitioner's ineffective assistance of counsel claim is without merit, he cannot establish cause for failing to comply with the state procedural bar. In addition, the petitioner cannot demonstrate any actual prejudice. All of the petitioner's claims that were previously dismissed on state procedural grounds are without merit.

### A.

The petitioner alleges three grounds based on alleged prosecutorial misconduct relating to the petitioner's videotaped statement that were previously raised in state court. The petitioner claims that the People violated their *Brady* obligations by suppressing the video, the prosecutor acted as an unsworn witness when he objected to the defense counsel's reference to the videotaped statement, and the prosecutor improperly sought to preclude questioning related to the videotaped statement.

### 1.

Under *Brady v. Maryland,* 373 U.S. 83 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. The *Brady* rule applies to both exculpatory and impeachment evidence. *See Giglio v. United States,* 405 U.S. 150, 154–55 (1972); *United States v. Payne,* 63 F.3d 1200, 1210 (2d. Cir.1995). To establish a *Brady* violation, the petitioner must show (1) that the evidence at issue is favorable to the accused, either because it is exculpatory or impeaching; (2) that the government suppressed the evidence, either willfully or inadvertently and (3) that prejudice ensued. *See Strickler v. Greene,* 527 U.S. 263, 281–82 (1999). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Orena,* 145 F.3d 551, 557 (2d Cir.1998) (quoting

*Kyles v. Whitley,* 514 U.S. 419, 433 (1995)); *see also Chacko v. United States,* No. 00 Civ. 405, 2000 WL 1808662, at \*4 (S.D.N.Y. Dec. 11, 2000).

In this case, the petitioner admits that he and his trial attorney were aware of the existence of his videotaped statement. In addition, the record demonstrates that the petitioner was well aware of his videotaped statement, which was the subject of a pre-trial hearing as well as a motion *in limine.* Therefore, the petitioner cannot establish that only the state knew of the video and suppressed it, as is required to demonstrate a *Brady* violation, and the claim is without merit.

2.

**\*9** The prosecutor did not act as an unsworn witness when he objected to trial counsel's reference to the videotape during summation. At no point did the prosecutor assert his opinion. He merely stated that there was "no evidence" that the petitioner gave a videotaped statement to the police. (Tr. 501.) Although the court overruled the objection, stating that "[t]he jury remembers the evidence," the prosecutor's objection was not baseless, because the videotaped statement was not in evidence. The petitioner's claim that the prosecutor acted as an unsworn witness is without merit.

3.

The petitioner also argues that the prosecutor acted improperly by moving *in limine* for the trial court to preclude questioning about the petitioner's videotaped statement, and that the trial court acted improperly in granting the prosecutor's motion. This argument is not a basis for habeas relief. State court decisions on the admissibility of evidence are governed by state law, and the Supreme Court has instructed that federal habeas courts should not reexamine state court determinations on state law questions. *See Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991). In addition, federal habeas claims based on erroneous evidentiary rulings can only succeed if the petitioner can show that the improperly excluded evidence would have created "a reasonable doubt that did not otherwise exist." *United*

*States v. Agurs,* 427 U.S. 97, 112 (1976). In this case, the trial court excluded questioning about a purely self-serving statement made by the petitioner, when the videotaped statement itself was not being offered as evidence by either party. There is no basis to believe that such an exclusion violated any constitutional right. There is also no reason to believe that such a self-serving statement would have carried sufficient weight against testimony from multiple eye-witnesses when the petitioner had the opportunity in his testimony to repeat anything he thought relevant from his videotaped statement. The claims of prosecutorial misconduct and judicial error regarding suppression of questioning relating to the petitioner's videotaped statement are without merit.

B.

The petitioner's remaining claims of prosecutorial misconduct and judicial error relate to witnesses at trial.

1.

First, the petitioner alleges judicial error based on the trial court's allowing a witness to be recalled when that witness had allegedly been present in the courtroom during previous testimony. In addition, the petitioner claims that his right to cross-examine this witness was violated. However, the witness's testimony consisted of answers to only three questions and there is no evidence that the witness's testimony was influenced in any way by the testimony of any other witness. The petitioner's trial counsel cross-examined the witness and there is no evidence that cross-examination was limited or inhibited in any way. (*See* Tr. 479–80.) The petitioner has failed to show that he was deprived of any constitutional right and it is clear from the record that the petitioner had the opportunity to cross-examine the witness. The petitioner's claims are without merit.

2.

**\*10** Next the petitioner asserts that the prosecutor threatened, harassed, and forced two witnesses to appear for the state. The state compelled two wit-

nesses, Raphael Vasquez and Kamal Johnson, to testify with material witness orders pursuant to New York Criminal Procedure Law § 620.20. (*See* Tr. 305, 325, 356, 531.) Such orders were appropriate in this case because neither witness would have been amenable or responsive to a subpoena. *See* N.Y.Crim. P.L. § 620.20; Tr. 305, 325, 356. Neither witness indicated that he had been threatened to appear in court beyond the material witness orders which were properly issued. (*See* Tr. 304–337, 357–60.) Because the witnesses were properly compelled to appear in court pursuant to § 620.20 and there is no evidence of improper coercion or threats, this claim is meritless.

### 3.

The petitioner also claims that the prosecutor made an improper comment in summation, stating "you do what you got to do" in response to defense counsel's comments about Vasquez and Johnson being "forced" to testify. The prosecutor's remark warrants habeas relief only if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637 (1974)). Because the statement was made during summation, the Court must view it in the context of the entire trial and any remarks made by defense counsel when determining whether it amounted to prejudicial error. *United States v. Young,* 470 U.S. 1, 12 (1985); *see also United States v.. Thomas,* 377 F.3d 232, 244 (2d Cir.2004). The statement in this case did not deny the petitioner a fair trial. The prosecutor made the statement in response to defense counsel's comments in summation and the statement only addressed the prosecutor's conduct in securing Vasquez and Johnson as witnesses for the state. Because the statement was only made in response to contentions made by defense counsel in his summation and was limited in scope and affect, it did not deprive the petitioner of due process at trial. *See, e.g., United States v. Burden,* 600 F.3d 204, 221–22 (2d Cir.2010); *United States v. Myerson,* 18 F.3d 153, 163 (2d Cir.1994). As a result, any claims based on this statement are without merit.

### 4.

Finally, the petitioner alleges that the prosecutor acted improperly when cross-examining the petitioner. The petitioner asserts that his character was "assassinated" when the prosecutor questioned him about his commission of prior crimes. The prosecutor's questioning about the petitioner's prior crimes was limited and did not reveal the particular crimes of which the petitioner had been convicted. (Tr. 421–26.) The prosecutor confirmed the petitioner's prior testimony that he had committed four felonies and several misdemeanors without ever eliciting the nature of the crimes. (*Id.*) In addition, the petitioner's responses to the prosecutor's questions downplayed the petitioner's culpability in the crimes by suggesting they were the result of youthful indiscretions. (*Id.*) Because the questioning about prior crimes did not result in any fundamental unfairness at trial, the petitioner has failed to show that he was deprived of any constitutional right. *See, e.g., Zarvela v. Artuz,* 364 F.3d 415, 418 (2d Cir.2004) ("erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner can show that the error deprived him of a fundamentally fair trial." (internal quotation marks, citations, and emphasis omitted)); *Warren v. Miller,* 78 F.Supp.2d 120, 135 (E.D.N.Y.2000) (questioning about prior crimes for purposes of impeachment did not result in any fundamental unfairness.)

### C.

**\*11** The petitioner also claims that he did not receive effective assistance of counsel because his trial counsel failed to assert his right to be present at all sidebar conferences. The petitioner had a constitutional right to be present at "any stage of the criminal proceeding that [was] critical to its outcome if [the petitioner's] presence would [have] contribut[ed] to the fairness of the procedure ." *United States v. Tureseo,* 566 F.3d 77, 83 (2d Cir.2009) (quoting *Kentucky v. Stincer,* 482 U.S. 730, 745 (1987); *see also Cohen v. Senkowski,* 290 F.3d 485, 489 (2d Cir.2002). The petitioner has

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

offered no evidence as to how his absence from the sidebars affected the fairness of the proceedings or his opportunity to defend himself. Thus, to the extent defense counsel failed to inform the petitioner of his right to be present, there is no evidence that the petitioner suffered any prejudice from his absence at the sidebar conferences. As a result, the petitioner has not established a claim for ineffective assistance of counsel under the standard set out in *Strickland,* 466 U.S. at 686. The petitioner's ineffective assistance of counsel claim is without merit.

### D.

The petitioner's last claim that was dismissed pursuant to New York Criminal Procedure Law § 440.10(2)(c) is that the grand jury proceeding was defective and that the indictment improperly charged the petitioner with both depraved indifference and intentional murder. Because the petitioner was acquitted of both counts of Murder in the Second Degree, any argument that they should not have been included in the indictment is moot. In addition, the petitioner's claim relating to alleged errors in grand jury proceeding is not cognizable in this case because the petitioner was convicted by a jury after a trial. *See Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989).

Because each of the claims the petitioner raised in his section 440.10 motion are without merit, no prejudice results from denying the claims as procedurally barred. Nor does the second exception to the independent and adequate state grounds doctrine provide any basis for relief. This is not "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent," and that would constitute a "fundamental miscarriage of justice" and therefore excuse the petitioner's failure to meet the requirements of New York's preservation policy. *Murray,* 477 U.S. at 495–96; *see also Muir,* 2010 WL 2144250, at *8. There is no reason to conclude that the petitioner is actually innocent, and therefore denying his claims as procedurally barred will not result in a fundamental miscarriage of justice.

Accordingly, the petitioner's claims discussed above, alleging judicial and prosecutorial misconduct, judicial error, ineffective assistance of counsel, and a defective grand jury proceeding are denied because the state court's rejection of them rests on an independent and adequate state ground, the exceptions to that doctrine do not apply, and the claims are, in any event, without merit.

### IV.

**\*12** The petitioner's remaining claims are either moot or without merit.

### A.

The petitioner claims that he was "overreached" numerous times, and that his videotaped statement, which he alleges constituted trial evidence, was never published to the jury because the People or the clerk of the court lost the videotape. The petitioner raises these claims for the first time in the petition before this Court. As a result, they are unexhausted and procedurally barred. *See Jones v. Marshall,* No. 08 Civ. 5793, 2011 WL 9386, at *11–*12 (S.D .N.Y. Jan. 3, 2011). In any case, they are without merit, and the claims may be dismissed on the merits. *See* 28 U.S.C. § 2254(b) (2).

The petitioner alleges that the videotaped statement was introduced as trial evidence through the testimony of Detective Machicote. However, Detective Machicote did not testify at trial; rather, he testified at a pre-trial hearing held on May 31, 2001. (*People v. Chambers,* May 31, 2001, Docket No. 26 at 3–33.) The pre-trial hearing was a separate proceeding from the trial and the trial jury never heard any of Detective Machicote's testimony. Therefore, the detective's testimony regarding the videotaped statement could not possibly introduce the videotape as evidence at trial. Indeed, there is no evidence on the record that the videotape of the petitioner's statement was introduced at trial. Moreover, the petitioner does not explain how his lawyer could have introduced the petitioner's prior statement at trial. Because the videotape was never introduced at trial, and there is no basis to believe it

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

would have been admissible, any loss of the video-tape by the prosecutor or the clerk of the court was harmless for purposes of publishing trial evidence to the jury. The petitioner does not elaborate on how the People "overreached." The petitioner has failed to establish that he was deprived of any constitutional right.

### B.

The petitioner also claims that his trial counsel failed to provide effective assistance when he remained silent at the petitioner's first sentencing and failed to argue that the petitioner's sentence as a discretionary persistent violent felony offender was unconstitutional. This claim is denied as moot because the petitioner's original sentence was vacated, and the petitioner is now incarcerated pursuant to a subsequent sentence as a persistent violent felony offender.

### C.

The petitioner's final claim is that his sentence as a persistent violent felony offender is unconstitutional under *Apprendi* because his maximum sentence was increased by findings made by a trial court, specifically that he had committed two prior violent felonies, rather than a jury. This claim is without merit.

The petitioner's suggestion that his adjudication as a persistent violent felony offender violated *Apprendi* is not tenable, because the *Apprendi* Court explicitly omitted the fact of a prior conviction from the category of facts that must be determined by a jury. *Apprendi,* 530 U.S. at 490; *see also United States v. Santiago,* 268 F.3d 151, 154–55 (2d Cir.2001) (a federal statute that permits a trial court to enhance a defendant's sentence for possession of a firearm after finding that the defendant had three previous convictions for certain offenses committed on different occasions does not violate *Apprendi* ). The persistent violent felony offender statute pursuant to which the petitioner was sentenced requires an indeterminate sentence with a maximum term of life and a minimum term specified in the statute to be imposed whenever the

court finds that a defendant convicted of a violent felony offense was previously convicted of two or more predicate violent felony offenses. *See* N.Y. Penal Law § 70.08. This sentence enhancement depends only upon a finding that the defendant had certain prior felony convictions, which is precisely the kind of fact *Apprendi* and its progeny have explicitly omitted from their requirement that the jury determine facts that would result in a sentence greater than the prescribed statutory maximum. *See, e.g., Cunningham v. California,* 549 U.S. 270, 282 (2007); *Blakely v. Washington,* 542 U.S. 296, 301 (2004); *Apprendi,* 530 U.S. at 490. The state court's denial of the petitioner's challenge to his sentence under the persistent violent felony offender statute therefore was neither contrary to nor an unreasonable application of the rules set out in the *Apprendi* line of cases. *See* Wicks v. Miller, No. 05 Civ. 5341, 2007 WL 1434992, at *8 (S.D.N.Y. May 15, 2007). FN3

> FN3. The Court of Appeals for the Second Circuit has also held that New York's persistent felony offender statute, N.Y. Penal Law § 70.10, does not violate *Apprendi* and its progeny. *Portalatin v. Graham,* 624 F.3d 69, 93–94 (2d Cir.2010) (en banc).

**\*13** Because all of the petitioner's claims are dismissed as procedurally barred, moot, or without merit, and the petitioner has made no showing that an evidentiary hearing could affect the disposition of any of the claims, the petitioner's request for an evidentiary hearing is denied. *See, e.g., Ferrell v. United States,* No. 08 Civ. 8245, 2011 WL 1496339, at *4 (S.D.N.Y. Apr. 20, 2011); *Eley v. Ercole,* No. 08 Civ. 917, 2010 WL 2695522, at *8 (E.D.N.Y. May 6, 2010) (evidentiary hearing is not necessary when "material facts are not in dispute and nothing adduced at the hearing would bear on how this petition should be decided").

### COCNLUSION

The Court has carefully considered all of the parties' arguments. To the extent they are not dealt with above, they are either moot or without merit.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 2226956 (S.D.N.Y.)
**(Cite as: 2011 WL 2226956 (S.D.N.Y.))**

For the reasons explained above, the petitioner's motion to vacate or set aside his conviction and sentence pursuant to 28 U.S.C. § 2254 is **denied.** The petition is therefore dismissed. The clerk is directed to enter judgment dismissing the petition, closing this case, and closing all pending motions. Because the petitioner has failed to make a substantial showing of the denial of a constitutional right the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

**SO ORDERED.**

S.D.N.Y.,2011.
Chambers v. Conway
Not Reported in F.Supp.2d, 2011 WL 2226956 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Westlaw Delivery Summary Report for MCKEON, COURTENA**

Date/Time of Request:                     Monday, September 22, 2014 15:41 Central
Client Identifier:                        O'HALLORAN
Database:                                 DCT
Citation Text:                            Not Reported in F.Supp.2d
Lines:                                    456
Documents:                                1
Images:                                   0

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Not Reported in F.Supp.2d, 2008 WL 1766740 (N.D.N.Y.)
**(Cite as: 2008 WL 1766740 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Jermaine COOPER, Petitioner,
v.
Brian FISCHER, Superintendent of Bedford Hills
Correctional Facility, Respondent.

No. 9:04-CV-0633 (LEK/GHL).
April 14, 2008.

Jermaine Cooper, Comstock, NY, pro se.

Hon. Andrew M. Cuomo, Office of the Attorney General, State of New York, Syracuse Regional Office, Senta B. Siuda, Esq., Assistant Attorney General, of Counsel, Syracuse, NY, for Respondent.

### *DECISION AND ORDER*

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report-Recommendation filed on March 14, 2008, by the Honorable George H. Lowe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern District of New York. Report-Rec. (Dkt. No. 17).

Within ten days, excluding weekends and holidays, after a party has been served with a copy of a Magistrate Judge's Report-Recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations," FED. R. CIV. P. 72(b), in compliance with L.R. 72.1. No objections have been raised in the allotted time with respect to Judge Lowe's Report-Recommendation. Furthermore, after examining the record, the Court has determined that the Report-Recommendation is not subject to attack for plain error or manifest injustice.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No. 17) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that the Petition for a writ of habeas corpus (Dkt. No. 1) is **DENIED** and **DISMISSED;** and it is further

**ORDERED,** that no certificate of appealability shall issue with respect to any of Petitioner's claims; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

**REPORT-RECOMMENDATION**[FN1]

> [FN1]. This action has been referred to the undersigned by District Court Judge Lawrence E. Kahn for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3(c).

GEORGE H. LOWE, United States Magistrate Judge.

Petitioner *pro se* Jermaine Cooper ("Petitioner") is currently an inmate in the custody of the New York State Department of Correctional Services ("DOCS") at Great Meadow Correctional Facility. On February 18, 2000, Petitioner was convicted of second degree possession of a controlled substance, two counts of third degree possession of a controlled substance, and fifth degree possession of a controlled substance after a jury trial in Broome County, New York. (State Court Records ("Records") Exs. 12-16, Trial Transcript ("T") at 1028-1030. He is presently serving an aggregate term of seventeen years to life. (Records Ex. 17 at 21:5.) Petitioner now seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on the grounds that (1) the prosecutor engaged in misconduct by failing to call an exculpatory witness to testify before the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

grand jury; and (2) Petitioner was denied the effective assistance of counsel. For the reasons discussed below, the undersigned recommends that the petition be denied.

## I. Background

A. *State Court Proceedings*

Following a criminal investigation of (Petitioner) and pursuant to three search warrants which authorized the search of (Petitioner), his residence and his motor vehicle, on June 10, 1999, police located and attempted to stop (Petitioner)'s vehicle. At the time, Gerald Graven was driving the vehicle while (Petitioner) rode in the passenger seat. Graven, disregarding traffic signals and stop signs, led police on a high speed chase through residential neighborhoods in the City of Binghamton and the Village of Johnson City, Broome County, forcing other vehicles-including a school bus-off the road. During the chase, two eyewitnesses observed a plastic bag containing over two ounces of cocaine thrown from the passenger-side window of defendant's vehicle. When ultimately the vehicle crashed, (Petitioner) fled on foot, but he was located by police with canine assistance in a nearby building and arrested. On the same day, the police searched (Petitioner)'s home and seized a digital scale which contained a trace amount of cocaine and seven "corner wraps" of crack cocaine.
**\*2** *People v. Cooper,* 756 N.Y.S.2d 339, 341 (N.Y.App.Div.2003).

Petitioner testified before a grand jury. He told the grand jury that Gerald Graven was prepared to testify that the drugs thrown out of the car window belonged to him and that Petitioner did not know there were drugs in the car. (Records Ex. 20 at 3.) The grand jurors asked the prosecutor if Graven would testify before them. (Records Ex. 21 at SA 146:22-SA 147:21.) The prosecutor stated "All I can tell you is that you are considering charges against that individual, okay. So, the D.A.'s office ... can't produce that person. He's a defendant. And

a defendant is always free to testify before the grand jury when they request to testify before the grand jury ... We can't request of a defendant to come in and testify." (Records Ex. 21 at SA 147:1-14.)

On July 23, 1999, the grand jury indicted Petitioner for second degree criminal possession of a controlled substance, two counts of third degree criminal possession of a controlled substance, fifth degree criminal possession of a controlled substance, and second degree conspiracy <sup>FN2</sup>. (Records Ex. 1.)

> FN2. The trial court dismissed the conspiracy charge before trial. (Records Ex. 10 at 18:4-14.)

On February 2, 2000, Petitioner moved to dismiss the entire indictment on the basis of prosecutorial misconduct or, in the alternative, for the prosecutor's failure to produce Graven to testify before the grand jury. (Records Ex. 9 at 25:23-26:8.) The trial court denied the motion. (Records Ex. 9 at 30:24.)

At trial, Petitioner called Graven as a witness. (T. at 792:1-861:13.) Graven testified that the drugs in the car were his. (T. at 801:17-809:20.) He further testified that he had wanted "to come to the grand jury proceedings, but by the time ... my attorney got notification, I guess it was too late, they didn't let me appear." (T. at 809:20-24.)

On February 18, 2000, the jury returned guilty verdicts on the charges of second degree possession of a controlled substance, two counts of third degree possession of a controlled substance, and fifth degree possession of a controlled substance. (T. at 1028:23-1030:6.)

On March 7, 2000, the trial court sentenced Petitioner to (1) 12 years to life on the second degree possession of controlled substances charge, to be served concurrently with a sentence of 10 to 20 years on the third degree possession of controlled

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

substances charge regarding the cocaine thrown out of the car; and (2) five to ten years for the third degree possession of controlled substances charge regarding the seven corner wraps of cocaine discovered in Petitioner's apartment, to be served concurrently with a sentence of three to six years for the fifth degree possession of controlled substance charge. The aggregate sentence was 17 years to life. (Records Ex. 17 19:25-21:5.)

Petitioner appealed. Through counsel, he argued that there were defects in the grand jury proceeding and that the sentence was unduly harsh or severe. (Records Ex. 20.) Acting on his own behalf, Petitioner filed a supplemental brief arguing (1) the search warrants did not comply with CPLR 690.40(1) or *Aguilar/Spinelli;* (2) there was an improper variance between the evidence submitted to the grand jury and the prosecution's theory at trial; (3) the trial court erred by allowing the prosecution to amend the indictment; (4) the trial court erred by denying defense counsel's request for more time to prepare for trial; (5) ineffective assistance of counsel; (6) that there was insufficient evidence that Petitioner possessed drugs; and (7) that there was insufficient evidence of accessory liability. (Records Ex. 23.)

**\*3** On March 6, 2003, the Third Department affirmed Petitioner's conviction. Regarding the grand jury proceedings, the appellate court stated that:

Defendant asserts that because he requested that codefendant Graven be called to testify on defendant's behalf before the grand jury and that this allegedly exculpatory evidence was not presented, the indictment should have been dismissed. By statute, a defendant may request-orally or in writing-that the grand jury exercise its discretion to call a particular witness and, here, after hearing defendant's testimony, a grand jury member asked the prosecutor whether Graven could be produced to give testimony. At the time, however, the grand jury was considering similar charges against Graven arising out of the same incident and Graven had not given the required

written notice to the District Attorney that he-as the subject of a grand jury investigation-desired to testify. The prosecutor thus addressed the grand jury's inquiries regarding Graven's availability as follows:

"All I can tell you is that you are considering charges against that individual, okay. So, the DA's Office-when you are considering charges against somebody, the DA's Office can't produce that person. He's a defendant. And a defendant is always free to testify before the grand jury when they request to testify before the grand jury. * * * We can't request of a defendant to come in and testify. * * * All I can tell you is if the defendant had requested from the DA's Office to testify, he would be here. That's the only way I can phrase it."

Prior to trial, defendant moved to have the indictment dismissed due to the People's failure to produce Graven at the request of the grand jury. County Court denied the motion, concluding that the People had no duty to request that a codefendant give testimony.

Upon our review of the relevant facts and circumstances, we perceive no error or failure in compliance with defendant's statutory rights ... which would amount to one of those rare situations where the indictment must be dismissed because "the integrity [of the grand jury proceeding] is impaired and prejudice to the defendant may result".

Significantly, although a defendant has a qualified right to testify voluntarily before the grand jury if he or she gives the required written notice, he or she may not be compelled to testify. Here, the trial court was understandably concerned that, had the prosecutor issued a request that Graven testify before the grand jury, Graven's potentially negative response could infringe upon his privilege against self-incrimination. In contrast, defendant had no absolute right to have a particular witness testify and, given Graven's failure to af-

firmatively assert his right to testify, the People were justified in declining to call him. Accordingly, under the specific circumstances presented, we perceive no error in the manner in which the prosecutor handled the grand jury's request to hear Graven's testimony.

**\*4** *People v. Cooper,* 756 N.Y.S.2d 339, 341-42 (N.Y.App.Div.2003) (citations omitted).

Regarding ineffective assistance of counsel, the appellate court stated:

On this record, we find no merit to defendant's claim that he was denied the effective assistance of counsel. Defense counsel made appropriate pretrial motions, engaged in cogent cross-examination and rendered opening and closing statements which emphasized possible inconsistencies in the People's case. Viewed in totality, the representation was meaningful.

*Id.* at 343.

Petitioner, through counsel, moved for leave to appeal to the New York Court of Appeals regarding the grand jury issue. (Records Ex. 26.) Acting on his own behalf, Petitioner applied for leave to appeal to the Court of Appeals regarding other issues. (Records Ex. 27.) On June 17, 2003, the Court of Appeals denied leave to appeal. (Records Ex. 29.)

B. *Proceedings in this Court*

Petitioner filed the present petition in this Court on June 3, 2004. (Dkt. No. 1.) Respondent filed his response on October 22, 2004. (Dkt. No. 11.) The Court granted Petitioner leave to file a traverse. (Dkt. No. 13.) Petitioner filed the traverse on January 10, 2005. (Dkt. No. 14.)

**II. Discussion**

A. *Standard of Review*

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the

United States. 28 U.S.C. § 2241(c) (2006). Relief does not lie for errors of state law. *Estelle v. McGuire,* 502 U .S. 62, 67-68 (1991); *DiGuglielmo v. Smith,* 366 F.3d 130, 136-137 (2d Cir.2004). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Petitioner may obtain habeas relief by showing that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1) (2006); *Carey v. Musladin,* 127 S.Ct. 649, 653 (2006); *Campbell v. Burgess,* 367 F.Supp.2d 376, 380 (W.D.N.Y.2004). "By 'contrary to,' the state court decision may be either contrary to Supreme Court precedent on a question of law or the state court decision is opposite to a relevant Supreme Court case with 'materially indistinguishable' facts." *Johnson v. West,* No. 9:04-cv-751, 2007 WL 952058 at \*2 (N.D.N.Y. Mar. 29, 2007), *quoting Williams v. Taylor,* 529 U.S. 362, 405-406 (2000). A state court unreasonably applies federal law when the state court correctly identifies the governing legal rule in a particular case but applies the rule to the facts in an "objectively unreasonable" manner. *Johnson v. West,* 2007 WL 952058 at \*2 (quoting *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Although 'some increment of incorrectness beyond error is required' "in order to grant a federal habeas application, that increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000); *see also Hawkins v. Costello,* 460 F.3d 238, 243 (2d Cir.2006). The state court's determination of a factual issue is presumed to be correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e) (1) (2006); *DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005), *cert. denied* 546 U.S. 884 (2005); *Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir.2001).

B. *Petitioner's Claims Regarding the Grand Jury Proceeding Are Not Cognizable In This Federal Habeas Corpus Proceeding*

**\*5** Petitioner argues that the "prosecutor violated Petitioner's right to a fair trial by improperly handling the Grand Jury request to hear Gerald Graven's testimony. Prosecutor's misconduct also impaired the integrity of the Grand Jury in violations (sic) of Petitioner's Due Process Rights." (Dkt. No. 1 at 5(a).) Petitioner's argument is without merit.

When a defendant has been convicted after a trial, any alleged deficiencies in the indicting grand jury's proceedings are not cognizable in a federal habeas corpus proceeding. *Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989.) *See also Blake v. Leonardo,* 710 F.Supp. 446, 449-50 (E.D.N.Y.1989); *Klosin v. Conway,* 501 F.Supp.2d 429, 436 (W.D.N.Y.2007); *Mariani v. Kelly,* No. 97-CV-384 FJS/GLS, 2001 WL 1860961, at \*5 (N.D.N.Y. Jan. 17, 2001); *Miller v. Hunt,* No. 9:06-CV-177 DNH/VEB, 2008 WL 170411, at \*5 (N.D.N.Y. Jan. 15, 2008). This rule stems from the United States Supreme Court's decision in *United States v. Mechanik,* 475 U.S. 66 (1986). In *Mechanik,* the prosecutor arguably violated Federal Rule of Criminal Procedure 6(d) by allowing two law enforcement agents to be sworn together and questioned in tandem before the grand jury. The grand jury indicted the defendants, who were later convicted after a jury trial. The defendants appealed, arguing that the error in the grand jury proceeding warranted reversal of their convictions. The United States Supreme Court held that:

the petit jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation. In such a case, the societal costs of retrial after a jury verdict of guilty are far too substantial to justify setting aside the verdict simply because of an error in the earlier grand jury proceedings.

*Mechanik,* 475 U.S. at 73.

In *Lopez,* the Second Circuit faced a similar issue in the *habeas* context. Lopez was indicted by a grand jury and later convicted by a petit jury of manslaughter. He petitioned for a writ of *habeas corpus,* alleging various errors in the grand jury proceedings, including an allegation that "the prosecutor did not sufficiently develop before, or adequately present to, the grand jury allegedly exculpatory evidence." *Lopez,* 865 F.2d at 31. Relying on *Mechanik,* the Second Circuit stated that "(i)f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in federal court. The particular claims of impropriety before the grand jury in this case ... (were) cured in the trial before the petit jury, which convicted." *Lopez,* 865 F.2d at 32-33.

Here, Petitioner argues that there were deficiencies in the grand jury proceeding. Petitioner was found guilty by a petit jury. Therefore, his claims are not cognizable on federal *habeas* review. Accordingly, the undersigned recommends that the petition be denied on this ground.

C. *Petitioner's Claims Regarding Ineffectiveness of Counsel Are Without Merit*

**\*6** Petitioner argues that trial counsel [FN3] rendered ineffective assistance due to his "failure to submit any pre trial discovery motions contesting the arrest and/or suppression of physical evidence, failure to conduct meaningful cross examination of prosecution witnesses, failure to conduct a proper investigation i.e. interview witnesses and failure to object to prosecutorial misconduct (handling of the Grand Jury's request)." (Dkt. No. 1 at 5(b).)

> FN3. Petitioner was represented by two attorneys. Thomas A. Muscatello, Esq., represented Petitioner initially. He was replaced four weeks prior to trial by Michael J. Sullivan, Esq.

The state appellate court addressed Petitioner's claim of ineffective assistance of counsel on the merits. *People v. Cooper,* 756 N.Y.S.2d 339, 343 (N.Y.App.Div.2003). Thus, the deferential AEDPA standard applies, and this Court may only grant relief if the state court's decision was "contrary to, or

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1) (2006); *Carey v. Musladin,* 127 S.Ct. 649, 653 (2006); *Campbell v. Burgess,* 367 F.Supp.2d 376, 380 (W.D.N.Y.2004).

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both: (1) that counsel's representation fell below an objective standard of reasonableness, measured in the light of prevailing professional norms; and (2) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington,* 446 U.S. 674, 688-90 (1984); *Wiggins v. Smith,* 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland.*).[FN4] There is a strong presumption that counsel's conduct fell within the wide range of reasonable assistance and that counsel's actions constituted sound trial strategy under the circumstances. *Cuevas v. Henderson,* 801 F.2d 586, 589-90 (2d Cir.1986).

> FN4. In *Williams v. Taylor,* the Supreme Court declared that "the rule set forth in Strickland qualifies as 'clearly established Federal law [.]'" *Williams,* 529 U.S. 362, 391 (2000).

Here, the state court's decision reasonably applied clearly established federal law. The state court correctly found that Petitioner's counsel's performance was objectively reasonable. The record shows that Petitioner's attorneys actively litigated on his behalf. Petitioner's original attorney moved to suppress physical evidence. (Records Ex. 4.) Trial counsel also moved to suppress physical evidence. (Records Ex. 8.) As discussed above, trial counsel moved to dismiss the indictment based on the alleged defects in the grand jury proceeding. (Records Ex. 9 at 24:23-26:8.) Trial counsel cross-examined the custodian of evidence (T. at 237:6-240:21), the officer who released Petitioner's car to him after it was impounded (T. at 245:24-246:16), the custodian of bail records (T. at 262:16-262:25), the eyewitnesses (T. at 276:5-288:9; 310:1-322:23, 426:8-431:20), three state police investigators (T. at 355:11-378:5, 603:1-619:17, 640:19-645:21), two of the officers involved in the events leading to Petitioner's arrest (T. at 399:10-413:14, 465:20-469:23), the crime lab drug chemist (T. at 525:5-544:21), the state police certified latent fingerprint examiner (T. at 560:5-561:10), and four acquaintances of Petitioner (T. at 679:15-692:3, 729:22-741:2, 758:22-761:8, 777:7-778:24). Trial counsel called several witnesses. (T. at 792-914:4.) His closing argument raised the weaknesses in the prosecution's case. (T. at 926:11-941:22.) This performance was objectively reasonable. Accordingly, Petitioner was not denied effective assistance of counsel.

D. *Petitioner's Other Claims*

**\*7** Petitioner listed three other grounds in his petition: (1) "harsh and excessiveness of illegal consecutive sentence"; (2) "perjury and false testimony of prosecutor"; and (3) "prosecutor and court impermissibly changed the theory of case by amending the indictment." (Dkt. No. 1 at 3(a).) Petitioner did not provide any factual basis for those grounds. Rather, the narrative portion of his petition focuses on the grand jury issues and ineffective assistance of counsel.

The undersigned notes that the state appellate court considered and rejected each of Petitioner's arguments with respect to these further claims. *People v. Cooper,* 756 N.Y.S.2d 339, 343 (N.Y.App.Div.2003). Petitioner, by failing to provide any factual basis or legal arguments regarding these grounds, has not met his burden of showing that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Su-

preme Court." 28 U.S.C. § 2254(d)(1) (2006). However, given the special solicitude that must be granted to *pro se* litigants, I will address each argument briefly.

As to the first argument, the United States Supreme Court has noted that "(o)utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare. (O)ne could argue without fear of contradiction by any decision of this Court that for crimes concededly classified and classifiable as felonies ... the length of the sentence actually imposed is purely a matter of legislative prerogative." Rummel v. Estelle, 445 U.S. 263, 272-274 (1989) (denying *habeas* relief to petitioner sentenced to life with the possibility of parole under Texas recidivist statute following third felony conviction for obtaining $120.75 by false pretenses). In the *habeas* context, a sentence violates the Eighth Amendment only in "exceedingly rare" and "extreme" cases, and only then if it is 'grossly disproportionate' to the crime. Lockyer v. Andrade, 538 U.S. 63, 72-73 (2003). This is not such a case.

Petitioner's second argument is apparently a reference to the prosecutor's statement during oral argument in the trial court that he had spoken to Graven's attorney, who indicated that Graven did not wish to testify before the grand jury. The trial judge told the prosecutor:

You've got a problem now because I talked to (Graven's attorney) yesterday afternoon and he said his client said to him specifically yes, he wanted to testify before the (grand) jury and (that Graven's attorney) never communicated anything to you.

(Records Ex. 9 at 25:10-22.) Despite this warning, the trial court concluded that there had been no prosecutorial misconduct. (Records Ex. 9 at 25:23-26:1.) Petitioner has not rebutted this factual finding by clear and convincing evidence. 28 U.S.C. § 2254(e)(1) (2006).

Petitioner's third argument apparently refers to the amendment of Count Five of the indictment to refer to possession of "a quantity of the narcotic drug cocaine" rather than "seven corner wraps of the narcotic drug cocaine." (Records Ex. 7.) The trial court granted the motion to amend at a January 27, 2000, pretrial hearing. (Records Ex. 9 at 2:11-17.)

**\*8** "A claim that the indictment underlying a state court conviction was impermissibly altered is generally a matter of state law and would not ordinarily be cognizable on habeas corpus review. However, states are required by the Sixth Amendment, which is applicable to them by operation of the due process clause of the Fourteenth Amendment, to provide fair notice of the charges against the accused so that he has a meaningful opportunity to defend against them." Gaston v. Conway, No. 06 Civ. 4365 SAS JCF, 2008 WL 501339, at \*7 (S.D.N.Y. Feb. 26, 2008). The United States Supreme Court has held that an indictment satisfies due process if it (1) contains the elements of the offense charged; (2) provides the defendant adequate notice of the charges against which he must defend; and (3) protects against double jeopardy by enabling the defendant to rely on either an acquittal or conviction as a bar to future prosecutions for the same offense. Russell v. United States, 369 U.S. 749, 763-64 (1962). "Courts within this Circuit have uniformly required petitioners to establish that they were prejudiced by an amendment to an indictment to prevail on a claim challenging such an amendment." Gaston v. Conway, No. 06 Civ. 4365 SAS JCF, 2008 WL 501339, at \*7 (S.D.N.Y. Feb. 26, 2008).

Here, Petitioner has not shown that the indictment was insufficient to satisfy due process or that he was prejudiced by the amendment to the indictment.

**WHEREFORE,** based upon the foregoing, it is hereby

**RECOMMENDED,** that the petition for a writ

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1766740 (N.D.N.Y.)
**(Cite as: 2008 WL 1766740 (N.D.N.Y.))**

of habeas corpus (Dkt. No. 1) be **DENIED** and **DISMISSED.** Furthermore, the undersigned finds that Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S .C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000). Therefore, I recommend that no certificate of appealability should issue with respect to any of Petitioner's claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e); *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (*citing Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)).

N.D.N.Y.,2008.
Cooper v. Fischer
Not Reported in F.Supp.2d, 2008 WL 1766740 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Westlaw Delivery Summary Report for MCKEON, COURTENA**

Date/Time of Request:                    Monday, September 22, 2014 15:40 Central
Client Identifier:                       O'HALLORAN
Database:                                DCT
Citation Text:                           Not Reported in F.Supp.2d
Lines:                                   650
Documents:                               1
Images:                                  0

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.



Not Reported in F.Supp.2d, 2009 WL 1606092 (N.D.N.Y.)
**(Cite as: 2009 WL 1606092 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Jeffrey NICKEL, Petitioner,
v.
Robert E. ERCOLE, Superintendent of Green
Haven Correctional Facility, Respondent.

Civ. No. 9:06–CV–390 (LEK/RFT).
May 11, 2009.

West KeySummary**Criminal Law 110 ⚖ 1931**

110 Criminal Law
   110XXXI Counsel
     110XXXI(C) Adequacy of Representation
      110XXXI(C)2 Particular Cases and Issues
       110k1921 Introduction of and Objections to Evidence at Trial
        110k1931 k. Experts; Opinion Testimony. Most Cited Cases

    A defendant's trial counsel was not ineffective for not calling an expert witness to testify on the issue of the suggestibility of the child witnesses' testimony, in a trial for sodomy and aggravated sexual abuse. The defendant's counsel did cross-examine the children and investigating officers, and provided the trial court with information and case law concerning child suggestibility. Given that information, the trial court was in a position to make a reasoned determination concerning the reliability of the child witnesses as to their credibility. Moreover, counsel identified the issue of suggestiveness and improper interviewing techniques in his opening statement and closing statements. U.S.C.A. Const.Amend. 6.

James E. Long, Albany, NY, for Petitioner.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Paul B. Lyons, Esq., Assistant Attorney General, of Counsel, New York, NY, for Respondent.

*REPORT–RECOMMENDATION and ORDER*
RANDOLPH F. TREECE, United States Magistrate Judge.

   **\*1** Petitioner Jeffrey Nickel brings this *Habeas Corpus* Petition, pursuant to 28 U.S.C. § 2254, on the following grounds: the trial court violated his due process rights by (1) denying his motion for a pre-trial "taint hearing" and (2) excluding expert testimony, and (3) ineffective assistance of counsel. Dkt. No. 13, Pet'r Mem. of Law. For the reasons that follow, it is recommended that the Petition be **denied.**

**I. BACKGROUND**
   On August 18, 2000, Petitioner was indicted by an Albany County Grand Jury on seven (7) counts:

   1. Sodomy in the First Degree (N.Y. PENAL LAW § 130.50(3))

   2. Aggravated Sexual Abuse in the Second Degree (N.Y. PENAL LAW § 130.67(1))

   3. Use of a Child in a Sexual Performance (N.Y. PENAL LAW § 263.05)

   4. Sexual Abuse in the First Degree (N.Y. PENAL LAW § 130.65)

   5. Sexual Abuse in the First Degree (N.Y. PENAL LAW § 130.65)

   6. Endangering the Welfare of a Child (N.Y. PENAL LAW § 260.10)

   7. Sexual Abuse in the First Degree (N.Y. PENAL LAW § 130.65)

   Dkt. No. 15, State Ct. R. (hereinafter "R.") at pp. 46–52.

   Represented by William J. Gray, Petitioner proceeded to a bench trial on May 17, 2001, before the Honorable Paul Czajka, visiting County Court Judge.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1606092 (N.D.N.Y.)
**(Cite as: 2009 WL 1606092 (N.D.N.Y.))**

At trial, Claudette Scostak, a mail clerk at the Albany Correctional Facility, testified that while inspecting incoming mail for contraband in early August 2000, she happened upon four letters from Petitioner addressed to an inmate that contained pictures of young boys. Dkt. No. 15, R., Trial Tr., dated May, 17, 2001 (hereinafter "Trial Tr."), at pp. 26–35. None of the pictures contained any nudity or other sexual activity, however, the clerk nonetheless delivered the letters to her supervisor, and the Albany County Sheriff's Department was notified. *Id.* at pp. 39–41. Thereafter, the Sheriff's Department commenced an investigation and located and interviewed some of the boys in the photographs, including K.S. and Z.K.[FN1] *Id.* at pp. 41–43. After conducting such interviews, the police interviewed Petitioner.

> FN1. Initials will be used in lieu of the boys' complete names in order to maintain confidentiality of their identities. *See* N.Y. CIV. RIGHTS LAW § 50–b.

Petitioner gave a signed statement to Investigator Mark DeFrancesco, which was offered and accepted into evidence at trial. *Id.* at pp. 287–98. In his statement, Petitioner stated that while he was working as a counselor at a day camp, he "horsed around" in the pool with J.C. and "reach[ed] and grabb[ed] his butt," which "excited" Petitioner. R., Pet'r Statement, dated Aug. 7, 2000, at p. 42. He stated that while in the pool he "probably steered [his] foot into [J.C.'s] groin, touching his penis and scrotum." *Id.* Petitioner also stated that while volunteering at a children's center he "may have [fallen] in love with [K.S.]." *Id.* at p. 43. He admitted to touching K.S. in a sexual manner and for his own sexual gratification while playing in the pool, stating that he "would feel [K. S.'s] bottom with [his] hands caressing it," and that he touched K. S.'s groin and was stimulated as a consequence. *Id.* After his interview, Petitioner consented to a search of his home that yielded, *inter alia,* a picture of a man who appeared to be Petitioner engaged in a sexual act with a boy. *Id.* at pp. 50–60.

*2 Three boys, K.S., J.C., and Z.K., testified against Petitioner at trial after a determination by the court that they were competent to testify. K.S. testified that Petitioner: "put his hands in [K.S.'s] pants" on several occasions while they swam in a local pool; put his finger inside K.S.'s anus on one occasion; and that Petitioner placed his mouth on K.S.'s penis and took a photograph of the act. Trial Tr. at pp. 182–90, & 194. J.C. testified that while in a swimming pool, Petitioner put his foot inside J.C.'s swim trunks and touched his testicles with his foot. *Id.* at pp. 228–30. Z.K. testified that he did not have any sexual contact with Petitioner.[FN2] *Id.* at p. 266. Mr. Gray, Petitioner's counsel, cross-examined both K.S. and J.C. *Id.* at pp. 207–12, & 230–38.

> FN2. The charges concerning Z.K. were thereafter dropped by the prosecution.

Judge Czajka convicted Petitioner of one count each of Sodomy in the First Degree (count # 1), Aggravated Sexual Abuse in the Second Degree (count # 2), Endangering the Welfare of a Child (count # 6), and two counts of Sexual Abuse in the First Degree (counts # 4 & 5), but acquitted him of count # 3, Using a Child in a Sexual Performance.[FN3] Trial Tr. at pp. 467–68. Petitioner was thereafter sentenced to a determinate term of twenty-five (25) years incarceration on the Sodomy conviction; a determinate term of fifteen (15) years incarceration on the Aggravated Sexual Abuse conviction; and two determinate terms of seven (7) years incarceration each on the two Sexual Abuse convictions. These first four sentences were to run consecutively to one another and concurrently with the one-year incarceration imposed on the Endangering the Welfare of a Child conviction. R. at pp. 865–66.

> FN3. Count seven (7) was dropped by the prosecution during the trial. *People v. Nickel,* 14 A.D.3d 869, 788 N.Y.S.2d 274 (N.Y.App. Div.3d Dep't 2005) ("Following a bench trial, the court dismissed one count of aggravated sexual abuse.").

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1606092 (N.D.N.Y.)
**(Cite as: 2009 WL 1606092 (N.D.N.Y.))**

Petitioner filed a direct appeal through present counsel James E. Long raising, *inter alia,* the same grounds raised in the instant Petition. Dkt. No. 15, Pet'r Br. The New York State Supreme Court, Appellate Division, Third Department, rejected Petitioner's arguments and affirmed his conviction, but reduced his sentence from a imprisonment term of fifty (50) years to a term of thirty-two (32) years based on Petitioner's previously clean criminal record. *People v. Nickel,* 14 A.D.3d 869, 788 N.Y.S.2d 274, 278–79 (N.Y.App. Div.3d Dep't 2005). Petitioner's subsequent Application for Leave to Appeal the Appellate Division's decision to the Court of Appeals was denied. *People v. Nickel,* 4 N.Y.3d 834, 796 N.Y.S.2d 589, 829 N.E.2d 682 (2005). Petitioner filed the present *Habeas* Petition on March 31, 2006. Dkt. No. 1, Pet. Respondent concedes that all of Petitioner's claims are timely and have been properly exhausted. Dkt. No. 8, Resp't Mem. of Law at pp. 12–13.

## II. DISCUSSION
### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

**\*3** 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Hawkins v. Costello,* 460 F.3d 238 (2d Cir.2006); *DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005); *Miranda v. Bennett,* 322 F.3d 171, 177–78 (2d Cir.2003); *Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir.2001).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir.1997); *Rivera v. New York,* 2003 WL 22234679, at \*3 (S.D.N.Y. Aug. 28, 2003). The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e) (1); *see also DeBerry v. Portuondo,* 403 F.3d at 66; *Boyette v. LeFevre,* 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

[u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz,* 237 F.3d 147, 152 (2d Cir.2001) (citing *Williams and Francis S. v. Stone,* 221 F.3d 100, 108–09 (2d Cir.2000)).

### B. Due Process Claim

Petitioner claims that his due process rights were violated when the trial court denied his motion to suppress without a pre-trial "taint" hearing to determine whether pre-trial statements given by the child victims were the product of suggestive police questioning so as to make the children's testimony inadmissible at trial.

Prior to trial, Petitioner filed an *omnibus* motion seeking, *inter alia,* suppression of "testimony of any of the complaining witnesses/alleged victims

herein, or any other child witnesses intended to be introduced at trial, due to the unduly suggestive nature of the interviews and resultant unreliability of said testimony, or in the alternative the granting of a 'taint' hearing to determine said issue." R. at p. 88. Petitioner argued that "nearly all experts agree that pretrial interviews of alleged child sex abuse victims should be recorded to reduce danger that the children's recollection is tainted by suggestive questioning." *Id* . at p. 103 (internal quotation marks and citation omitted). Further, Petitioner argued that because the police officers' affidavits set forth only the responses of the child interviewees, and not the questions that were asked, "there may have been and in fact must have been suggestive questioning by members of the Albany County Sheriff's Department ... that render their testimony so unreliable as that it must be suppressed." *Id.* at p. 104 (citation omitted). Thus, Petitioner stated that a hearing was necessary "to determine whether the children's recollections are tainted and their in-court testimony should be barred as unreliable as a result of the taint." *Id.* at p. 105 (citation omitted). The trial court denied Petitioner's motion for a "taint hearing," stating that his "speculative assertions without citing any instances of conduct which might form a basis for arguing that the questioning was suggestive, are insufficient to warrant a pretrial hearing." *Id.* at p. 167 (citation omitted).

**\*4** Petitioner now claims that his due process rights were violated when the trial court denied his motion for a pre-trial hearing to determine whether the children's pre-trial statements were tainted by suggestive police questioning. The Appellate Division rejected Petitioner's claim, holding that

[a]lthough there is no express statutory authority for a hearing to determine whether the testimony of child witnesses has been tainted by suggestive interviewing techniques [ ], such absence is not determinative .... Upon a proper showing, a court may direct a pretrial taint hearing .... Here, defendant failed to make a nonspeculative showing of any undue suggestion. In any event, any sug-

gestibility, the manner of questioning and its effects on the victims' testimony could be, and was, addressed on cross-examination of the victims and the police investigators .... Thus, the court properly denied a pretrial taint hearing.

*People v. Nickel,* 788 N.Y.S.2d at 277.

As Respondent points out, Petitioner has not identified a federal due process right to a pre-trial taint hearing to determine whether an interviewed child was the subject of suggestive questioning, nor has this Court's research uncovered any. In fact, Petitioner all but concedes the point by "asking this court to apply the fundamental principles of due process to the issue of law enforcement interview techniques of children in the same manner and format as the courts of this nation have done with respect to confessions and eyewitness identification proceedings." Pet'r Mem. of Law at p. 5, 788 N.Y.S.2d 274. None of the cases cited to by Petitioner recognize a *federal* due process right to a pre-trial hearing to determine whether an interview of a child was unduly suggestive, although hearings have been deemed necessary in other contexts. *See, e.g., United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (holding that a hearing was necessary to determine whether witnesses' in-court identifications of the accused should be excluded due to the taint of an unconstitutional pretrial line-up procedure); *cf. Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) (holding that a child's pre-trial **hearsay** statements were not properly admitted into evidence under the Confrontation Clause).

Petitioner's reliance on *Washington v. Schriver is misplaced.* 255 F.3d 45 (2d Cir.2001). That case concerned whether the exclusion of an expert's testimony regarding the suggestibility of child witnesses constituted constitutional error under the Due Process Clause, not whether there is a due process right to a pre-trial taint hearing whenever a child witness has been interviewed prior to trial. *Id.* (holding that the exclusion of the expert testimony did not constitute constitutional error). Also, in

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*State v. Michaels,* another case cited by Petitioner, although the New Jersey Supreme Court ordered that a pre-trial taint hearing be held to determine whether interrogations of child-witnesses were improperly suggestive, it did not do so based on a recognition of a federal constitutional due process right. 136 N.J. 299, 642 A.2d 1372 (1994). In any event, this Court is not bound nor swayed by *Michaels.*

**\*5** Irrespective of the academic studies to which Petitioner cites that call attention to the danger of distortion of a child's testimony through the use of suggestive questioning, this Court's analysis is limited to the application of clearly established federal law, not Petitioner's argument of what the federal law ought to be.

Because Petitioner has identified no violation of an established federal right, the Court finds that the Appellate Division's decision was not contrary to clearly established federal law, and therefore recommends that the Petition be **denied** on this ground.

#### C. Ineffective Assistance of Counsel

Petitioner alleges that his trial counsel, Mr. William Gray, provided constitutionally deficient representation because he failed to (1) call an expert witness on the issue of the suggestibility of the child-witnesses' testimony, and to (2) move for an adjournment to consult a medical expert upon receipt of a newly discovered medical report during trial. Pet.

To establish ineffective assistance of counsel, a *habeas* petitioner must show 1) counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms; and 2) prejudice, i.e., there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 688 & 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (cited in *Bell v. Cone,* 535 U.S. 685, 695, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002)); *see*

*also Aeid v. Bennett,* 296 F.3d 58, 62–63 (2d Cir.2002); *Brown v. Artuz,* 124 F.3d 73, 79–80 (2d Cir.1997); *Rattray v. Brown,* 261 F.Supp.2d 149, 157 (E.D.N.Y.2003).[FN4] In determining the reasonableness of counsel's conduct courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland v. Washington,* 466 U.S. at 689.

> FN4. In *Williams v. Taylor,* the Supreme Court declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law [.]' " 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Sellan v. Kuhlman,* 261 F.3d 303, 309 (2d Cir.2001).

##### 1. *Failure to Call Expert Witness*

Petitioner claims that trial counsel's failure to call an expert witness to testify on the issue of suggestiveness and improper interview techniques constituted ineffective assistance of counsel. The Appellate Division held that

> [a]lthough counsel did not present an expert witness regarding child victim suggestibility, he cross-examined the children and investigating officers, and provided County Court with information and case law concerning child suggestibility. Given this information, County Court was clearly in a position to make a reasoned determination concerning the reliability of the child witnesses as well as their credibility. Despite defendant's hindsight disagreement with counsel's trial strategies, defendant was provided meaningful representation.

*People v. Nickel,* 788 N.Y.S.2d at 278.[FN5]

> FN5. We note that although the standards for determining ineffective assistance of counsel are different under New York law and federal law, the Second Circuit has held that New York's standard as established in *People v. Baldi,* 54 N.Y.2d 137,

444 N.Y.S.2d 893, 429 N.E.2d 400 (1981), "is not 'contrary to' the *Strickland* standard for purposes of § 2254(d) (1)," and therefore the deferential AEDPA standard applies to ineffective assistance of counsel claims dismissed on the merits by state courts under the less exacting New York standard. *Henry v. Poole,* 409 F.3d 48, 69–70 (2d Cir.2005).

The Appellate Division's conclusion was not an unreasonable application of federal law. It is the law of this Circuit that "[t]he decision to call an expert witness is a strategic decision for the defense counsel, and generally should not be disturbed." *Mazique v. Ercole,* 2008 WL 2884370, at *9 (E.D.N.Y. July 23, 2008) (*citing United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir.1987)). As the Appellate Division noted, trial counsel brought the issue of suggestiveness to the fore through his cross-examinations of the child-witnesses and the investigators who interviewed them. Trial Tr. at pp. 69–78, 90–104, 133–38, 207–12, 233–38, & 316–26; *see, e.g., Jelinek v. Costello,* 247 F.Supp.2d 212, 284 (E.D.N.Y.2003) (trial counsel's failure to call an expert witness to testify on the issue of suggestibility did not constitute ineffective assistance of counsel when the introduction of such testimony would have been of nominal value and the attorney raised the issue of suggestiveness through cross-examinations).

**\*6** In addition, trial counsel identified the issue of suggestiveness and improper interviewing techniques in his opening statement and closing statements. *Id.* at pp. 23–25 & 448–58. Furthermore, the facts of this case are distinguishable from *Pavel v. Hollins,* 261 F.3d 210 (2d Cir.2001) and *Lindstadt v. Keane,* 239 F.3d 191 (2d Cir.2001), two cases cited by Petitioner in which the Second Circuit found ineffective assistance of counsel when trial counsel failed to offer expert testimony to rebut the state's evidence of physical abuse against children. The charges brought in this case did not require a demonstration of physical injury to the victims, nor

was any physical evidence introduced by the prosecution regarding physical injuries suffered by the boys that might have necessitated the testimony of an expert to rebut such evidence.

Furthermore, this was not a case of a pure "credibility contest" between child-witnesses and a defendant wherein no substantial circumstantial evidence of abuse exists, as was the case in *Pavel* and *Lindstadt.* In this case, Petitioner did not testify, and his confession that he inappropriately touched the children was corroborated by the testimony of the child-witnesses.

Therefore, we find that Mr. Gray's representation did not fall below an objective standard of reasonableness with respect to Petitioner's claim that he should have called an expert witness to testify on the issue of suggestiveness. We further find that, given the testimony and evidence at trial, there is not a reasonable probability that the outcome of the proceeding would have been different had such an expert been called. Thus, it is recommended that the Petition be **denied** on this claim.

### 2. *Failure to Consult a Medical Expert*

During the testimony of Investigator Bates, who interviewed K.S. during the investigation, it became apparent that a medical exam of K.S. had been conducted at Bates's request. Trial Tr. at pp. 78–80. Prior to Bates's testimony, neither the prosecutor nor the defense attorney were aware that any such exam had occurred. *Id.* During the course of the trial, the prosecutor procured a faxed copy of a three page medical report which was provided to Mr. Gray. *Id.* at p. 106. At that point, the court asked Mr. Gray if he needed time to review the report before resuming his cross-examination of Bates, which Gray declined, preferring to continue with his cross-examination of Investigator Bates. *Id.* at p. 107. After completing his cross-examination, Mr. Gray addressed the court regarding the medical report, asking for "the opportunity to be able to decipher [the report] and know what [ ] it says." *Id.* at p. 155. On the agreement of both attorneys, the trial court decided that K.S. would testify

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

that day as scheduled, but that Petitioner's attorney would be given the opportunity to review and consult with whomever he deemed necessary about the report, and that K.S. could be asked to return to testify the next day regarding potential medical issues if the need arose. *Id.* at pp. 158–59.

**\*7** Petitioner claims that Mr. Gray provided constitutionally deficient representation by not consulting with a medical expert regarding the information in K.S.'s medical examination report. However, Petitioner does not allege, and there is no evidence on the record, that the report contained any exculpatory information. While the exact information contained in the medical report is unknown to this Court, Mr. Gray mentioned that the report listed several drugs. Trial Tr. at pp. 154–55, & 160. Also, on cross-examination of K. S., Mr. Gray questioned K.S. about the medications he was taking on a regular basis, which, according to K.S.'s testimony included Adoral, Clonidine, Ritalin, Zoloft, and Senokot. *Id.* at pp. 194–97.

The Appellate Division denied this claim, stating that "[t]he decision not to request an adjournment for consultation with a medical expert regarding one victim's records was a trial strategy, as counsel was able to effectively cross-examine that victim regarding his extensive medication regimen." *People v. Nickel,* 788 N.Y.S.2d at 278.

Even if we disagreed with the Appellate Division's assessment that the decision not to consult with a medical expert constituted trial strategy, there is nothing on the record to suggest that Petitioner was prejudiced by the decision. Petitioner does not allege that the information in the medical report was exculpatory and, given the testimony of the child-witnesses, which was corroborated by Petitioner's own statement to the police, we find that there is not a reasonable probability that, but for counsel's decision not to consult with a medical expert regarding K.S.'s medical examination report, the outcome of the proceeding would have been different. *See Strickland v. Washington,* 466 U.S. at 697 ("[A] court need not determine whether coun-

sel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

Therefore, it is recommended that this claim be **dismissed.**

### D. Exclusion of Expert Witness

Petitioner claims that the trial court violated his due process and Sixth Amendment rights when it precluded the testimony of his proffered expert witness. At trial, Petitioner called Richard McAvoy, Jr., as an expert witness in the fields of precision photography and imaging and forensic photography to testify that Petitioner was not the adult male depicted engaging in sexual activity with K.S. in the photograph seized from Petitioner's home. The trial court excluded McAvoy's testimony as an expert, but allowed him to testify as a lay witness. Trial Tr. at pp. 397–414 & 416–18. The court reasoned that while Mr. McAvoy appeared to be qualified in his field, "this particular portion of his field does not seem [ ] to be such that it requires any expertise" as it does not require any specialized knowledge or training to look at a person face-to-face and see that he is not the same person in a photograph. *Id.* at p. 416. McAvoy testified that the adult male in the photograph with K.S. was not Petitioner. *Id.* at p. 402.

**\*8** "The right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment." *Washington v. Schriver,* 255 F.3d at 56 (citing cases). However, notwithstanding that right, parties "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilty and innocence." *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1988). With respect to expert witnesses, it has traditionally been within a trial court's decision to admit or exclude expert testimony, and such determination "is to be sustained unless mani-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

festly erroneous." *United States v. Brown,* 776 F.2d 397, 400 (2d Cir.1985). Furthermore, "[i]ssues regarding the admissibility of evidence in state court concern matters of state law and are not subject to federal review unless the alleged errors are so prejudicial as to constitute fundamental unfairness." *McCray v. Artuz,* 1994 WL 603057, at *2 (S.D.N.Y. Nov.3, 1994) (citations omitted).

Petitioner does not assert that the trial court's decision was contrary to state law, but rather, that it violated his Sixth Amendment and due process rights under the federal constitution. *See* Pet'r Mem. of Law at pp. 40–48. Thus, our review is limited to whether "the omitted evidence creates a reasonable doubt that did not otherwise exist." *Washington v. Schriver,* 255 F.3d at 56 (*quoting Jones v. Stinson,* 229 F.3d 112, 120 (2d Cir.2000)).

In this case, although the trial court did not permit Mr. McAvoy to testify as an expert, it nonetheless permitted his testimony as a lay person. Mr. McAvoy testified that Petitioner was not the person depicted in the photograph presented. The trial court acquitted Petitioner on count # 3 of the Indictment: Use of a Child in a Sexual Performance. Thus, whether or not the inclusion of Mr. McAvoy's expert testimony would have created a reasonable doubt with respect to that claim is a moot question. With regard to the remaining counts of the Indictment for which Petitioner was convicted, those counts were proven by the testimony of the child-witnesses, and by Petitioner's confession. Even if Mr. McAvoy's testimony had been introduced classified as "expert," and even if the trial court had concluded as a matter of fact that Petitioner was not the person in the photograph, that fact would not have created a reasonable doubt with respect to the other crimes for which Petitioner was convicted. Those crimes related to specific acts alleged by the child-witnesses that were corroborated by the Petitioner's own statement.

Therefore, the Court finds that this claim is without merit and should be **dismissed.**

### III. CONCLUSION
For the reasons stated herein, it is hereby

**RECOMMENDED,** that the Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) be **DENIED;** and it is further

**\*9 RECOMMENDED,** that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should issue with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000) *cert. denied* 531 U.S. 873, 121 S.Ct. 175, 148 L.Ed.2d 120 (2000); and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. Roblan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs. .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), & 6(e).

**JEFFREY NICKEL, Petitioner,**

**vs.**

**ROBERT E. ERCOLE,**

**Respondent.**

### DECISION & ORDER
THOMAS J. McAVOY, Senior District Judge.
This *pro se* petition for a writ of habeas corpus

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

pursuant to 28 U.S.C. § 2254 was referred to the Hon. Randolph F Treece, United States Magistrate Judge, for a Report–Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.4.

The Report–Recommendation dated May 11, 2009 recommended that the petition be denied and that no certificate of appealability be issued. The petitioner filed objections to the Report–Recommendation, essentially raising the same arguments presented to the Magistrate Judge.

When objections to a magistrate judge's Report–Recommendation are lodged, the Court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1). After such a review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Petitioner first contends that the Magistrate Judge made certain factual errors. The first alleged error is that the Magistrate Judge stated that "the Sheriff's Department commenced an investigation and located and interviewed some of the boys in the photographs, including K.S. and Z.K." Petitioner claims that none of the boys in the photographs were located or interviewed and the children identified as victims in the underlying criminal case were not the children in the photographs. This factual error is irrelevant to the legal issues presented and, thus, is an insufficient basis for rejecting the Report and Recommendation.

**\*10** Petitioner also faults the Magistrate Judge for failing to "address the factual problems in declaring the children ... competent." Obj. at p. 4. This does not present a factual error by the Magistrate Judge, but goes to the heart of Petitioner's claim at trial, on appeal, and in the instant Petition that the minor witnesses's testimony was not sufficiently competent because it was the product of

suggestive interrogations.[FN1]

> [FN1]. The legal analysis concerning this claim is addressed in the Report–Recommendation and *infra.*

Petitioner next contends that the Magistrate Judge incorrectly concluded that "trial counsel identified the issue of suggestiveness ... in his opening statement and closing statements." While defense counsel may not have specifically used the words "suggestive questioning" or something similar, defense counsel repeatedly challenged the veracity of the minor witnesses and of the interrogation techniques utilized by law enforcement. Moreover, the issue of suggestive questioning was the basis of pre-trial motions. Defense counsel made it very clear that "we don't know what questions [law enforcement] asked the boys. We don't even know how they even began it.... As a matter of fact, at one point, this photograph which is the issue, I believe, of the third count of this indictment, was shown by the officer to this boy and presumably, said is that he, is that the defendant in it? And that is the kind of interview, Your Honor, that was run. And we can—I think the proof will be it's highly suspect." Trial Tr. at 23–25. Thus, the Magistrate Judge's factual recitation in this regard is a fair characterization of the trial record.

Next, Petitioner attacks the Magistrate Judge's findings concerning the credibility of the minor witness, K.S. K.S.'s understanding of the obligation to tell the truth in court was adequately developed by the trial court. Moreover, defense counsel clearly elicited K.S.'s history of telling non-truths and detailed the many ways in which K.S.'s testimony was inconsistent with the facts. Defense counsel also suggested that the trial court should apply the maxim *falsus in uno, falsus in omnibus* to K.S.'s testimony. Despite K.S.'s history and the inaccuracies, or falsities, of his trial testimony, the trial court was not required to disregard the entirety of K.S.'s testimony. This is particularly so where K.S.'s testimony concerning Petitioner's conduct was corroborated, at least in part, by Petitioner's

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

statement to the police. Petitioner admitted to spending unsupervised time with K.S., to touching him in a "loving way," that the "touching gradually grew," and that the touching became "sexual in nature." Petitioner further admitted touching K.S. in a sexual way in the pool, that he would "feel K.S.'s bottom with [his] hands caressing it," that he touched K.S.'s groin, that he touched K.S. for sexual gratification, and that he was stimulated by touching K.S. Petitioner further admitted that "I may have some experiences even with those boys I have mentioned but haven't recalled those experiences," leaving open the possibility that K.S. truthfully testified that Petitioner put his mouth on K.S.'s penis and inserted his finger in K.S.'s anus.

**\*11** Petitioner also objects to the Report Recommendation on the ground that the failure to hold a pre-trial taint hearing to determine whether an interviewed child was the subject of suggestive questioning violates his right to due process of law. When analyzing a due process claim in the context of a criminal proceeding, the basic test is that of fundamental fairness. *United States v. Valenzuela–Bernal,* 458 U.S. 858, 872, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). Here, for the reasons stated by the Magistrate Judge, the Court finds that the trial was fundamentally fair. Unlike the situation where a court admits into the evidence the hearsay statements of minor victims given during interviews with law enforcement, here, the minor victims took the stand and were subjected to cross-examination. *See United States v. Rouse,* 111 F.3d 561, 569–70 (8th Cir.1997). The law enforcement officers who interviewed the minors also took the stand. Petitioner was free to, and did, elicit testimony concerning the manner in which the interrogations were conducted. Among other things, Petitioner elicited that the individuals conducting the interviews had no significant training on interviewing minors, that the interviews were not videotaped, and that nobody else was present for the interviews except law enforcement officers and the minors. *See* Obj. at p. 15. Thus, Petitioner had ample opportunity to present his theory that the stories of the

minor witnesses were the result of unduly suggestive interrogation tactics by law enforcement. Further, aside from conjecture and surmise, there is nothing in the record suggesting any improper interrogation techniques. *Cf. State v. Michaels,* 136 N.J. 299, 314, 642 A.2d 1372 (N.J.1994) (ordering a pre-trial hearing where, among other things, "[t]he record [was] replete with instances in which children were asked blatantly leading questions that furnished information the children themselves had not mentioned ... [and][t]he record of the investigative interviews disclose[d] the use of mild threats, cajoling, and bribing.").

Petitioner also challenges the Magistrate Judge's conclusions concerning his ineffective assistance of counsel claims. The first ineffective assistance of counsel claim pertains to trial counsel's decision not to call an expert concerning the susceptibility of minors to suggestive interviewing techniques. This Court agrees with the Magistrate Judge's conclusions, adding only that "the basic idea that young children can be suggestible is 'not beyond the knowledge of the [trier-of-fact].' " *Washington v. Schriver,* 255 F.3d 45, 60 (2d Cir.2001) (quoting *People v. Washington,* 238 A.D.2d 263, 264, 657 N.Y.S.2d 24 (1st Dep't 1997) ).

On the issue of the failure to seek an adjournment to review the late disclosed medical exam, the Magistrate Judge properly concluded that Petitioner failed to demonstrate prejudice. The medical exam appears to have listed various medications that K.S. was taking. Defense counsel adequately argued to the court that these medications could affect K.S.'s memory or ability to testify truthfully.

**\*12** The Court agrees with the Magistrate Judge on all other grounds and further concludes that, considering trial counsel's performance in its totality, it did not rise to the level of being deficient and, assuming counsel's conduct to be deficient, it did not result in prejudice.

Having reviewed the record *de novo* and hav-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1606092 (N.D.N.Y.)
**(Cite as: 2009 WL 1606092 (N.D.N.Y.))**

ing considered the issues raised in the Petitioner's objections, this Court has determined to accept and adopt the recommendation for the reasons stated in the Report–Recommendation and as supplemented above.

It is, therefore,

**ORDERED** that Petitioner's writ of habeas corpus is **DENIED** and **DISMISSED** and the request for a certificate of appealability of **DENIED.**

**IT IS SO ORDERED.**

N.D.N.Y.,2009.
Nickel v. Ercole
Not Reported in F.Supp.2d, 2009 WL 1606092 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Westlaw Delivery Summary Report for MCKEON, COURTENA**

| | |
|---|---|
| Date/Time of Request: | Monday, September 22, 2014 15:47 Central |
| Client Identifier: | O'HALLORAN |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 1654 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Not Reported in F.Supp.2d, 2011 WL 1838781 (E.D.N.Y.)
**(Cite as: 2011 WL 1838781 (E.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Raymond FIGUEROA, Petitioner,
v.
Philip D. HEATH, Superintendent of Sing Sing
C.F., Respondent.

No. 10–CV–0121 (JFB).
May 13, 2011.

Raymond Figueroa, pro se.

Rosalind C. Gray, Assistant District Attorney, Suffolk County District Attorney's Office, Riverhead, NY, for Respondent.

MEMORANDUM AND ORDE
JOSEPH F. BIANCO, District Judge.
**\*1** Raymond Figueroa ("petitioner" or "Figueroa") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his conviction entered on January 19, 2005, in the County Court, Suffolk County (the "trial court"), for Criminal Possession of a Controlled Substance in the Second Degree (N.Y. Penal Law § 220 .18), Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16), Criminal Possession of a Controlled Substance in the Fourth Degree (N.Y. Penal Law § 220.09), and Criminal Possession of a Controlled Substance in the Seventh Degree (N.Y. Penal Law § 220.03). Petitioner was sentenced to seven separate determinate terms of imprisonment totaling eighteen years.

Figueroa challenges his conviction on the grounds that both his trial counsel and his appellate counsel were ineffective. For the reasons set forth below, the petition for a writ of habeas corpus is denied in its entirety on the merits.

I. BACKGROUND

A. Underlying Facts
The following facts are adduced from the instant petition and underlying record.

1. November 22, 2003 Arrest
On November 22, 2003, Detectives William Maldonado ("Maldonado"), James Smith ("Smith"), and Detective Sergeant Kenneth Hamilton ("Hamilton") were conducting surveillance for narcotics activity in the parking lot of the "Coeds Bar" in Ronkonkoma, New York. (Tr. at 31–32.) The officers observed petitioner exit a vehicle parked in the lot and walk toward the establishment's entrance. (Id. at 34.) Petitioner met an individual who had exited the bar, and the two engaged in a hand-to-hand transaction. (Id. at 34–35.) Petitioner then returned to the vehicle, which exited the parking lot shortly thereafter. (Id. at 34, 37.) Detectives Maldonado, Smith, and Hamilton, believing they witnessed a narcotics transaction, followed the vehicle. (Id. at 37.)

The officers pulled the vehicle over for failing to signal while making a turn. (Id. at 37.) Maldonado approached the car and looked inside while speaking with the driver. (Id. at 38–39.) Maldonado observed what appeared to be crack cocaine on top of a CD holder located next to petitioner on the rear passenger seat, and he ordered the vehicle's occupants to exit the vehicle. (Id. at 39 .) Maldonado then recovered the substance from the car. (Id.) Around this time, two police K–9 units arrived on-scene after driving by and observing the stop. (Id. at 40.) The K–9 officers helped secure the vehicle's occupants while Maldonado field-tested the recovered substance and Hamilton searched the vehicle. (Id. at 40–41.) After the field test of the recovered substance came back positive for cocaine, Maldonado placed all of the vehicle's occupants under arrest. (Id. at 69.) Maldonado then conducted a pat-down search of petitioner before placing him in the police vehicle and transporting him to the precinct. (Id. at 43–44.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1838781 (E.D.N.Y.)
**(Cite as: 2011 WL 1838781 (E.D.N.Y.))**

**\*2** Upon arrival at the police precinct, Maldonado conducted a more thorough search of petitioner. (*Id.* at 44–45.) During the search, Maldonado felt a bulge in front of petitioner's pelvic area. (*Id.* at 45.) As Maldonado attempted to remove the bulge, petitioner reached down, grabbed the item, and threw it in a trash can. (*Id.*) Maldonado covered the item, which tested positive for cocaine. (*Id.* at 46, 166.)

2. December 11, 2003 Arrest

On December 11, 2003, Detectives Maldonado, Smith, James Walker ("Walker"), and John Pinscotta ("Pinscotta"), and Detective Sergeant Hamilton were conducting a burglary investigation in Patchogue, New York. (*Id.* at 49–50.) While surveilling a house located at 206 Waverly Avenue, the officers observed a vehicle pull into the house's driveway. (*Id.* at 50.) The subject of the burglary investigation, Jason Schwab, exited the residence and approached the vehicle. (*Id.* at 50, 80–81.) Maldonado then observed Schwab engage with the vehicle's passenger in a hand-to-hand transaction, during which Maldonado believed he saw currency exchanged. (*Id.* at 51–52.) The passenger wore a yellow sweatshirt but was otherwise unidentifiable at that time by Maldonado. (*Id.* at 97–98.) After the hand-to-hand transaction was completed, Schwab returned to the residence, and the vehicle pulled out of the driveway and proceeded down the street. (*Id.* at 52–53.) Maldonado, having observed what he believed was a narcotics transaction, radioed Walker and Smith to stop the vehicle and investigate further. (*Id.* at 53.)

Detectives Walker and Smith stopped the vehicle after receiving the radio transmission from Maldonado. (*Id.* at 106.) As Walker approached the vehicle's passenger side, he observed the passenger, who was wearing a yellow-hooded sweatshirt, gesture towards his mouth with his right hand. (*Id.* at 106–07.) Walker believed that the passenger, later identified as petitioner, was trying to destroy evidence by swallowing narcotics. (*Id.* at 107, 109.) When Walker asked petitioner to exit the vehicle,

petitioner ignored the request and turned away from Walker. (*Id.* at 108.) Walker placed his hand on petitioner's shoulder and again asked petitioner to exit the vehicle, which petitioner did after Walker opened the vehicle's door. (*Id.*) Upon exiting the car, petitioner immediately pressed his pelvis against the vehicle so that his entire body was pressed against the side of the car. (*Id* .) Fearing that petitioner was trying to hide a weapon, Walker reached in and patted petitioner's waistband. (*Id.* at 109–10.) Feeling nothing, Walker asked petitioner to turn around. (*Id.* at 110.) As Walker asked petitioner to open his mouth so Walker could check for drugs, Hamilton, who was standing next to Walker, observed a plastic bag protruding from petitioner's waistband. (*Id.* at 110–11.) Hamilton removed the bag, which held smaller bags containing a white substance that appeared to be cocaine. (*Id.* at 111.) Walker then placed petitioner under arrest, secured the evidence, and conducted a cursory search of petitioner's person. (*Id.* at 111–16.) Walker found no weapons or other items on petitioner during this initial search, and the officers subsequently transported petitioner to the police precinct. (*Id.* at 115–16.)

**\*3** After arriving at the precinct, Walker placed petitioner in an interview room and handcuffed him to a desk. (*Id.* at 116.) Walker then left the precinct to assist Maldonado and another detective in apprehending Jason Schwab. (*Id.*) Approximately 20 minutes later, Walker returned to the precinct where petitioner was still handcuffed in the interview room. (*Id.* at 117.) Petitioner asked to use the restroom and was escorted there by Walker. (*Id.*) Once in the restroom, Walker removed the handcuffs and conducted a more thorough search of petitioner's person. (*Id.* at 117–18.) During this search, Walker removed from petitioner's buttocks area a paper towel that contained two baggies filled with what appeared to be cocaine. (*Id.* at 118–19.)

Later that afternoon, petitioner asked to be brought to the hospital because he ingested a quantity of cocaine during the traffic stop and was not feeling well. (*Id.* at 122.) Walker accompanied peti-

tioner to Brookhaven Memorial Hospital where petitioner spontaneously made several statements regarding his involvement with cocaine and his willingness to cooperate. (*Id.* at 122–25.)

B. Procedural History

On January 19, 2005, the jury found petitioner guilty on four counts of Criminal Possession of a Controlled Substance in the Third Degree, one count of Criminal Possession of a Controlled Substance in the Seventh Degree, one count of Criminal Possession of a Controlled Substance in the Second Degree, and one count of Criminal Possession of a Controlled Substance in the Fourth Degree. (Tr. at 333–36.)

Petitioner was sentenced on February 22, 2005 to a determinate term of imprisonment of eighteen years. Specifically, petitioner was sentenced to eight years on counts one and two, one year on count three, ten years on counts four through six, and six years on count seven. The sentences on counts one through three were to run concurrently with each other. The sentences on counts four through seven also would run concurrently with each other but would run consecutively to counts one through three. *See People v. Figueroa,* Ind. No. 00778–2004, slip op. at 1 (N.Y. County Ct. Suffolk Cnty. Dec. 16, 2008). (*See also* Resp't Answer ¶ 4.)

Petitioner appealed his conviction to the Appellate Division, Second Department. His appellate attorney raised one issue, namely, that the trial court improperly denied his motion to suppress physical evidence seized during the December 11, 2003 arrest. *See People v. Figueroa,* 833 N.Y.S.2d 528, 529 (App.Div.2007). (Petition ("Pet.") at App'x 5.) On March 20, 2007, the Appellate Division rejected petitioner's argument and affirmed his conviction. *See Figueroa,* 833 N.Y.S.2d at 529–30.

Petitioner sought leave to appeal the Appellate Division's decision to the New York Court of Appeals. The application for leave to appeal was denied on May 31, 2007. *See People v. Figueroa,* 869 N.E.2d 663 (N.Y.2007).

On May 16, 2008, petitioner filed a *pro se* motion to vacate his conviction, pursuant to New York Criminal Procedure Law § 440. 10, on the ground that he received ineffective assistance of trial counsel. (Pet. at 3.) In particular, petitioner argued that his trial counsel was ineffective because he: (1) failed to object to prosecutorial misconduct; (2) failed to move for dismissal of certain counts as multiplicitous; (3) failed to challenge or rehabilitate biased venirepersons; (4) failed to object to the prosecution's elicitation of inflammatory statements from a prospective juror, and elicited further inflammatory statements from that prospective juror; (5) failed to interview a defense witness prior to testifying; (6) failed to prepare for trial and accordingly opened the door to unduly prejudicial and inadmissible hearsay evidence; (7) failed to object to improper jury instructions; and (8) failed to request a missing witness charge. On December 16, 2008, the trial court denied the motion, finding that petitioner's claim was procedurally barred under New York Criminal Procedure Law § 440.10(2)(c). *People v. Figueroa,* Ind. No. 00778–2004, slip op. at 2 (N.Y. Cnty. Ct. Suffolk Cnty. Dec. 16, 2008). The court explained that each of petitioner's arguments was "based on information ... contained within the record of the proceeding" and was "of anature which can be raised on direct appeal," thus requiring the court to deny petitioner's application in its entirety. *Id.* On March 30, 2009, the trial court denied petitioner's motion to reargue the court's December 16 ruling. *People v. Figueroa,* No. 00778–2004, slip op. at 2 (N.Y. Cnty. Ct. Suffolk Cnty. March 30, 2009).

**\*4** Petitioner applied to the Appellate Division, Second Department for leave to appeal the County Court's denial of his motion to vacate his conviction. (Pet. at 6.) In a Decision and Order dated June 11, 2009, the Appellate Division denied Figueroa's request. *People v. Figueroa,* No.2009–00910 (Ind. No. 778–04), slip op. at 1 (N.Y.App. Div. June 11, 2009).

On March 31, 2009, petitioner submitted a *pro*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*se* application for a writ of error *coram nobis* to the Appellate Division, Second Department, on the basis that he received ineffective assistance of appellate counsel. (Pet. at 3, 7.) Petitioner maintained that his appellate counsel was ineffective because he: (1) failed to assert that petitioner's trial counsel was ineffective, and (2) failed to raise any appellate argument or submit an *Anders* brief regarding Figueroa's November 22, 2003 arrest. (Resp't Answer ¶ 7.) On September 15, 2009, the Appellate Division denied Figueroa's application, finding that he failed to establish that he was denied effective assistance of appellate counsel. *See People v. Figueroa,* 885 N.Y.S.2d 215 (App.Div.2009). On December 17, 2009, the Court of Appeals denied Figueroa's application for leave to appeal. (Pet. at 7.)

On December 31, 2009, petitioner submitted the instant habeas petition through the prison mailing system. (Pet. at 14.) The petition, which seeks relief on the grounds that petitioner allegedly received ineffective assistance of trial counsel and ineffective assistance of appellate counsel, was filed with this Court on January 8, 2010. Respondent submitted his opposition on March 24, 2010, and petitioner submitted his reply on April 16, 2010. The Court has fully considered the submissions of both parties.

## II. DISCUSSION
### A. Standard of Review

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standards of review provided in 28 U.S.C. § 2254, as amended by AEDPA, which provides in relevant part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). " 'Clearly established Federal law' " is comprised of " 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.' " *Green v. Travis,* 414 F.3d 288, 296 (2d Cir.2005) (quoting *Williams v. Taylor,* 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 412–13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413.

**\*5** AEDPA establishes a deferential standard of review: " 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.' " *Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001) (quoting *Williams,* 529 U.S. at 411). The Second Circuit added that, while " 'some increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.' " *Gilchrist,* 260 F.3d at 93 (quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d

Cir.2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo* .' " *Dolphy v. Mantello,* 552 F.3d 236, 238 (2d Cir.2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir.2006)).

### B. Procedural Default

A petitioner's federal claims may be procedurally barred from habeas corpus review if they were decided at the state level on "independent and adequate" state procedural grounds. *Coleman v. Thompson,* 501 U.S. 722, 729–33 (1991). The procedural rule at issue is adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis,* 188 F.3d 71, 77 (2d Cir.1999) (internal quotation marks omitted). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed,* 489 U.S. 255, 261–62 (1989), by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Id.* at 263 (internal quotation marks omitted). If it determines that a claim is procedurally barred, a federal habeas court may not review the claim on the merits unless the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *See Coleman,* 501 U.S. at 750. A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier,* 477 U.S. 478, 496 (1986).

Here, petitioner's first claim for ineffective assistance of trial counsel is procedurally defaulted. Petitioner raised this claim solely in a New York Criminal Procedure Law § 440.10 motion, which was rejected on procedural grounds because the claims should have been raised on direct appeal.

New York law requires a court to deny a collateral attack on a conviction where the defendant un-

justifiably fails to raise hisclaim on direct appeal, despite having had a sufficient record to do so. *See* N.Y.Crim. Proc. L. § 440.10(2)(c). As explained by the Second Circuit, "[t]he purpose of this rule 'is to prevent [Section] 440.10 from being employed as a substitute for direct appeal when [the] defendant was in a position to raise an issue on appeal ... or could readily have raised it on appeal but failed to do so.' " *Sweet v. Bennett,* 353 F.3d 135, 139 (2d Cir.2003) (quoting *People v. Cooks,* 491 N.E.2d 676, 678 (N.Y.1986)). In many cases, ineffective assistance of counsel claims are not apparent on the trial record and, therefore, are more appropriately raised in a collateral attack on the conviction where a court can conduct an "evidentiary exploration" of counsel's effectiveness. *People v. Brown,* 382 N.E.2d 1149, 1149 (N.Y.1978). For example, claims based upon faulty legal advice rarely will be evident on the face of the record. *See People v. Harris,* 491 N.Y.S.2d 678, 687 (App.Div.1985) ("The instant claim of ineffective assistance, predicated entirely, as it is, upon alleged faulty legal advice given by counsel, appears to be one preeminently necessitating CPL article 440 review.").

**\*6** However, where the basis for an ineffective assistance of counsel claim was clear from the face of the record and thus could have been raised on direct appeal, a defendant's § 440.10 motion must be denied. The Second Circuit has made clear that a denial of a § 440.10 motion for failure to raise a claim on direct appeal constitutes an "independent and adequate" state procedural ground which, accordingly, bars federal habeas review of a petitioner's claims. *See Sweet,* 353 F.3d at 140 (finding a claim waived under § 440.10(2)(c) to be "procedurally defaulted for the purposes of habeas review as well"); *Aparicio v. Artuz,* 269 F.3d 78, 93 (2d Cir.2001) ("[T]here can be no doubt that the state court's decision on Petitioner's trial counsel claim rested on an adequate and independent state bar: Aparicio never raised ineffective assistance of trial counsel in his direct appeal.... New York law prohibits review of a claim on collateral review when the defendant unjustifiably fails to raise the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

claim on direct appeal. N.Y.Crim. Proc. L. § 440.10 (2)(c).");  Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir.1995) (federal habeas review unavailable where state court found claim to be procedurally barred under § 440.10(2)(c)).

As recognized by the trial court in this case, each of counsel's alleged failures that petitioner challenged in his § 440.10 motion were well-established on the trial record. In particular, petitioner claimed that defense counsel: (1) failed to object to prosecutorial misconduct; (2) failed to move for dismissal of certain counts as multiplicitous; (3) failed to challenge or rehabilitate biased venirepersons; (4) failed to object to the prosecution's elicitation of inflammatory statements from a prospective juror, and elicited further inflammatory statements from that prospective juror; (5) failed to interview a defense witness prior to testifying; (6) failed to prepare for trial and accordingly opened the door to unduly prejudicial and inadmissible hearsay evidence; (7) failed to object to improper jury instructions; and (8) failed to request a missing witness charge. As the trial court clearly explained when denying petitioner's § 440.10 motion, each of petitioner's arguments was "based on information ... contained within the record of the proceeding" and were "of a nature which can be raised on direct appeal." People v. Figueroa, Ind. No. 00778–2004, slip op. at 2 (N.Y. Cnty. Ct. Suffolk Cnty. Dec. 16, 2008). Thus, there was no apparent reason why appellate counsel would have needed an evidentiary hearing to develop these claims. Accordingly, because petitioner's failure to raise these claims on direct appeal was unjustifiable, thus resulting in the denial of his § 440 motion, the claims he raises here based upon the same failures of trial counsel are procedurally defaulted for federal habeas purposes. See Sweet, 353 F.3d at 140 (finding ineffective assistance claim procedurally defaulted where counsel's failure to object to jury instructions was clear from the record);  Muir v. New York, No. 07–cv–7573, 2010 WL 2144250, at *6 (S.D.N.Y. May 26, 2010) (finding ineffective assistance claim clear on the record and procedurally barred where

counsel was alleged to have failed to challenge (1) defect in jurisdiction in indictment, (2) prosecution's presentation of duplicative charges to grand jury, (3) police procedure for identification of defendant, and (4) violation of defendant's speedy trial rights).

**\*7** Respondent, however, has not relied on this procedural default in opposing the petition. Although this Court has the authority to raise the issue *sua sponte, see* Washington v. James, 996 F.2d 1442, 1448 (2d Cir.1993), the Second Circuit has advised that courts "should not lightly raise the issue of a [petitioner's] procedural default *sua sponte.*" Rosario v. United States, 164 F.3d 729, 733 (2d Cir.1998). Accordingly, in an abundance of caution, and because petitioner has not had an opportunity to show cause for the default, the Court has reviewed the merits of petitioner's ineffective assistance of trial counsel claim, as well as his ineffective assistance of appellate counsel claim, and finds that neither warrants habeas relief on the merits.

### C. Merits
#### 1. Ineffective Assistance of Trial Counsel

Petitioner contends that he received ineffective assistance of trial counsel because counsel: (1) failed to strike biased venirepersons from the jury; (2) opened the door to prejudicial, inadmissible hearsay while cross-examining Detective Maldonado; (3) failed to object to an incomplete jury instruction; (4) failed to request a missing witness charge for Detective Hamilton; (5) failed to impeach Detective Walker and deliver an adequate summation; (6) failed to object to the prosecution's improper summation; and (7) failed to move to dismiss counts 5 and 6 as multiplicitous. (Pet. at 17–32.) FN1

FN1. The Court notes that it appears petitioner did not raise the argument that counsel failed to deliver an adequate summation in either petitioner's direct appeal or his § 440.10 motion. "It is well settled that a claim of ineffective assistance is properly

Not Reported in F.Supp.2d, 2011 WL 1838781 (E.D.N.Y.)
**(Cite as: 2011 WL 1838781 (E.D.N.Y.))**

exhausted only when the specific conduct giving rise to the claim is first asserted in state court." *Diaz v. Conway,* No. 04–cv–5062 (RMB)(HBP), 2008 WL 2461742, at *13 (S.D.N.Y. June 17, 2008); *see also Caballero v. Keane,* 42 F.3d 738, 740 (2d Cir.1994) ("[T]o reach the merits of [an ineffective representation claim], all of [the] allegations must have been presented to the state courts...."). Respondent, however, has apparently waived this exhaustion defense. (Resp't Answer at ¶ 8), and regardless, the Court would have to evaluate trial counsel's effectiveness in relation to petitioner's ineffective assistance of appellate counsel claim. Accordingly, the Court has examined each of petitioner's claims on the merits and, as explained *infra,* has found none can serve as a basis for habeas relief.

Under the standard promulgated in *Strickland v. Washington,* 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," *id.* at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' " *Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir.2005) (quoting *Strickland,* 466 U.S. at 690). The performance inquiry examines the reasonableness of trial counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hind-

sight." *Greiner,* 417 F.3d at 319 (quoting *Rompilla v. Beard,* 545 U.S. 374, 408 (2005)). In assessing performance, a court must apply a " 'heavy measure of deference to counsel's judgments.' " *Greiner,* 417 F.3d at 319 (quoting *Strickland,* 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision." *DeLuca v. Lord,* 77 F.3d 578, 588 n. 3 (2d Cir.1996), and " 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.' " *Id.* (quoting *Strickland,* 466 U.S. at 690). Moreover, " 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.' " *DeLuca,* 77 F.3d at 588 (quoting *Strickland,* 466 U.S. at 690–91).

**\*8** The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. In this context, "reasonable probability" means that the errors are of a magnitude such that they " 'undermine[ ] confidence in the outcome.' " *Pavel v. Hollins,* 261 F.3d 210, 216 (2d Cir.2001) (quoting *Strickland,* 466 U.S. at 694). " 'The question to be asked in assessing the prejudice from counsel's errors ... is whether there is a reasonable probability that, absent the errors, the fact-finder would have had a reasonable doubt respecting guilt.' " *Henry v. Poole,* 409 F.3d 48, 63–64 (2d Cir.2005) (quoting *Strickland,* 466 U.S. at 695).

" 'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.' " *Lindstadt v. Keane,* 239 F.3d 191, 204 (2d Cir.2001) (quoting *Strickland,* 466 U.S. at 691). Moreover, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland,* the determination of pre-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

judice 'may be made with the benefit of hindsight.' " *Hemstreet v. Greiner,* 491 F.3d 84, 91 (2d Cir.2007) (quoting *Mayo v. Henderson,* 13 F.3d 528, 534 (2d Cir.1994)).

This Court proceeds to examine the petitioner's claims, keeping in mind that the habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin,* 366 F.3d 95, 100 (2d Cir.2004).

### a. Failure to Strike Biased Venirepersons

Petitioner argues that he received ineffective assistance of counsel because counsel failed to remove two jurors during voir dire who allegedly could not be fair and impartial. (Pet. at 17.) Specifically, he claims that his attorney's failure to challenge Juror Regan and Juror Flick for cause, or exercise peremptory challenges to excuse either juror, amounted to ineffective assistance of counsel. ( *Id.*) The Court will first address the failure of defense counsel to challenge either Juror Regan or Juror Flick for cause. The Court will then address the failure of defense counsel to use a peremptory challenge on either Juror Regan or Juror Flick. For the reasons set forth below, this Court finds that there is no basis to conclude that the *Strickland* standard has been met.

### i. Failure to Challenge Juror Regan or Juror Flick for Cause

Petitioner's claim that counsel's failure to challenge Juror Regan or Juror Flick amounted to ineffective assistance of counsel is without merit. Petitioner has failed to show that the decision not to challenge Juror Regan or Juror Flick for cause was outside the "wide range of professionally competent assistance." *See Strickland,* 466 U.S. at 690.

Although Juror Flick and Juror Regan initially expressed reservations about their ability to be fair and impartial, the Second Circuit has held that if, after expressing reservations about impartiality, a juror later promises to try to decide the case based on the evidence presented, that assurance will generally be sufficient for both the attorney and the

court. *United States v. Towne,* 870 F.2d 880, 885 (2d Cir.1989).

**\*9** Here, Juror Flick indicated during voir dire that she had concerns about her ability to remain fair and impartial due to her family's history with drug addiction. (JVD–2.[FN2] at 49.) Specifically, Juror Flick stated, "I definitely have viewpoints on [drugs and addiction] because I lived—I have seen so much," and, when asked by the prosecutor whether she would bring those experiences into the jury room when deliberating, she responded, "I would try not to, but I can't—like, if you bring a little kid in here ..." (*Id.* at 50–51.) At this point, the trial court intervened in the questioning and asked, "Nobody is asking you to walk in here totally blank. You will bring in your life experiences. I want to know, though, can you follow the law as I give it to you and will you be fair and impartial?" ( *Id.* at 51.) To this question, Juror Flick answered unequivocally, "Yes." (*Id.*) Given this record, even if defense counsel challenged Flick for cause, there is no indication that such an application would have been granted. Accordingly, trial counsel's decision not to make such a challenge was reasonable. *See Towne,* 870 F.2d at 885 (concluding that district court did not err in failing to remove prospective juror for cause where juror initially expressed reservations about ability to be impartial but later promised to try to decide the case based on the evidence presented); *United States v. Ploof,* 464 F.2d 116, 117–18 (2d Cir.1972) (upholding the denial of challenge for cause where a juror indicated he would do his best to decide the case based on the evidence presented).

> FN2. "JVD–2" refers to the transcript of the second day of jury voir dire proceedings, held on January 11, 2005.

Juror Regan also initially expressed reservations about her ability to remain fair and impartial. In particular, in response to questioning from defense counsel whether any juror would hold Figueroa's decision not to testify against him, Regan stated, "I kind of think it makes him look a

Not Reported in F.Supp.2d, 2011 WL 1838781 (E.D.N.Y.)
**(Cite as: 2011 WL 1838781 (E.D.N.Y.))**

little more guilty for not testifying. Like [the other juror] said, what does he have to hide?" (JVD–1 FN3 at 177.) The trial court then responded "all right," and defense counsel proceeded to educate the jury about the constitutional principles underlying a defendant's right not to testify. (*Id.* at 177–79.) Subsequently, defense counsel asked the potential jurors, "If [the prosecutor] fails to prove her case beyond a reasonable doubt, if she doesn't satisfy every single element of every single crime charged, do you promise to return a verdict of not guilty? Is there anybody who wouldn't be able to do that?" (*Id.* at 191.) No juror, including Regan, objected. Trial counsel again asked, "You all promise me that?" (*Id.*) No juror expressed any reservations.

> **FN3.** JVD–1 refers to the transcript of the first day of jury voir dire proceedings, held on January 10, 2005.

As with Juror Flick, the Court finds that it was not unreasonable for trial counsel to decline to challenge Juror Regan for cause. First, the record indicates that trial counsel was actively engaged in the voir dire process. In particular, following Juror Regan's expression of reservation, defense counsel educated the jury about the prosecution's burden and the defendant's right not to testify. For example, defense counsel explained,

> **\*10** That constitutionally based principle, that if you're accused of something, the government accuses you of something, they bring all their resources and power to prosecute you, to level the playing field, the constitution says you are innocent until you are proven guilty beyond a reasonable doubt. Now, the Judge instructs you on the law. He instructs you on what beyond a reasonable doubt means. That's not our job. But does everybody else understand that? And almost embrace it, I guess. It's extremely important. It's critical to Mr. Figueroa at this point in his life.

(*Id.* at 177–78.) Counsel further stressed that "Mr. Figueroa does not have to testify. I keep repeating myself, because it's just so important." (*Id.*

at 179.) Juror Regan did not indicate that she did not understand these principles or that she would not be able to follow them as a juror.

Moreover, defense counsel asked the jury a number of follow-up questions after Juror Regan expressed her initial reservation. By way of example, defense counsel asked the jury:

> I want you to think about something else. If you were sitting at this table right now, or your loved one was sitting at this table right now, would you want you sitting in this jury box? Would you want yourself sitting in judgment of yourself or a loved one who is sitting here, based upon your mind set right now, or do you think based upon a person's right not to testify, based on the fact that the district attorney decided to present the case to a grand jury, based on the fact that you are just here, that you would not want to sit in judgment of yourself right now; is there anybody who would have a problem with that?

(*Id.* at 178.) Although another juror expressed reluctance to sit on the jury in response to this line of questioning, Juror Regan did not indicate that she had any reservations. (*Id.* at 178–79.) Subsequently, defense counsel reiterated:

> Everybody here understand[s], and I will repeat it one more time, that at this stage of the game, the point we are at right now, Mr. Figueroa is innocent, he's done nothing. And the burden is always on the government, it remains on the government, it never shifts. And he could remain silent throughout the course of the proceedings.

(*Id.* at 188.) Juror Regan did not give any indication that she harbored any lingering reservations. Furthermore, defense counsel also questioned the jurors regarding their ability to impartially evaluate testimony from police officers, and again, while some jurors stated that they were unsure of their impartiality, Juror Regan did not express any reservations. (*Id.* at 179–82, 186–88.) Finally, as noted supra, defense counsel concluded:

> I just want one assurance and I'm finished. If [the

prosecutor] fails to prove her case beyond a reasonable doubt, if she doesn't satisfy every single element of every single crime charged, do you promise to return a verdict of not guilty? Is there anybody who wouldn't be able to do that? Anybody? You all promise me that? Okay, thank you.

**\*11** (*Id.* at 191.) Juror Regan did not state that she had any reservations or hesitations regarding her ability to hold the prosecution to its burden. The significance of the fact that Juror Regan did not express any further reservations is highlighted by contrast to the responses of Prospective Juror Number 15 ("Juror 15"), who continued to express reservations and consequently was challenged for cause by defense counsel. Specifically, after both Juror Regan and Juror 15 expressed their initial reservations, Juror 15 continued to indicate that she could not be impartial, noting that she might have a problem sitting in judgment of herself or a loved one based on the fact that prosecution had brought the case. (JVD–1 at 177–79.) Juror 15 expressed that she might have difficulty sitting as a juror "[j]ust because of the way I feel, my own feelings, you know. Not that it's something personal, you know what I mean? But like I said, if there was something that they were trying, you know, not to—not to prove." (*Id.* at 178–79.) Ultimately, defense counsel challenged Juror 15 for cause. (*Id.* at 196.)

In this case, counsel's active participation in voir dire indicates that any decisions to challenge (or not to challenge) jurors were made as part of a reasonable trial strategy, rather than as a result of counsel's failure to provide effective assistance. *See Warrick v. McLaughlin,* No. 02–cv–7638 (DLC), 2004 WL 1656579, at \*4 (S.D.N.Y. July 22, 2004) ("[T]he record reflects that defense counsel was actively engaged in the voir dire process. An attorney's determination to accept or strike a prospective juror is a strategic or tactical decision.... Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance. Thus, since [petitioner's] objection has no basis in fact, it is properly rejected." (internal quo-

tation marks and citations omitted)).

Indeed, this conclusion is strengthened by the fact that counsel challenged for cause two prospective jurors on the grounds that they believed they needed to hear petitioner testify (JVD–1 at 196), thereby showing that trial counsel was aware not only of his ability to make such an application, but also of the risk that potentially biased jurors could pose to a defendant in a criminal case. *See Rodriguez v. Breslin,* No. 05–cv–1639 (RRM), 2009 WL 424738, at \*9 (E.D.N.Y. Feb. 20, 2009) (finding that counsel's decision to peremptorily challenge eight jurors lended support to conclusion thatdecision not to challenge allegedly biased juror was part of trial strategy); *Nova v. Ercole,* No. 06–cv–562 (NRB), 2007 WL 1280635, at \*8 (S.D.N.Y. Apr. 30, 2007) ("Counsel exercised two peremptory challenges for other prospective jurors during voir dire.... This suggests that counsel deliberately chose not to challenge [another juror] as part of trial strategy that might be considered sound." (internal quotation marks and citations omitted)). Therefore, in this case, given that defense counsel educated Juror Regan regarding the prosecution's burden and the defendant's right not to testify after Juror Regan initially expressed reservations, and given that Juror Regan did not express any further reservations when faced with numerous follow-up questions, the Court concludes that it was reasonable for defense counsel to make the strategic choice that any initial reservations expressed by Juror Regan no longer formed the basis to challenge her. Accordingly, counsel's decision not to challenge either Juror Flick or Juror Regan fell within the reasonable range of professional conduct under *Strickland.*

**\*12** In any event, even assuming *arguendo* that petitioner was able to prove that the decision not to challenge Juror Regan and Juror Flick was outside the range of professional competence, petitioner cannot show that he was prejudiced thereby. In order to show prejudice, petitioner must show that the juror was actually biased against him. *See United*

*States v. Torres,* 128 F.3d 38, 43 (2d Cir.1997) (defining actual bias as "bias-in-fact" or "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality" (internal quotation marks omitted)); *Rodriguez,* 2009 WL 424738, at *9. Petitioner has not pointed to any facts in the record that would indicate either Juror Regan or Juror Flick was actually biased against him. As to Juror Flick, the record plainly indicates that Juror Flick unequivocally stated that she would be able to follow the law as instructed by the judge and would be fair and impartial. (JVD–2 at 51.) As to Juror Regan, petitioner offers nothing but speculation regarding her impartiality, based upon a single remark that was made before counsel educated the jurors. Indeed, when presented with numerous subsequent opportunities to state if she was still biased, Juror Regan, in contrast to other jurors, gave no indication that she would not be fair and impartial. Thus, petitioner cannot prove that he has been prejudiced by his counsel's decision not to challenge Juror Regan or Juror Flick. *See Wallace v. Artus,* No. 9:06–CV–464 (FJS/VEB), 2011 WL 1302228, at *9 (N.D.N.Y. March 31, 2011) ("[T]he record does not support a finding that [the juror] was actually biased against Petitioner. At best, [the juror's] answers to the voir dire questions were ambiguous. He stated that he had 'an opinion,' but not what that opinion was. Further, when he was asked if he could judge Petitioner's actions and the actions of others in the bar fairly, he answered that he 'could try.' In addition to the above testimony, [the juror] agreed that he would 'evenhandedly scrutinize the testimony, regardless of race, creed, age, color, garb, hairstyle, clothing, political affiliation, station in life, regardless of those factors and evenhandedly decide this case [.]' Finally, he agreed that he would 'leave sympathy and emotions out of [his] deliberations and decide it from the facts on this witness stand [.]' " (internal citations omitted)); *Beard v. Unger,* No. 06–cv–0405 (MAT), 2009 WL 5042696, at *5 (W.D.N.Y. Dec. 15, 2009) ("Even when a juror expressly doubts his or her impartiality on voir dire, a finding of actual bias is not necessarily compelled. Here, the juror never stated

that he could not be fair or impartial, nor did he aver that he had personal knowledge of petitioner's case. Because petitioner cannot establish actual bias, [defense counsel's] decision not to challenge the juror was within the realm of sound trial strategy." (internal citations omitted)); *accord Hughes v. United States,* 258 F.3d 453, 458 (6th Cir.2001) ("A juror's express doubt as to her own impartiality on voir dire does not necessarily entail a finding of actual bias. The Supreme Court has upheld the impaneling of jurors who had doubted, or disclaimed outright, their own impartiality on voir dire." (citing *Patton v. Yount,* 467 U.S. 1025, 1032 (1984) and *Murphy v. Florida,* 421 U.S. 794, 803 (1975))).

**\*13** In sum, because petitioner is unable to show either that counsel acted outside the range of professional competence when counsel did not challenge Juror Regan and Juror Flick, or that petitioner was prejudiced by the decision not to challenge Juror Regan and Juror Flick, petitioner's claim for ineffective assistance of counsel with respect to counsel's failure to challenge Juror Regan and Juror Flick for cause must fail.

### ii. Decision Not To Use Peremptory Challenge on Juror Regan or Juror Flick

Petitioner also claims that he received ineffective assistance of counsel because his attorney chose not to exercise a peremptory challenge to excuse either Juror Regan or Juror Flick. (Pet. at 17–20.) The Court finds this claim to be without merit.

Petitioner has not articulated a sufficient basis to find that the decision not to use peremptory challenges on either Juror Regan or Juror Flick was outside the wide range of professional competence. *See generally Curkendall v. Mazzucca,* No. 05–CV–688S (WMS), 2008 WL 3851820, at *27 (W.D.N.Y. Aug. 15, 2008). Courts have noted that "a contention that defense counsel was ineffective for failing to challenge a prospective juror for cause or to exercise a peremptory challenge with respect to that prospective juror does not by itself constitute ineffective assistance." *Jones v. Poole,* No. 05–CV–0886 (VEB), 2010 WL 1949599, at *33

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

(W.D.N.Y. May 13, 2010) (citing *People v. Turck,* 758 N.Y.S.2d 895 (App.Div.2003)). The exercise of, or failure to exercise, a peremptory challenge may be considered trial strategy employed by the attorney. *See Curkendall,* 2008 WL 3851820, at *27; *Rodriguez,* 2009 WL 424738, at *9; *Nova,* 2007 WL 1280635, at *8.

In regards to Juror Flick, petitioner has not demonstrated any facts indicating that the decision to refrain from exercising a peremptory challenge was not trial strategy. Although she initially stated that she had some preconceived notions about drug addiction, Juror Flick unambiguously indicated, in response to direct questions, that she could follow the law as instructed by the judge and could be fair and impartial. (JVD–2 at 49–51.)

Similarly, with respect to Juror Regan, petitioner has failed to show that defense counsel's decision to refrain from using a peremptory challenge against Regan was not trial strategy. Juror Regan had stated in response to questioning from the prosecution that she could be fair and impartial toward both the government and Figueroa (JVD–1 at 119, 135), and, after her initial hesitation that petitioner's failure to testify "might" make him appear guilty, she did not express any reservations in response to trial counsel's subsequent questioning of the jury pool. (*Id.* at 177–91.) The trial judge's apparent satisfaction with Juror Regan's impartiality (*id.* at 177) lends further support to the conclusion that trial counsel's decision not to challenge Juror Regan was reasonable. Likewise, the fact that trial counsel exercised peremptory challenges against eight other jurors indicates that his choice not to challenge Juror Flick or Juror Regan was conscious and strategic. *See Rodriguez,* 2009 WL 424738, at *9; *Nova,* 2007 WL 1280635, at *8.

**\*14** Petitioner has failed to demonstrate that this strategic decision, under the circumstances of this case, was objectively unreasonable and was constitutionally defective. *See, e.g., Tolliver v. Greiner,* No. 902–cv–0570 (LEK)(RFT), 2005 WL 2179298, at *6 (N.D.N.Y. Sept. 8, 2005) ("While

Petitioner's recitation of the prospective juror's statement is correct, Petitioner neglects to acknowledge that the potential juror thereafter promised that he would follow the judge's instructions on the law and apply them to the facts of the case. In light of those representations, it does not appear to this Court as though defense counsel could have succeeded in having that juror stricken from the panel for cause."); *Chacko v. United States,* Nos. 96–cr–519 (JGK), 00–cv–405 (JGK), 2000 WL 1808662, at *8 (S.D.N.Y. Dec. 11, 2000) (finding trial counsel not ineffective in seeking to remove juror who assured court that she "would be able to decide the case on the facts and the law"). Even assuming *arguendo* that one could second-guess the strategic decision with hindsight, this decision does not rise to the level of a constitutional violation under *Strickland.* In addition, there is no indication on the record that petitioner requested that his attorney exercise a peremptory challenge on Juror Flick or Juror Regan.

Furthermore, as discussed above, in order to show prejudice, petitioner must show that the juror was actually biased against him. Petitioner has not pointed to any facts in the record that would indicate that Juror Flick or Juror Regan was actually biased against him. Therefore, even assuming *arguendo* that petitioner was able to prove that his attorney's decision was outside the wide range of professional competence, petitioner was not prejudiced by the decision not to exercise peremptory challenges on Juror Flick or Juror Regan. Absent evidence of partiality or bias by the jurors that counsel did not strike, the Court concludes that counsel's failure to exercise peremptory challenges on Juror Flick and Juror Regan was counsel's trial strategy which, even if erroneous, did not rise to the level of constitutional error. *See, e.g., Curkendall,* 2008 WL 3851820, at *27 (finding no Sixth Amendment claim when "the record is devoid of any evidence rebutting the presumption of impartiality of any of these jurors sufficient to warrant habeas relief"); *Diaz v. Conway,* No. 04–cv5062 (RMB) (HBP), 2008 WL 2461742, at *28 (S.D.N.Y. June 17,

2008) (rejecting ineffective assistance argument in habeas petition based on failure to use peremptory challenges on three prospective jurors with connections to law enforcement "because petitioner offers nothing other than speculation regarding these jurors['] ability to be impartial"); *Encarnacion v. McGinnis,* No. 01–cv–0586 (GLS–VEB), 2008 WL 795000, at *12 (N.D.N.Y. Mar. 24, 2008) ("In any event, the decision not to seek the removal of the potential jurors through the exercise of a peremptory challenge is generally a strategic choice on counsel's part, which does not rise to the level of constitutional error."); *Cook v. Moore,* No. 02–cv–1375–T–23MAP, 2005 WL 2416038, at *5–7 (M.D.Fl. Sept. 30, 2005) (rejecting habeas claim that trial counsel was ineffective in failing to exercise peremptory challenges to exclude three prospective jurors who stated in voir dire that they would believe police officers over inmates if there was a conflict in the testimony); *Doleo v. Reynolds,* No. 00–cv–7927, 2002 WL 922260, at *4 (S.D.N.Y. May 7, 2002) ("Strategies as to the exercise of peremptories are matters of counsel's intuition, and do not rise to the level of constitutional error."); *see also Tolliver,* 2005 WL 2179298, at *6 (collecting cases).

**\*15** In sum, the Court finds no basis to conclude that petitioner received ineffective assistance of counsel due to trial counsel's failure to peremptorily challenge allegedly biased venirepersons and, thus, this claim is denied on the merits.

### b. Failure to Properly Cross–Examine Detectives Maldonado and Walker

Petitioner contends that defense counsel failed to properly cross-examine both Detective Maldonado and Detective Walker at trial. With respect to Detective Maldonado, petitioner claims that defense counsel's cross-examination opened the door to prejudicial, inadmissible hearsay. With respect to Detective Walker, petitioner claims that defense counsel failed to effectively impeach Detective Walker with statements the detective made during his Grand Jury testimony.

As an initial matter, the Court notes that "[d]ecisions which fall squarely within the ambit of trial strategy, ... if reasonably made, will not constitute a basis for an ineffective assistance claim." *United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir.1987). The decision "whether to engage in cross-examination, and if so to what extent and in what manner, [is] ... strategic in nature," and is the type of "tactical decision ... engaged in by defense attorneys in almost every trial." *Id.* The Court will examine each of petitioner's contentions in turn.

### i. Cross–Examination of Detective Maldonado

Petitioner asserts that defense counsel's cross-examination of Detective Maldonado elicited highly prejudicial and otherwise inadmissible testimony. (Pet. at 21–22.) Specifically, trial counsel asked "[a]t any time did you take any statement from Mr. Schwab [on December 11, 2003]?" (Tr. at 81.) Maldonado responded, "I took, um, one statement related to his purchase of narcotics." (*Id.*) Trial counsel asked whether Detective Maldonado ever provided this statement to the D.A.'s Office, and Maldonado explained that he had not done so because the case was not assigned to him. (*Id.*) When the prosecution objected to this line of questioning, trial counsel noted "[i]t wasn't the Rosario." (*Id* .) After further questioning, Maldonado gave the following testimony:

Q: Detective, do you know what the contents of that statement were?

A: Yes.

Q: Do you know what they were regarding? Was it regarding what you thought was a hand-to-hand transaction between Mr. Figueroa and Mr. Schwab?

A: From what I recall ... Mr. Schwab indicated he called Mr. Figueroa up and told him he wanted to purchase some narcotics ... and subsequently Mr. Figueroa showed up at [Mr. Schwab's] house and sold him $50 worth of crack cocaine.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

(*Id.* at 82.) Trial counsel again asked whether Maldonado turned this statement over to the district attorney's office, to which Maldonado responded that he gave the statement to Detective Walker. (*Id.*) On redirect, the prosecution elicited further testimony regarding Schwab's statement that he purchased crack cocaine from Figueroa. (*Id.* at 99.)

**\*16** Subsequently, outside the presence of the jury, defense counsel argued that Schwab's statements were *Rosario* material that the prosecution failed to turn over to the defense. (*Id.* at 150.) Defense counsel argued that the prosecution's error in not turning over the statement was "exacerbated by the fact that the detective basically testified to the contents of that statement." (*Id.*) The trial court, however, disagreed, noting that defense counsel opened the door to the hearsay statements. (*Id.*) Defense counsel disagreed with the court, and proceeded to make a record regarding his *Rosario* objection. (*Id.* at 150–51.)

The Court finds petitioner has failed to demonstrate that defense counsel's cross-examination of Detective Maldonado fell outside the "wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690. The trial record demonstrates that counsel's decision to elicit testimony from Maldonado about Schwab's statements was part of a strategy designed not only to show that the prosecution engaged in improper *Rosario* violations, but also to undermine the police's credibility by highlighting their failure to turn over relevant evidence to the defense. Trial counsel twice asked Detective Maldonado whether he had turned the statement over to the district attorney's office (Tr. at 81–82), and then placed objections on the record that he believed the statements were *Rosario* material that was improperly withheld from defense counsel. (*Id.* at 81, 150–51.) Counsel's questions regarding the contents of the statement reasonably can be construed as strategic attempts to establish that the statements in fact were relevant to Figueroa and, therefore, should have been turned over to the defense. Indeed, had counsel succeeded in proving a

*Rosario* violation, the trial court might have sanctioned the prosecution by, for example, giving an adverse inference jury charge. *See People v. Wallace,* 565 N.E.2d 471, 472 (N.Y.1990) ("Where the People fail to exercise due care in preserving *Rosario* material, and defendant is prejudiced thereby, the [trial] court *must* impose an appropriate sanction." (emphasis in original) (internal quotation marks and citation omitted)); *People v. Dunn,* 592 N.Y.S.2d 299, 301 (App.Div.1993) (noting that where police destroyed notes that would have constituted *Rosario* material, trial court "could have fashioned an adverse inference charge which would have been an appropriate sanction under the circumstances").

In addition, this line of questioning was consistent with counsel's overall attempt in cross-examining Maldonado to show to the jury that the police's focus on December 11, 2003 was not petitioner's actions but instead was their attempt to arrest alleged burglar Schwab. (Tr. at 80–81, 85, 89.) For example, counsel was able to establish that although Maldonado was the detective who observed the hand-to-hand transaction, he was not involved in the stop of petitioner, and, in fact, petitioner was ultimately arrested by other officers who did not observe the transaction. (*Id.* at 89–90.) Moreover, counsel was able to draw attention to inconsistencies in Maldonado's testimony about the Schwab statement itself, thereby further discrediting Maldonado's testimony. Specifically, counsel elicited testimony from Maldonado that Schwab was a heroin, rather than a cocaine, addict (*id.* at 92), thus undercutting the police's claim that Schwab said he bought cocaine from petitioner.

**\*17** Thus, although counsel's crossexamination strategy could perhaps bequestioned in hindsight, the record shows that counsel's performance was not constitutionally defective. *See Singleton v. Davis,* 308 F. App'x 560, 562 (2d Cir.2009) (finding state court did not unreasonably apply *Strickland* to find trial counsel was not ineffective where "[t]he record demonstrates that counsel's failure to object

to the admission of second-hand accounts of the offense—his decision to elicit hearsay in at least one instance—was part of a strategy designed to highlight for the jury what defense counsel perceived to be an inconsistency between the victim's testimony and the physical evidence presented by the prosecution"); *Loliscio v. Goord,* 263 F.3d 178, 195 (2d Cir.2001) ("[I]n case after case, we have declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised." (internal quotation marks and citation omitted)). Only where trial counsel's decision to elicit certain testimony was "incoherent" has the Second Circuit found counsel's performance to be unreasonable. *Id* .

In any event, even assuming *arguendo* that trial counsel's performance was objectively unreasonable, petitioner has failed to demonstrate that counsel's elicitation of hearsay testimony from Detective Maldonado prejudiced petitioner at trial. First, the prosecution's decision not to rely in its summation on Maldonado's testimony regarding Schwab's statements (Tr. at 270–79) indicates that petitioner was not prejudiced by the testimony. *See Loliscio,* 263 F.3d at 195–96 ("[T]he prosecution expressly declined to rely on the [testimony in question] during its summation. We agree that this prosecution decision strongly suggests that petitioner was not prejudiced...."). In addition, the prosecution presented an extensive amount of other evidence regarding petitioner's guilt, *see* Section I.A, *supra,* thus indicating that petitioner would have been convicted even absent Maldonado's testimony regarding Schwab's statements. In light of these findings, the Court declines to hold that there is a "reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

### ii. Cross–Examination of Detective Walker

Petitioner also contends that defense counsel failed to properly impeach Detective Walker's testimony during cross-examination. (Pet. at 28.) On direct examination, Walker testified, "I again instructed [Figueroa] to exit the vehicle; told him to step out; I put my hand on his shoulder. I opened the door; he exited the vehicle; *and upon exiting the vehicle he immediately pressed his pelvis against the vehicle."* (Tr. at 108 (emphasis added).) This action alerted Walker to the risk that Figueroa may have been trying to hide a weapon, and therefore caused Walker to search Figueroa. (*Id.* at 109–10.)

**\*18** On cross-examination, defense counsel confronted Walker with his grand jury testimony, during which Walker had testified that after petitioner stepped out of the car, "I pinned his pelvis against the vehicle." (*Id.* at 126–27.) In response, Walker stated that he had never testified that he pinned petitioner's pelvis to the vehicle and that the grand jury stenographer misinterpreted his testimony. (*Id.* at 127.) Before moving on to other topics, defense counsel confirmed with Walker that the detective's explanation for the inconsistency was that the stenographer had incorrectly recorded his testimony. (*Id.*)

Petitioner has failed to show that trial counsel's cross-examination of Walker fell below an objective standard of reasonableness. *See Strickland,* 466 U.S. at 690. By confronting Walker with the prior inconsistent statement from his grand jury testimony, defense counsel plainly highlighted the discrepancy for the jury. Having done so, trial counsel properly placed the issue before the jury, whose role it was to then evaluate Walker's credibility. *See United States v. McCourty,* 562 F.3d 458, 476 (2d Cir.2009) ("It is the function of the jury to weigh the evidence and to assess the credibility of those witnesses who testify. It was therefore well within the purview of the jury to resolve any discrepancies in the testimony of [the police officers], testimony that [defendant] now claims was perjured."); *United States v. Byrd,* 210 F. App'x 101, 103 (2d Cir.2006) ("Although the chief witness against [the defendant] had serious credibility problems, the jury was free to accept his explanations for prior inconsistent statements."). The conclusion that trial counsel effectively impeached Walker's testimony is suppor-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

ted by the fact that, after counsel highlighted Walker's inconsistent statements, counsel tried to further challenge Walker's credibility by questioning Walker on his failure to initially find a "baseball-sized quantity" of drugs during Walker's pat-down search of petitioner. (Tr. at 127–31.)

In short, the Court finds that trial counsel's cross-examination of Walker was reasonable and, therefore, cannot provide a basis for habeas relief under *Strickland*.

### c. Failure to Object to the Trial Court's Jury Instruction

During jury deliberations, the jury sent out a note to the judge that stated, "We have come to an agreement on three of the seven charges, and not budging. What do we do?" (Tr. at 330.) In response, the judge brought the jury into the courtroom and instructed them, "At this stage I am going to direct you to continue deliberations. Your luncheon order was taken and will arrive shortly. That being said, continue your deliberations." (*Id.* at 331–32.) The jury later found petitioner guilty on all seven counts. (*Id.* at 333–35.)

Petitioner contends that trial counsel was ineffective for failing to object to the trial court's instruction for the jury to "continue deliberations," rather than to "continue the deliberation *on the entire case.*" (Pet. at 23.) New York Criminal Procedure Law Section 310.70 states that when a jury returns a partial verdict, the trial judge has the option of either accepting the partial verdict and ordering the jury to continue deliberations on the remaining counts or refusing to accept the partial verdict and ordering the jury "to resume its deliberation upon the entire case." N.Y.Crim. Proc.L. § 310.70 (1)(b)(i)-(ii).

**\*19** Petitioner cites to two cases that he argues show the trial court's instruction was improper. (Pet'r Reply at 17–18.) Each of these cases, however, is distinguishable from the instant case, and neither demonstrates that trial counsel's failure to object to the court's instruction constituted inef-

fective assistance. In *People v. Miller,* 558 N.Y.S.2d 591 (App.Div.1990), the court found that the trial judge erred when he instructed the jury to resume its deliberations, but did not specify that they should continue deliberations on "the entire case." *Id.* at 592–93. The court did not state, however, that this error alone warranted reversal of the defendant's conviction. Indeed, the court in *Miller* based its decision to remand for a new trial primarily on the trial judge's decision to refuse to allow defense counsel to see the note sent out by the jury. *Id.* at 592.

Similarly, in *People v. Williams,* 494 N.Y.S.2d 563 (App.Div.1985), althoughthe court found that "[f]ailure to direct that deliberation be continued on the *entire* case was error," this error was harmless because the trial court ultimately accepted a partial verdict identical to the one it had originally rejected. *Id.* at 565 (emphasis in original). Thus, given that the New York Appellate Division found that the trial court's error was "of no consequence," *id.* at 564, this Court cannot infer from *Williams* that had the other errors in that case not occurred, the conviction would have been overturned solely on the basis of the incorrect instruction.

Furthermore, case authority cited by respondent indicates that failure to instruct the jury to continue deliberating on the "entire case," without more, is not enough to require reversal of a defendant's conviction. *See People v. Sykes,* 653 N.Y.S.2d 300, 300 (App.Div.1997) (although issue was unpreserved for appellate review, trial court's instruction did not violate defendant's due process rights "since the court's charge did not limit the scope of the jury's deliberations and did not preclude it from reconsidering the count upon which it had agreed"); *People v. Freire,* 649 N.Y .S.2d 407, 407–08 (App.Div.1996) (although issue was unpreserved for appeal, trial court did not err where "instruction neither limited the jury's discussions to the charges on which it had not reached a verdict nor precluded the jury from reconsidering the counts upon which it had already agreed"); *People v. Andujar,* 643

N.Y.S.2d 341, 341 (App.Div.1996) (same).

In short, the failure to object to the instruction was not objectively unreasonable. In any event, petitioner has offered only mere speculation that a proper instruction would have altered the result at trial, and consequently, he has failed to show that he was prejudiced by counsel's decision not to object to the instruction. Therefore, petitioner is not entitled to habeas relief on this ground.

### d. Failure to Request a Missing Witness Charge for Sgt. Hamilton

**\*20** Next, petitioner claims that habeas relief is appropriate because trial counsel failed to request a missing witness charge for Detective Sergeant Hamilton. (Pet. at 24.) Petitioner argues that because Hamilton was the officer who found and removed the baggie containing drugs from petitioner's waistband, Hamilton was "instrumental in arresting petitioner" and, therefore, should have been called as a witness at trial. (*Id.* at 25.) Accordingly, petitioner contends that trial counsel erred in failing to request a missing witness instruction. (*Id.* at 24–28.) The Court finds this claim to be without merit.

Under New York law, a party seeking a missing witness charge must demonstrate, *inter alia,* "that the witness would provide non-cumulative testimony" that would not "merely corroborate the testimony of other witnesses." *Davis v. Mantello,* 42 F. App'x 488, 491 (2d Cir.2002) (citing *People v. Gonzalez,* 502 N.E.2d 583 (N.Y.1986); *People v. Keen,* 728 N.E.2d 979 (N.Y.2000)). Here, Hamilton's testimony would have been cumulative of that given by Walker. Although Walker did not initially see the baggie when he checked petitioner's waistband for weapons, he testified that he saw the baggie once Hamilton pointed it out, and he observed Hamilton—who was standing right next to Walker—when Hamilton removed the baggie from the waistband. (Tr. 110–11.) Moreover, Hamilton handed Walker the baggie immediately after removing it and it was Walker who then secured the evidence and arrested petitioner. (*Id.* at 111.)

In light of this record, it is clear that petitioner would not have been entitled to a missing witness charge and, accordingly, trial counsel was not ineffective for failing to request such a charge. *See Davis,* 42 F. App'x at 491–92 (finding trial counsel not ineffective where testifying witness and missing witness were together throughout duration of the crime, and missing witness therefore would have added no new information).

Additionally, even assuming that petitioner was able to prove that trial counsel's decision not to request a missing witness charge was outside the range of professional competence, petitioner has not presented any evidence that the result of his trial would have been different had counsel made such a request. The record reveals that the testimony of Detectives Maldonado and Walker provided compelling evidence of petitioner's guilt. Moreover, in an attempt to undermine the prosecution's case, defense counsel reminded the jury during his summation not only of Detective Hamilton's absence, but also of the absence of several other detectives. (Tr. at 264.) Accordingly, petitioner has failed to show either that trial counsel erred in failing to request the missing witness charge or that this alleged error prejudiced petitioner in any way. *See, e.g., Brown v. Spitzer,* No. 05–CV–1553 (BMC), 2007 WL 2406870, at \*3 (E.D.N.Y. Aug. 21, 2007) ("[P]etitioner's trial counsel was granted the right to argue in closing that the jury should draw an adverse inference from the failure to call [the witness], for whatever that was worth, and the cases have recognized that counsel's closing argument as to an allegedly missing witness cures the failure to charge, if one would be required."). Thus, habeas relief on this ground is unwarranted.

### e. Failure to Make a Proper Summation

**\*21** The Court also construes Figueroa's petition as requesting habeas relief on the ground that trial counsel failed to give an adequate summation. (Pet. at 29.) In particular, petitioner contends that trial counsel was ineffective for: (1) failing to make any arguments about the inconsistency between De-

tective Walker's grand jury and trial testimony; (2) failing to "summarize defense witnesses' testimony and emphasize how it contradicted the police version about how the search [of petitioner] was conducted"; and (3) failing to make "any rational marshaling of the facts." (*Id.*) Petitioner argues that he was prejudiced by trial counsel's alleged failures because "an effective summation" could have "persuaded the jury not to convict at least on [the four charges upon which the jury initially could not reach a verdict]." (*Id.*)

In light of the "heavy measure of deference to counsel's judgments," *Greiner,* 417 F.3d at 319 (internal quotation marks omitted), trial counsel's summation did not "[fall] below an objective standard of reasonableness," *Strickland,* 466 U.S. at 694, such that habeas relief is warranted. Counsel's summation was tailored to persuade the jury not only that the prosecution had failed to meet their burden of proof, but also to cast suspicion on the methods and motives of the police. Counsel reminded the jury that the prosecution's case consisted of only four witnesses despite the involvement of other police personnel. (Tr. at 264.) Contrary to petitioner's claims, trial counsel also referenced the testimony of the two defense witnesses and described how those witnesses' testimony contradicted the police's account that petitioner was not strip searched. (*Id.* at 266–67.) Finally, throughout his summation, trial counsel repeatedly attacked the police's credibility, arguing, *inter alia,* that the detectives had an interest in the outcome of the case and lied about how they searched petitioner. (*Id.* at 267.) In light of this record, petitioner has failed to demonstrate that counsel was ineffective with regard to his summation.

Furthermore, even assuming *arguendo* that petitioner was able to prove that trial counsel's summation was inadequate, petitioner cannot show that he was prejudiced by counsel's error. Petitioner has not cited any facts from the record suggesting that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland,*

466 U.S. at 694, and, accordingly, petitioner's claim for ineffective assistance of trial counsel relating to counsel's allegedly inadequate summation must fail.

f. Failure to Object to the Prosecution's Summation

Petitioner also alleges that trial counsel was ineffective for failing to object to statements made by the prosecution during its summation. (Pet. at 29.) Specifically, petitioner finds objectionable the prosecution's characterization of the defense's case as a "show of 'magic' " designed to deflect the jury's attention from the evidence presented by the government during trial. (*Id.* at 29–30.) The Court finds that the prosecution's summation was proper and, thus, that defense counsel's failure to object did not constitute ineffective assistance.

**\*22** Improper remarks by a prosecutor during summation amount to a violation of a defendant's due process rights only where they constitute " 'egregious misconduct.' " *United States v. Shareef,* 190 F.3d 71, 78 (2d Cir.1999) (quoting *Donnelly v. De Christoforo,* 416 U.S. 637, 647 (1974)); *see also Gonzalez v. Sullivan,* 934 F.2d 419, 424 (2d Cir.1991) ("A criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding." (quoting *United States v. Young,* 470 U.S. 1, 11 (1985)). For a claim of prosecutorial misconduct to suffice to establish a claim of constitutional error, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (internal quotation marks omitted). Instead, the remarks must have " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Id.* (quoting *Donnelly,* 416 U.S. at 642).

To meet this standard, a petitioner must show that he "suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully,* 41 F.3d 818, 824 (2d Cir.1994). Factors considered in determining whether a petitioner suffered such preju-

dice include "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." *Id.; accord United States v. Thomas,* 377 F.3d 232, 245 (2d Cir.2004).

Petitioner has not met this standard. The prosecutor's comments that the defense case was "similar [to] magic[ ]" designed to "direct [the jury's] attention someplace else," and was a "big, elaborate, look over here, let me abra-cadabra over here so [the jury doesn't] look at the evidence," (Tr. at 271–273), were within the bounds of reasonable argument during a summation. *See United States v. Tocco,* 135 F.3d 116, 130 (2d Cir.1998) ("The prosecution and the defense are generally entitled to wide latitude during closing arguments, so long as they do not misstate the evidence."); *United States v. Jaswal,* 47 F.3d 539, 544 (2d Cir.1995) (finding no prosecutorial misconduct where prosecutor characterized defendant's case as a "fairy tale" because "[a] prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation" (internal citations and quotation marks omitted)); *Hirsch v. Plescia,* No. 03–cv–1617 (DLI), 2005 WL 2038587, at *4, *6 (E.D.N.Y. Aug. 23, 2005) (concluding that even where prosecutor called defendant "Mr. Hocus Pocus," there was no misconduct because "comments made by the prosecutor that defense counsel was misleading the jury or distorting the facts were not overly inappropriate, considering that the prosecutor was responding to similar comments from defense counsel"). Defense counsel's closing argument focused in large part on the credibility of the government's witnesses, and the prosecutor was entitled to respond accordingly. *See United States v. Bautista,* 23 F.3d 726, 733 (2d Cir.1994) ("The government is ordinarily permitted to respond to arguments impugning the integrity of its case." (internal citations and quotation marks omitted)); *Pineda v. Miller,* No. 03–CV–1344 (NG)(MDG), 2006 WL 2239105, at *20 (E.D.N.Y. Aug. 4, 2006) ("[T]he prosecutor's comments regarding the weaknesses in peti-

tioner's defense are proper responses to the efforts of defense counsel to attack the credibility of the undercovers.").

**\*23** Consequently, the Court finds that the prosecution's summation was proper and that defense counsel therefore did not err in failing to object. *See United States v. Cohen,* 427 F.3d 164, 170 (2d Cir.2005) ("[A]bsent any prejudicial error in the Government's summation, the failure ... to raise an otherwise futile objection could not have rendered counsel ineffective."); *cf. People v. Nieves,* 767 N.Y. S.2d 913, 914 (App.Div.2003) ("[A] prosecutor has broad latitude in responding to the defense counsel's summation or commenting on the trial testimony." (internal quotation marks omitted)).

Even assuming that the prosecutor's summation was improper and that defense counsel was ineffective for failing to object, petitioner has failed to show that he was prejudiced thereby. The prosecutor's statements were brief and constituted only a small portion of her summation, the bulk of which focused instead on the weight of the evidence against petitioner. *See Miller v. Barkley,* No. 03–cv–8580 (DLC), 2006 WL 298214, at *3 (S.D.N.Y. Feb. 8, 2006) (finding no misconduct where, *inter alia,* "[t]he prosecutor's statements were brief and not a significant part of the State's argument or summation"); *Escobar v. Senkowski,* No. 02–cv–8066 (LAK/THK), 2005 WL 1307939, at *15 (S.D.N.Y. May 26, 2005) ("To render a trial fundamentally unfair ... a prosecutor's improper comments during summation must be more than 'short and fleeting,' but must instead be 'so numerous and, in combination, so prejudicial that a new trial is required.' " (quoting *Tankleff v. Senkowski,* 135 F.3d 235, 253 (2d Cir.1998))).

Moreover, the trial judge was able to take steps to remedy any prejudice petitioner may have been subject to as a result of the prosecutor's remarks through jury instructions, whereby the Court reminded jurors that they were not bound by the arguments of counsel as to what the evidence showed. FN4 Similarly, the trial court also admonished the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

jurors that the burden of proof never shifts from the prosecution. (Tr. at 291–92.) Where there is trial error, the use of a jury instruction to remedy it can serve to balance any potential prejudice. *Cf. Gonzalez,* 934 F.2d at 424. Finally, the Court finds that, as discussed *supra,* the evidence presented of petitioner's guilt was so strong that conviction virtually was certain even absent the alleged prejudicial conduct.

> FN4. The trial judge instructed the jury: "During the openings and summations the attorneys have urged you to accept their arguments and conclusions about what the evidence does and does not show. You are not bound to accept these arguments or conclusions." (Tr. at 284.)

Accordingly, given that the prosecution's summation was proper and did not prejudice petitioner, defense counsel was not ineffective for failing to object. The Court, therefore, finds that habeas relief on this ground is unwarranted.

### g. Failure to Move to Dismiss Multiplicitous Counts of the Indictment

Petitioner asserts that trial counsel failed to object to counts five and six of the indictment as multiplicitous. (Pet. at 31.) Both counts, which charge petitioner with Criminal Possession of a Controlled Substance in the Third Degree, relate to drugs found on petitioner's body during the December 11, 2003 arrest. (*Id.*) Because the same elements were required to prove both counts, petitioner contends that count six is multiplicitous and that trial counsel erred in failing to move to dismiss it. (*Id.*) Petitioner argues that he was prejudiced by counsel's mistake because it is "readily conceivable that the number of ... counts ... on which the petitioner was found guilty (*i.e.* 7) played a significant role in the overall 18 year sentence imposed." (*Id.*) According to petitioner, "[r]educing the number of the counts of indictment could and should have resulted in a lesser sentence." (*Id.*)

**\*24** In contrast, the government argues that the counts are not multiplicitous because they refer to

quantities of cocaine that were retrieved from different locations on petitioner's body. *See* Resp't Mem. of Law at 11–12 ("[C]ount 5 referred to cocaine contained in People's Exhibit 4 .... [which] contained the cocaine taken from petitioner's 'buttocks region.' ... Count 6 referred to the cocaine contained in People's Exhibit 3 .... [which] included 12 individual baggies containing cocaine." (internal citations omitted)).

Under New York law, an indictment is multiplicitous " 'when a single offense is charged in more than one count.' " *Grady v. Artuz,* 931 F.Supp. 1048, 1059 n. 6 (S.D.N.Y.1996) (quoting *People v. Kaszovitz,* 640 N.Y.S.2d 721, 722 (N.Y. City Crim. Ct., Bronx Cnty.1996)). "The primary problem is that the jury can convict on both counts, resulting in two punishments for the same crime in violation of the Double Jeopardy Clause of the Fifth Amendment." *United States v. Ansaldi,* 372 F.3d 118, 124 (2d Cir.2004). In determining whether a single crime has been committed, "[i]t is not determinative whether the same conduct underlies the counts; rather, it is critical whether the 'offense' ... complained of in one count is the same as that charged in another." *United States v. Chacko,* 169 F.3d 140, 146 (2d Cir.1999) (citations omitted). Thus, "[i]n assessing whether a defendant is impermissibly charged with essentially the same offense more than once ... the touchstone is whether Congress intended to authorize separate punishments for the offensive conduct under separate statutes." *Id.*

The Court need not resolve the issue of whether counts five and six of petitioner's indictment were multiplicitous, however, because, even assuming that they were, petitioner cannot demonstrate that he was prejudiced by counsel's failure to object. The record shows that petitioner was sentenced to concurrent terms for counts five and six, meaning that his sentence was not lengthened or impacted by the fact that he was convicted on both counts. *See People v. Vargas,* 898 N.Y.S.2d 323, 329 (App.Div.2010) ("Nor can counsel be deemed

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

ineffective for failing to seek dismissal of the allegedly multiplicitous counts in the indictment. Even assuming that this contention would have been found meritorious, the only remedy would be dismissal of the repetitive count or counts, which would have had no practical effect upon defendant's punishment since he received concurrent sentences on the counts at issue." (internal citations omitted)); *cf. People v. Thompson,* 823 N.Y.S.2d 602, 603 (App.Div.2006) (holding that although claim was not preserved for appellate review, "[i]nsofar as defendant received concurrent 15–day jail sentences on each conviction under the counts at issue, and inasmuch as each of these terms was effectively subsumed within the concurrent one-year jail terms imposed in connection with the more serious charges in the indictment, dismissal of the allegedly multiplicitous counts would have no practicable effect upon defendant's punishment"); *People v. Morey,* 637 N.Y.S.2d 500, 501 (App.Div.1996) (declining to reach claim regarding multiplicitous counts where "[i]nasmuch as defendant received concurrent sentences such a dismissal would not alter, under the circumstances of this case, the quantum of punishment meted out"). Petitioner has pointed to no facts demonstrating that his conviction on both counts five and six negatively impacted the length of sentence the trial court imposed. Thus, the Court finds that habeas relief on this ground is unwarranted.

### 2. Ineffective Assistance of Appellate Counsel

**\*25** Petitioner also brings a claim of ineffective assistance of appellate counsel. Specifically, petitioner claims that appellate counsel was ineffective for: (1) failing to file any appellate argument with respect to the November 2003 arrest and conviction; (2) failing to file an *Anders* brief; and (3) failing to raise ineffective assistance of trial counsel as an issue on appeal. (Pet. at 32–40.) As set forth *infra,* these claims have no merit.

### a. Standard

A criminal defendant has the right to the effective assistance of counsel on the direct appeal of his conviction. *See Evitts v. Lucey,* 469 U.S. 387, 396 (1985). In determining whether appellate counsel has rendered constitutionally effective assistance, courts will apply the same standard established in *Strickland v. Washington,* 466 U.S. 668 (1984), for analyzing such claims as to trial counsel. *See, e.g., Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994). As noted *supra,* under the *Strickland* standard, a petitioner alleging ineffective assistance of appellate counsel must prove both that: (1) appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and (2) absent counsel's deficient performance, there was a reasonable probability that the defendant's appeal would have been successful. *See Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir.2001); *Mayo,* 13 F.3d at 533–34.

Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins,* 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes,* 463 U.S.745 (1983)). As the Supreme Court has noted, "[t]his process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Jones,* 463 U.S. at 751–52); *accord Sellan v. Kuhlman,* 261 F.3d 303, 317 (2d Cir.2001). Thus, reviewing courts should not "second-guess" the reasonable professional judgments of appellate counsel as to the most promising appeal issues. *Jones,* 463 U.S. at 754; *accord Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998). Instead, as the Second Circuit has instructed:

> [T]he district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

presumption of effective assistance of counsel be overcome.

*Mayo,* 13 F.3d at 533 (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1985)).

Under the second prong of the *Strickland* test, a petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. " 'Reasonable probability' " means that the errors were of a magnitude such that they " 'undermine[ ] confidence in the outcome.' " *Pavel v. Hollins,* 261 F.3d 210, 216 (2d Cir.2001) (quoting *Strickland,* 466 U.S. at 694).

**\*26** For the reasons set forth below, petitioner's claims are without merit.

### b. Analysis

As a threshold matter, the Court notes that petitioner's ineffective assistance of counsel arguments were rejected by the Appellate Department in petitioner's writ of error *coram nobis* application. In its opinion denying the writ, the Appellate Division found that petitioner "failed to establish that he was denied the effective assistance of appellate counsel." *People v. Figueroa,* 885 N.Y.S.2d 215, 215 (App.Div.2009) (citing *Jones,* 463 U.S. 745 and *People v. Stultz,* 2 N.Y.3d 277 (N.Y.2004)). Thus, petitioner's claims are properly exhausted. Moreover, because the Appellate Division's decision is an "adjudicat[ion] on the merits," *see* 28 U.S.C. § 2254(d), it is entitled to the deferential standard of review under AEDPA. *See Sellan,* 261 F.3d at 314 (finding that Appellate Division adjudicated petitioner's ineffective assistance of counsel claim on the merits by denying motion for a writ of *coram nobis,* even though denial did not refer to Sixth Amendment or federal case law).

#### i. Failure to Raise Any Appellate Argument Regarding the November 2003 Arrest and Conviction

In support of his claim, petitioner contends that appellate counsel was ineffective for failing to raise any appellate argument relating to the November 22, 2003 arrest. (Pet. at 32.) As evidence that this omission was not strategy, petitioner states that appellate counsel "had practically no experience at all as a criminal appellate attorney" and that he "lacked the time, energy and staff to perfect the appeal in an adequate fashion." (*Id.* at 33.) Petitioner relies in particular on appellate counsel's February 14, 2006 affirmation submitted in support of petitioner's motion for assignment of new counsel. (*Id.*) In that affirmation, counsel stated that his view of petitioner's case was in "conflict" with petitioner's, and that he saw "no reason not to grant" petitioner's request for new counsel. (Pet. at App'x 5.) Appellate counsel stated that he had limited time to devote to petitioner's appeal, that he was a sole practitioner working mostly in family court and had worked on only one criminal appeal in the past, and that he was planning to request that his name be removed from the list of attorneys who were willing to accept appointments as criminal appellate counsel. (*Id.*) On April 20, 2006, appellate counsel filed an additional letter with the Appellate Division in which he noted that several problems had "slowed the production of the brief," and that he would attempt to give a copy of the brief to his client by June 15, 2006. (*Id.*) Counsel ultimately filed his brief on behalf of petitioner on July 10, 2006, arguing that the trial court erred in denying petitioner's motion to suppress the evidence seized during the December 2003 arrest. (*Id .*)

As discussed above, appellate counsel was not obligated to raise every nonfrivolous argument that petitioner wished to pursue. *See Evitts,* 469 U.S. at 394; *Jones,* 463 U.S. at 751–52; *Aparicio,* 269 F.3d at 95; *Mayo,* 13 F.3d at 533. Indeed, to satisfy the first prong of the *Strickland* standard, petitioner must do more than show that counsel "omitted a nonfrivolous argument," *Mayo,* 13 F.3d at 533 (citing *Jones,* 463 U.S. at 754). Instead, a petitioner "may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo,* 13 F.3d at

533.

**\*27** Petitioner has utterly failed to demonstrate a single claim that counsel could have raised in regard to the November 2003 arrest. Rather than citing any facts or law that would have provided grounds to appeal, petitioner instead makes vague assertions that appellate counsel should have divined some argument regarding the fairness of the trial or the circumstances of petitioner's November arrest. (Pet. at 32–35.) Although petitioner is correct that appellate counsel relied upon an incorrect standard of law in making the one argument he raised on appeal, *see Figueroa,* 833 N.Y.S.2d at 529–30 (rejecting argument that police did not have probable cause to make December 11, 2003 stop on grounds that police did not need probable cause but instead only needed reasonable suspicion), petitioner has not pointed to any "significant and obvious issues," *Mayo,* 13 F.3d at 533, that counsel could have pursued in the alternative. Accordingly, the Court concludes that the Appellate Division's ruling rejecting petitioner's claim of ineffective assistance of appellate counsel was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts.

Furthermore, even assuming *arguendo* that counsel's omission was an exercise of unreasonable professional judgment, petitioner fails to satisfy the second prong of the *Strickland* standard. There is no basis to conclude that an argument raised in relation to the November 2003 arrest would have been successful, given the lack of support in the record for such a claim. Thus, petitioner has failed to show that there was a reasonable probability that his appeal would have been successful absent appellate counsel's alleged deficient performance. Petitioner's claim for habeas relief on this ground is denied.

### ii. Failure to File an *Anders* Brief

Petitioner contends that if appellate counsel's failure to raise any arguments regarding the November 2003 arrest was because counsel believed those

claims to be frivolous, then counsel should have filed an *Anders* brief "referring to anything in the record that might arguably support the appeal." (Pet. at 35.)

Petitioner, however, has misapplied the Supreme Court's holding in *Anders v. California,* 386 U.S. 738 (1967) to the circumstances of this case. Under *Anders,* "where a court-appointed lawyer finds his or her client's claims on appeal to be 'wholly frivolous,' the lawyer may so advise the court and request permission to withdraw." *United States v. Ibrahim,* 62 F.3d 72, 73 (2d Cir.1995) (quoting *Anders,* 386 U.S. at 744). Counsel must accompany his request to withdraw with what has become known as an *"Anders brief"* that "refer[s] to anything in the record that might arguably support the appeal." *Anders,* 386 U.S. at 744; *see also People v. Saunders,* 384 N.Y.S.2d 161, 161 (App.Div.1976) ("Upon finding his case to be wholly frivolous, after a conscientious examination of the record, counsel should so advise the Court and request permission to withdraw. Such request should be accompanied by a brief reciting the underlying facts and highlighting anything in the record that might arguably support the appeal.")

**\*28** Where a defendant has requested that his appellate counsel file an appeal, but counsel failed to either file an appeal or file an *Anders* brief, ineffective assistance of counsel is presumed. *See Cusano v. United States,* No. 05–cv–7177 (WHP), 2007 WL 4142771, at \*4 (S.D.N.Y. Nov. 16, 2007) ("Counsel must either proceed with the appeal or, if he believes the basis for it is frivolous, submit a brief referring to anything in the record that might arguably support it.... Failure to take either course of action is per se ineffective assistance of counsel ...." (internal citations, quotation marks, and alterations omitted)); *United States v. Mercado,* No. 01–cr–674 (DLC), 2002 WL 31619032, at \*2 (S.D.N.Y. Nov. 20, 2002) ("Where counsel has not filed an appeal but has been asked by the defendant to do so, ineffective assistance is presumed. If appellate counsel believes that an appeal is meritless

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

but has been asked by her client to appeal, she must inform the court of her belief, seek permission to withdraw, and file an *Anders* brief." (internal citations omitted)).

As these cases indicate, an *Anders* brief is only required when appellate counsel decides that there is *no* basis upon which to appeal defendant's conviction, and therefore decides that he will not file *any* brief at all on a defendant's behalf. Such are not the facts of the instant case. As described *supra,* appellate counsel did file an appeal on petitioner's behalf, arguing that the trial court erred in denying petitioner's motion to suppress. Moreover, although appellate counsel noted in his February 2006 affirmation that his views of the case were in "conflict" with petitioner's views, he did not indicate that he thought an appeal would be wholly frivolous. (Pet. at App'x 5.) Instead, appellate counsel based his request to withdraw primarily on his lack of criminal appellate experience and the lack of time he had to devote to the matter. (*Id.*) Finally, petitioner has not presented any facts indicating that he requested at the time of his appeal that his appellate counsel raise arguments related to his November 2003 arrest.

Accordingly, the presumption of ineffective assistance that can be triggered when appellate counsel fails to file an *Anders* brief is not applicable here. The Court concludes that the Appellate Division's ruling finding no ineffective assistance of appellate counsel was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts. Thus, habeas relief on this ground is denied.

### iii. Failure to Raise Ineffectiveness of Trial Counsel on Appeal

Petitioner argues that appellate counsel was ineffective for failing to challenge trial counsel's effectiveness.[FN5] (Pet. at 36.) As discussed extensively *supra,* trial counsel's performance was not deficient. Indeed, the record reveals that petitioner received meaningful representation. In any event,

there was no prejudice from any of the alleged deficiencies of trial counsel. Thus, any claim for ineffective assistance of trial counsel would not have prevailed on appeal, and, therefore, appellate counsel did not err in failing to raise such a claim. Consequently, petitioner cannot demonstrate that these "ignored" issues were stronger than those presented on appeal, and therefore, his appellate counsel did not err in failing to challenge the actions of trial counsel. Federal courts should not "second-guess reasonable professional judgments" by appellate attorneys as to what are the most promising issues for appellate review. *Jones,* 463 U.S. at 754.

> FN5. As discussed in Section II(C), *infra,* petitioner argues that trial counsel was ineffective for: (1) failing to strike biased venirepersons from the jury; (2) opening the door to prejudicial, inadmissible hearsay while cross-examining Detective Maldonado; (3) failing to object to an incomplete jury instruction; (4) failing to request a missing witness charge for Detective Hamilton; (5) failing to impeach Detective Walker and deliver an adequate summation; (6) failing to object to the prosecution's improper summation; and (7) failing to dismiss counts five and six as multiplicitous.

**\*29** Moreover, as noted above, petitioner cannot demonstrate that he was prejudiced by appellate counsel's failure to raise ineffective assistance of trial counsel on appeal, because, for the same reasons just discussed, any challenge to trial counsel's efficacy would have been without merit.

Accordingly, this Court cannot conclude that the finding that petitioner received effective assistance of counsel was contrary to, or an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts. Petitioner's application for habeas relief on this ground is denied.

### III. CONCLUSION

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Petitioner has failed to point to any state court ruling that was contrary to, or an unreasonable application of, clearly established federal law, or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court has reviewed all of petitioner's claims and finds them to be without merit. Therefore, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

E.D.N.Y.,2011.
Figueroa v. Heath
Not Reported in F.Supp.2d, 2011 WL 1838781 (E.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Westlaw Delivery Summary Report for MCKEON, COURTENA**

Date/Time of Request:          Monday, September 22, 2014 15:55 Central
Client Identifier:             O'HALLORAN
Database:                      DCT
Citation Text:                 Not Reported in F.Supp.2d
Lines:                         929
Documents:                     1
Images:                        0

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.



Not Reported in F.Supp.2d, 2009 WL 3259080 (N.D.N.Y.)
**(Cite as: 2009 WL 3259080 (N.D.N.Y.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Thomas HOWARD, Petitioner,
v.
Richard POTTER, Acting Superintendent, Respondent.

No. 9:06–CV–0982 (GTS/GHL).
Oct. 7, 2009.

West KeySummary**Infants 211** ⟜**1750**

211 Infants
    211XII Criminal Acts Against Children
      211XII(F) Evidence Issues Particular to Offenses Against Children
        211XII(F)2 Sex Offenses
        211k1744 Weight and Sufficiency
          211k1750 k. Carnal knowledge; rape and sodomy. Most Cited Cases

**Sodomy 357** ⟜**6**

357 Sodomy
    357k6 k. Evidence. Most Cited Cases
  First-degree sodomy conviction was supported by victim's testimony that, when he was less than eleven years old, defendant put his penis in victim's mouth and also put his penis between victim's butt cheeks. McKinney's Penal Law § 130.50(3).

Thomas Howard, Comstock, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, THomas B. Litsky, Esq., Assistant Attorney General, of Counsel, New York, NY, for Respondent.

***DECISION and ORDER***
Hon. GLENN T. SUDDABY, District Judge.

  ***10** Thomas Howard ("Petitioner") filed his Petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on August 14, 2006. (Dkt. No. 1.) On June 2, 2008, Petitioner filed an Amended Petition. (Dkt. No. 24.) By Report–Recommendation dated August 31, 2009, the Honorable George H. Lowe, United States Magistrate Judge, recommended that the Amended Petition be denied and dismissed, and that a certificate of appealability not issue. (Dkt. No. 38.) On September 3, 2009, Great Meadow Correctional Facility Acting Superintendent Richard Potter ("Respondent") submitted a letter brief seeking adoption of the Report–Recommendation. (Dkt. No. 39.) On September 18, 2009, Petitioner filed his Objections to the Report–Recommendation. (Dkt. No. 40.) For the reasons discussed below, Petitioner's Objections are rejected; Magistrate Judge Lowe's Report–Recommendation is accepted and adopted in its entirety; Petitioner's Amended Petition is denied and dismissed in its entirety; and a certificate of appealability shall not issue.

**I. APPLICABLE LEGAL STANDARDS**

**A. Standard of Review**

  When specific objections are made to a magistrate judge's report-recommendation, the Court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C).FN1 When only general objections are made to a magistrate judge's report-recommendation (or the objecting party merely repeats the allegations of his pleading), the Court reviews for clear error or manifest injustice. *See Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion, 175 F.3d 1007 (2d Cir.1999).*FN2 Similarly, when a party makes no objection to a portion of a report-recommendation, the Court reviews that portion for clear error or manifest injustice. *See Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at *1

(S.D.N.Y. July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition [citations omitted]. After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

> FN1. On *de novo* review, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse discretion in denying plaintiff's request to present additional testimony where he "offered no justification for not offering the testimony at the hearing before the magistrate").

> FN2. *See also Vargas v. Keane,* 93–CV–7852, 1994 WL 693885, at *1 (S.D.N.Y. Dec.12, 1994) (Mukasey, J.) ("[Petitioner's] general objection [that a] Report ... [did not] redress the constitutional violations [experienced by petitioner] ... is a general plea that the Report not be adopted ... [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636."), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996).

**B. Standard Governing Review of Petitioner's Amended Petition**

**\*11** Magistrate Judge Lowe correctly recites the legal standard governing review of Petitioner's amended *habeas corpus* petition. (Report–Recommendation at Part II.A., attached at Dkt. No. 38, at 5–7.) As a result, this standard is incorporated by reference in this Decision and Order.

**II. DISCUSSION**

For the sake of brevity, the Court will not repeat the factual background of Petitioner's 2001 conviction for sodomy, attempted sodomy in the first degree, sexual abuse in the first degree, and endangering the welfare of a child, but will simply refer the parties to the relevant portions of Magistrate Judge Lowe's Report–Recommendation, which accurately recites that factual background. (Report–Recommendation at Part I, attached at Dkt. No. 38, at 1–5.)

In his Amended Petition and Traverse, Petitioner claims that his conviction was improper for the following three reasons: (1) the evidence at trial was insufficient to support his conviction; (2) the prosecutor improperly introduced evidence at trial of Petitioner's prior bad acts; and (3) appellate counsel was ineffective because he failed to bring attention to trial counsel's omission of an element in the jury charge. (Dkt.Nos.24, 36.)

In his Report–Recommendation, Magistrate Judge Lowe recommends dismissal of Petitioner's first claim because (1) the evidence presented at trial would allow a trier a fact to find, beyond a reasonable doubt, that Petitioner was guilty of the charges presented, and (2) the Appellate Division did not act contrary to or unreasonably apply Supreme Court precedent in rejecting Petitioner's claim. (Report–Recommendation at Part II.B, attached at Dkt. No. 38, at 7–11.)

Magistrate Judge Lowe recommends dismissal of Petitioner's second claim because (1) Petitioner's admissible prior bad act was never discussed by the witness against whom the prior bad act was committed, (2) the Appellate Division's rejection of Petitioner's claim based on its finding that "The People did not ... elicit [the prior bad acts] during

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

the direct examination of the victim or at any time during the trial," is not contrary to or an unreasonable application of Supreme Court precedent, (3) Petitioner failed to exhaust his remedies with regard to his claim that evidence regarding "other bad acts/uncharged crime(s)" was improperly introduced at trial through the testimony of Detective Farrell, Dr. Hamill, and JLM, and (4) Petitioner has failed to show either that some objective external factor impeded his ability to comply with the relevant procedural rule, or that a fundamental miscarriage of justice will result from no federal review of his "other bad acts/uncharged crime(s)" claim. (Report–Recommendation at Part II.C., attached at Dkt. No. 38, at 11–15.)

Magistrate Judge Lowe recommends dismissal of Petitioner's third claim because (1) appellate counsel had no reason to argue for the inclusion of an element in the jury charge that was not required under the penal law, and (2) the Appellate Division did not act contrary to or unreasonably apply Supreme Court precedent in rejecting Petitioner's claim. (Report–Recommendation at Part II.D., attached at Dkt. No. 38 at 15–18.)

**\*12** In his Objections to Magistrate Judge Lowe's Report–Recommendation, Petitioner argues that Magistrate Judge Lowe incorrectly applied the applicable law to his claims. (Dkt. No. 40.) More specifically, Petitioner advances the following three arguments.

First, with regard to his claim that the evidence at trial was insufficient to support his conviction, Petitioner argues that the victims failed to provide detailed accounts of the abuse, and that they were "given answers" by the prosecution. (Dkt. No. 40, at 1–2.)

Second, with regard to this same claim, Petitioner argues that, to convict someone of endangering the welfare of a child under New York Penal Law § 260. 10, corroboration is required. (Dkt. No. 40, at 2–3.) Petitioner argues that, in his case, "[n]ot one victim heard [any] alleged threats made

to the others, thought [sic] they were suppose[d] to be in the same room." (Dkt. No. 40, at 2.)

Third, with regard to his claim that the prosecutor improperly introduced evidence at trial of Petitioner's prior bad acts, Petitioner argues that he properly exhausted his remedies regarding "other bad acts/uncharged crime(s)", and therefore preserved this claim for habeas review. (Dkt. No. 40, at 3–4.) In particular, Petitioner argues that, because he referenced the *Molineux* hearing in his appeal to the Appellate Division, in which the trial court determined that only Petitioner's prior bad act against one victim (who testified at Petitioner's trial regarding a crime Petitioner was charged with under the indictment) was admissible, any claims relating to Petitioner's prior bad acts were preserved for habeas review. (*Id.*)

For the sake of brevity, the Court will assume that Petitioner has made sufficiently specific objections to two of the recommendations in Magistrate Judge Lowe's Report–Recommendation, and will therefore subject those parts of the Report–Recommendation to a *de* novo review.[FN3]

> **FN3.** In his Objections, Petitioner fails to make any challenge to Magistrate Judge Lowe's recommendation regarding Petitioner's claim that appellate counsel was ineffective. As a result, Magistrate Judge Lowe's recommendation regarding this claim is reviewed only for clear error. After carefully reviewing all of the papers herein, including Magistrate Judge Lowe's thorough Report–Recommendation, the Court agrees with Magistrate Judge Lowe's recommendation regarding Petitioner's ineffective assistance claim. Magistrate Judge Lowe employed the proper legal standards, accurately recited the facts, and correctly applied the law to those facts. As a result, the Court accepts and adopts Magistrate Judge Lowe's Report–Recommendation regarding Petitioner's ineffective assistance claim for the

reasons stated therein. The Court notes that this portion of the Report–Recommendation would survive even a *de novo* review.

After carefully reviewing all of the papers in this action, including Magistrate Judge Lowe's Report–Recommendation and Plaintiff's Objections thereto, the Court agrees with each of the recommendations made by Magistrate Judge Lowe, and rejects each of Plaintiff's Objections thereto. (Dkt.Nos.38, 40.) Magistrate Judge Lowe employed the proper legal standards, accurately recited the facts, and correctly applied the law to those facts. (Dkt. No. 38.) As a result, the Court accepts and adopts Magistrate Judge Lowe's Report–Recommendation in its entirety for the reasons stated therein. The Court would add only four points.

First, with regard to Petitioner's claim that the evidence at trial was insufficient to support his conviction, for the reasons stated in Magistrate Judge Lowe's Report–Recommendation, the testimony of the victims was sufficient to establish Petitioner's guilt beyond a reasonable doubt. As a result, Petitioner's sufficiency of the evidence claim must be dismissed.

Second, with regard to Petitioner's claim that corroboration is required to convict someone of endangering the welfare of a child under New York Penal Law § 260. 10, this claim is without merit because, contrary to Petitioner's assertion, New York Penal Law § 260.10 does not require corroboration. FN4 As a result, this claim must be dismissed.

> FN4. *See New York v. Davis,* 45 A.D.3d 1351, 1351–52, 845 N.Y.S.2d 598 (N.Y.App.Div., 4th Dept.2007) (where defendant was "convict [ed] of, *inter alia,* four counts each of rape in the second degree [Penal Law § 130.30(1) ] and incest in the third degree [§ 255.25], five counts of endangering the welfare of a child [ § 260.10(1) ], and one count of sexual abuse

in the second degree [§ 130.60(2) ]," the court noted that, "[c]ontrary to defendant's ... contention, the People were not required to corroborate the victim's sworn testimony. The victim is deemed incapable of consenting to defendant's sexual conduct based on her age, not on mental defect or incapacity"); *New York v.* Taylor, 124 A.D.2d 1002, 1002, 508 N.Y.S.2d 785 (N.Y.App.Div., 4th Dept.1986) (finding that, where defendant was convicted of "three counts of first degree sodomy [Penal Law § 130.50(1) ] and one count of endangering the welfare of a child [Penal Law § 260.10(1) ], defendant's ... claim[ ] ... that the evidence was insufficient because the testimony of the victims was not corroborated ... [ha]s no merit.... Corroboration was not required because the convictions were based upon defendant's forcible compulsion and not upon the circumstance that the victims' lack of consent resulted from incapacity to consent because of their ages."); *New York v.* Tardbania, 130 A.D.2d 954, 955, 515 N.Y.S.2d 936 (N.Y.App.Div., 4th Dept.1987) (where defendant was charged with sodomy in first degree, first-degree rape, sexual abuse in first degree, and endangering welfare of child, the trial court's holding that "corroboration was not required" to sustain a charge of endangering welfare of child was correct "since the proof on the child endangerment charge did not establish acts within Penal Law article 130 [see, Penal Law § 260.11]. Moreover, forcible compulsion was not required to be shown by the prosecution to establish defendant's guilt of child endangerment [Penal Law § 260.10]. In any case, forcible compulsion was amply demonstrated by the girl's testimony that she was frightened of defendant and by the threat implicit in defendant's making sexual advances towards her in the confines of his car at 3:30 in the morning.").

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 3259080 (N.D.N.Y.)
**(Cite as: 2009 WL 3259080 (N.D.N.Y.))**

*13 Third, with regard to Petitioner's claim that prior bad acts were improperly introduced at trial, as an initial matter, in his objections, Petitioner fails to provide the Court with specific reference to the trial record where his prior bad acts were mentioned. However, even assuming that Petitioner's prior bad acts were improperly mentioned, Petitioner's argument that he exhausted his prior bad acts claim in its entirety based on the fact that he made the Appellate Division aware of the trial court's *Molineux* hearing ruling is without merit. This is because Petitioner has failed to indicate where in the record his trial counsel made objections to the prosecution's introduction of Petitioner's prior bad acts, and "[t]he contemporaneous objection rule, codified as N.Y.Crim. Proc. L. § 470.05(2), requires that in order to preserve a claim for appeal, a defendant must make his objection known at trial, so as to give the trial court the opportunity to remedy its own errors." *Dann v. Rabideau,* 05–CV–0969, 2008 WL 2704900, at *8 (N.D.N.Y. July 7, 2008) (Kahn, J) (noting that "[t]he Second Circuit Court of Appeals has observed and deferred to New York's consistent application of its contemporaneous objection rules").FN5

FN5. Instead, Petitioner actually concedes in his Objections that "Appellate Counsel may not have been able to refer directly to the instances on the record[ ] because trial counsel failed to object to them. Not preserving them for appellate review, showing that a[n] objective external factor impeded [his] ability to comply with the relevant procedur[al] rule." (Dkt. No. 40, at 4.)

Fourth, and finally, to the extent that Petitioner argues that his trial counsel's failure to object to the introduction of evidence of prior bad acts constitutes an objective external factor that impeded his ability to comply with the relevant procedural rule, this argument cannot be considered by the Court. As an initial matter, Petitioner raises this claim for the first time in his Objections. As a result, the claim cannot be considered.FN6 In any event, even

if the Court were willing to overlook the fact that this claim is raised for this first time in Petitioner's objections (which it is not), Petitioner's attempt to assert an ineffective assistance of trial counsel claim is procedurally barred, and there is no good cause for the default. This Court may review procedurally defaulted claims only if Petitioner demonstrates either (1) good cause for the default and actual resulting prejudice, or (2) that the denial of habeas relief would leave unremedied a "fundamental miscarriage of justice," i.e., that he is actually innocent.FN7 To establish cause, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule, such as governmental interference or the reasonable unavailability of the factual basis for the claim.FN8 If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Murray,* 477 U.S. at 496; *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985).

FN6. *Davis v. Herbert,* 00–CV–6691, 2008 WL 495316, at *1 (S.D.N.Y. Feb.25, 2008) ("[U]pon review of a habeas petitioner's objections to a magistrate judge's report and recommendation, the Court may not consider claims raised for the first time in the petitioner's objections-that is, claims not asserted in the petitioner's original and/or supplemental habeas petitions.") (collecting cases); *Steven B.J. v. Carpinello,* 06–CV–1220, 2008 WL 2600678, at *2 (S.D.N.Y. June 27, 2008).

FN7. *House v. Bell,* 547 U.S. 518, 536–37, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Calderon v. Thompson,* 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998); *Coleman v. Thompson,* 501 U.S. 722, 748–750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397

(1986); *Sweet,* 353 F.3d at 141–42; *Fama v. Comm'r of Corr. Srvcs.,* 235 F.3d 804, 809 (2d Cir.2000). The Court notes that at no point in any of his papers has Petitioner alleged that he is actually innocent.

FN8. *Coleman,* 501 U.S. at 753 (citing *Murray,* 477 U.S. at 488); *McClesky v. Zant,* 499 U.S. 467, 493–94, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Restrepo v. Kelly,* 178 F.3d 634, 639 (2d Cir.1999).

The ineffectiveness of trial counsel for not raising or preserving a claim in state court will be sufficient to show cause for a procedural default only when counsel was so ineffective that the representation violated the petitioner's Sixth Amendment right to counsel. *Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). While a claim of ineffective assistance of counsel may establish cause, "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.' " *Coleman,* 501 U.S. at 753 (quoting *Murray,* 477 U.S. at 488). Moreover, an ineffective assistance of counsel claim asserted as cause for another procedurally defaulted claim "can itself be procedurally defaulted." *Edwards,* 529 U.S. at 452–53.

**\*14** Here, Petitioner cannot establish cause regarding his argument in support of his prior bad acts challenge—that his trial counsel was ineffective in failing to object to the introduction of prior bad acts—because that argument was available to him at the time of his conviction and his direct appeal. Because this Court cannot consider claims raised for the first time in federal court (absent a showing of cause), Petitioner's ineffective assistance of trial counsel claim is procedurally defaulted. Moreover, Petitioner has failed to establish cause as to why he failed to raise an ineffective assistance of trial counsel claim before the Appellate Court. Because the Court may not consider Petitioner's ineffective assistance of trial counsel claim,

that claim may not act as cause for Petitioner's failure to exhaust his prior bad acts claim. As a result, Petitioner has failed to demonstrate cause for failing to exhaust his prior bad acts claim.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Lowe's Report–Recommendation (Dkt. No. 38) is ***ACCEPTED*** and ***ADOPTED* in its entirety;** and it is further

**ORDERED** that the Amended Petition (Dkt. No. 24) in this matter is ***DENIED*** and ***DISMISSED* in its entirety;** and it is further

**ORDERED** that a certificate of appealability not issue with respect to any of the claims set forth in the Amended Petition, because Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2).

***REPORT–RECOMMENDATION & ORDER***[FN1]

FN1. This action has been referred to the undersigned by District Court Judge Glenn T. Suddaby for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3(c).

GEORGE H. LOWE, United States Magistrate Judge.

**\*1** Petitioner Thomas Howard, *pro se,* is an inmate in the custody of the New York State Department of Correctional Services. After a jury trial in New York State Supreme Court, County of Albany, Petitioner was found guilty of sodomy in the first degree (two counts), attempted sodomy in the first degree (one count), sexual abuse in the first degree (four counts), and endangering the welfare of a child (four counts).[FN2] State Court Records, Ex. K. He was sentenced to an aggregate term of imprisonment of forty years with five years of post-release supervision. State Court Records, Ex. L. The Appellate Division, Third Department affirmed this

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

conviction, and the Court of Appeals denied Petitioner leave to appeal on August 30, 2005. *People v. Howard,* 20 A.D.3d 768, 798 N.Y.S.2d 573 (N.Y.App.Div.2005), *leave denied* 5 N.Y.3d 806, 803 N.Y.S.2d 35, 836 N.E.2d 1158 (2005).

> FN2. The jury also found Petitioner guilty of six counts of second-degree sodomy. State Court Records, Ex. K. However, the trial court dismissed the six counts because Petitioner's age, an element of the offense, was not established during trial. *Id.* at 383–84.

Petitioner filed an application for writ of error coram nobis, which was denied by the Appellate Division, Third Department on March 29, 2007. State Court Records, Exs. O, Q, R. The Court of Appeals denied him leave to appeal on August 30, 2007. *Id.* at Ex. T.

Petitioner has petitioned this Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Dkt. Nos. 1, 24. His amended petition sets forth the following grounds: (1) The evidence adduced at trial was insufficient to support the conviction; (2) The prosecutor improperly introduced evidence of Petitioner's prior bad acts; and (3) Appellate counsel violated Petitioner's right to effective assistance of counsel. Dkt. No. 24. For the reasons which follow, I recommend that the petition be denied.

### I. Background

In late 1999, Petitioner lived in the upstairs apartment of a two-apartment dwelling in Albany, New York. State Court Records, Ex. K, Trial Transcript ("TT") at 85–86, 106. Petitioner lived there with his mother and siblings, who included two younger brothers, JJM and AM. *Id.* at 87, 106.

JJM, who was eight-years old at the time of the trial in October of 2001,FN3 testified that Petitioner was "mean" to him. TT at 161, 165. JJM explained that Petitioner put Petitioner's penis in JJM's mouth, and put Petitioner's penis between JJM's "butt cheeks." *Id.* at 165–66. JJM also testi-

fied that Petitioner made JJM touch Petitioner's penis with JJM's hand and with JJM's penis. *Id.* at 167–68. JJM further testified that Petitioner told JJM that Petitioner would kill him if JJM told their mother. *Id.* at 169.

> FN3. After questioning JJM, the trial court concluded that JJM could be sworn under oath. TT at 82–83.

AM, who was ten-years old at the time of the trial, also testified that Petitioner was mean to him. TT at 141, 165. AM explained that on one occasion, Petitioner "took his hand and rubbed [AM's] penis ... [and AM's] butt." *Id.* at 148. AM stated that Petitioner told AM that if he told anyone, Petitioner "would kill" him. *Id.* at 149. AM also explained that on another occasion, Petitioner "tr[ied] to stick his penis in [AM's] butt." *Id.* at 146. At that point, Petitioner was kicked out of the upstairs apartment by their mother. *Id.*

**\*2** Petitioner moved into the downstairs apartment. TT at 84–86. The downstairs apartment was occupied by RM and RM's three children, which included JLM. *Id.* She stated that she allowed Petitioner to move in the apartment because "there was so much conflict between him and his mother." *Id.* at 99–100.

JLM, who was twelve-years old at the time of the trial, testified that Petitioner "made him" touch Petitioner's penis and that Petitioner touched JLM's penis. TT at 103, 108–09. JLM also testified that Petitioner "would hump [him] between [his] legs." *Id.* at 109. JLM stated that "when he got done, white stuff would be on [his] leg." *Id.* at 110. JLM also stated that "once or twice [Petitioner] put [his penis] in [JLM's] butt, but it hurt so [JLM] told him to take it out." *Id.* JLM also stated that on at least six occasions, Petitioner "would make [JLM] move his penis up and down" and Petitioner would do the same to JLM's penis. *Id.* at 110–11. JLM stated that Petitioner told him not to tell anyone. *Id.* at 114.

In March 2000, Petitioner's mother was hospit-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 3259080 (N.D.N.Y.)
**(Cite as: 2009 WL 3259080 (N.D.N.Y.))**

alized. TT at 232. During that time, AB, who is the brother of AM, JJM, and Petitioner, watched the children at his mother's apartment. *Id.* at 232–33. AB testified that he never saw Petitioner abuse their brothers. *Id.* at 234. AB also testified that none of his brothers reported to him that they were abused by Petitioner. *Id.*

However, AB also stated that he tried not to leave Petitioner alone with children because he "kn[ew] his past history." TT at 237. AB admitted that he and Petitioner fought about Petitioner hanging out with young boys all of the time. *Id.* at 237–38. AB also admitted that Petitioner wanted to have young boys spend the night all of the time. *Id.* at 238. AB further admitted that he tried to be responsible and prevent that from occurring. *Id.*

Petitioner's mother passed away on April 12, 2000. TT at 89, 233. Following her death, the "younger children" were placed in the custody of Social Services. *Id.* at 94.

Petitioner subsequently moved into a house that was occupied by DG, DG's siblings, and DG's mother. TT at 126–27. DG, who was thirteen-years old at the time of the trial, explained that he met Petitioner through AM, who was his friend. *Id.* at 124, 126. He stated that he "used to go to [Petitioner's] house to see [AM]." *Id.* DG testified that after Petitioner's mother died, DG's mother "felt sorry" for Petitioner and therefore allowed Petitioner to move in her house upon Petitioner's request. *Id.* at 134.

DG testified that after Petitioner moved in, on three or four occasions, Petitioner put his penis between DG's "butt cheeks." TT at 128–29, 135. DG stated that he told Petitioner to stop and when DG "tried" to fight back, Petitioner "threw [him] on the floor." *Id.* at 127, 130. DG stated that Petitioner told him that he would kill him if he told anyone what happened. *Id.* at 130. DG further testified that on one occasion while Petitioner still lived in Petitioner's mother's apartment, Petitioner made DG touch Petitioner's penis. *Id.* at 131.

**\*3** The Child Protective Services Unit of the Albany Police Department was notified of Petitioner's contact with DG. TT at 191–92. On September 14 and 19, 2000, Detective Patricia Farrell spoke with DG. *Id.* at 181–82, 184. Detective Farrell subsequently spoke with JLM, JJM, and AM. *Id.* at 184, 187, 188–90. Thereafter, Petitioner was arrested.

Dr. Richard M. Hamill, a psychologist certified to practice in the State of New York, testified that he has been recognized in nine counties in New York as an expert witness for the purpose of explaining child sexual abuse accommodation syndrome and associated behaviors. TT at 204–05, 214. Dr. Hamill indicated that this syndrome explains how repeated acts of sexual abuse affect children. *Id.* at 213.

Dr. Hamill stated that children who have been abused often have been persuaded to keep the abuse secret by threats, coercion, and other strategies. TT at 217. He also stated that based on his work experience, children "become much more conflicted" if the relationship between the perpetrator and child is "one that is a well-developed relationship, [such as] a family friend or a family member." *Id.* at 221. Dr. Hamill testified that he never met with any individuals in this case because he was never asked to do so. *Id.* at 216–17.

## II. Discussion
### A. Applicable Standard of Review

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States. 28 U.S.C. § 2241(c) (2006). Relief does not lie for errors of state law. *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *DiGuglielmo v. Smith,* 366 F.3d 130, 136–137 (2d Cir.2004). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim that was adjudicated on the merits in state court proceedings unless the state court's decision was "contrary to, or

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1) (2006); *Carey v. Musladin,* 549 U.S. 70, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006); *Campbell v. Burgess,* 367 F.Supp.2d 376, 380 (W.D.N.Y.2004).

A decision is adjudicated "on the merits" when it finally resolves the claim, with *res judicata* effect, based on substantive rather than procedural grounds. *Sellan v. Kuhlman,* 261 F.3d 303, 311–12 (2d Cir.2001). This is so "even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Id.* at 312. To determine whether a state court has adjudicated a claim "on the merits," a federal habeas court must examine three "clues" to classify the state court decision as either (1) resting primarily on federal law or interwoven with federal law; or (2) resting primarily on state procedural law. *Jimenez v. Walker,* 458 F.3d 130, 145 (2d Cir.2006). "Absent a clear and express statement of reliance on a state procedural bar," decisions in the first category are deemed to have been made "on the merits" of the federal claim. *Id.*

**\*4** A decision "on the merits" is "contrary to ... clearly established federal law" when it is "either contrary to Supreme Court precedent on a question of law or ... opposite to a relevant Supreme Court case with 'materially indistinguishable' facts." *Johnson v. West,* No. 9:04–CV–751, 2007 WL 952058 at \*2 (N.D.N.Y. Mar.29, 2007) (quoting *Williams v. Taylor,* 529 U.S. 362, 405–406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). A state court "unreasonably applies" federal law when the state court correctly identifies the governing legal rule in a particular case but applies the rule to the facts in an "objectively unreasonable" manner. *Johnson,* 2007 WL 952058 at \*2 (quoting *Lockyer v. Andrade,* 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)); *see Brisco v. Ercole,* 565 F.3d 80, 89 (2d Cir.2009) (holding that the state court reasonably applied clearly established federal law). Although "[s]ome increment of incorrectness beyond error is required" in order to grant a federal *habeas* application, that increment "need not be great; otherwise, *habeas* relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.' " *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000); *see also Hawkins v. Costello,* 460 F.3d 238, 243 (2d Cir.2006). The state court's determination of a factual issue is presumed to be correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1) (2006); *DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005), *cert. denied* 546 U.S. 884, 126 S.Ct. 225, 163 L.Ed.2d 189 (2005); *Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir.2001).

**B. Sufficiency of the Evidence**

Petitioner argues that the evidence was insufficient to support the guilty verdict. Dkt. No. 24 at 5. Respondent argues that this claim is without merit. Dkt. No. 32 at 13–16.

A challenge to the sufficiency of the evidence, in contrast to a claim regarding the weight of the evidence, is amenable to federal *habeas* review. *See Ponnapula v. Spitzer,* 297 F.3d 172, 179 (2d Cir.2002) (citing *Quirama v. Michele,* 983 F.2d 12, 14 (2d Cir.1993)). The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime(s) with which he is charged. *See Fiore v. White,* 531 U.S. 225, 228–29, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001); *Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). A *habeas* petitioner claiming that there was insufficient evidence supporting the conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 324; *Schlup v. Delo,* 513 U.S. 298, 323 n. 38, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The "assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup,* 513 U.S. at 330 (1995). The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson,* 443 U.S. at 319. Thus, the relevant inquiry in this regard is "whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt." *United States v. Powell,* 469 U.S. 57, 67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (citing *Jackson* ) (other citations omitted).

**\*5** "When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.' " *Ponnapula,* 297 F.3d at 179 (quoting *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir.1999)); *see also Fama v. Comm'r of Cor. Servs.,* 235 F.3d 804, 811 (2d Cir.2000) (citing *Quartararo* ). Therefore, this Court must consider the elements the prosecutor was required to prove beyond a reasonable doubt to properly convict Petitioner.

At issue in this case are sections 130.50(3) (Sodomy in the First Degree), 110.00 and 130.50(3) (Attempted Sodomy in the First Degree), 130.65(3) (Sexual Abuse in the First Degree), and 260.10(1) (Endangering the Welfare of a Child).

At the time of the offenses, section 130.50(3) provided that a person is guilty of sodomy in the first degree when he engages in deviate sexual intercourse FN4 with another person who is less than eleven years old. McKinney's Penal Law § 130.50 (3).

> FN4. Deviate sexual intercourse is defined as "sexual conduct between persons not married to each other consisting of contact between the penis and the anus, the mouth

and penis, or the mouth and the vulva." McKinney's Penal Law § 130.00(2).

Section 110.00 provided that a person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime. McKinney's Penal Law § 110.00.

Section 130.65(3) provided that a person is guilty of sexual abuse in the first degree when he subjects another person to sexual contact FN5 when the other person is less than eleven years old. McKinney's Penal Law § 130.65(3).

> FN5. Sexual contact is defined as "any touching of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of either party. It includes the touching of the actor by the victim, as well as the touching of the victim by the actor, whether directly or through clothing." McKinney's Penal Law § 130.00(3).

Section 260.10(1) provided that a person is guilty of endangering the welfare of a child when he knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his life or health. McKinney's Penal Law § 260.10(1).

Based on the facts and circumstances of this case, a trier of fact could rationally find beyond a reasonable doubt that Petitioner was guilty of the offenses of which he was convicted.

Regarding the two counts of first-degree sodomy, JJM testified that when he was less than eleven years old, Petitioner put his penis in JJM's mouth, and also "put his penis between [JJM's] butt cheeks." TT at 161, 165–66.

Regarding the one count of attempted first-degree sodomy, AM testified that when he was less

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

than eleven years old, Petitioner pulled down AM's pants and "tr[ied] to stick his penis in [AM's] butt." TT at 141, 146–47.

Regarding the four counts of first-degree sexual abuse: (1) AM testified that Petitioner placed his hand under AM's clothes and rubbed his penis, TT at 148; (2) AM testified that Petitioner placed his hand under AM's clothes and touched AM's butt, *Id.;* (3) JJM testified that Petitioner took JJM's hand and placed it on Petitioner's penis, *Id.* at 167; and (4) JJM testified that Petitioner touched JJM's penis with Petitioner's own penis. *Id.* at 168.

Regarding the four counts of endangering the welfare of a child: (1) AM testified that Petitioner told AM that he would kill AM if AM told anyone about the abuse, TT at 148–49; (2) JJM testified that Petitioner told him that he would kill JJM if JJM told his mother about the abuse, *Id.* at 169; (3) JLM testified that when he was younger than seventeen-years old, Petitioner made him touch Petitioner's penis and that Petitioner touched his penis, *Id.* at 103, 108–11; and (4) DG testified that when he was younger than seventeen years old, Petitioner touched DG's penis and Petitioner made DG touch Petitioner's penis. *Id.* at 127, 131.

**\*6** While Petitioner points to a lack of supporting medical evidence, (Dkt. No. 36 at p. 7), the testimony of the victims was sufficient to establish Petitioner's guilt beyond a reasonable doubt. *See Roe v. Senkowski,* No. 9:98–CV–0656, 2001 WL 1860884, at \*2–4 (N.D.N.Y. Feb.20, 2001) (Sharpe, M.J.) (finding that testimony of child victim, standing alone, was sufficient to support a conviction); *Arhin v. New York,* No. 94 Civ. 6921, 1995 WL 672488, at \*1 (S.D.N.Y. Nov.9, 1995) (finding that no corroborating evidence was required to support a conviction of rape by forcible compulsion). Thus, Petitioner's claim is unavailing.

The Appellate Division similarly rejected Petitioner's claim as follows:

Initially, we reject defendant's claim that his con-

victions were not supported by legally sufficient evidence. Viewed in a light most favorable to the People, the victims' detailed accounts, together with the testimony of the detective who investigated the allegations of abuse, established every element of the crimes charged beyond a reasonable doubt. Defendant's contention that the victims' testimony required corroboration is without merit inasmuch as each victim was a competent witness who provided testimony under oath.

Moreover, weighing the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony, we cannot conclude that the jury failed to accord appropriate weight to the evidence before it. Although defendant asserts that the young age of the victims rendered their testimony unreliable, his challenges amount to mere attacks upon the credibility of these witnesses-a determination which the jury properly resolved.

*Howard,* 20 A.D.3d at 768–69, 798 N.Y.S.2d 573 (internal citations and quotations omitted).

The Appellate Division did not act contrary to or unreasonably apply Supreme Court precedent in rejecting Petitioner's claim. In light of the foregoing, the petition on this ground should be denied.

**C. Evidence of Prior Bad Acts**

**1. DG's Testimony**

Petitioner argues that he was denied a fair trial due to the People's use of prior bad acts in their direct case. Dkt. No. 24 at p. 6. Respondent argues that this claim is without merit because the only admissible prior bad act was never presented to the jury. Dkt. No. 32 at 18.

Under New York and federal law, evidence of prior crimes or bad acts is admissible where it is relevant to an issue other than the defendant's propensity to commit the crime with which he is charged. New York and federal courts frequently admit evidence of prior bad acts, including un-

charged crimes, "as background material and to 'complete the narrative of events.' " *Charles v. Fischer,* 516 F.Supp.2d 210, 217 (E.D.N.Y. Sept.27, 2007) (quoting *People v. Till,* 87 N.Y.2d 835, 836–37, 637 N.Y.S.2d 681, 661 N.E.2d 153 (1995) ("[S]uch evidence may be allowed when, as here, it bears on the motive and state of mind in relation to an avoidance of apprehension during immediate flight from a crime and is found to be 'needed as background material' or to 'complete the narrative of the episode' ")); *see also United States v. Gonzales,* 110 F.3d 936, 942 (2d Cir.1997) (holding that evidence of bad acts is admissible under Federal Rule of Evidence 404(b) if it is " 'necessary to complete the story of the crime on trial' ") (citation omitted); *Yapor v. Mazzuca,* No. 04 Civ. 7966, 2005 WL 894918, * 17 (S.D.N.Y. Apr.19, 2005) (noting that "the fact of [petitioner's] wife's arrest on a drug charge completed the narrative and the trial court was within its discretion under New York law to admit it") (citations omitted), *report and recommendation adopted,* 2005 WL 1845089 (S.D.N.Y. Aug.3, 2005). The probative value of such evidence, however, must outweigh its potential for prejudice. *See Ballard v. Walker,* 772 F.Supp. 1335, 1342 (E.D.N.Y.1991) (citing *People v. Ely,* 68 N.Y.2d 520, 536, 510 N.Y.S.2d 532, 503 N.E.2d at 92 (1986)).

**\*7** Before trial, the People made an application to admit evidence regarding more than a dozen prior bad acts under *People v. Molineux,* 168 N.Y. 264, 61 N.E. 286 (N.Y.1901). State Court Records, Ex. E, at pp. 61–68, 61 N.E. 286. The Supreme Court denied the application in part, finding that the People could introduce evidence that related to a prior sexual act Petitioner committed against DG in order to complete the narrative and explain the relationship between Petitioner and DG. *Id.* at Ex. J at p. 4, 61 N.E. 286.

At trial, DG never testified about the prior incident. *See* TT at 123–40. Moreover, Petitioner points to no place in the record indicating that DG provided such testimony. Therefore, Petitioner's

claim that he was denied a fair trial due to Respondent's improper use of prior bad acts is unavailing.

Similarly, the Appellate Division found, "The People did not ... elicit this evidence during the direct examination of the victim or at any time during the trial." *Howard,* 20 A.D.3d at 768, 798 N.Y.S.2d 573. The Appellate Division did not act contrary to or unreasonably apply Supreme Court precedent in rejecting Petitioner's claim. In light of the foregoing, the petition on this ground should be denied.

**2. Other Witnesses' Testimony**

In his reply papers, Petitioner claims that evidence regarding "other bad acts/uncharged crime(s)" was introduced through the testimony of Detective Farrell, Dr. Hamill, and JLM at trial. Dkt. No. 36 at pp. 1–6.

An application for a writ of habeas corpus may not be granted until the prisoner has exhausted all remedies available in state court unless there is an "absence of available state corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b). To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively. Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in the habeas corpus petition. Substantive exhaustion requires that a petitioner "fairly present" any constitutional claims to the highest state court in the same factual and legal context in which it appears in the habeas petition. *Baldwin v. Reese,* 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004) ; *Fama v. Comm'r of Corr. Servcs.,* 235 F.3d 804, 808 (2d Cir.2000); *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997) (quoting *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)); *Daye v. Atty. Gen. of New York,* 696 F.2d 186, 191 (2d Cir.1982).

"To establish that a federal claim was raised in state court, a petitioner must, in the state courts, (1) have relied on federal case law employing federal

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

constitutional analysis; (2) relied on factually similar state cases employing federal constitutional analysis; (3) asserted the claim "in terms so particular as to call to mind a specific right protected by the Constitution"; or (4) alleged a set of facts well within ordinary constitutional litigation." *Stone v. Stinson,* 121 F.Supp.2d 226, 236 (W.D.N.Y.2000) (citing *Daye,* 696 F.2d at 194). The requirement that the state court have been given a reasonable opportunity to pass on the federal habeas claim is satisfied if the legal basis of the claim made in state court was the "substantial equivalent" of that of the habeas claim. *Picard,* 404 U.S. at 278; *Daye,* 696 F.2d at 189–90. However, where no real avenue remains by which the claim could be raised, a claim is deemed exhausted. *See Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994).

**\*8** On direct appeal, Petitioner made no argument asserting that "other bad acts/uncharged crime(s)" were improperly introduced at trial through the testimony of Detective Farrell, Dr. Hamill, or JLM. *See* State Court Records, Ex. A. Thus, Petitioner has not fairly presented his current argument to the state courts. Moreover, there is no longer a state court in which Petitioner can raise his current argument. He cannot present the argument to the Court of Appeals in the future because he is entitled to only one leave application. Further, raising this argument in a C.P.L. § 440.10 motion would be futile because Petitioner failed to raise this argument on direct appeal. C.P.L. § 440.10 (2)(c) bars collateral proceedings when a criminal defendant has failed to raise the grounds on direct appeal. Thus, since no remaining avenue exists in which Petitioner could raise this claim, it is deemed exhausted but procedurally defaulted. *Coleman v. United States,* 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Aparicio v. Artuz,* 269 F.3d 78, 90 (2d Cir.2001); *Spence v. Superintendent, Great Meadow Corr. Fac.,* 219 F.3d 162, 170 (2d Cir.2000).

This Court may review this claim only if Petitioner demonstrates cause for the default and resulting prejudice, or that the failure of the federal court to review the claim will result in a "fundamental miscarriage of justice" i.e., that he is innocent. *Calderon v. Thompson,* 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998); *Coleman,* 501 U.S. at 748–750. To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule. *Coleman,* 501 U.S. at 753, *Restrepo v. Kelly,* 178 F.3d 634, 639 (2d Cir.1999). When a petitioner has failed to establish adequate cause for his procedural default, the court need not determine whether he suffered prejudice, since federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985); *Long v. Lord,* No. 03–CV–0461, 2006 NL 1977435, at \*6 (N.D.N.Y. Mar. 21, 2006) (McCurn, S.J.).

Here, Petitioner fails to show that some objective external factor impeded his ability to comply with the relevant procedural rule. Thus, Petitioner has not established cause for the default. Petitioner also fails to show that a fundamental miscarriage of justice will result from no federal review of the claim. Accordingly, Petitioner's claim should be denied.

**D. Effective Assistance of Appellate Counsel**

In his amended petition, Petitioner states that his appellate counsel provided ineffective assistance by raising meritless issues and failing to raise meritorious issues. Dkt. No. 24 at p. 8. Liberally construing Petitioner's claim,[FN6] he contends that the trial court omitted an element from the charge, namely that the defendant must be eighteen years or older in order to commit Sodomy in the First Degree (Penal Law § 130.50(3)) and Attempted Sodomy in the First Degree (Penal Law §§ 110 and 130.50(3)). State Court Records, Ex. O at pp. 9–20. He claims that defense counsel should have objected and that therefore appellate counsel should have pointed out trial counsel's failure. *Id.*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN6. Petitioner failed to elaborate on this claim in his amended petition and in his reply papers. *See* Dkt. Nos. 24, 36. Therefore, the Court referred to his application for writ of error coram nobis. State Court Records, Exs. O, Q.

**\*9** Respondent argues that Petitioner's claim should be denied because there was no requirement that the People prove Petitioner's age; therefore trial counsel had no basis to object. Dkt. No. 32 at p. 22. Respondent accordingly argues that "appellate counsel was not ineffective for failing to raise the meritless argument that trial counsel was ineffective." *Id.*

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both: (1) that counsel's representation fell below an objective standard of reasonableness, measured in the light of prevailing professional norms; and (2) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 688–90, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Wiggins v. Smith,* 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland.*).FN7 There is a strong presumption that counsel's conduct fell within the wide range of reasonable assistance and that counsel's actions constituted sound trial strategy under the circumstances. *Cuevas v. Henderson,* 801 F.2d 586, 589–90 (2d Cir.1986).

FN7. In *Williams v. Taylor,* the Supreme Court declared that "the rule set forth in *Strickland* qualifies as "clearly established Federal law [.]" *Williams,* 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389

(2000).

The *Strickland* standard for determining the effectiveness of trial counsel also applies to claims of ineffective assistance of appellate counsel. *See e.g. Holmes v. Bartlett,* 810 F.Supp. 550, 560–61 (S.D.N.Y.1993). Clearly established federal law holds that appellate counsel does not have a duty to raise every colorable claim on appeal and, in fact, can use his or her professional judgment to determine which claims represent the best opportunities for obtaining a reversal of a conviction. *Jones v. Barnes,* 463 U.S. 745, 751–53, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). The failure to raise a meritless argument does not rise to the level of ineffective assistance. *United States v. Kirsh,* 54 F.3d 1062, 1071–72 (2d Cir.1995), *cert. denied* 516 U.S. 927, 116 S.Ct. 330, 133 L.Ed.2d 230 (1995).

At the time Petitioner committed the offense, Penal Law § 130.50 provided as follows:

A person is guilty of sodomy in the first degree when he engages in deviate sexual intercourse with another person:

1. By forcible compulsion; or

2. Who is incapable of consent by reason of being physically helpless; or

3. Who is less than eleven years old.

McKinney's Penal Law § 130.50.

Petitioner was charged under § 130.50(3), which only requires that the victim be less than eleven years old.FN8 McKinney's Penal Law § 130.50(3). There was no requirement that the People prove that Petitioner was eighteen years or older. Thus, defense counsel had no basis to object to the jury charge. Accordingly, appellate counsel had no reason to argue that trial counsel erred in this regard. In light of the foregoing, appellate counsel was not ineffective for failing to raise the meritless argument that trial counsel was ineffective. *See Aparicio v. Artuz,* 269 F.3d 78, 99 (2d

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Cir.2001) (noting that the "failure to include a mer-itless argument does not fall outside the 'wide range of professionally competent assistance" to which [a] Petitioner was entitled"); *Kirsh,* 54 F.3d at 1071 (failure to make a meritless argument does not rise to the level of ineffective assistance).

> FN8. JJM and AM testified that they were less than eleven years old when the incid-ents occurred. TT at 141, 146, 161, 166.

The Appellate Division similarly rejected Peti-tioner's claim. State Court Records at Ex. R. The Appellate Division did not act contrary to or un-reasonably apply Supreme Court precedent in so finding. In light of the foregoing, Petitioner's claim should be denied.

**WHEREFORE,** based upon the foregoing, it is hereby

**RECOMMENDED,** that the amended petition for a writ of *habeas corpus* (Dkt. No. 24) be **DENIED** and **DISMISSED.** Furthermore, I find that Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of appeal-ility may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000). There-fore, I recommend that no certificate of appealab-ility issue with respect to any of Petitioner's claims; and it is further

**ORDERED** that the Clerk serve copies of the electronically-available-only opinions cited herein on Petitioner.[FN9]

> FN9. Those decisions include *Johnson v. West,* No. 9:04–CV–751, 2007 WL 952058 (N.D.N.Y. Mar.29, 2007); *Roe v. Sen-kowski,* No. 9:98–CV–0656, 2001 WL 1860884 (N.D.N.Y. Feb.20, 2001); *Arhin v. New York,* No. 94 Civ. 6921, 1995 WL 672488 (S.D.N.Y. Nov.9, 1995); *Yapor v.*

*Mazzuca,* No. 04 Civ. 7966, 2005 WL 894918 (S.D.N.Y. Apr.19, 2005); and *Long v. Lord,* No. 03–CV–0461, 2006 WL 1977435 (N.D.N.Y. Mar. 21, 2006).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objec-tions to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE RE-VIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P.

N.D.N.Y.,2009.
Howard v. Potter
Not Reported in F.Supp.2d, 2009 WL 3259080 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Westlaw Delivery Summary Report for MCKEON, COURTENA**

| | |
|---|---|
| Date/Time of Request: | Monday, September 22, 2014 15:44 Central |
| Client Identifier: | O'HALLORAN |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 968 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Not Reported in F.Supp.2d, 2009 WL 891763 (E.D.N.Y.)
**(Cite as: 2009 WL 891763 (E.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Bruce KING, Petitioner,
v.
William E. PHILLIPS, Superintendent, Green
Haven Correctional Facility, Respondent.

No. 03–CV–6045 (NGG)(RB).
March 31, 2009.

West KeySummary**Criminal Law 110   339.6**

110 Criminal Law
   110XVII Evidence
     110XVII(D) Facts in Issue and Relevance
      110k339.5 Identity of Accused
        110k339.6 k. In general. Most Cited
Cases

Even if a voice identification had been impermissibly suggestive, the procedure was independently reliable. Defendant argued that the unrecorded voice identification should have been suppressed in his trial for robbing his previous work place. The voice identification was necessitated by the fact that the perpetrator had been masked during the robbery. However, the identification was merely confirmatory since the identifying witness had worked with the defendant for years and defendant acknowledged he was well acquainted with the witness.

Bruce King, Malone, NY, pro se.

Donna Aldea, Ushir Pandit, District Attorney, Queens County, Kew Gardens, NY, for Defendant.

**MEMORANDUM & ORDER**
NICHOLAS G. GARAUFIS, District Judge.
*1 Petitioner Bruce King ("Petitioner"), proceeding *pro se,* seeks a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On November

6, 2008, Magistrate Judge Lois Bloom issued a Report and Recommendation ("R & R") recommending that the court deny the petition. (Docket Entry # 32.) Petitioner timely filed Objections to the R & R. (Docket Entry # 36.) Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, this court has conducted a *de novo* review of those portions of the R & R to which Petitioner has objected. For the reasons discussed below, Petitioner's Objections to the R & R are denied, and Judge Bloom's R & R is adopted in full.

**I. PETITIONER'S OBJECTIONS**
This court has conducted a *de novo* review of the portions of the R & R to which Petitioner has objected.[FN1] 28 U.S.C. § 636(b) (1); Fed.R.Civ.P. 72(b). The court presumes familiarity with the R & R and addresses each of Petitioner's Objections in turn.

    FN1. The court has reviewed those portions of the R & R to which Petitioner has not objected and finds them to be thorough, well-reasoned, and well-founded in applicable law. *See Urena v. New York,* 160 F.Supp.2d 606, 609–10 (S.D.N.Y.2001) (where no timely objection has been made, the "court need only satisfy itself that there is no clear error on the face of the record.").

**A. Judge Bloom's Reliance on the State–Court Record**
In his Objections, Petitioner contends that Judge Bloom's report was "based on an unreasonable determination of the facts" as set forth in the state-court record. (Obj.2, 8, 4.) Under 28 U.S.C. § 2254, the court must presume the correctness of the trial court's factual findings unless Petitioner rebuts that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(d)(2), (e)(1). The R & R describes the state-court record in detail and then considers certain facts with respect to the specific claims raised in the Petition, for example, that the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

voice lineup was unduly suggestive. (R & R 8–9.) Because Petitioner addresses many of the R & R's findings on the merits in his Objections, the court addresses each Objection in turn below. As to Petitioner's contentions that Judge Bloom erred by relying on the state-court record, after *de novo* review, this court concludes that Petitioner has not met his burden of "clear and convincing evidence" to rebut the presumption of the correctness of the trial court's factual findings.

**B. Voice Lineup**

Petitioner objects to Judge Bloom's finding that he did not rebut the presumption of correctness of the state court's factual findings regarding the voice lineup. (Obj.8.) Specifically, he contends that the federal habeas review of whether the voice procedures were unduly suggestive was prejudiced by reliance "upon the fabricated evidence of an alleged 'confirmatory' visual identification," which was "not resolved" during the state-court proceedings. (*Id.* at 9.)

As the R & R correctly sets forth, courts use a two-step inquiry to evaluate out-of-court identification procedures. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Velazquez v. Poole,* No. 04–CV–478 (ENV)(CLP), 2007 WL 3240550, at \*23 (E.D.N.Y. Oct. 30, 2007). First, a court must determine whether the procedure was impermissibly suggestive, and if so, whether it was so suggestive as to raise "a very substantial likelihood of irreparable misidentification." *Neil,* 409 U.S. at 198; *see United States v. Wong,* 40 F.3d 1347, 1359 (2d Cir.1994). If the procedure was unnecessarily suggestive, the court must then determine whether the identification was independently reliable. *Manson v. Braithwaite,* 432 U.S. 98, 110–14, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Raheem v. Kelly,* 257 F.3d 122, 133 (2d Cir.2001). In short, identification evidence is admissible if: (1) the procedure was not suggestive, or (2) the witness's identification has independent reliability. *See Raheem,* 257 F.3d at 133 (citation omitted).

**\*2** The R & R describes the voice identification

procedures—both the testimony regarding the voice identification procedures and the subsequent physical lineup at which the witness identified Petitioner—and correctly applies the legal standard. The R & R notes that "that the voice lineup was not recorded does not render the lineup impermissibly suggestive." (R & R 10, *quoting People v. Wallington,* 271 A.D.2d 384, 708 N.Y.S.2d 60 (N.Y.App. 1st Dep't 2000).) The R & R also notes that that "even if the voice identification had been suggestive, the [state] Court found that the procedure was independently reliable," noting that the state court had found that the identification was "merely confirmatory, since the identifying witness had worked with the defendant for years, and the defendant acknowledged that he was well acquainted with the witness." (*Id.* at 9, 10, 708 N.Y.S.2d 60 (*quoting People v. King,* 291 A.D.2d 413, 736 N.Y.S.2d 904 (N.Y.App. Div.2d Dep't 2002).) The R & R concludes that Petitioner did not rebut the presumption of correctness of the trial court's factual findings by clear and convincing evidence, 28 U.S.C. § 2254(d)(2), (e)(1), and that the state court's decision that the lineup was not suggestive was neither contrary to nor involved an unreasonable application of clearly established federal law. (R & R 10, 11.)

Petitioner's Objection is without merit. Following *de novo* review, the court agrees with Judge Bloom's conclusion that Petitioner has not rebutted the presumption of correctness of the state court's factual findings by clear and convincing evidence as required by Section 2254. (R & R 10.) Moreover, even if Petitioner could show that the evidence of the "confirmatory" visual lineup was fabricated, Petitioner has not shown that the voice identification procedures were suggestive such that they raised a "very substantial likelihood of irreparable misidentification." *Neil,* 409 U.S. at 198. Under federal law, if the procedure was not suggestive, the identification presents no problems regarding admissibility. *See Jarrett v. Headley,* 802 F.2d 34, 42 (2d Cir.1986); *Ortiz v. Artus,* No. 06–CV–6444 (DAB)(JCF), 2008 WL 2369218, at \*6 (S.D.N.Y. Jun. 9, 2008). Accordingly, the state court's de-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 891763 (E.D.N.Y.)
**(Cite as: 2009 WL 891763 (E.D.N.Y.))**

cision that the lineup was not suggestive was neither contrary to nor an unreasonable application of clearly established federal law. Therefore, the court adopts in full Judge Bloom's recommendation that this claim be denied.

### C. Grand Jury

The R & R rejects Petitioner's claims that the prosecutor's alleged misconduct impaired the integrity of the grand jury proceedings. (R & R 13.) First, Judge Bloom found that this claim is unexhausted and thus procedurally barred; second, she found that even if the claim were reviewed on the merits, it should be denied, because a claim of deficiencies in the state grand jury proceedings is not cognizable on federal habeas review where, as here, Petitioner was found guilty by a petit jury. (*Id.*) In his Objections, Petitioner asserts that he "agrees with the Magistrates deduction. However, [he] contends that prosecution's actions and inactions during the grand jury proceeding contributed to the pattern of cumulative misconduct, which impaired the integrity of every subsequent proceeding and part of the prosecution's conspiracy to deprive him of due process ...." (Obj.10.)

**\*3** Following *de novo* review, the court concludes that the R & R correctly concludes that Petitioner's claim is procedurally defaulted. First, the claim was not properly exhausted in state court, *Baldwin v. Reese,* 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004); *Jackson v. Edwards,* 404 F.3d 612, 618 (2d Cir.2005); second, Petitioner no longer has any procedure available in state court to raise this claim, *Aparicio v. Artuz,* 269 F.3d 78, 90 (2d Cir.2001); and third, Petitioner has not demonstrated cause, prejudice, or a showing of actual innocence that would entitle him to habeas review despite a procedural default, *see Dretke v. Haley,* 541 U.S. 386, 388, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004).

The court also agrees with Judge Bloom's finding that even if claim were reviewable on the merits, such a claim is not cognizable on federal habeas review, because Petitioner was found guilty by a

petit jury. *See United States v. Mechanik,* 475 U.S. 66, 70, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) ("The petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted. Therefore, the convictions must stand despite the [grand jury] rule violation."); *United States v. Eltayib,* 88 F.3d 157, 173 (2d Cir.1996) (interpreting *Mechanik* and holding that a claim of prosecutorial misconduct fails because "a guilty verdict by a petit jury remedies any possible defects in the grand jury indictment."); *see also Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court."). While Petitioner asserts in his Objections that the prosecutorial misconduct regarding the grand jury "contributed to the pattern of cumulative misconduct," his claim—which in any event is procedurally defaulted—would be foreclosed by the case law holding that a claim of prosecutorial misconduct in the grand jury proceedings is not cognizable on habeas review. The court thus adopts Judge Bloom's R & R regarding this claim in full.

### D. Right to Counsel

Petitioner asserts in his Objections that Judge Bloom "errs in determining that Petitioner's right to counsel was not violated, warranting suppression" of statements Petitioner made to Internal Affairs Bureau ("IAB") officers and a gun recovered on the basis of those statements. (Obj.10.)

Under federal law, the right to assistance of counsel is "offense specific" and "attaches only to charged offenses." *Texas v. Cobb,* 532 U.S. 162, 164, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001). While a defendant may have a Sixth Amendment right to counsel in a case where the adversarial process has been initiated against him, that right does not attach to an unrelated case in which the adversarial process has not been initiated.[FN2] *Rivera*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 891763 (E.D.N.Y.)
**(Cite as: 2009 WL 891763 (E.D.N.Y.))**

*v. Conway,* 350 F.Supp.2d 536, 548 (S.D.N.Y.2004).

> FN2. As Judge Bloom points out in the R & R, the New York right to counsel is broader than the federal right to counsel. (R & R 16.) Under New York law, once a defendant is represented by counsel on the charge for which he is in custody, "custodial interrogation about any subject, whether related or unrelated to the charge upon which representation is sought or obtained, must cease." *People v. Burdo,* 91 N.Y.2d 146, 149, 667 N.Y.S.2d 970, 690 N.E.2d 854 (1997) (quotation omitted). To the extent that a state-law claim is broader than the analogous federal right, the state-law claim is not cognizable on federal habeas review. (R & R 16 (citing cases).)

**\*4** Judge Bloom found that Petitioner's right to counsel was not violated, because while incarcerated for the robbery case that is the subject of this petition, Petitioner was interviewed by IAB detectives at his own request and voluntarily gave them information about two unrelated cases. (R & R 16.) The purpose of the interview was to evaluate the substance of Petitioner's allegation against Officer Meehan, the arresting officer in the robbery case; Petitioner alleged that Officer Meehan failed take action on a double homicide about which Petitioner had given him information. (*Id.*) Petitioner told the detectives that he had the gun that was used in the double homicide, and arranged for the IAB detectives to obtain the gun. (*Id.* at 2.) The R & R notes that the IAB detective testified that he did not learn the reason Petitioner was in custody until the day after he conducted his interview, and once the detectives determined that the recovered gun was not used in the double homicide, they took no further action. (*Id.* at 16.) More than a year later, when the prosecutor for the robbery case called the IAB detectives to ask about any potential *Rosario* material, they produced Petitioner's gun to her. (*Id.*) Judge Bloom concluded that "although the gun was ulti-

mately used against him in the ... robbery case, under the facts presented here, where plaintiff volunteered the information and the gun to the IAB detectives, there was no Sixth Amendment violation of Petitioner's right to counsel." (*Id.* at 16–17.)

Following *de novo* review, this court similarly concludes that the state court's decision was not contrary to or an unreasonable application of clearly established federal law. The court thus adopts this portion of the R & R in full.

**E. Trial Court's Exclusion of Testimony**

In his petition, Petitioner had contended that his due process right to present a defense was violated when the state court precluded McHugh from testifying, and that although he served subpoenas on various witnesses, including McHugh, no one appeared in response to the subpoenas. (R & R 17.) Judge Bloom noted that the state court directed Petitioner to be ready to present his defense on a certain date, and when petitioner was not ready on that date, the court granted an adjournment to the following date. (*Id.* at 18.) The next morning, only one of the eleven defense witnesses testified. (*Id.*)

Judge Bloom recommended that Petitioner's claim be denied. First, she reasoned that Petitioner failed to demonstrate that the court's actions were arbitrary or that his defense was substantially impaired by the court's denial of his request for another adjournment, and even if he could do so, he fails to show that the testimony of any of those witnesses could be exculpatory; second, she concluded that any evidentiary error was harmless. (*Id.* at 19–20.) In particular, Judge Bloom concluded, based on the entire record, that: (1) the judge provided petitioner with ample opportunity to have his witnesses present in court; (2) the record is unclear as to why the subpoena for McHugh was rejected, though Respondent asserts that Petitioner misspelled the name "McHugh"; (3) Petitioner's allegation that McHugh was a "crucial" witness was conclusory and not supported by the record; and (4) in any event, any evidentiary error did not have a substantial and injurious effect in determining the jury's verdict. (*See*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

R & R 19–20.)

***5** In his Objections, Petitioner contends that "[t]he Magistrate erroneously rejects the Petitioner's due process violation as to being denied the right to present a defense." (Obj.11.) In particular, he contends that "Petitioner tried to prepare his defense in a fraction of the time afforded to the prosecution" and that Detective McHugh, a witness whom the trial court precluded from testifying, "was a prosecutor's witness and Petitioner never played a role in preparing the subpoenas." (*Id.* at 11–12.)

As to Petitioner's Objections, Petitioner's assertion that he had far less time to prepare his defense compared to the time spent preparing by the prosecution does not address Judge Bloom's R & R and cannot be construed to be an objection to it. Regarding Petitioner's second assertion, that Petitioner never played a role in preparing subpoenas, the court notes that regardless of whether Petitioner played a role in preparing subpoenas, Petitioner has not contradicted Judge Bloom's conclusions that the trial court judge provided Petitioner with ample opportunity to have his witnesses in court, that Petitioner's allegation that McHugh was a "crucial" witness was conclusory and unsupported by the record, and that any error was harmless. Upon *de novo* review, the court agrees with Judge Bloom's recommended findings of fact and law and adopts this portion of the R & R in full.

**II. CONCLUSION**

For the reasons above, after conducting a *de novo* review of those portions of the R & R to which Petitioner has objected, Judge Bloom's R & R is adopted in its entirety. As Petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability shall issue. Pursuant to 28 U.S.C. § 1915(a), *in forma pauperis* status is denied for the purposes of any appeal. The Clerk of Court is directed to close this case.

SO ORDERED.

***REPORT AND RECOMMENDATION***

BLOOM, United States Magistrate Judge.

The Honorable Nicholas G. Garaufis, United States District Judge, referred this petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that the petition should be denied.

***BACKGROUND***

I. *Facts*

On November 29, 1995, at approximately 8:00 p.m., petitioner and an accomplice [FN1] entered Continental Services, an office where petitioner had formerly been employed, and held two employees Michael Thomas ("Thomas") and Marie Gehring ("Gehring") at gunpoint and demanded money. T at 50–55, 549, 551.[FN2] The employees stated that there was no company money on the premises. However, Gehring offered the money that she had in her purse. After taking Gehring's money, petitioner fired a shot and fled the scene. T at 53, 552. Although petitioner was wearing a ski mask during the robbery, Thomas recognized petitioner's voice, and subsequently identified petitioner in a voice line-up. On January 2, 1996, following the identification, petitioner was arrested and gave police a written statement, admitting that he had participated in the robbery, but alleging that it was his accomplice who fired the gun.

FN1. On August 8, 1996, petitioner's accomplice, Carl Dade, pled guilty to two counts of Attempted Robbery in the First Degree, two counts of Attempted Robbery in the Second Degree, and Criminal Possession of a Weapon in the Third Degree. *See* Affidavit and Memorandum of Law in Opposition to Writ of Habeas Corpus at 2, n. 1

FN2. T refers to the transcript for the Jury Trial.

***6** In March 1996, while petitioner was in cus-

tody for the Continental Services robbery, petition-er filed a complaint against Detective Kevin Mee-han, ("Meehan") the arresting officer in the case. T at 378. Petitioner alleges that he gave Meehan in-formation on an unrelated double homicide, and that Meehan's failure to follow-up on that homicide resulted in a subsequent murder and robbery. T at 378–380, C at 29, 49–50.[FN3] On March 13, 1996, petitioner met with two detectives from the Internal Affairs Bureau ("IAB") to discuss his allegations against Meehan. At that time, petitioner told the IAB detectives that he had the gun that was used in the double homicide, and arranged for the IAB de-tectives to obtain the gun. T at 380–382, C at 50–51. Subsequent ballistics tests revealed that the gun was not related to either of the homicides. T at 386–387, C at 15, 47. Petitioner's allegations against Meehan were deemed unfounded..

> FN3. C refers to the transcript for the Good Cause hearing held on August 5, 1997.

In April 1997, Karen Lynch, the Assistant Dis-trict Attorney ("Lynch") assigned to prosecuting the Continental Services robbery case, learned that in response to a complaint filed by petitioner against Meehan, petitioner had been interviewed by the IAB. Lynch contacted the IAB detectives and was informed that a gun had been recovered as a result of the investigation. C at 52–54, 70. Lynch subpoenaed the file and the gun, and subsequent ballistics tests revealed that the bullet recovered from the Continental Services robbery had been fired from petitioner's gun. T at 519.

A. *Pre-trial Hearings*

On August 5, 1997, a Good Cause hearing was held before the Honorable Joel L. Blumenfeld, pur-suant to section 710.30 of New York's Criminal Procedure Law.[FN4] Petitioner argued that his March 13, 1996, statement regarding the gun that was used in the double homicide, should be pre-cluded, because the state did not serve the state-ment upon him until a year and two months later. The Court held that "there is good cause for not having served it within fifteen days of arraignment,

because within fifteen days of arraignment, they had no clue that the [petitioner] made this statement or what its relevance to this case." C at 97–98.

> FN4. Section 710.30 provides, in pertinent part:
>
> > 1. Whenever the people intend to offer at a trial ... evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion pursuant to subdivision three of section 710.20, ... they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.
> >
> > 2. Such notice must be served within fif-teen days after arraignment and before trial, and upon such service the defend-ant must be accorded reasonable oppor-tunity to move before trial, pursuant to subdivision one of section 710.40, to suppress the specified evidence. For good cause shown, however, the court may permit the people to serve such no-tice, thereafter and in such case it must accord the defendant reasonable oppor-tunity thereafter to make a suppression motion.
>
> N.Y.Crim. Proc. Law § 710.30(1), (2).

Moreover, prior to trial, a *Wade–Huntley* hear-ing was held before the Honorable Justice Timothy J. Flaherty.[FN5] In a decision dated July 23, 1997, the trial court denied petitioner's suppression mo-tion and upheld the voice and physical identifica-tion of petitioner, as well as his oral and written statements. *See People v. King,* Ind. No. 3320–96, slip op. (Sup.Ct. Queens County, July 23, 1997).

> FN5. A *Wade* hearing is held to determine whether the pretrial identification was un-duly suggestive. *United States v. Wade,*

Not Reported in F.Supp.2d, 2009 WL 891763 (E.D.N.Y.)
**(Cite as: 2009 WL 891763 (E.D.N.Y.))**

388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). A *Huntley* hearing is held to determine the voluntariness of a confession. *People v. Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965).

Following, a jury trial, in Supreme Court, Queens County, petitioner was convicted of Robbery in the First Degree, Robbery in the Second Degree, Attempted Robbery in the First Degree, and Attempted Robbery in the Second Degree. *See People v. King,* 291 A.D.2d 413, 736 N.Y.S.2d 904 (2d Dept.2002). On August 11, 1998, petitioner was sentenced to a concurrent indeterminate term of imprisonment of twelve and one-half to twenty-five years on the First Degree Robbery conviction and seven and one-half to fifteen years on the Second Degree Robbery conviction, to run consecutive to concurrent indeterminate terms of seven and one-half to fifteen years on the Attempted First Degree Robbery conviction, and three and one-half to seven years on the Attempted Second–Degree Robbery conviction. S at 45–46.[FN6]

FN6. S refers to pages of the sentencing transcript.

II. *Procedural History*

A. *Direct Appeal*

**\*7** Petitioner, appealed his conviction to the Appellate Division, Second Department and argued that: (1) the integrity of the Grand Jury proceeding was impaired by the prosecutor's improper comments; (2) the trial court erred when it denied suppression of the voice lineup; (3) his right to counsel was violated when IAB detectives interviewed him after his right to counsel had attached; (4) that the trial court deprived petitioner, who was proceeding *pro se,* the right to present a defense by refusing to grant his request for an adjournment; and (5) that the court reporter unilaterally amended the sentencing transcript without a settlement hearing. (Brief for defendant-appellant at 11–20).

By opinion dated February 4, 2002, the Appellate Division affirmed petitioner's conviction holding:

The Supreme Court properly denied the defendant's motion to dismiss the indictment. At the grand jury, the prosecutor had the right to cross-examine the defendant and to impeach him "within the limits of proper cross-examination" ( *People v. Rosa,* 145 Misc.2d 423, 546 N.Y.S.2d 803; *see, People v. Karp,* 76 N.Y.2d 1006, 565 N.Y.S.2d 751, 566 N.E.2d 1156, *revg.* 158 A.D.2d 378, 551 N.Y.S.2d 503). Contrary to the defendant's contention, the prosecutor's cross-examination did not exceed permissible boundaries so as to render the proceedings defective (*see,* CPL 210.35[5]; *People v. Huston,* 88 N.Y.2d 400, 409, 646 N.Y.S.2d 69, 668 N.E.2d 1362). Therefore, the Supreme Court properly denied the defendant's motion to dismiss the indictment on that ground.

The hearing court properly denied that branch of the defendant's omnibus motion which was to suppress voice identification evidence. The failure of the police to produce an audiotape of the voice lineup created a presumption of suggestiveness (*see, People v. Collins,* 60 N.Y.2d 214, 218, 469 N.Y.S.2d 65, 456 N.E.2d 1188; *People v. Wedgeworth,* 156 A.D.2d 529, 548 N.Y.S.2d 790). However, the police overcame that presumption by the testimony of the arresting officer who oversaw the lineup, which demonstrated that the procedures utilized were not impermissibly suggestive (*see, People v. Brennan,* 222 A.D.2d 445, 635 N.Y.S.2d 39). Once the People met their initial burden, the burden shifted to the defendant to prove that the identification procedure was unduly suggestive ( *People v. Chipp,* 75 N.Y.2d 327, 553 N.Y.S.2d 72, 552 N.E.2d 608, *cert. denied* 498 U.S. 833, 111 S.Ct. 99, 112 L.Ed.2d 70). The defendant failed to do so.

In any event, the People established that the identification was merely confirmatory, since the identifying witness had worked with the defend-

ant for years, and the defendant acknowledged that he was well acquainted with the witness (*see, People v. Rodriguez,* 79 N.Y.2d 445, 452, 583 N.Y.S.2d 814, 593 N.E.2d 268). Therefore, there is no basis in the record for disturbing the hearing court's determination. The defendant's remaining contentions are without merit.

See *People v. King,* 291 A.D.2d 413, 736 N.Y.S.2d 904 (2d Dept.2002). On June 24, 2002, the New York Court of Appeals denied petitioner leave to appeal. *People v. King,* 98 N.Y.2d 677, 746 N.Y.S.2d 466, 774 N.E.2d 231 (2002).

**B. *Habeas Petition***

Petitioner, proceeding *pro se,* filed the instant habeas petition on November 17, 2003. The petition raises five grounds, each of which contains several claims. By order dated May 3, 2005, this Court dismissed, as unexhausted, Grounds One through Four. Accordingly, the only ground that remains to be addressed in this Report and Recommendation is Ground 5 which alleges that: petitioner was deprived of his right to a fair trial because the prosecutor impaired the grand jury; the trial court erred in not suppressing an unrecorded voice identification; the police improperly questioned petitioner outside the presence of counsel; and petitioner was denied the opportunity to present a defense on his behalf. *See* Ground Five of Habeas Petition.

**\*8** On December 6, 2007, petitioner filed a motion to compel respondent to produce additional documents, and for an extension of time to reply to respondent's opposition to the writ. *See* docket entry 29. As petitioner was granted numerous extensions of time to reply, petitioner's motion is denied but will be construed as his reply.

## *DISCUSSION*

I. *Standard of Review*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, once a state court has adjudicated a petitioner's claim on the merits, a federal court may not grant a habeas petition on that claim unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *See Mask v. McGinnis,* 252 F.3d 85, 90 (2d Cir.2001) (holding that the phrase federal law refers only to "clearly established Supreme Court precedent").

Clearly established Federal law is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Green v. Travis,* 414 F.3d 288, 296 (2d Cir.2005) (quoting *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 413; *see also Earley v. Murray,* 451 F.3d 71, 74 (2d Cir.2006). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Williams,* 529 U.S. at 413; *Earley,* 451 F.3d at 74.

AEDPA establishes a deferential standard of review: the relevant inquiry under AEDPA "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 127 S.Ct. 1933, 1939, 167 L.Ed.2d 836 (2007); *Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001). The Second Circuit has noted that although "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist* 260 F.3d at 93 (quoting

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000)); *accord Earley,* 451 F.3d at 74.

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *see also Rose v. Hodges,* 423 U.S. 19, 21, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975) (per curiam); *Cook v. N.Y. State Div. of Parole,* 321 F.3d 274, 277 (2d Cir.2003). Federal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *DiGuglielmo v. Smith,* 366 F.3d 130, 136–37 (2d Cir.2004).

**\*9** Furthermore, as long as the state court disposes of the federal claim on the merits and reduces its disposition to judgment, the deference demanded of a federal habeas court by § 2254(d)(1) applies even if the state court does not explicitly refer to either the federal claim or to relevant federal case law. *Jimenez v. Walker,* 458 F.3d 130, 146 (2d Cir.2006); *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001). Applying this standard to this case, petitioner's application for a writ of habeas corpus should be denied.

## II. *Petitioner's Claims*

### A. *Voice Lineup*

Petitioner alleges that the trial court erred when it ruled that the voice identification of petitioner by Thomas, a witness to the robbery, should not be suppressed. Petitioner further alleges that the failure to preserve the voice lineup by an audiotape of the procedure was unduly suggestive. (Brief for defendant-appellant at 38, 40).

The Court employs a two-step inquiry to evaluate out-of-court identification procedures. *See Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Velazquez v. Poole,* No. 04 CV 478, 2007 WL 3240550, at \*23 (E.D.N.Y. Oct.30, 2007). First, a court must determine whether the identification procedure was impermissibly suggestive and if

so, whether it was so suggestive as to raise "a very substantial likelihood of irreparable misidentification." *Id.* at 198; *see also United States v. Wong,* 40 F.3d 1347, 1359 (2d Cir.1994).

If the procedure was not suggestive, the identification presents no problems regarding admissibility. *See Jarrett v. Headley,* 802 F.2d 34, 42 (2d Cir.1986); *Ortiz v. Artus,* No. 06 Civ. 6444, 2008 WL 2369218, at \*6 (S.D.N.Y. June 9, 2008). If however, the court finds the procedures were unnecessarily suggestive, it must then determine whether the identification was nonetheless independently reliable. *Manson v. Brathwaite,* 432 U.S. 98, 110–14, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Raheem v. Kelly,* 257 F.3d 122, 133 (2d Cir.2001). In short, identification evidence will be admissible if (a) the identification procedures used were not suggestive or (b) the witness' identification has independent reliability. *Raheem,* 257 F.3d at 133 (citing *Manson,* 432 U.S. at 114); *Hornedo v. Artus,* No. 04 CV 3201, 2008 WL 346360 at \*12 (E.D.N.Y. Feb. 6, 2008).

Applying these principles to the voice identification procedure employed by the police in this case, the state court decision was not contrary to or an unreasonable application of Federal law. Even if the voice identification had been suggestive, the Court found that the procedure was independently reliable. As the suppression court noted, the voice identification was necessitated by the fact that petitioner was masked during the robbery. *See People v. King,* Ind. No. 3320–96, slip op. (Sup.Ct. Queens County, July 23, 1997). Meehan testified at trial that petitioner was put in a room with five fillers, was given a choice of what number and what seat he would like. T at 169. The fillers and petitioner had the same general characteristics and voices, including no distinctive accents of any kind. T at 172. At the lineup, petitioner and the fillers recited the words that Thomas stated were said to him during the robbery. T at 170–171. Thomas was in a separate room behind a wall and was unable to view the lineup. T at 172. At the voice lineup, Thomas was

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

able to identify petitioner as the individual who robbed him at the Continental Services office. The voice lineup was confirmed by a physical lineup, at which Thomas once again identified petitioner. T at 175.

**\*10** Under § 2254, the Court must presume the correctness of the trial court's factual findings that the police adequately maintained the integrity and fairness of the voice identification. *See* 28 U.S.C. § 2254(d)(2), (e)(1).

Following a suppression hearing, the trial court held:

The challenge to the voice line-up of the defendant is without merit. In this case, a voice identification was necessitated by the fact that the perpetrator has been masked during the robbery. Additionally, prior to the voice line-up, the complainant had identified the defendant, who was previously known to him as the perpetrator of the robbery. Therefore, the defendant's claim that the voice identification of the defendants is unreliable is contrary to long established law and must be rejected (citations omitted).

*See People v. King,* Ind. No. 3320–96, slip op. at 4 (Sup.Ct. Queens County, July 23, 1997).

The Appellate Division further reviewed this claim:

The failure of the police to produce an audiotape of the voice lineup created a presumption of suggestiveness (*see, People v. Collins,* 60 N.Y.2d 214, 218, 469 N.Y.S.2d 65, 456 N.E.2d 1188; *People v. Wedgeworth,* 156 A.D.2d 529, 548 N.Y.S.2d 790). However, the police overcame that presumption by the testimony of the arresting officer who oversaw the lineup, which demonstrated that the procedures utilized were not impermissibly suggestive (*see, People v. Brennan,* 222 A.D.2d 445, 635 N.Y.S.2d 39). Once the People met their initial burden, the burden shifted to the defendant to prove that the identification

procedure was unduly suggestive ( *People v. Chipp,* 75 N.Y.2d 327, 553 N.Y.S.2d 72, 552 N.E.2d 608 *cert. denied* 498 U.S. 833, 111 S.Ct. 99, 112 L.Ed.2d 70). The defendant failed to do so.

In any event, the People established that the identification was merely confirmatory, since the identifying witness had worked with the defendant for years, and the defendant acknowledged that he was well acquainted with the witness (*see, People v. Rodriguez,* 79 N.Y.2d 445, 452, 583 N.Y.S.2d 814, 593 N.E.2d 268).

*See People v. King,* 291 A.D.2d 413, 736 N.Y.S.2d 904 (2d Dept.2002).

Petitioner has not rebutted the presumption of correctness of the state court's factual findings by clear and convincing evidence as required under § 2254. Moreover, that the voice lineup was not recorded does not render the lineup impermissibly suggestive. *See People v. Wallington,* 271 A.D.2d 384, 708 N.Y.S.2d 60 (1st Dept.2000) (lack of a tape recording of the vocal aspect of a lineup did not require suppression). Accordingly, the state courts' decision that the lineup was not suggestive was neither contrary to, nor involved an unreasonable application of clearly established Federal law. *See* 28 U.S.C. § 2254(d), (e)(1). Therefore, this claim should be denied.

**B.** *Grand Jury*

**1.** *Exhaustion*

Petitioner argues that the prosecutor's cumulative misconduct impaired the integrity of the grand jury proceeding. (Brief for defendant-appellant at 27). Specifically, petitioner alleges that following his testimony at the grand jury, the prosecutor injected her opinion about petitioner's guilt, attacked his failure to come forward earlier with his alibi defense, became an unsworn witness against him, and suggested that petitioner had a propensity to commit armed robberies. *Id.*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*11** Respondent argues that this challenge to the grand jury proceedings is unexhausted because petitioner's brief did not alert the Appellate Division to the federal constitutional nature of petitioner's argument. *See* Affidavit and Memorandum of Law in Opposition to Writ of Habeas Corpus at 17. This Court agrees.

A federal court may not grant a writ of habeas corpus unless a petitioner has exhausted his remedies available in the state courts. 28 U.S.C. § 2254(b)(1)(A). A petitioner exhausts his state-court remedies by fairly presenting each federal claim for relief to the highest state court capable of review. *See, e.g., Baldwin v. Reese,* 541 U.S. 27, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004); *Jackson v. Edwards,* 404 F.3d 612, 618 (2d Cir.2005) (to be eligible for habeas relief, the substance of claim must have been fairly presented to the state appellate court); *Fama v. Com'r of Corr. Servs.,* 235 F.3d 804, 808–09 (2d Cir.2000). Such fair presentation to the state court requires that the petitioner assert the same legal theory and premise it on essentially the same body of facts as he invokes in the federal court. *See, e.g., O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Jimenez,* 458 F.3d at 149; *Volpe v. Downstate Correctional Facility,* No. 06 CV 6181, 2006 WL 3498580, at \*1 (E.D.N.Y. Nov.30, 2006).

Here, petitioner's state court brief makes no reference to federal constitutional principles. The brief cites exclusively to New York State court cases, and makes no reference whatsoever to any federal cases or to the federal constitution. Even if some of the state cases cited to federal cases, nothing in petitioner's brief alerted the appellate courts to the federal nature of petitioner's grand jury claim. *See Baldwin,* 541 U.S. at 29.

If a claim is not fairly presented to the state court, the habeas court will nonetheless deem it exhausted if there is "an absence of available State corrective process under § 2254(b)(l)(B)(i)" because "it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio v. Artuz,* 269 F.3d 78, 90 (2d Cir.2001). When a petitioner "fail[s] to exhaust state remedies, 'and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted." *Id.* (quoting *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

Petitioner has already taken the one direct appeal to which he is entitled, and no longer has any procedure available in state court to raise this claim. Accordingly, this claim is procedurally barred from habeas corpus review. Where a habeas claim is deemed procedurally barred, a federal court will not entertain such a claim "absent a showing of cause and prejudice to excuse the default," or where the petitioner can show that he is "actually innocent of the underlying offense." *Dretke v. Haley,* 541 U.S. 386, 388, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (citing *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2678, 91 L.Ed.2d 397 (1986)). Here, petitioner does not demonstrate cause, prejudice or that a fundamental miscarriage of justice would occur absent federal court review. Therefore, petitioner's grand jury claim should not be reached because it is unexhausted and procedurally barred.

**\*12** Even if the claim were to be reviewed on the merits, it should be denied. Petitioner was convicted following a trial, therefore, any alleged deficiencies in the indicting grand jury's proceedings are not cognizable in a federal habeas corpus proceeding. *See United States v. Mechanik,* 475 U.S. 66, 70, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) ("The petit jury's verdict of guilty beyond a reasonable doubt demonstrates a *fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted. Therefore, the convictions must stand despite the [grand jury] rule violation."); *Davis v. Mantello,* 42 Fed. Appx. 488, 490–91 (2d Cir.2002) (summary order)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court."), *cert. denied,* 538 U.S. 986, 123 S.Ct. 1803, 155 L.Ed.2d 681 (2003); *see also Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a *fortiori* foreclosed in a collateral attack brought in federal court."); *Archer v. Connell,* No. 06 CV 2961, 2008 WL 434266, at *10 (E.D.N.Y. Feb. 14, 2008).

Here, petitioner argues that there were deficiencies in the grand jury proceeding. However, petitioner was found guilty by a petit jury. Therefore, his grand jury claim is not cognizable on federal habeas review and this claim should be denied.

C. *Right to Counsel*

1. *Exhaustion*

Petitioner alleges that his right to counsel was violated when after an attorney had been appointed on the Continental Services robbery case, IAB detectives questioned him on an unrelated matter. Therefore, petitioner argues that the gun and his statements should have been suppressed. (Brief for defendant-appellant at 48). Respondent argues that this claim does not present a cognizable federal claim, is unexhausted and procedurally barred.

In March 1996, while petitioner was in custody on the Continental Services robbery case, he filed a complaint against Meehan. The complaint alleged that Meehan failed to investigate a double homicide about which petitioner had given him information, and that his failure to do so resulted in the death of two other people. T at 378–380. Petitioner was interviewed by two IAB detectives regarding the allegations he made against Meehan. During that interview, petitioner stated that he received a handgun from a friend of his that was used in the double homicide. T at 380. Petitioner further stated that the gun was kept at his girlfriend's house, and that he

would tell his girlfriend to turn over the gun to the IAB detectives. The gun was tested, and was found not to have been used in the double homicide. T at 386.

More than a year later, Lynch, the Assistant District Attorney assigned to the Continental Services robbery case, contacted IAB to see if there was any *Rosario* material in the file. At that time, she learned that petitioner had surrendered a gun to the IAB detectives. Tests confirmed that the bullet recovered from the wall of the Continental Services office came from gun petitioner had surrendered a year earlier. T at 221, 247–249.

**\*13** Respondent argues that petitioner failed to alert the state courts to the federal constitutional nature of this claim and that he no longer has a forum in which he could raise this claim now. This Court disagrees. In order to satisfy the exhaustion requirement, a habeas petitioner must give the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 845; *see also Taveras v. Smith,* 388 F.Supp.2d 256, 264 (S.D.N.Y.2005) (a petitioner is required to present his constitutional claim "to each level of the state court system available to review the claim"). A petitioner must not only " 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review)," but must alert each court "to the federal nature of the claim." *Baldwin,* 541 U.S. at 29 (citing *Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam), and *O'Sullivan,* 526 U.S. at 845).

A petitioner can alert a state court to the federal constitutional nature of his claim in various ways, including "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pat-

tern of facts that is well within the mainstream of constitutional litigation." *Daye v. Attorney General of State of N.Y.,* 696 F.2d 186, 194 (2d Cir.1982); *Martinez v. Brown,* No. 05 CV 4464, 2007 WL 2402995, at *1 (E.D.N.Y. Aug. 17, 2007). Petitioner's appellate brief cites to both federal and state cases involving the legal standard for federal constitutional right to counsel. Accordingly, this Court deems this claim exhausted and reaches the merits of the claim.

Under New York law, once a defendant is represented by counsel on the charge for which he is in custody, " 'custodial interrogation about any subject, whether related or unrelated to the charge upon which representation is sought or obtained, must cease.' " *People v. Burdo,* 91 N.Y.2d 146, 149, 667 N.Y.S.2d 970, 690 N.E.2d 854 (1997) (quoting *People v. Steward,* 88 N.Y.2d 496, 646 N.Y.S.2d 974, 670 N.E.2d 214 (N.Y.1996)). The Supreme Court has held that the right to assistance of counsel is "offense specific" and "attaches only to charged offenses." *Texas v. Cobb,* 532 U.S. 162, 164, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001); *Key v. Artuz,* No. 99 CV 161, 2002 WL 31102627, at *4 (E.D.N.Y. Sept. 16, 2002). That is, while a defendant may have a Sixth Amendment right to counsel in a case where the adversarial process has been initiated against him, that right does not attach to an unrelated case in which the adversarial process has not been initiated. *Rivera v. Conway,* 350 F.Supp.2d 536, 548 (S.D.N.Y.2004). Accordingly, the New York right to counsel is broader than the federal right to counsel. *Cf. Rivera v. Artus,* No. 05 Cv 5050, 2007 WL 3124558, at *7 n. 7 (E.D.N.Y. Oct.25, 2007) (citing *Hill v. Senkowski,* 409 F.Supp.2d 222, 232 (W.D.N.Y.2006) (holding that, to the extent a state law claim is broader than a similar federal right, the state law claim is not cognizable on federal habeas review)); *Hurd v. Stinson,* No. 99 Civ. 2426, 2000 WL 567014, at *12 n. 12 (S.D.N.Y. May 10, 2000).

**\*14** Here, the IAB detectives interviewed petitioner at his request. The purpose of the interview was to determine the substance of petitioner's allegations against Meehan, not to elicit any information about the Continental Services robbery. T at 379. In fact, the IAB detective testified that he did not learn the reason petitioner was in custody until the day after he conducted his interview. T at 468–469. Moreover, petitioner volunteered the information about the gun, and once the detectives determined that the recovered gun was not used in the double homicide they took no further action. T at 380. The police were not interested in prosecuting petitioner for possession of the gun, as he relinquished it as part of the Internal Affairs investigation. More than a year later, when Lynch contacted the IAB detectives to ask about any potential *Rosario* material, they produced petitioner's gun to her. T at 462–466.

As respondent effectively argued: "by giving the detectives the gun in relation to two other cases, [petitioner] effectively distanced himself from it; and, just in case anyone caught on, he could argue that the gun—and the subsequent ballistics tests—were not admissible against him." (Brief for respondent at 34). Although the gun was ultimately used against him in the Continental Services robbery case, under the facts presented here, where plaintiff volunteered the information and the gun to the IAB detectives, there was no Sixth Amendment violation of petitioner's right to counsel. Accordingly, the state court decision was not contrary to or an unreasonable application of clearly established Federal law and this claim should be denied.

### D. *The Trial Court's Exclusion of Testimony*

Petitioner alleges that his due process right to present a defense was violated when the court precluded Detective McHugh ("McHugh") from testifying. Petitioner argues that although he served subpoenas on various witnesses, including McHugh,[FN7] no one appeared in response to the subpoenas. Petitioner further argues that since he was incarcerated and representing himself *pro se,* he could not determine McHugh's or his other witnesses whereabouts. (Brief for defendant-appellant at 55).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN7. Petitioner characterized McHugh as a "key witness to prove that the police had framed him ..." (Brief for defendant-appellant at 54).

A federal court's habeas review is limited where petitioner claims that a state court's evidentiary ruling involved an error of constitutional magnitude. *See Estelle,* 502 U.S. at 67 (federal habeas corpus relief does not lie for errors of state law.). In determining whether the exclusion of evidence improperly infringed on a defendant's right to present a complete defense, reviewing courts analyze: (1) whether the trial court's evidentiary ruling was proper; and (2) whether the excluded evidence was material. *See Wade v. Mantello,* 333 F.3d 51, 58–59 (2d Cir.2003). Erroneously excluded evidence only reaches a level of unfairness if it "creates a reasonable doubt that did not otherwise exist." *Jones v. Stinson,* 229 F.3d 112, 120 (2d Cir.2000) (quoting *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)); *see also Sims v. Stinson,* 101 F.Supp.2d 187, 194 (S.D.N.Y.2000) (for an evidentiary error to reach constitutional magnitude, "it must have been 'crucial, critical, highly significant' ") (quoting *Collins v. Scully,* 755 F.2d 16, 19 (2d Cir.1985)). Therefore, a petitioner seeking habeas relief on the basis of an allegedly erroneous evidentiary ruling must establish that the trial court's error "deprived [him] of a fundamentally fair trial." *Zarvela v. Artuz,* 364 F.3d 415, 418 (2d Cir.2004) (quoting *Rosario v. Kuhlman,* 839 F.2d 918, 925 (2d Cir.1988)).

**\*15** Moreover, a federal habeas court reviews the evidentiary error "objectively in light of the entire record before the jury." *Collins,* 755 F.2d at 19. Here, a review of the state court record reveals that the judge provided petitioner with ample opportunity to have his witnesses present in court. On June 25, 1998, the trial court instructed petitioner to be ready on June 29th to present his defense. (T at 766–67, 834–835, 838, 840). On June 29th, when petitioner was not ready to present any witnesses the judge granted an adjournment until the following morning. (T at 989–993). The following morning, petitioner presented the testimony of Bernice Sutton, the only one of eleven defense witnesses that was available to testify. (T at 994–98, 1029–1032).

According to petitioner's legal advisor, petitioner had served a subpoena requesting the presence of "Detective MacHuge." T at 1033–35. The legal advisor further stated that the Nassau County police department refused to accept that subpoena. *Id.* According to petitioner's legal advisor, no subpoenas were served on any of the other witnesses.

Although the trial record is unclear as to why the subpoena for McHugh was rejected, respondent asserts that petitioner had misspelled McHugh's name on the witness list and possibly on the subpoena itself. Therefore, the subpoena was rejected as it named "Detective MacHuge" instead of Detective McHugh. *See* Affidavit and Memorandum of Law in Opposition to Writ of Habeas Corpus at 36, n. 5. The record reflects that the subpoena for McHugh was signed by the court on June 10, 1998, and served on June 18, 1998. T at 1034–35. Prior to trial, petitioner made no further attempt to secure McHugh's appearance. Furthermore, although petitioner characterized McHugh as a "crucial" witness, necessary to prove that the police had framed him for the Continental Services robbery, this allegation is conclusory and is not supported by the record. T at 1035. McHugh arrested petitioner on an unrelated robbery, and thus was unlikely to have any material information about petitioner's involvement in this case. *See* Affidavit and Memorandum of Law in Opposition to Writ of Habeas Corpus at 42.

The decision of whether to grant or deny a continuance is "a matter 'traditionally within the discretion of the trial judge.' " *Drake v. Portuondo,* 321 F.3d 338, 344 (2d Cir.2003) (quoting *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964) and *citing Morris v. Slappy,* 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983)). "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

justifiable request for delay' violates the [Constitution]." *Morris,* 461 U.S. at 12 (quoting *Ungar,* 376 U.S. at 589); *accord Drake,* 321 F.3d at 344; *United States v. Arena,* 180 F.3d 380, 397 (2d Cir.1999) ("The denial of a defendant's request for a continuance will not be reversed absent a showing of both arbitrariness and of prejudice to the defendant.") (citations omitted).

**\*16** Petitioner fails to demonstrate that the court's actions were arbitrary or that his defense was substantially impaired by the court's denial of his request for another adjournment. Petitioner makes no showing that a further adjournment would have enabled him to secure the attendance of any of his witnesses. Moreover, even if he could do so, he makes no showing that the testimony of any of these witnesses would have been exculpatory.

Finally, any evidentiary error is subject to the harmless error standard. The Supreme Court has clarified that, on habeas review, courts must analyze whether a constitutional error was harmless by using the substantial and injurious effect standard set forth in *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). *Fry v. Plier,* 551 U.S. 112, 127 S.Ct. 2321, 2328, 168 L.Ed.2d 16 (2007). Under the *Brecht* standard, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Fry,* 127 S.Ct. at 2325 (quoting *Brecht,* 507 U.S. at 631). Here, it is clear that any evidentiary error did not have a substantial and injurious effect or influence in determining the jury's verdict. Accordingly, the state court decision was not contrary to or an unreasonable application of clearly established Federal law and this claim should be denied.

### *CONCLUSION*

Accordingly, it is recommended that the instant petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 should be denied. Because petitioner has not made a substantial showing of the denial of any constitutional right, it is recommended that no certificate of appealability should be issued. 28

U.S.C. § 2253: *see Lozada v. United States,* 107 F.3d 1011, 1017(2d Cir.1997), *abrogated on other grounds,* *United States v. Perez,* 129 F.3d 255, 259–60 (2d Cir.1997) (discussing the standard for issuing a certificate of appealability); *see also Lucidore v. N.Y. State Div. of Parole,* 209 F.3d 107, 112–13 (2d Cir.2000), *cert. denied,* 531 U.S. 873, 121 S.Ct. 175, 148 L.Ed.2d 120 (2000). It is further recommended that the Court certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections. Any request for an extension of time in which to file objections must be made within the ten (10) day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. *DeLeon v. Strack,* 234 F.3d 84, 86 (2d Cir.2000); *Spence v. Superintendent, Great Meadow Corr. Fac.,* 219 F.3d 162, 174 (2d Cir.2000); *see also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

SO ORDERED.

E.D.N.Y.,2009.
King v. Phillips
Not Reported in F.Supp.2d, 2009 WL 891763 (E.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Westlaw Delivery Summary Report for MCKEON, COURTENA**

| | |
|---|---|
| Date/Time of Request: | Monday, September 22, 2014 15:57 Central |
| Client Identifier: | O'HALLORAN |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 735 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.





















Page 1

Not Reported in F.Supp.2d, 2008 WL 2323360 (N.D.N.Y.)
**(Cite as: 2008 WL 2323360 (N.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Dionicio PEREZ, Petitioner,
v.
Michael PERROTT, Superintendent, Respondent.

No. 9:04-CV-327.
June 2, 2008.

Dionicio Perez [FN1], Leesport, PA, pro se.

> FN1. According to the New York State Department of Correctional Services website, petitioner was released in July of 2004. Petitioner has not filed a change of address with the court or otherwise advised the court of his status. Petitioner's release status is unclear, both because of his immigration status and because he may be on parole. Therefore, the court has handled the petition as though petitioner is still "in custody."

Hon. Andrew M. Cuomo, Attorney General of the State of New York, Steven H. Schwartz, Esq., Asst. Attorney General, New York, NY, for Respondent.

### DECISION and ORDER
Hon. DAVID N. HURD, District Judge.

*1 Petitioner, Dionicio Perez, brought a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. By Report-Recommendation dated March 3, 2008, the Honorable Gustave J. DiBianco, United States Magistrate Judge, recommended that the petition be denied and dismissed; and further, that a certificate of appealability be denied. There have been no objections made to the Report-Recommendation.

Accordingly, it is

ORDERED that the petition for a writ of habeas corpus is DENIED and DISMISSED in all respects; and further, no certificate of appealability will be issued.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

### REPORT-RECOMMENDATION
GUSTAVE J. Di BIANCO, United States Magistrate Judge.

This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

Petitioner brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a judgment of conviction from the Schenectady County Court. On May 5, 1997, petitioner pled guilty to Criminal Sale of a Controlled Substance, Third Degree. Petitioner was sentenced on July 21, 1997 to an indeterminate term of four and one-third to thirteen years imprisonment. Petitioner did not complete a direct appeal of his conviction, despite several extensions of time to do so.

Petitioner filed a motion to vacate the judgment pursuant to N.Y. CRIM. PROC. LAW § 440.10 which was denied by the Schenectady County Court in an oral decision on April 19, 1999. *People v. Perez,* Transcript of Hearing and Decision (Exhibit 14).[FN2] Although it appears that petitioner's counsel intended to consolidate petitioner's direct appeal with the appeal of the denial of the section 440.10 motion, on September 27, 1999, counsel made an application to withdraw the appeal. The Appellate Division, Third Department granted the application to withdraw on April 15, 2002. Exhibit 17, *People v. Perez,* (3d Dep't April 15, 2002).

> FN2. Local Rule 72.4(d) outlines the respondent's obligation to identify docu-

ments in the state court records. Unfortunately, in this case, respondent's counsel has not done so. Respondent's counsel submitted 31 documents, ostensibly in chronological order. Several of the documents contain a variety of other unlisted documents attached and few have any page numbering whatsoever. To remedy this cumbersome problem, the court has used the numbering of the documents as listed in respondent's answer (Dkt. No. 6) as "exhibit" numbers and has paginated each exhibit separately. When citing to the state court records in the Recommendation, the court will identify the exhibit number and the page number within that exhibit when applicable.

Petitioner made a motion to reinstate his appeal on May 2, 2003 which was denied by the Appellate Division on June 17, 2003. (Exhibit 21). Petitioner then filed a motion for reargument of the denial which was denied on October 2, 2003. (Exhibit 27). Petitioner sought leave to appeal to the New York Court of Appeals from both the denial of the motion to reinstate as well as the motion to reargue. The New York Court of Appeals dismissed petitioner's applications in two separate decisions, dated December 4, 2003. *People v. Perez,* 1 N.Y.3d 577, 807 N.E.2d 907 (2003) (Exhibits 30, 31). The New York Court of Appeals found that "the order[s] sought to be appealed [are] not appealable under Criminal Procedure Law, section 450.90(1)." *Id.*

Petitioner raises the following grounds in support of his petition:

(1) Petitioner's plea was involuntary.

(2) Petitioner was unlawfully arrested.

**\*2** (3) The prosecutor engaged in misconduct.

(4) Petitioner was denied the effective assistance of trial counsel.

Respondent has filed an answer and memorandum of law, together with the pertinent state court records.[FN3] (Dkt. No. 6). Petitioner filed a reply. (Dkt. No. 16). For the following reasons, this court will recommend denial of the petition.

FN3. The state court records are listed on pages 3-5 of respondent's answer. (Dkt. No. 6).

## DISCUSSION

**1.** *Facts*

In early September of 1996, New York State Police Officers conducted at least two undercover purchases of narcotics from an Hispanic male. On September 6 and again on September 13, 1996, an undercover officer entered Rody's Bar in Schenectady, New York and purchased drugs from an individual nicknamed "Kiko." (Exhibit 12 at pp. 10-11-Buy Sheets). Field test results were positive for cocaine [FN4] and crack cocaine.[FN5]

FN4. September 6, 1996 purchase. (Exhibit 12 at p. 11).

FN5. September 13, 1996 purchase. (Exhibit 12 at p. 10).

The undercover officer wrote reports on both purchases, including a physical description of the suspect. Both reports identified "Kiko" as the seller, and the physical description of the seller was the same in both reports, except for the description of the suspect's facial hair. On September 6, the report indicated that the suspect had a mustache ("must"), while on September 13, the report indicated that the suspect had a goatee ("g-tee"). The reports also differed on the identity of "Kiko." The September 6 report identified the seller as Ignacio Perez (Exhibit 12 at p. 11), and the September 13 report identified the seller as "Dominsio"[FN6] Perez. (Exhibit 12 at p. 10). Both reports listed the suspect's date of birth as August 12, 1963.[FN7] The September 13 report stated that "Kiko then proceeded to write his name and address in the Dom. Rep. for W/M name Gary. (Dominsio Perez)"

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2323360 (N.D.N.Y.)
**(Cite as: 2008 WL 2323360 (N.D.N.Y.))**

(Exhibit 12 at p. 11).

FN6. Petitioner's name is misspelled in various state court documents. Petitioner's name is Dionicio.

FN7. Petitioner's date of birth is February 25, 1966. (Exhibit 13 at p. 28).

The undercover officer delivered the drugs purchased from Kiko to the New York State Police Headquarters Crime Laboratory. The laboratory issued two reports identifying the drugs as cocaine and crack cocaine. (Exhibit 1 [FN8] at pp. 5-7). In the lab report dated September 18, 1996, the suspect was listed as "Ignacio 'Kiko' Perez." (Exhibit 1 at pp. 5-6). In the lab report, dated September 17, the suspect was identified as "Ignacio Perez aka Dominsio." (Exhibit 1 at p. 7).

FN8. Exhibit 1 is the petitioner's indictment. The laboratory reports are attached to the indictment.

On September 19, 1996, a grand jury indicted "Dionicio Perez a/k/a/ Dominsio Perez a/k/a Ignacio Perez a/k/a/ Kiko" for two counts of Criminal Sale of a Controlled Substance, Third Degree; two counts of Criminal Possession of a Controlled Substance, Third Degree; and one count of Criminal Possession of a Controlled Substance, Seventh Degree. (Exhibit 1) (Indictment). Petitioner was arrested on November 1, 1996.[FN9]

FN9. Pre-Sentence Investigation Report, June 23, 1997 (Exhibit 13 at p. 28) (a portion of the report is attached to the District Attorney's response to petitioner's 1999 motion to vacate).

On November 18, 1996, the Schenectady County District Attorney was advised that Dionicio Perez had a brother, Ignacio Perez. (Exhibit 2). This information was contained in an "Inter-Departmental Correspondence Sheet" written for petitioner's file. (Exhibit 2). The subject of this report is listed as "Background Information ..." *Id.*

The report states that Dionicio and his brother Ignacio were both involved in the drug business, bringing drugs "from NYC every couple of weeks and selling until they ran out, then getting more." *Id.* at p. 1 It is clear from the report that the prosecutor was aware of both brothers, and that Ignacio had pending charges "related to Dionicio's business." *Id.* The report also states that petitioner's English was "excellent, although [he] claims to need an interpreter." *Id.*

**\*3** In December of 1996, petitioner's counsel, Steven X. Kouray, Esq., made an omnibus motion which included a motion to dismiss the indictment, alleging *inter alia,* that "the identity of the defendant was never clearly established." (Exhibit 3 at p. 4). The Schenectady County Court found that the indictment was based on sufficient evidence. (Exhibit 5) (*People v. Perez,* Decision and Order dated Jan. 17, 1997). On May 5, 1997, petitioner accepted a plea agreement and admitted that he sold drugs on September 6, 1996. (Exhibit 13 at pp. 12-14) (Plea Hearing Transcript (PHT) at 9-10). Petitioner pled guilty to one count of Criminal Sale of a Controlled Substance, Third Degree. (Exhibit 13 at p. 12) (PHT at 9). Petitioner signed a waiver of his right to appeal as part of the plea agreement. (Exhibit 6). During the plea proceedings, petitioner was represented by retained counsel, James Long, Esq. (Exhibit 13 at p. 4).

On November 5, 1997, petitioner made a pro se motion to extend his time to appeal in the Appellate Division, Third Department. (Exhibit 7 at p. 1). In his motion, petitioner stated that his attorney failed to file a notice of appeal, and because petitioner had been moved to several correctional facilities, he had been unable to maintain contact with Mr. Long. (Exhibit 7 at p. 2). James Long, Esq. filed an affidavit in support of petitioner's pro se request, stating *inter alia,* that Attorney Long did not believe in requiring defendants who plead guilty to waive their right to appeal. (Exhibit 8 at p. 2, ¶¶ 6-7). The Appellate Division granted petitioner's request. *See* Exhibit 9. On February 6, 1998, petitioner filed his

notice of appeal and request to proceed as a poor person. (Exhibit 9 at pp. 2-6).

On March 13, 1998, the Appellate Division granted petitioner's motion to proceed as a poor person. (Exhibit 10). On October 13, 1998, Kevin A. Burke, Esq. was assigned to represent petitioner, and on November 30, 1998, Attorney Burke asked for an additional extension of time to perfect the appeal. (Exhibit 11). On March 24, 1999, Attorney Burke made a motion to vacate petitioner's conviction in the Schenectady County Court pursuant to N.Y. CRIM. PROC. LAW § 440.10. (Exhibit 12). Attorney Burke based petitioner's motion on "newly discovered evidence"; prosecutorial misconduct; and ineffective assistance of trial counsel because neither the attorneys from the Public Defender's Office, nor retained counsel, Mr. Long, raised the issue of petitioner's misidentification. *Id.*

A hearing on the motion was conducted on April 19, 1999 in Schenectady County Court. (Exhibit 14) (Transcript of Hearing). After the hearing, the court denied petitioner's motion in an oral decision, finding that there was no newly discovered evidence. (Exhibit 14 at pp. 12-13). The court also found that petitioner's plea was voluntary, and that trial counsel's decision not to pursue the identification issue was strategic in light of the plea bargain. (Exhibit 14 at pp. 12-13).

**\*4** On June 15, 1999, Attorney Burke moved for another extension of time to appeal to the Appellate Division. (Exhibit 15). It is clear from Attorney Burke's letter that he wished to consolidate petitioner's direct appeal with the appeal from the recently denied section 440.10 motion. (Exhibit 15 at p. 2). Counsel stated that the extension was being requested because "the motion to vacate ... was denied and I am waiting for transcripts from that hearing to include them in the present Appeal. My client directed me to make this request on his behalf." *Id.*

On September 27, 1999, Attorney Burke wrote to the Appellate Division asking to withdraw peti-

tioner's appeal. (Exhibit 16). Attorney Burke stated that he was "authorized and directed by my client" to seek the withdrawal. The letter indicates that a copy of the letter was sent to petitioner.[FN10] *Id.* On April 15, *2002* the Appellate Division issued an order discontinuing the appeal. (Exhibit 17). On December 12, 2002, petitioner wrote a letter to the Clerk of the Third Department, inquiring about the "status" of his appeal. (Exhibit 18). In that letter, petitioner stated that "I was assigned a Counsel to help me with my appeal, but due to a release from the prison system in 1999,[FN11] I had lost all contact with him and the paper work [sic] with my indictment No." *Id.*

> FN10. It is unclear why the respondent in this case did not raise a statute of limitations argument. The Anti-Terrorism and Effective Death Penalty Act (AEDPA) imposes a one year period of limitations which runs from the latest of one of four different circumstances. 28 U.S.C. § 2244(d)(1). These circumstances include: the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; the date upon which an unconstitutional State-created impediment to filing a petition was removed if the petitioner was prevented from filing because of that impediment; the date upon which the constitutional right asserted was recognized and made retroactive by the Supreme Court; or the date upon which the factual predicate for petitioner's claim could have been discovered by the exercise of due diligence. 28 U.S.C. 2244(d)(1)(A)-(d)(1)(D).

> Although the respondent in this case did not argue that this petition was barred by the statute of limitations, this court must point out that such an argument may well have been successful. The United States Supreme Court has recently stated that the court may consider the statute of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

limitations even if the respondent does not argue for dismissal on that basis. *Day v. McDonough,* 547 U.S. 198, 209, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2007). Other courts have stated that in order to consider the statute of limitations *sua sponte,* the court must afford the petitioner a chance to respond to that issue. *Downing v. Lance,* 07-Cv-582, 2008 U.S. Dist. LEXIS 657, *1-2 (D.Conn. Jan. 4, 2008). Because petitioner in this case has failed to update his address, it would be impossible for the court to afford him notice and an opportunity to oppose the finding. Thus, the court will not engage in a complicated statute of limitations analysis or base its recommendation the untimeliness of the petition.

FN11. It is completely unclear what petitioner means by this statement.

By letter dated December 20, 2002, the Appellate Division, Third Department informed petitioner that his appeal had been withdrawn by order dated April 15, 2002, upon the request of petitioner's counsel, Kevin Burke, Esq. (Exhibit 19). On May 2, 2003, petitioner made a motion to reinstate his appeal in the Third Department.FN12 (Exhibit 23 at pp. 13-24). In this motion, petitioner stated that he never intended to withdraw his appeal. Petitioner explained that he relied on a relative to communicate with Mr. Burke because of petitioner's limited ability to communicate in English. (Exhibit 23 at p. 17). Petitioner acknowledges that Mr. Burke had relied upon the contents of a letter from one of petitioner's relatives, stating that petitioner wished to withdraw his appeal. (Exhibit 23 at p. 18). Petitioner claimed that he did not know the contents of the letter until counsel himself produced a copy of the letter in a related proceeding conducted by the Third Department Committee on Professional Standards.FN13 On June 17, 2003, the Appellate Division denied the motion to reinstate petitioner's

appeal. (Exhibit 21).

FN12. In addition to explaining why the appeal should be reinstated, petitioner stated several of the arguments upon which he would have based his appeal, including involuntary plea, ineffective assistance of counsel, and his allegedly mistaken reliance upon an interpreter during the plea proceedings. (Exhibit 23 at pp. 19-22).

FN13. According to petitioner, he filed a misconduct complaint with the Committee. (Exhibit 23 at p. 18). However, in his motion to reinstate the appeal, petitioner conceded that "[the request to withdraw the appeal] does not appear to indicate any unprofessional conduct by [counsel]." *Id.*

On August 18, 2003, petitioner made a motion to reargue the denial of the motion for reinstatement. (Exhibit 23). The District Attorney opposed the motion, based only upon the voluntary withdrawal of the appeal by counsel. (Exhibit 25 at pp. 1-2). On October 2, 2003, the Third Department denied petitioner's motion for reargument. (Exhibit 27). Petitioner applied to the New York Court of Appeals for leave to appeal the denial of reinstatement and the denial of reargument. (Exhibits 28 and 29). On December 4, 2003, the New York Court of Appeals denied leave to appeal both denials because neither denial was an "appealable order" under N.Y. CRIM. PROC. LAW § 450.90(a). (Exhibits 30 and 31).

**2. *Exhaustion***

**\*5** The law is well-settled that prior to bringing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, a petitioner must exhaust his state court remedies with respect to each claim presented in his federal application for habeas relief. *Baldwin v. Reese,* 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). The petitioner must "fairly present" his claims in each appropriate state court, alerting the court to the ***federal nature*** of the claim. *Id.* (quoting *Duncan v. Henry,* 513 U.S. 364,

365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995)). The petitioner must have informed the state court of **both** the factual **and** legal basis of the claims that he is attempting to bring in federal court. *Id.* To fulfill the exhaustion requirement, petitioner's claims must have been presented to the highest state court available for review of those claims. *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994), *cert denied,* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995).

In this case, petitioner has failed to exhaust any of the claims that he raises in this petition. Prior to petitioner's direct appeal, he filed his section 440.10 motion. Although he received a decision on the merits of the section 440.10 motion, and petitioner's counsel intended to consolidate petitioner's direct appeal with the appeal from the section 440.10 motion, neither appeal was perfected. Petitioner's counsel withdrew the appeal by letter dated September 27, 1999. (Exhibit 16). The letter indicates that a copy was sent to petitioner. *Id.* Although petitioner attempted to reinstate his appeal and to re-argue the denial of reinstatement, the Appellate Division denied both applications and therefore, never had the opportunity to consider the substance of any of petitioner's claims.

The fact that petitioner attached various arguments to his motion to reinstate that he would have made on his appeal, does not change this court's finding. The motion to reinstate was based on the claim that his attorney erroneously withdrew the appeal(s), and the Appellate Division would have considered that argument in denying the motion. The court would only have reached the substantive arguments if reinstatement had been granted. The New York Court of Appeals then **dismissed** petitioner's attempt to appeal from the denial of the motion to reinstate and the motion to reargue. (Exhibits 30, 31). The New York Court of Appeals stated in its decisions that neither order was appealable. *Id.* The Court of Appeals did not consider any substantive arguments made by petitioner. Thus, none of petitioner's claims are exhausted.

If petitioner has failed to exhaust his state court remedies, but no longer has remedies available in state court, then the claims are "deemed" exhausted, but may also be barred by procedural default. *Bossett v. Walker,* 41 F.3d at 828 (citing *Grey v. Hoke,* 933 F.2d 117, 120-21 (2d Cir.1991)). A state prisoner who has procedurally defaulted on a federal claim in state court may only obtain federal habeas review of that claim if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that he is "actually innocent." *Clark v. Perez,* 510 F.3d 382, 2008 U.S.App. LEXIS 36, *25-26, 2008 WL 43646 (2d Cir. Jan.3, 2008) (quotation omitted). With this background, the court will turn to an analysis of each of petitioner's claims.

**3. *Involuntary Plea***

**\*6** In this case, petitioner first claims that his plea was involuntary because the **court interpreter** never explained the consequences of the plea, and the interpreter just encouraged petitioner to "say yes to all questions." Petition at ¶ 12(a) (Dkt. No. 1). Petitioner also appears to blame the interpreter for "inducing" him to plead guilty to avoid a higher sentence. *Id.* Although petitioner's counsel did not specifically raise the issue of involuntary plea in the papers filed in support of the motion to vacate, at the hearing the voluntary nature of his plea was discussed at the prompting of the court. (Exhibit 14 at p. 4). The prosecutor's papers interpreted petitioner's argument as raising a voluntariness issue. (Exhibit 13 ¶ 6).

At the hearing, petitioner's counsel stated that "[petitioner] feels that he was coerced into taking this plea." (Exhibit 14 at p. 4). The essence of petitioner's claims is that he is not the individual who was indicted for this crime, and that he always wished to have a hearing regarding identity, but because of his ineffective counsel and faulty interpreter, he pled guilty instead. (Exhibit 12 at p. 3). The court found on the merits that petitioner's plea was voluntary and his counsel was not ineffective in

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

failing to pursue the identification issue. (Exhibit 14 at pp. 12-14). The court found that the identification issue was not "new evidence" and the discrepancy between the names on the buy sheets was information that was known to the parties and could have been used in an argument based on the "weight of the evidence" or to impeach or undermine the prosecutor's witnesses if the case had gone to trial. *Id.* at p. 12.

Thus, petitioner's involuntary plea claim was raised and considered in the section 440.10 motion, however, because there was no appeal of that motion, the claim is unexhausted. The issue then becomes whether petitioner can now return to state court to raise his involuntary plea claim. If there are no remedies available to petitioner, the court may "deem" the claim exhausted and proceed to an analysis of procedural default. For exhaustion purposes, a federal habeas court need not require that a federal claim be presented to the state court if it is clear that the state court would hold the claim procedurally barred. *Grey,* 933 F.2d at 120 (quoting *Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)).

Petitioner in this case cannot go back and attempt to finish his direct appeal. He has already attempted to reinstate his appeal, and his motion was denied by the Appellate Division. He also cannot appeal the denial of the section 440.10 motion for the same reason.[FN14] Petitioner's only avenue to raise this claim would be to file a successive section 440.10 motion. There is no time limit within which an individual must bring a section 440.10 motion. The statute specifically states that a motion to vacate may be made "[a]t any time after the entry of a judgment." N.Y. CRIM. PROC. LAW § 440.10 (1).

FN14. As stated above, the direct appeal and the appeal of the section 440.10 motion were to be heard together.

**\*7** It is also contemplated by the statute that more than one motion to vacate is not prohibited.

However, the statute provides that the court "may" deny a motion to vacate when the ground or issue was previously determined on the merits in a prior motion or proceeding, other than a direct appeal of the action. *Id.* § 440.10(3)(b). The statute further provides that the court "may" deny a motion to vacate when the petitioner raises a claim that he could have raised in a prior motion to vacate, but unjustifiably failed to do so. *Id.* § 440.10(3)(c). Finally, the court "must" deny a motion to vacate when the issue could have been raised on direct appeal, but petitioner unjustifiably failed to do so. *Id.* § 440.10(2)(c).

Since petitioner did raise his involuntary plea issue in a prior motion to vacate, an attempt to return to state court to raise the issue again so that he could exhaust his remedies would be met by section 440.10(3)(b). Because a denial based on section 440.10(3)(b) is "discretionary", the question becomes whether this rule is sufficient for this court to hold that as a matter of state law, petitioner could not return to state court.

In *Reyes v. Phillips,* 02 Civ. 7319, 2005 U.S. Dist. LEXIS 19488, \*14-18, 2005 WL 2173812 (S.D.N.Y. Sept. 6, 2005), the court held that because section 440.10(3)(b) was discretionary, the court was ***not*** prepared to hold that petitioner could not return to file a second section 440.10 motion. *Id.* The court notes that more recently, the Second Circuit has held that the statutory grant of discretion in section 440.10(3)(b) does not prevent the section from operating as a procedural bar. *Murden v. Artuz,* 497 F.3d 178, 193 (2d Cir.2007), *cert. denied sub nom. Murden v. Ercole,* 2008 U.S. LEXIS 1023, 2008 WL 114166 (Jan. 14, 2008). However, in *Murden,* the court was faced with a "decision" from the state court, basing its denial of a subsequent motion on a discretionary procedural default. *Id.* The issue in *Murden* was the adequacy of the procedural default, and whether state rule was "firmly established and regularly followed." 497 F.3d at 192.

In this case, this court doubts whether the state

Not Reported in F.Supp.2d, 2008 WL 2323360 (N.D.N.Y.)
**(Cite as: 2008 WL 2323360 (N.D.N.Y.))**

court would consider a second section 440.10 motion by petitioner since the appeal from the first section 440.10 motion was withdrawn, and petitioner already received a hearing on the voluntariness of his plea. In *Ellman v. Davis,* 43 F.3d 144, 148 (2d Cir.1994), *cert. denied,* 515 U.S. 1118 (1995), the court held that a petitioner's voluntary withdrawal of his appeal under the circumstances presented, resulted in both a failure to exhaust and a procedural bar. *Ellman* is distinguishable because the petitioner in *Ellman* had already perfected a direct appeal, raising his claims in state court.[FN15] 43 F.3d at 148. In this case, it is clear that petitioner's claim could have been, and was, brought under section 440.10. Thus, this court cannot say with certainty, under the circumstances presented here, that petitioner could not return to state court, and thus, this claim would not be procedurally defaulted.

> FN15. In such a case, any attempt by petitioner to raise the claim or claims in a section 440.10 motion to vacate would have been met by a *mandatory* dismissal under section 440.10(2)(c). This mandatory dismissal applies to claims that could have been raised on direct appeal, but were not raised due to an unjustifiable failure by petitioner. N.Y. CRIM. PROC. LAW § 440.10(2)(c)

**\*8** This analysis leaves the court with an unexhausted claim. The habeas statute provides, however, that an application for habeas corpus may be denied on the merits notwithstanding the failure to exhaust state court remedies. 28 U.S.C. § 2254(b)(2). Although the Second Circuit has not specifically articulated a standard, lower courts have discussed two standards to determine whether a claim should be dismissed on the merits, notwithstanding the failure to exhaust. *See Hernandez v. Conway,* 485 F.Supp.2d 266, 273 n .4 (W.D.N.Y.2007) (citing cases).

A majority of lower courts use the "patently frivolous" standard, while a minority of courts use a "non-meritorious" standard, dismissing a claim

when it is "perfectly clear that the [petitioner] does not raise even a colorable federal claim." *Id.* (citing *inter alia Naranjo v. Fillion,* 02 Civ. 5449, 2003 U.S. Dist. LEXIS 6287, \*30,2003 WL 1900867 (S.D.N.Y. April 16, 2003) (patently frivolous standard); *Basnight v. Keane,* 99-CV-5907, 2001 U.S. Dist. LEXIS 11155, \*14-15 & n. 1, 2001 WL 901139 (E.D.N.Y. July 31, 2001) (non-meritorious standard)). In finding that a "non-meritorious" standard applied, the court in *Basnight* cited the Supreme Court decision in *Duncan v. Walker,* 533 U.S. 167, 183, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). In *dicta* from *Duncan* the Supreme Court stated that "the AEDPA gives a district court the alternative of simply denying a petition containing **unexhausted but nonmeritorious claims.**" *Id.* (emphasis added). In this case, the court finds that petitioner's involuntary plea claim may be dismissed on the merits under either standard, notwithstanding petitioner's failure to exhaust the claim in the state courts.

The well-established standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)). Where a defendant is represented by counsel at the plea, and enters the plea upon the advice of counsel, the voluntariness of the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases, *Id.* (citations omitted).

The constitutional standard for effective assistance of counsel is governed by *Strickland v. Washington,* 466 U.S. 668, 704, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hill,* 474 U.S. at 57-58. In order to show that counsel was ineffective during the plea process, petitioner must establish that counsel's representation fell below an "objective standard of reasonableness," and that there is a reasonable probability that but for counsel's unpro-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

fessional errors, the petitioner would not have pled guilty, but would have insisted on going to trial. *Hill,* 474 U.S. at 58-59.

A review of the state court records in this case, including the plea and sentencing transcripts, together with the hearing transcript from petitioner's motion to vacate shows that petitioner's plea was voluntary, and his attorney was not ineffective for advising petitioner to accept the plea. Petitioner makes much of the issue of "mistaken identity," claiming that he was not the individual who was indicted for the crime. Petitioner also states that his attorney should have investigated petitioner's claims of innocence and made more pretrial motions to determine identity.

**\*9** The court would point out that petitioner's counsel, Steven Kouray [FN16] made an omnibus motion for various forms of relief, including a dismissal of the indictment, based *inter alia* on the claim that "the identity of the defendant was never clearly established." (Exhibit 3 at p. 4). The prosecutor's response to the motion also included a picture of both Dionicio Perez and Ignacio Perez. (Exhibit 4 at p. 4). The trial court reviewed the Grand Jury transcript and found sufficient evidence to indict Dionicio Perez. (Exhibit 5 at p. 2). Thus, although petitioner claims that the mistaken identity issue was never brought before the court, the papers contradict petitioner's allegations.

> [FN16.] Attorney Kouray was assigned counsel and represented petitioner at the initial stages of the proceedings. By the time of the plea, petitioner was represented by retained counsel, James Long.

At the plea hearing, Attorney Long stated that after "several weeks of negotiations" with the prosecutor, the petitioner was ready to enter a plea in exchange for a sentence of four and one third to thirteen years. (Exhibit 13 at p. 5). Interestingly, counsel also stated that petitioner was "ready to give a sworn statement that he does not know anything about the drugs that were found on the person

and in the vehicle occupied by **Ignacio** Perez on ... September 20 of 1996." *Id.* at pp. 5-6 (emphasis added). Clearly, there was a discussion regarding Ignacio Perez, who according to the investigator's report happened to be petitioner's brother. (Exhibit 2 at p. 1). The court also notes that the investigator's report also states that petitioner's English was "excellent" although he claimed to need an interpreter. *Id.*

Part of the plea bargain involved the prosecutor's promise not to pursue two drug sales by petitioner that occurred ***prior to*** the charged sales. (Exhibit 13 at p. 7). Additionally, petitioner only pled guilty to ***one*** of the two sale counts with which he was charged. At one point during the plea, petitioner expressed some doubts, and the court made sure that the interpreter told petitioner that if he did not plead guilty he was facing a sentence of sixteen and two thirds to fifty years. (Exhibit 13 at p. 10). The interpreter then stated that petitioner insisted upon knowing why he could not "get another hearing, because he is not sure about it." *Id.* Based upon petitioner's expressed uncertainty, the court stopped the plea proceedings and stated petitioner could go forward with the trial. *Id.* The trial judge stated that he would conduct the pre-trial hearings, and that a jury would be selected that afternoon. *Id.*

After a recess, the court was ready to go forward with the trial, but Mr. Long stated that after spending some more time with the interpreter, petitioner understood the proceedings, and wished to go forward with the plea. *Id.* at p. 11. The court then engaged in a colloquy with petitioner through the interpreter, carefully asking petitioner whether he committed the crime to which he was pleading guilty and asked him whether anyone was forcing him to do so. *Id.* at 12-16. Petitioner admitted the elements of the crime. *Id.* The waiver of appeal was translated into Spanish so that petitioner would understand what he was signing. *Id.* at p. 15.

**\*10** The plea proceeding was on May 5, 1997, and petitioner's sentencing was held on July 21, 1997. (Exhibit 13 at p. 8). At the sentencing, peti-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 2323360 (N.D.N.Y.)
**(Cite as: 2008 WL 2323360 (N.D.N.Y.))**

tioner addressed the court **in English** and stated that he was addicted to crack and heroin, and that he was "sorry for this crime **I did commit** ...." (Exhibit 13 at 24) (emphasis added). Petitioner also requested that he be allowed to be deported as soon as possible. *Id.* It does not appear that these statements were being made by an individual who pled guilty because he was forced to do so or because he did not understand the proceedings in his case. [FN17] His spoken English was quite good, given the fact that he implied that he did not speak English at the time of the plea, which occurred two months prior to sentencing.

> FN17. The court also notes that the portion of petitioner's pre-sentence report that has been attached to Exhibit 13 contains "Defendant's Statement." (Exhibit 13 at p. 28). The report states that "[t]he defendant admits to selling drugs on two separate occasions to the undercover officer as police information alleges. However, the defendant implied that it was the officer and his confidential informant who encouraged him to make those sales, stating that 'they kept insisting.' " *Id.* Petitioner also stated that he only sold drugs "two times" and that he used the money to support his own drug habit. *Id.* Once again, these statements do not sound like they are being made by an individual who was not guilty of the crimes charged.

The judge who handled the motion to vacate [FN18] held a hearing, and he determined that plaintiff's plea was voluntary. During this hearing there was a discussion of the identity issue and the discrepancy in the names contained in the police records. (Exhibit 14 at pp. 2-4). At the hearing on the motion to vacate, petitioner alleged that he was out of the country at the time of the crime. (Exhibit 14 at p. 7). The court found that the plea was proper, counsel was not ineffective, and there was no "new evidence" that would allow the court to vacate the guilty plea. (Exhibit 14 at pp. 12-14). Although petitioner claims that he pled guilty because he was not receiving "the hearings" to which he was entitled, as stated above, the trial judge stopped the plea proceedings and stated that he was ready to proceed with pretrial hearings. Petitioner's claim that he was "denied" hearings or that his counsel failed to ask for hearings is frivolous.

> FN18. The judge who handled the motion to vacate was not the same judge before whom petitioner pled guilty.

It is well-settled that a guilty plea is not involuntary simply because it was motivated by the desire to accept a lesser sentence and avoid the uncertainty of getting a lengthier sentence if the defendant is convicted after a trial. *Brady v. United States,* 397 U.S. 742, 751, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Most plea bargains involve accepting a lesser sentence than would be available under the law or pleading to fewer counts than charged in the indictment. It has been held that statements made at a plea allocution carry a "strong presumption of veracity" that is difficult to challenge in a collateral proceeding based upon "bald statements" contradicting what was said during the plea. *Gomez v. Duncan,* 02 Civ. 846, 2004 U.S. Dist. LEXIS 898, *61-62, 2004 WL 119360 (S.D.N.Y. Jan. 27, 2004) (citations omitted).

In this case, petitioner's own statements belie his claim of innocence. The statements at the plea proceeding as well as his statement to the judge at sentencing that he was guilty of the crime to which he pled guilty show that petitioner's claim that he did not understand the proceedings, that his attorney gave him bad advice, and even worse, that the **interpreter** forced him to plead guilty are meritless.

Petitioner also makes a completely conclusory allegation that his attorney failed to represent petitioner properly because of petitioner's race. This was never raised in any court, and petitioner cites **absolutely no basis for this assertion.** This claim too must be dismissed based on frivolousness. Thus, this court recommends dismissal of petition-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

er's involuntary plea claim, notwithstanding his failure to exhaust state court remedies.

**4. *Unlawful Arrest; Prosecutorial Misconduct; and Ineffective Trial Counsel***

**\*11** It is clear that petitioner did not exhaust any of the remaining claims that he raises in his petition. The "unlawful arrest" claim is unclear, but petitioner may be attempting to state that law enforcement officers arrested the wrong person. Petitioner states that the warrant "did not mention petitioner." This would be consistent with petitioner's claim of mistaken identity. Petitioner next states that the prosecutor failed to disclose favorable evidence. Petitioner does not state what this evidence was or why it would have assisted in finding petitioner "not guilty." Finally, petitioner claims that his trial attorney "failed to ask for preliminary hearings;" failed to investigate petitioner's claim of innocence; and failed to represent petitioner properly because of his race.

As stated above, petitioner's unlawful arrest claim is unclear, but if petitioner alleges that he was not the individual named in the warrant, he could be claiming that law enforcement officers lacked probable cause to arrest petitioner. Any such claim would be a Fourth Amendment claim. *See Bridgeforth v. Artus,* 475 F.Supp.2d 261, 266 (W.D.N.Y.2007). To the extent that petitioner is attempting to raise some sort of Fourth Amendment claim, it would be barred by *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). In *Stone,* the Supreme Court held that a Fourth Amendment claim is not cognizable where the state has provided an opportunity for full and fair litigation of that claim. *Id.* The Second Circuit has held that all that is required is that the state afford the petitioner an "opportunity" to challenge the alleged violation. *Capellan v. Riley,* 975 F.2d 67, 69-71 (2d Cir.1992) (citing *Gates v. Henderson,* 568 F.2d 830, 839 (2d Cir.1977)).

The Second Circuit concluded that review of Fourth Amendment claims would be precluded unless either the state provided no mechanism for redress of a Fourth Amendment claim or if the state provided a mechanism, but petitioner was prevented from utilizing it due to an "unconscionable breakdown in the underlying process." *Id.* (citation omitted). The "opportunity" is the key factor, and it is irrelevant that petitioner did not take advantage of it. *Graham v. Costello,* 299 F.3d 129, 134 (2d Cir.2002). New York provides an opportunity for Fourth Amendment challenges in N.Y. CRIM. PROC. LAW § 710. 10 *et seq.*

Petitioner cannot claim that the state did not afford the opportunity for a challenge to his arrest. To the extent that petitioner raises the unlawful arrest as part of the argument that there was mistaken identity [FN19] in this case, the court would point out that petitioner's guilty plea bars him from raising any alleged deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *Bridgeforth,* 475 F.Supp.2d at 267 (citing *United States v. Coffin,* 76 F.3d 494, 497 (2d Cir.), *cert. denied,* 517 U.S. 1147, 116 S.Ct. 1445, 134 L.Ed.2d 565 (1966)). Petitioner may only attack the voluntariness of his plea by showing that his counsel's advice was not within constitutionally acceptable standards. *Id.*

> FN19. The court also notes that the warrant for petitioner's arrest did contain petitioner's correct name, together with all of his aliases. (Exhibit 13 at p. 13).

**\*12** This court has found above, that petitioner's claim that his plea was involuntary is meritless, thus, any other grounds for review raising constitutional claims that arose prior to the entry of the guilty plea are barred. This bar extends to petitioner's unlawful arrest claim and his prosecutorial misconduct claim. This bar also extends to petitioner's claim that his attorney did not ask for pre-trial hearings to the extent that it is a separate claim from petitioner's allegation that his plea was involuntary because he was not afforded the proper pre-trial hearings. In any event, petitioner's claim that his attorney did not ask for pre-trial hearings is belied by the attorney's omnibus motion and the fact that the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

court stopped the plea proceedings and told petitioner that he would get his pre-trial hearings prior to jury selection. Petitioner elected to plead guilty instead. Thus, petitioner's claims of unlawful arrest, prosecutorial misconduct, and ineffective counsel are barred by his voluntary guilty plea.

**5.** *Certificate of Appealability*

The court notes that an appeal from a final order in a habeas corpus proceeding under 28 U.S.C. § 2254 may only be taken upon the issuance of a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may be issued only if the applicant has made a substantial showing of a denial of a constitutional right. *Id.* § 2253(c)(2). *See Miller v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Because this court has found that the claims raised by petitioner in this case do not make a substantial showing of the denial of a constitutional right, the court will recommend denial of a certificate of appealability.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that the petition be **DENIED and DISMISSED,** and it is further

**RECOMMENDED,** that a certificate of appealability be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of HHS,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

N.D.N.Y.,2008.
Perez v. Perrott
Not Reported in F.Supp.2d, 2008 WL 2323360

(N.D.N.Y.)

END OF DOCUMENT

**Westlaw Delivery Summary Report for MCKEON, COURTENA**

Date/Time of Request:               Monday, September 22, 2014 15:54 Central
Client Identifier:                  O'HALLORAN
Database:                           DCT
Citation Text:                      Not Reported in F.Supp.2d
Lines:                              318
Documents:                          1
Images:                             0

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.


Not Reported in F.Supp.2d, 2001 WL 1860884 (N.D.N.Y.)
**(Cite as: 2001 WL 1860884 (N.D.N.Y.))**

H

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Michael ROE, Petitioner,
v.
Daniel SENKOWSKI, Superintendent, Respondent.

No. 9:98–CV–0656 NAM GLS.
Feb. 20, 2001.

Michael Roe, Clinton Correctional Facility, Dannemora, NY, Petitioner, pro se.

Hon. Eliot Spitzer, Office of the Attorney General, Department of Law, New York, NY, for the Respondent, Christopher A. Quaranta, of counsel.

*ORDER and REPORT–RECOMMENDATION*
SHARPE, Magistrate J.
*I. Background*

**\*1** Petitioner, *pro se* Michael Roe ("Roe") filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254 on April 27, 1998. This court issued an order pursuant to the rules governing Section 2254 cases in the United States District Courts, 28 U.S.C. foll. § 2254, directing, *inter alia,* the Office of the Attorney General for the State of New York ("Attorney General") to file a response. Docket No. 4. The Attorney General filed papers in opposition, together with a request that this matter be sealed due to the nature of the crime and the age of the victim. Docket Nos. 9—12. Roe filed a reply in which he contends his petition must be granted. Docket No. 13.

*II. Discussion*

*A. Request to Seal*

Respondent requests that this court seal this entire case "to protect the victim's identity from the public." Docket No. 9. In support of this application, he cites New York's Civil Rights Law § 50–b (" § 50–b") which reads, in part: "[t]he identity of any victim of a sex offense ... shall be confidential. No ... court file or other documents, in the custody or possession of any public officer or employee, which identifies such a victim shall be made available for public inspection."

However, this statute does not provide that *all* court records are to be *sealed,* as requested by respondent. It merely provides that these documents be kept *confidential.* The court finds that the victim's privacy interest, while substantial, does not warrant sealing the entire file. Instead, the court will refer to the victim as "J.P." to ensure her privacy. *See Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 109 n. 4 (2nd Cir.), *cert. denied,* ___ U.S. ___, 121 S.Ct. 175, 148 L.Ed.2d 120 (2000) (substantial compliance with this statute is obtained where the court refers to the victim by use of initials). The court notes, however, that the state court records in this case have been docketed. *See* Docket Nos. 10 and 12. Therefore, the court directs that these documents be sealed, and that they be removed from the file before it is given to any individual requesting this file.

*B. State Court Proceedings*

J.P.'s mother had a romantic relationship with Roe. Trial Tr. of Michael Roe (5/2/95) ("Tr.") at 94–95. J.P. testified that shortly after she and her mother moved into a house on Vestal Avenue in Broome County, Roe began sexually abusing her when she was ten years old. *Id.* at 63–64.[FN1] This abuse would typically occur while her mother was at work, *Id.* at 65, because her mother trusted Roe with the care of J.P. and her brothers. *Id.* at 71. J.P. testified that she was reluctant to tell others about the abuse because Roe told her that no one would believe her and because she was scared. *Id.* at 66, 69. The last incident of sexual abuse occurred on December 11, 1994, in her mother's bedroom. *Id.* at 68, 71. On December 18, 1994, J.P. told her mother about the abuse, who immediately called the police. *Id.* at 105.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN1. At the time of her testimony, J.P. was fourteen years old. *Id* . at 72.

**\*2** The jury found Roe guilty of first and second degree sodomy, first and second degree sexual abuse, and endangering the welfare of a child. *Id.* at 202–03. Roe was sentenced by the Hon. Martin J. Smith ("Judge Smith") as a second violent felony offender to three to six years imprisonment on the conviction for second degree sodomy, to run consecutive to a term of six to twelve years imprisonment for the first degree sodomy conviction, with lesser, concurrent sentences on the other convictions. Sentencing Tr. (11/17/95) at 11–12. Roe appealed this decision to the Appellate Division, Third Department ("Appellate Division") which affirmed. *People v. Roe,* 235 A.D.2d 950 (3rd Dep't 1997). The Court of Appeals denied Roe leave to appeal. *People v. Roe,* 89 N.Y.2d 1099 (1997). Roe filed a motion to vacate this conviction pursuant to Section 440.10 of New York's Criminal Procedure Law ("CPL") which was denied by Judge Smith on December 11, 1997. Docket No. 10 at Ex. G.

In his petition, Roe alleges: (i) the conviction violated his rights because the only evidence presented at trial against Roe was the testimony of J.P., and "absent ... independent supportive proof tending to establish that the crime was in fact committed" the "conviction must be dismissed as a matter of law," Pet. at unnumbered P. 6; (ii) his trial and/or appellate counsel rendered ineffective assistance by failing to challenge the lack of corroboration of J.P.'s testimony; and, (iii) the prosecution failed to disclose: a) medical evidence that demonstrated J.P. was not sexually assaulted; and, (b) an exculpatory statement he made to the police. *Id.* at unnumbered P. 5.

*C. Merits of Petition*

*1. Claim Based Upon Failure to Corroborate J.P.'s Testimony*

Although this is the third Ground asserted by Roe because it relates to his first claim which al-

leges ineffective assistance, the court initially addresses the merits of the third Ground.

Roe contends that J.P.'s testimony was not corroborated by another individual or medical evidence, and that this is fatal to his conviction, because "[c]orroboration is required as a matter of law." Docket No. 14. In support of this contention, Roe cites CPL § 70.10 and New York's Penal Law § 130.16, as well as the Supreme Court's decision in *Smith v. United States,* 348 U.S. 147 (1954), together with other court rulings that considered issues similar to the one raised in *Smith.*

The statutes upon which Roe relies do not support his claim. CPL § 70.10 defines "legally sufficient evidence" as "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof; except that such evidence is not legally sufficient when *corroboration required by law* is absent." (emphasis added). New York's Penal Law provides:

*Sex offenses: Corroboration*

A person shall not be convicted of consensual sodomy, or an attempt to commit the same, or of any offense defined in this article of which lack of consent is an element but *results solely from incapacity to consent because of the victim's mental defect, or mental incapacity,* or an attempt to commit the same, solely on the testimony of the victim, unsupported by other evidence tending to:

**\*3** (a) Establish that an attempt was made to engage the victim in sexual intercourse, deviate sexual intercourse, or sexual contact, as the case may be, at the time of the occurrence; and

(b) Connect the defendant with the commission of the offense or attempted offense.

N.Y. Pen.L. § 130.16 (emphasis added). Although a *prior version* of § 130.16 required corroboration where the incapacity to consent resulted

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1860884 (N.D.N.Y.)
**(Cite as: 2001 WL 1860884 (N.D.N.Y.))**

from the victim's age, this statute was amended in 1984. This amendment, *inter alia, specifically eliminated this corroboration requirement.*FN2 As the Appellate Division noted in rejecting a similar challenge raised by the appellant in *People v. Bolden,* 194 A.D.2d 834 (3rd Dep't), *leave to appeal denied* 82 N.Y.2d 714 (1993):

> FN2. Roe was indicted for crimes that occurred no earlier than 1992. *See* Tr. at 83 (noting that the first incident occurred in August of 1992). Thus, the amended version of § 130.16 clearly applies to this case, and no *ex post facto* challenge to its application has merit.

Defendant next contends that evidence adduced at trial was not legally sufficient to establish his guilt. As to the sexual abuse charges, defendant's argument is premised largely upon the theory that corroboration of the victim's testimony was required pursuant to Penal Law § 130.16. In 1984, however, the Legislature amended Penal Law § 130.16 so that *corroboration is no longer required in cases where, as here, the incapacity to consent results solely from the victim's age* (L.1984, ch 89, § 1; *see People v. Hudy,* 73 N.Y.2d 40, 48 [1988] ). *Bolden,* 194 A.D.2d at 835 (emphasis added). Similarly, New York's Court of Appeals recently noted:

> [T]he testimony of a child victim alone is sufficient because corroboration of sex offenses with respect to child victims is no longer required except in instances not pertinent here see e.g., *People v. Groff,* 71 N.Y.2d 101, 109 [1987]; *see also,* Penal Law § 130.16 [corroboration rule now limited to those sex offenses for which the victim is deemed incapable of consent because of a mental defect or mental incapacity] ).

*People v. Carroll,* 95 N.Y.2d 375, 383 (2000) (emphasis added).

Thus, contrary to Roe's contention, J.P.'s testi-

mony did not have to be corroborated because this testimony was given under oath (Tr. at 57) and no allegation has ever been raised that J.P.'s lack of consent was attributable to any mental defect or mental incapacity. Thus, this theory is meritless. FN3

> FN3. The fact that the Appellate Division found that J.P.'s statements were corroborated by her mother, *Roe,* 235 A.D.2d at 952, has no bearing on whether corroboration was legally required. This was merely an additional finding of the Appellate Division.

Moreover, Roe's reliance on *Smith* as well as other court decisions that address issues similar to the one raised in *Smith,* is misplaced. The court in *Smith* extended the general rule that a conviction may not be based solely on a defendant's own uncorroborated confession to situations where a *defendant admits* inculpatory facts to law enforcement agents. *Smith,* 348 U.S. at 155 (in prosecution for tax evasion, *defendant's own statement* concerning his net worth must be corroborated; defendant's admission was made to an official charged with investigating the possibility of wrongdoing, and statement concerned an element vital to the Government's case); *see also, Opper v. U.S.,* 348 U.S. 84, 90–91 (1954) (an *accused's admissions* of essential facts or elements of a crime, subsequent to commission of the crime, should be corroborated). Similarly, in *U.S. v. Martinez,* 54 F.3d 1040, 1047–48 (2nd Cir.), *cert. denied,* 516 U.S. 1001 (1995), another case upon which Roe relies heavily in support of his claim that corroboration is required, Judge Calabresi, in his concurring opinion, opined that *defendant's own admission* to a detective that the defendant did not use drugs, standing alone, would require corroboration because the statement would implicate defendant, who was charged with possession, with intent to distribute, cocaine.FN4

> FN4. The Government argued that because the defendant in *Martinez* admitted he was not a "user," the drugs seized on defend-

ant's person were necessarily to be distributed by defendant.

**\*4** *None* of the cases cited by Roe in either his supporting memorandum of law or reply support the proposition for which they are cited, i.e., that the *testimony of a victim to whom an oath has been administered* must, under the law applicable to this case, be corroborated where such testimony is the sole basis upon which the conviction rests. *See Groff,* 71 N.Y.2d at 108–09 (*unsworn* testimony of four year old child must be corroborated); *People v. Reade,* 13 N.Y.2d 42 (1963) (predated amendment to CPL § 130.16 and related to use of *defendant's confession* without corroboration); *People v. Cuozzo,* 292 N.Y. 85 (1944) (same); *People v. Creedon,* 106 A.D.2d 515 (2nd Dep't 1984) (criminal conduct predated amendment to CPL § 130.16); *People v. Keindl,* 117 A.D.2d 679 (2nd Dep't), *aff'd,* 68 N.Y.2d 410 (1986) (same).

A victim's testimony, standing alone, is sufficient to support a conviction. *People v. Richard,* 172 A.D.2d 569, 570 (2nd Dep't), *leave to appeal denied,* 78 N.Y.2d 973 (1991). Thus, Roe's contention that the jury improperly relied on J.P.'s testimony in reaching its verdict (Docket No. 3 at unnumbered PP. 2–3) is without merit. Since J.P.'s testimony clearly accused Roe of committing the crimes of which he was convicted, and he has submitted no evidence that indicates that the jury's verdict was against the weight of the evidence, this court recommends that Ground Three of the petition be denied and dismissed.

*2. Ineffectiveness Claim*

This Ground appears to allege that his trial and/or appellate counsel wrongfully failed to challenge evidence presented at trial concerning the issue of corroboration of J.P.'s testimony. Pet. at Ground One.

The Supreme Court has articulated a two-pronged test to determine whether a criminal defendant received effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668,

688–90, 694 (1984). To establish ineffective assistance, a habeas petitioner must show: (1) that counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms; and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different." *United States v. Gordon,* 156 F.3d 376, 379 (2d Cir.1998) (per curiam) (citing *Strickland,* 466 U.S. at 688–90); *Mask v. McGinnis,* 233 F.3d 132, 140 (2d Cir.2000).

As noted above, any claimed requirement that J.P.'s testimony was required by law to be corroborated is inaccurate. Therefore, neither Roe's trial nor appellate counsel acted in an objectively unreasonable manner by failing to raise such a challenge. No other errors on the part of his attorneys are asserted by Roe in his ineffectiveness claim. Thus, the court need not consider the second prong of the *Strickland* test. *Jones v. U.S.,* 1997 WL 800866, at \*3 (W.D.N.Y. Dec. 23, 1997) (court need not analyze second prong of *Strickland* where attorney's conduct was objectively reasonable). The court therefore recommends that this Ground be denied and dismissed.

*3. Failure to Disclose Exculpatory Material*

**\*5** Roe argues that the prosecution failed to provide him with medical evidence "that show[ed] the victim was not sexually assaulted," and that, as a result, his conviction must be overturned (Ground Two). Roe also states that an unspecified statement he made to the police, that apparently was exculpatory, was never "provided to [Roe] for his inspection." *Id.*

Under *Brady v. Maryland* (1963), the government must disclose exculpatory *material* and impeachment evidence to the defense. *See U.S. v. Wong,* 78 F.3d 73, 79 (2nd Cir.1996) (emphasis added). Evidence is material to guilt or punishment "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Brooks v. Artuz,* 2000 WL 1532918, at \*4

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

(S.D.N.Y. Oct. 17, 2000) (citing *United States v. Bagley,* 473 U.S. 667, 682 (1985) (other citations omitted)); *see also, Gayle v. Lacy,* 1997 WL 610654, at *7 (N.D.N.Y. Oct. 1, 1997) (Pooler, D.J.) (adopting Report–Recommendation of Magistrate Judge that recommended denial of *Brady* claim).

In reviewing Roe's *Brady* claim concerning the medical report, Judge Smith, in denying Roe's CPL § 440 motion, noted that the People stated that this report was disclosed to Roe, and that this contention was supported by the fact that he was aware that the result was negative. *See* Decision and Order of Judge Smith (12/11/97) (Docket No. 10 at Ex. G) (" § 440 Decision") at 2. Moreover, Judge Smith found that a negative result on the medical examination: "might be expected in a case in which the offenses involved oral sodomy and sexual touching, but neither rape nor ejaculation." *Id.; see also,* Tr. at 89 (noting that Roe never ejaculated while sexually abusing J.P.). Roe has come forth with no evidence which demonstrates that the prosecution failed to turn over the medical report relating to J.P., or that their alleged failure to do so was material. As Judge Smith correctly noted, J.P. did not testify that Roe penetrated her. Instead, her testimony alleged that Roe orally sodomized her and subjected her to sexual touching. Tr. at 62–65, 70–71, 85. Since it is entirely understandable that this conduct would result in a negative result on a medical examination of J.P., Roe has failed to demonstrate a reasonable probability that, even assuming, *arguendo,* that this report was not disclosed, the result of his trial would have been different. Therefore, this court recommends that this theory of Roe be denied.

Finally, Roe argues that an unspecified oral admission he purportedly made to the police was never disclosed to him or his counsel (Ground Two). Judge Smith considered and rejected this claim in denying the § 440 motion. Specifically, he found:

> Defendant's allegation that oral admissions were not turned over is unsupported by any affidavit from his trial counsel; the People's affidavit and

Court records reflect that any oral admissions were turned over to the defendant's attorney during pre-trial motion practice. Accordingly, the Court finds that the defendant has failed to establish any *Brady* violation with respect to oral admissions.

**\*6** § 440 Decision at 1–2.

Determination of factual issues made by a State court "shall be presumed to be correct," and a petitioner is required to rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Mask v. McGinnis,* 233 F.3d 132, 139 (2d Cir.2000). "The touchstone for a reasonable determination under § 2254(e)(1) is whether the determination is at least minimally consistent with the facts and circumstances of the case." *Dawson v. Donnelly,* 111 F.Supp.2d 239, 245 (W.D.N.Y.2000) (citations and internal quotations omitted).

Roe has produced no evidence, much less clear and convincing evidence, that rebut's Judge Smith's factual finding that any oral admissions of Roe were turned over to his attorney prior to trial. Consequently, this court recommends the denial of this Ground.

WHEREFORE, based upon the above, it is hereby

RECOMMENDED, that Roe's petition be DENIED and DISMISSED, and it is further

ORDERED, that the Clerk serve a copy of this Order and Report Recommendation on the parties by regular mail, and it is further

ORDERED, that for the reasons referenced above relative to New York's Civil Rights Law § 50–b, Docket Nos. 10 and 12 in this matter be SEALED, and it is further

ORDERED, that the Clerk remove these documents from this file prior to providing this file to any member of the public.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1860884 (N.D.N.Y.)
**(Cite as: 2001 WL 1860884 (N.D.N.Y.))**

NOTICE: pursuant to 28 U.S.C. § 636(b)(1), the parties have TEN (10) DAYS within which to file written objections to the foregoing report-recommendation. Any objections shall be filed with the clerk of the court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRE-CLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e) and 72.

IT IS SO ORDERED.

N.D.N.Y.,2001.
Roe v. Senkowski
Not Reported in F.Supp.2d, 2001 WL 1860884 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Westlaw Delivery Summary Report for MCKEON, COURTENA**

Date/Time of Request:                Monday, September 22, 2014 15:38 Central
Client Identifier:                   O'HALLORAN
Database:                            DCT
Citation Text:                       Not Reported in F.Supp.2d
Lines:                               1009
Documents:                           1
Images:                              0

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
**(Cite as: 2002 WL 31102612 (E.D.N.Y.))**





Only the Westlaw citation is currently available.

United States District Court, E.D. New York.
Chanel SENOR, Petitioner,
v.
Charles GREINER, Supt., Respondent.

No. 00–CV–5673JG.
Sept. 18, 2002.

Following affirmance of his convictions for second-degree murder and criminal possession of a weapon, state prisoner filed petition for federal habeas corpus relief. The District Court, Gleeson, J., held that: (1) prisoner's petition was time-barred; (2) prisoner failed to demonstrate that his trial counsel's actions or inactions amounted to constitutionally inadequate performance; (3) prisoner failed to demonstrate that his appellate counsel's actions amounted to constitutionally inadequate performance; (4) claim that police seized prisoner without probable cause was barred from federal review; (5) even if court were to consider claim of lack of probable cause, the claim lacked merit; (6) claim that prisoner did not voluntarily accompany police to the precinct was barred from habeas review; (7) even if prosecutor's questioning of prisoner about his prior drug conviction was a *Sandoval* violation, prisoner failed to show that it deprived him of a constitutionally recognized right; and (8) claim regarding the alleged *Sandoval* violation was procedurally defaulted.

Petition denied.

West Headnotes

**[1] Habeas Corpus 197 ☜603.9**

197 Habeas Corpus
   197III Jurisdiction, Proceedings, and Relief
     197III(A) In General
      197k603 Limitations, Laches or Delay
       197k603.9 k. Pursuit of other remedies. Most Cited Cases
     (Formerly 197k603)

State prisoner's petition for federal habeas corpus relief was time-barred; although one-year grace period from the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA) was tolled during periods that prisoner's motions to reargue or appeal his previous adverse rulings were pending in state appellate courts, some 1,184 days passed from the AEDPA's effective date until the earliest date on which prisoner could have been credited with filing his petition. 28 U.S.C.A. § 2244(d)(1)(a).

**[2] Criminal Law 110 ☜1930**

110 Criminal Law
   110XXXI Counsel
     110XXXI(C) Adequacy of Representation
      110XXXI(C)2 Particular Cases and Issues
       110k1921 Introduction of and Objections to Evidence at Trial
        110k1930 k. Identification. Most Cited Cases
     (Formerly 110k641.13(6))

Trial counsel's failure to request *Dunaway* hearing to challenge lineup identifications, after purportedly eliciting evidence that police stopped defendant without probable cause, did not amount to constitutionally inadequate performance; only witness who testified at *Wade* hearing mentioned nothing to suggest that he and his partner had stopped and questioned defendant improperly, defendant pointed to no evidence in attorney's possession at conclusion of *Wade* hearing that would have sustained his claim that police lacked probable cause to detain him, and defendant failed to show that, had *Dunaway* hearing been requested, reasonable probability existed that court would have granted hearing and suppressed lineup identifications. U.S.C.A. Const.Amend. 6.

**[3] Criminal Law 110 ☜1951**

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)2 Particular Cases and Issues
            110k1951 k. Deliberations and verdict.
Most Cited Cases
    (Formerly 110k641.13(2.1))

Trial counsel's failure to move to set aside verdict, after defendant alerted him to possibility that defendant had known one of his jurors in high school, did not amount to constitutionally inadequate performance; defendant's claim that he knew juror was unsupported, court could not conceive of how claim, even if true, afforded a basis for relief for defendant, and defendant failed to show that, had attorney moved to set aside verdict, court would have granted the motion. U.S.C.A. Const.Amend. 6.

**[4] Criminal Law 110 ☞1968**

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)2 Particular Cases and Issues
         110k1966 Appeal
            110k1968 k. Preservation of error for appeal. Most Cited Cases
    (Formerly 110k641.13(7))

Defendant failed to demonstrate that appellate counsel's failure to brief on appeal defendant's claim of lack of probable cause with respect to his arrest amounted to constitutionally inadequate performance; claim was both unpreserved for appellate review and meritless, and so the decision to forgo pursuing it on appeal did not fall below any standard of reasonableness, and, in any event, appellate court considered and rejected that very claim when defendant asserted it in his pro se supplemental brief. U.S.C.A. Const.Amend. 6.

**[5] Habeas Corpus 197 ☞366**

197 Habeas Corpus
   197I In General
      197I(D) Federal Court Review of Petitions by State Prisoners
         197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
            197k362 Particular Remedies or Proceedings
               197k366 k. Direct review; appeal or error. Most Cited Cases

**Habeas Corpus 197 ☞378**

197 Habeas Corpus
   197I In General
      197I(D) Federal Court Review of Petitions by State Prisoners
         197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
            197k374 Availability and Effectiveness of State Remedies
               197k378 k. Availability at time of petition. Most Cited Cases

Federal habeas petitioner's claim, that police seized him without probable cause, was barred from federal review where petitioner failed to exhaust it in the state courts; claim was presented on direct appeal in petitioner's pro se supplemental brief, appellate court rejected claim as either not preserved or without merit, petitioner failed to apply for leave to appeal from the affirmance of his conviction, claim thus was unexhausted, time limit for exhausting claim had expired, petitioner failed to show cause and resulting prejudice for failure to appeal decision affirming his conviction, and federal court's refusal to consider claim would not result in miscarriage of justice.

**[6] Habeas Corpus 197 ☞366**

197 Habeas Corpus
   197I In General
      197I(D) Federal Court Review of Petitions by State Prisoners
         197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
            197k362 Particular Remedies or Proceedings
               197k366 k. Direct review; appeal or

error. Most Cited Cases

**Habeas Corpus 197 �köö401**

197 Habeas Corpus
   197I In General
      197I(D) Federal Court Review of Petitions
by State Prisoners
         197I(D)5 Availability of Remedy Despite
Procedural Default or Want of Exhaustion
            197k401 k. In general. Most Cited
Cases

    Federal habeas petitioner's claim, that he did not voluntarily accompany arresting officers to the precinct, was barred from federal habeas review where the state court denied it based on a state procedural default, which constituted an independent and adequate state ground; state court held that claim was procedurally barred under state law because petitioner based it on matters that appeared in the record but neither raised the claim on direct appeal nor offered a reasonable excuse for having failed to do so, appellate court denied leave to appeal matter, petitioner did not show cause and resulting prejudice for the default, and miscarriage of justice would not result from federal court's failure to review claim.

**[7] Habeas Corpus 197 ⊃⊃⊃495**

197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
      197II(B) Particular Defects and Authority for
Detention in General
         197k495 k. Witnesses; examination. Most
Cited Cases

    Even if prosecutor's questioning of petitioner about his prior drug conviction was a *Sandoval* violation, petitioner failed to show that it deprived him of a constitutionally recognized right, as required for the evidentiary error to be cognizable under federal habeas corpus review; given abundance of evidence pointing to petitioner's guilt, petitioner failed to show that the ruling influenced the jury's verdict in any way, and petitioner's claim of a *Sandoval* violation lacked merit, as defense counsel

opened the door to prosecutor's questioning, and it was defense counsel, not prosecutor, who elicited the facts underlying petitioner's prior felony conviction.

**[8] Habeas Corpus 197 ⊃⊃⊃366**

197 Habeas Corpus
   197I In General
      197I(D) Federal Court Review of Petitions
by State Prisoners
         197I(D)4 Sufficiency of Presentation of
Issue or Utilization of State Remedy
            197k362 Particular Remedies or Proceedings
            197k366 k. Direct review; appeal or
error. Most Cited Cases

**Habeas Corpus 197 ⊃⊃⊃368.1**

197 Habeas Corpus
   197I In General
      197I(D) Federal Court Review of Petitions
by State Prisoners
         197I(D)4 Sufficiency of Presentation of
Issue or Utilization of State Remedy
         197k368 Necessity for Repetition or
Pursuit of Several Remedies
            197k368.1 k. In general. Most Cited
Cases

**Habeas Corpus 197 ⊃⊃⊃378**

197 Habeas Corpus
   197I In General
      197I(D) Federal Court Review of Petitions
by State Prisoners
         197I(D)4 Sufficiency of Presentation of
Issue or Utilization of State Remedy
         197k374 Availability and Effectiveness of State Remedies
            197k378 k. Availability at time of
petition. Most Cited Cases

    Federal habeas petitioner's claim, that prosecutor's questioning of him constituted a *Sandoval* violation, was procedurally defaulted; petitioner as-

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
**(Cite as: 2002 WL 31102612 (E.D.N.Y.))**

serted claim on direct appeal, but failed to include it in his application for leave to appeal further or in any of his other motions, so that claim was unexhausted, claim could no longer be exhausted as 30-day period to make application for leave to appeal had expired, petitioner failed to show cause and resulting prejudice, and federal court's failure to consider claim would not result in miscarriage of justice.

Chanel Senor, Great Meadow Correctional Facility, Comstock, Petitioner Pro Se.

Charles J. Hynes, District Attorney, Kings County, Brooklyn, By Victor Barall, Assistant District Attorney, for Respondent.

MEMORANDUM AND ORDER
GLEESON, District J.

   **\*1** On January 10, 1994, a jury in Kings County found petitioner Chanel Senor guilty of murder in the second degree (N.Y. Penal Law § 125.25[1] ) and criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03). Senor was sentenced to concurrent terms of imprisonment of twenty years to life for the murder conviction and two to six years for the weapon possession conviction. He is currently incarcerated pursuant to that judgment. He now petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting the following claims: (1) his trial counsel failed to provide him effective assistance; (2) his appellate counsel failed to provide him effective assistance; (3) the police seized him without probable cause, violating his Fourth Amendment rights; (4) he did not voluntarily consent to accompany the arresting officers to the precinct; and (5) the prosecution's failure to turn over a prior statement of a prospective witness and its violation of the court's ruling in a pre-trial hearing deprived him of his right to a fair trial.

   For the reasons set forth below, the petition is denied.

BACKGROUND

   On the evening of January 10, 1991, Senor, carrying two guns, approached Queran Horton, Nekia Washington, and Daverson Maynard as they were walking in front of 1184 Halsey Street in Brooklyn. Senor pointed one gun at Maynard's chest and the other at Horton's back. Upon feeling the gun in his back, Horton turned around, and Senor shot him in the chest, killing him. Senor then fled.

   Detective Anthony Burzotta, investigating the crime, subsequently composed a general description of the individual who shot Horton based on information provided by Maynard and another witness, Roberto Colon. He also learned that a man matching the description of the shooter frequented the corner of Knickerbocker and Putnam Avenues, in Brooklyn. On January 30, 1991, Detective Burzotta went with his partner to that location, where they noticed Senor, who appeared to fit the description of the shooter. Detective Burzotta and his partner stopped Senor and questioned him. They then brought Senor to the precinct station house, where they placed him in two separate lineups. From those lineups, Washington and Maynard independently identified Senor as the individual who shot Horton. Burzotta consequently arrested Senor, and the Kings County District Attorney charged him with murder in the second degree and criminal possession of a weapon in the second and third degrees.

   Senor went to trial on these charges in July 1992. The jury deadlocked, and on July 10, 1992, the trial court declared a mistrial. In January 1994, Senor faced a second trial on the same charges. At the conclusion of that trial, the jury found Senor guilty of murder in the second degree and criminal possession of a weapon in the second degree. The court sentenced him as described above.

   On February 3, 1994, Senor filed a timely notice of appeal, arguing that (1) the prosecution's failure to turn over a prospective witness's prior statement deprived him of a fair trial; (2) when cross-examining Senor, the prosecution violated the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

court's pre-trial ruling, thereby depriving him of a fair trial; and (3) the murder conviction was against the weight of the evidence. Senor later filed a *pro se* supplemental brief claiming that (1) the police seized him in violation of his Fourth Amendment rights when they surrounded him without probable cause or exigency and took him to the precinct, and (2) the police testimony regarding his arrest was unworthy of belief due to material inconsistencies. On November 6, 1995, the Appellate Division affirmed Senor's judgment of conviction, finding that the verdict was not against the weight of the evidence and that Senor's remaining claims, including those raised in his *pro se* supplemental brief, were either unpreserved for appellate review or without merit. *See People v. Senor,* 221 A.D.2d 384, 635 N.Y.S.2d 480 (2d Dep't 1995).[FN1]

> **FN1.** Senor states that he sought leave to appeal the Appellate Division's November 6, 1995 decision affirming his conviction. As support, he cites a certificate from the New York Court of Appeals, dated June 19, 1996, that denies him leave to appeal. That certificate, however, dismissed Senor's application for leave to appeal a subsequent May 8, 1996, decision by the Appellate Division. There is nothing in the record to indicate that Senor sought leave to appeal the Appellate Division's November 6, 1995 decision affirming his conviction.

**\*2** Meanwhile, on September 13, 1995, Senor, proceeding *pro se,* moved to vacate his judgment of conviction pursuant to N.Y.Crim. Proc. Law § 440.10(1)(d) and (h), asserting the following: (1) the police violated his constitutional rights by seizing him without probable cause: (2) his acquiescence in accompanying the police to the precinct did not constitute voluntarily consent and thus did not justify an otherwise unlawful police intrusion; (3) his trial counsel denied him effective assistance; and (4) the sentence should be modified because it punished him for exercising his right to a jury trial. The court denied his § 440 motion on December 21,

1995. It stated that his claim that the police seized him without probable cause was procedurally barred because the Appellate Division had determined it previously on the merits and because Senor never requested a hearing to test the probable cause issue. The court also found Senor's claims that he did not consent to accompany the police to the precinct and that he received ineffective assistance of counsel to be procedurally barred because he did not raise them on direct appeal and provided no justification for having failed to do so. Moreover, the court stated that Senor's ineffective assistance claim lacked merit. Finally, the court dismissed Senor's claim regarding his sentence because it did not relate to the validity of his conviction.

On November 16, 1995, while his § 440 motion was pending, Senor filed what the Appellate Division deemed to be a motion for reargument of his appeal and an application for a writ of error *coram nobis,* in which he asserted a claim of ineffective assistance of appellate counsel. Then, on January 3, 1996, Senor requested leave to appeal the denial of his § 440 motion and to consolidate that application with his motion for reargument and his *coram nobis* petition. On February 20, 1996, the Appellate Division denied Senor's application for a writ of error *coram nobis,* stating that petitioner had failed to establish that he was denied effective assistance of appellate counsel. *See People v. Senor,* 224 A.D.2d 646, 639 N.Y.S.2d 716 (2d Dep't 1996). In a separate order, also dated February 20, 1996, the Appellate Division denied Senor's motion to reargue his appeal. *See People v. Senor,* No. 94–01311, slip op. at 1 (2d Dep't Feb. 20, 1996). On February 22, 1996, the Appellate Division denied Senor's leave to appeal the denial of his § 440 motion.

On March 29, 1996, Senor filed an application to reargue the denials of (1) his motion to reargue his appeal; (2) his application for leave to appeal the denial of his § 440 motion; and (3) his application to consolidate these motions with his application for a writ of error *coram nobis.* On May 8, 1996, the Appellate Division denied Senor's mo-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
**(Cite as: 2002 WL 31102612 (E.D.N.Y.))**

tion, and on June 19, 1996, the Court of Appeals denied Senor leave to appeal that decision. *See People v. Senor,* 88 N.Y.2d 942, 647 N.Y.S.2d 175, 670 N.E.2d 459 (1996).

On March 6, 1997, Senor filed a second *pro se* motion to vacate his conviction, pursuant to N.Y.Crim. Proc. Law § 440.10(1)(g). He contended that he had discovered new evidence, namely, the unsworn statements of Richard Umana. On May 1, 1997, Senor filed a third § 440 motion, again claiming that he had discovered new evidence, that time in the form of his conversations with four witnesses. The court denied both motions on June 10, 1997, stating that Senor had failed to submit any reliable evidence that these statements had been made, and that even if he had, the evidence would have altered the outcome of his trial.

**\*3** On August 6, 1997, Senor filed his first habeas corpus petition in this court (docket number 97–CV–4929). In that petition, he argued that: (1) his trial counsel was ineffective because he failed to challenge the legality of police conduct and failed to pursue other "colorable claims" based on known facts; (2) his appellate counsel provided ineffective assistance by refusing to brief on appeal the issue of lack of probable cause with respect to his arrest; (3) the police seized him without probable cause, questioning him based on a vague description fabricated by witnesses; (4) his acquiescence in accompanying the arresting officers to the precinct did not constitute voluntarily consent and thus did not justify an otherwise unlawful police intrusion; and (5) the prosecution's failure to turn over a prior statement of a prospective witness and its violation during trial of one of the court's pre-trial rulings deprived him of his right to a fair trial.

By letter dated January 25, 1999, Senor requested that his petition be placed "on hold" pending the outcome of an application for post-conviction relief in state court based on "some newly discovered evidence [he] just found." Construing this letter to be a motion to dismiss, I granted it without prejudice and closed the case on February 17, 1999.

On March 25, 1999, Senor filed his fourth § 440 motion, which was denied on June 18, 1999. In that motion, her raised issues of certain *Rosario* violations, the insufficiency of proof, and prosecutorial misconduct. Leave to appeal was denied on September 15, 1999. Senor filed the instant habeas corpus petition (docket number 00–CV–5673) on July 24, 2000. It includes the same arguments his first petition included.

DISCUSSION

A. *The Statute of Limitations*

There is a one-year statute of limitations in habeas corpus proceedings, which generally begins to run on "the date on which the judgment [becomes] final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(a).[FN2] In *Ross v. Artuz,* 150 F.3d 97, 103 (2d Cir.1998), the Second Circuit held that a prisoner whose conviction became final prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") must be afforded a one-year grace period from April 24, 1996 (the effective date of AEDPA) in which to file for federal habeas relief. *See id.* at 103. Pursuant to § 2244(d)(2), the time during which a properly-filed application for state postconviction relief is pending shall not be counted in calculating the one-year grace period.

> FN2. Section 2244(d)(1)(D) provides alternate start dates for the one-year limitation period, including "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." This provision is inapplicable in this case because Senor does not present any federal claims based on newly-discovered facts.

[1] Because Senor's judgment of conviction became final prior to April 24, 1996, his initial grace period to file for habeas relief was until April 24, 1997.[FN3] This period was tolled from April 24, 1996 through June 19, 1996 because, during that interval, Senor had motions pending in the state ap-

pellate courts in which he sought to reargue or appeal his previous adverse rulings. From June 19, 1996 through February 28, 1997, the date on which Senor filed his second § 440 motion, he did not have any litigation pending in the state courts. That period comprised 254 days.

> FN3. Senor was convicted on January 10, 1994, and on November 6, 1995, the Appellate Division affirmed his conviction. Because he did not seek leave to appeal to the New York Court of Appeals, his judgment of conviction became final on December 6, 1995, the date upon which the 30–day period for seeking review in the Court of Appeals expired. *See* N.Y.Crim. Proc. Law § 460.10(5)(a).

**\*4** Senor's grace period was once again tolled from February 28, 1997 through June 10, 1997, the date on which his second and third § 440 motions were denied. Senor did not have any litigation pending in the state or federal courts between June 10, 1997 and August 6, 1997, which comprised fifty-seven days.

On August 6, 1997, Senor filed his first habeas corpus petition in this court (docket number 97–CV–4929), which I dismissed without prejudice on February 17, 1999. That time period comprised 560 days, during which the statute of limitations period was not tolled. *See Duncan v. Walker,* 533 U.S. 167, 181–82, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (the time period during which a habeas corpus petition is pending in federal court does not toll the one-year limitations period). Thus, prior to my dismissal of his Senor's first habeas corpus petition, Senor had allowed 871 days to run on his one-year grace period.

After February 17, 1999, Senor waited thirty-six days before filing his fourth § 440 motion, on March 25, 1999. That motion was denied on June 18, 1999, and leave to appeal was denied on September 15, 1999. The one-year grace period was tolled during that interval (provided it had not

already expired).

Thereafter, Senor had no litigation pending between September 15, 1999 and the filing of his instant habeas petition. The earliest date on which Senor can be credited with filing the petition is July 24, 2000, the date on which he alleges that he placed a set of papers in the mailbox at the Green Haven Correctional Facility. *See Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (when a prisoner is proceeding *pro se,* he is deemed to have filed a document on the date he delivered it to prison authorities for forwarding to the court clerk). The period from September 15, 1999 to July 24, 2000 comprises 313 days.

Adding the period during which the one-year grace period was running against Senor yields a total of 1,184 days. Accordingly, Senor's petition must be dismissed as untimely.

*Zarvela v. Artuz,* 254 F.3d 374, 380 (2d Cir.2001), *cert. denied,* 534 U.S. 1015, 122 S.Ct. 506, 151 L.Ed.2d 415 (2001), provides no relief for Senor. In that case, the Second Circuit held that when a district court is presented with a mixed petition, *i.e.,* a petition that contains some exhausted claims and some unexhausted claims, it may (1) dismiss the entire petition without prejudice; or (2) dismiss the unexhausted claims and stay the rest. The court further held that when a dismissal "could jeopardize the timeliness of a collateral attack," a stay is the only course of action. *Id.* (citation omitted). The court specified that the stay should be conditioned on the petitioner pursuing state court remedies "within a brief interval, normally 30 days after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after a state court exhaustion is completed." *Id.* at 381.

The Second Circuit has not yet decided whether *Zarvela* should be applied retroactively. *See Smaldone v. Senkowski,* 273 F.3d 133, 139 (2d Cir.2001). In any event, I see no unfairness in denying habeas relief to this petitioner because he failed

to make the "prompt trip to and from the state courts" contemplated by *Zarvela. See Zarvela,* 254 F.3d at 383. Rather, he delayed more than ten months before returning from the state courts. I note that other district courts within the circuit have dismissed petitions as untimely where petitioners have failed to act within the time constraints suggested in *Zarvela. See, e.g., Felton v. Mazzuca,* No. 98–CV–4567, 2002 WL 655207, at \*4 (S.D.N.Y. April 18, 2002) (petition time-barred under *Zarvela* ); *Edwards v. Greiner,* No. 00–CV–1331, 2002 WL 1467708, at \* 3 (E.D.N.Y. May 7, 2002) (same). Finally, *Zarvela* is distinguished because, as described below, Senor does not present a "mixed petition" because he has no further recourse to state court. Accordingly, there would have been no need to dismiss the unexhausted claims and stay the balance of the petition to enable Senor to exhaust his state remedies. *See DeJesus v. Greiner,* No. 01–CV–2173, 2001 WL 1098001, at \*2, n. 2 (S.D.N.Y. Sept.10, 2001).

**\*5** In conclusion, Senor's petition must be dismissed as time-barred. In any event, as discussed below, each of Senor's claims fail as either procedurally defaulted or without merit because the state court's decision was neither contrary to nor an unreasonable application of clearly established Federal law. *See Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001) (citing *Williams v. Taylor,* 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

B. *The Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") has narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). Under the AEDPA standard, which applies to habeas petitions filed after AEDPA's enactment in 1996, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §

2254(d)(1). The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001).

A decision is "contrary to" clearly established federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 413. A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* Under the latter standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001) (citing *Williams,* 529 U.S. at 411). Interpreting *Williams,* the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (citing *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted)).

This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether it has alluded to federal law in its decision. As the Second Circuit stated in *Sellan v. Kuhlman,* 261 F.3d 303 (2d Cir.2001):

**\*6** [f]or the purposes of AEDPA deference, a

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

state court 'adjudicate[s] a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

*Id.* at 312.

C. *Senor's Claims*

1. *Ineffective Assistance of Trial Counsel*

Senor claims that his attorney provided him ineffective assistance at trial by failing to contest the legality of police conduct and failing to pursue other "colorable claims." He claims that his trial counsel should have challenged the circumstances surrounding his arrest. Specifically, he contends that the witnesses who initially gave the police a description of the shooter in this case either fabricated that description or embellished it to fit Senor. The police thus had no reason, independent of this improperly obtained description, to stop and detain Senor. Consequently, Senor maintains, his arrest violated the Fourth Amendment, and his attorney should have moved, pursuant to *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), to suppress the identification testimony as the fruit of an unlawful arrest. Moreover, Senor contends that his attorney should have moved to set aside the verdict after he informed his attorney of the possibility that he knew one of the jurors.

Respondent argues that these claims are barred from review in this Court because the state court denied them based on a state procedural default, which constitutes an independent and adequate state ground. A procedurally defaulted claim is reviewable only if petitioner can overcome the procedural bar by showing cause and prejudice, or that a fundamental miscarriage of justice would occur if I declined to review the claim. *See Coleman v.*

*Thompson,* 501 U.S. 722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *see also Lee v. Kemna,* 534 U.S. 362, 122 S.Ct. 877, 885, 888, 151 L.Ed.2d 820 (2002) (noting the existence of a "small category" of "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question") (citation omitted). A petitioner may establish cause by showing "that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." *McCleskey v. Zant,* 499 U.S. 467, 493–94, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). To satisfy the prejudice requirement, the alleged error must have worked to the petitioner's actual and substantial disadvantage. *See Amadeo v. Zant,* 486 U.S. 214, 222, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988). If the petitioner cannot show cause and prejudice, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim. A fundamental miscarriage of justice requires a showing of "clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner [guilty]." *Sawyer v. Whitley,* 505 U.S. 333, 335, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

**\*7** Senor asserted an ineffective assistance of counsel claim in a § 440 motion filed September 13, 1995. The court, in denying the motion, stated that this claim lacked merit, but was also procedurally barred under N.Y.Crim. Proc. Law § 440.10 (2)(c) because Senor could have raised it on direct appeal, but did not, and he provided no justification for having failed to do so. The subsequent order of the Appellate Division denying, without comment, leave to appeal the denial of petitioner's § 440 motion does not alter that result. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ("[W]here ... the last reasoned opinion on the claim explicitly imposes a procedur-

al default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

Because a state procedural default qualifies as an independent and adequate ground, this Court cannot consider Senor's ineffective assistance claim unless Senor shows cause for the default and prejudice resulting therefrom. Respondent maintains that Senor has not shown cause for failing to raise this claim on direct appeal, nor any resulting prejudice. I need not address this issue because the ineffectiveness claim has no merit.

The Supreme Court has established the following standard for ineffective assistance claims:

> First, the defendant must show that counsel's performance was deficient. This requires that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, to make out this type of claim, the petitioner must demonstrate both (1) that his attorney's performance fell below an "objective standard of reasonableness," *id.* at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. *See also Kieser v. New York,* 56 F.3d 16, 18 (2d Cir.1995). Actions or omissions by counsel that "might be considered sound trial strategy" do not constitute ineffective assistance. *Strickland,* 466 U.S. at 689; *see also Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998) .

[2] Senor has failed to demonstrate in this case that his trial counsel's actions or inactions amounted to constitutionally inadequate performance. He claims that, during a pre-trial hearing pursuant to *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), his counsel elicited evidence that the police stopped Senor without probable cause, but then failed to pursue that issue by requesting a *Dunaway* hearing in which he could have challenged the lineup identifications as the fruit of an unlawful arrest. The record, however, indicates that the only witness who testified at the *Wade* hearing, Detective Burzotta, mentioned nothing to suggest that he and his partner had stopped and questioned Senor improperly. Rather, Detective Burzotta testified that they questioned Senor because he fit the description of their suspect and was hanging out where they were told a person fitting the suspect's description might be. Moreover, Senor points to no evidence in his attorney's possession at the conclusion of the *Wade* hearing that would have sustained his claim that the police had no probable cause to detain him. Senor's attorney, therefore, could not have alleged facts sufficient to establish that the police obtained the pretrial identifications under unlawful circumstances, as required under N.Y.Crim. Proc. Law §§ 710.20(1) and 710.60(1) to demonstrate that a defendant is entitled to a *Dunaway* hearing. *See People v. Covington,* 144 A.D.2d 238, 533 N.Y.S.2d 433, 434 (1st Dep't 1988), *appeal denied,* 73 N.Y.2d 890, 538 N.Y.S.2d 802, 535 N.E.2d 1342 (1989); *People v. Rolland,* 180 Misc.2d 729, 693 N.Y.S.2d 803 (N.Y.Sup.Ct. Apr.6, 1999). Defense counsel's decision not to request a *Dunaway* hearing thus did not fall outside the bounds of professionally competent assistance, and, on this point, petitioner has not met the first prong of the *Strickland* test.

**\*8** Senor has also failed to meet *Strickland* 's second prong in failing to show that, had his attorney requested a *Dunaway* hearing, a "reasonable probability" exists that the court would even have granted that request, much less suppressed the lineup identifications. *See Strickland,* 466 U.S. at

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

694. Likewise, counsel's decision to refrain from making a motion to set aside the verdict did not render his performance constitutionally deficient.

[3] Senor further claims that, after the jury found him guilty, he alerted his attorney to the possibility that he had known one of the jurors in high school. Based on that representation, Senor contends, his attorney should have moved to set aside the verdict. In papers submitted to this Court and to the state courts, however, Senor has provided no support for his claim that he knew one of the jurors. Moreover, even if such a showing were made, I cannot conceive of how it affords a basis for relief for Senor, who withheld the information from his attorney and the court. Further, in light of the considerable evidence adduced at trial supporting the jury's guilty verdict, Senor has not demonstrated that, had his attorney moved to set aside the verdict, the court would have granted the motion. With respect to both issues on which he bases his ineffective assistance claim, therefore, Senor has failed to satisfy either prong of the *Strickland* test.

1. *Ineffective Assistance of Appellate Counsel*

Senor next argues that his appellate counsel provided him ineffective assistance by refusing to brief on appeal the issue of lack of probable cause with respect to his arrest. In particular, Senor contends that his attorney should have included in his brief to the Appellate Division the claims Senor asserted in his *pro se* supplemental brief to the Appellate Division: that (1) the police seized him in violation of his Fourth Amendment rights when they surrounded him without probable cause or exigency and took him to the precinct; and (2) the police testimony regarding his arrest was unworthy of belief due to material inconsistencies. Senor presented this claim of ineffective assistance of appellate counsel to the Appellate Division in his application for a writ of error *coram nobis.* The Appellate Division denied it on the merits, stating that Senor had failed to establish that he was denied effective assistance of appellate counsel. *See People v. Senor,* 224 A.D.2d 646, 639 N.Y.S.2d 716 (2d Dep't 1996)

.

Respondent contends that Senor's claim lacks merit and fails to meet the standard for such claims established in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Although the Supreme Court formulated the *Strickland* test in the context of examining a claim of ineffective assistance of trial counsel, the same test applies to claims regarding the performance of appellate counsel. *See Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994); *Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir.1992). Appellate counsel need not present every nonfrivolous argument that could be made. *See Mayo,* 13 F.3d at 533; *see also Evitts v. Lucey,* 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (emphasizing that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant"). Moreover, reviewing courts should not employ hindsight to second-guess an appellate attorney's strategy choices. *See Mayo,* 13 F.3d at 533. A petitioner, however, may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing matters that were patently and significantly weaker. *Cf. Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998) ("relief may be warranted when a decision by counsel cannot be justified as a result of some kind of plausible trial strategy").

*9 [4] Senor has failed to demonstrate in this case that his appellate counsel's actions amount to constitutionally inadequate performance. In his thirty-one-page brief to the Appellate Division, Senor's counsel focused on three issues that, he urged, warranted a reversal of Senor's conviction: (1) the prosecution's failure to turn over a prospective witness's prior statement; (2) the prosecution's violation, during the cross-examination of petitioner at trial, of the court's pre-trial ruling; and (3) the insufficiency of the evidence to sustain a murder conviction. The brief included a detailed review of the evidence presented at trial as well as citations to the record. Counsel chose not to pursue on appeal

Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)
**(Cite as: 2002 WL 31102612 (E.D.N.Y.))**

the issues related to the propriety of Senor's arrest, presumably because, in his professional judgment, he believed those issues were not preserved for appellate review and, in any event were meritless.

Counsel's decision not to advance the lack of probable cause claim on appeal did not bring his performance below an objective standard of reasonableness. *See Strickland,* 466 U.S. at 687. The claim was both unpreserved for appellate review and meritless, and thus the decision to forgo pursuing it on appeal did not fall below any standard of reasonableness.[FN4]

> **FN4.** Prior to Senor's first trial, his trial counsel moved to suppress his pretrial identification, claiming, among other grounds, that the police had arrested Senor without probable cause. The prosecution consented to a *Wade* hearing to examine the propriety of the lineup identifications, but did not address Senor's contention that the identifications were the result of an unlawful arrest. During the *Wade* hearing, the prosecution called Detective Burzotta as its sole witness, while the defense called no witnesses. At the conclusion of the hearing, the court addressed only the issue of the lineups, stating that it found they had not been unduly suggestive, and denied the defense's motion to suppress the lineup identifications.

> Senor never asked the court for a *Dunaway* hearing to determine whether the police had probable cause to arrest him. Nor did he ask the court to reconsider its decision in the *Wade* hearing or move to reopen the hearing based on any evidence adduced at the first trial. Furthermore, prior Senor's second trial, Senor did not move, pursuant to N.Y.Crim. Proc. Law §§ 710.20(1) and 710.60(1), to suppress any evidence or for a hearing on any suppression issue. Nor did he move, based upon evidence adduced at

the second trial, for reconsideration of his initial motion or for a *Dunaway* hearing.

> Under New York law, a defendant fails to preserve an issue for appellate review when he fails to object with specificity during the original proceeding, to seek curative instructions, or to request a mistrial. *See* N.Y.Crim. Proc. Law § 470.05 (2). Because Senor failed to object to the admission of the lineup identifications on the specific basis that the police obtained them in violation of his Fourth Amendment rights, the questions of the propriety of Senor's detention and the admissibility of the resulting evidence were not preserved for appellate review. *See People v. Miguel,* 53 N.Y.2d 920, 924, 440 N.Y.S.2d 923, 423 N.E.2d 400 (1981). Moreover, as discussed earlier, Senor's trial counsel had no basis upon which to request a *Dunaway* hearing to raise the probable cause issue.

In any event, Senor cannot show that he was prejudiced by his appellate counsel's decision not to advance the probable cause claim because Senor asserted that claim in his *pro se* supplemental brief submitted to the Appellate Division. The Appellate Division considered the claims raised in Senor's *pro se* brief and determined that they were either unpreserved for appellate review or without merit. Consequently, had appellate counsel included the probable cause claim in his brief to the Appellate Division, the result would have been the same.

2. *Lack of Probable Cause to Arrest*

[5] Senor claims that the police seized him without probable cause, questioning him based on a vague description concocted by two witnesses. As discussed earlier, Senor maintains that the witnesses who initially gave the police a description of the shooter in this case either fabricated that description or embellished it to fit Senor. Because the police had no other reason to stop and detain Senor,

he maintains that his resulting arrest violated the Fourth Amendment, and the lineup identifications were the fruit of that unlawful arrest.

This claim is barred from federal review because Senor failed to exhaust it in the state courts. The exhaustion requirement, which arises out of considerations of comity between the federal and state judicial systems, ensures that state courts have an opportunity to correct any violations of the federal constitutional rights of prisoners already within their jurisdiction. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999); *Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (*per curiam*); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982). Exhaustion requires a petitioner to have presented to each level of the state courts the same federal constitutional claims, legally and factually, that are raised in his petition to the federal court, so that the state courts will have been alerted to them and have had the initial opportunity to assess them. *See O'Sullivan,* 119 S.Ct. at 1732–33; *Duncan,* 513 U.S. at 365–66; *Picard,* 404 U.S. at 275–76; *Daye,* 696 F.2d at 191.

**\*10** In this case, Senor presented this Fourth Amendment claim on direct appeal in his *pro se* supplemental brief to the Appellate Division. In its November 6, 1995, decision affirming Senor's judgment of conviction, the Appellate Division rejected this claim, among others, without discussion, as either not preserved or without merit. *See People v. Senor,* 221 A.D.2d 384, 635 N.Y.S.2d 480 (2d Dep't 1995).[FN5] Senor then failed to apply for leave to appeal to the New York Court of Appeals from the Appellate Division's decision affirming his conviction.[FN6] Because he did not present this claim to the New York Court of Appeals, the claim is unexhausted. *See O'Sullivan,* 119 S.Ct. at 1732–33; *Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991) (stating that, in order to exhaust state remedies, "a petitioner must present his federal constitutional claim to the highest court of the

state").[FN7]

> [FN5]. In *Fama v. Commissioner of Corr. Servs.,* 235 F.3d 804, 810 (2d Cir.2000), the Second Circuit held that when a state court uses language such as "[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit," the validity of the claim is preserved and is subject to federal review.

> [FN6]. As mentioned earlier, Senor states that he sought leave to appeal the Appellate Division's November 6, 1995, decision, but cites as support a certificate from the New York Court of Appeals, dated June 19, 1996, that denies him leave to appeal a subsequent May 8, 1996, decision by the Appellate Division. Respondent maintains that Senor did not seek leave to appeal the Appellate Division's November 6, 1995, decision affirming his conviction, and nothing in the record indicates that he did.

> [FN7]. Although Senor also raised this same claim in a § 440 motion and then appealed the denial of that motion to the Appellate Division, he still failed to exhaust it because the New York Court of Appeals never had the opportunity to review the claim.

Senor can no longer exhaust this claim because, under N.Y.Crim. Proc. Law § 460.10(5), he had thirty days after November 6, 1995, the date the Appellate Division affirmed his conviction, to make an application for leave to appeal to the Court of Appeals. Because this time limit has expired, this claim is procedurally barred from review by the state courts. Where it is clear that a state court would determine that an unexhausted claim is procedurally barred from state review, such a claim is deemed exhausted. *See Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) (citing *Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("[A] federal habeas court need not require

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

that a federal claim be presented to a state court if it is clear that the state would hold the claim procedurally barred.")).

Senor has not attempted to show cause and resulting prejudice for his failure to appeal the Appellate Division's decision affirming his conviction. In addition, my refusal to consider the claim would not result in a miscarriage of justice.

In any event, the claim is without merit. In *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court curtailed federal habeas review of Fourth Amendment claims where the state has provided "an opportunity for full and fair litigation" of the Fourth Amendment challenge. *Id.* at 482. Following *Powell,* the Second Circuit has held that courts should review Fourth Amendment claims in habeas petitions only if: (1) the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (2) the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process. *See Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir.1977) (*en banc* ); *see also Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992).

Senor cannot claim that the state lacked sufficient procedures for redress of his Fourth Amendment claim because the courts in this circuit have expressly approved New York's procedure for litigating such claims, specified in N.Y.Crim. Proc. Law §§ 710 *et seq.,* as facially adequate. *See, e.g., Gates,* 568 F.2d at 837 & n. 4; *Taylor v. Kuhlmann,* 36 F.Supp.2d 534, 549 (E.D.N.Y.1999); *Holmes v. Scully,* 706 F.Supp. 195, 201 (E.D.N.Y.1989).

**\*11** Moreover, Senor has not alleged that an unconscionable breakdown in the process occurred, nor could he. To allege such a breakdown, Senor must prove that "no state court ... conducted a 'reasoned method of inquiry into relevant questions of fact and law' or any inquiry at all into the Fourth Amendment claim." *Shaw v. Scully,* 654 F.Supp.

859, 863–64 (S.D.N.Y.1987) (quoting *Cruz v. Alexander,* 477 F.Supp. 516, 523 (S.D.N.Y.1979)); *see also Taylor,* 36 F.Supp.2d at 549. At the *Wade* hearing prior to his first trial, Senor raised the issue of lack of probable cause to arrest, but did not adduce sufficient facts to press that issue in a *Dunaway* hearing. A state court that conducted an inquiry into the questions relevant to the issue raised, and no unconscionable breakdown in the process occurred. As a result, I cannot consider Senor's illegal arrest argument as an independent basis for habeas review.

3. *The Claim that Senor did not Voluntarily Accompany the Police to the Precinct*

**[6]** Senor claims that his acquiescence in accompanying the arresting officers to the precinct did not constitute voluntarily consent and thus did not justify an otherwise unlawful police intrusion. Respondent argues that this claim is barred from habeas review because the state court denied it based on a state procedural default, which constitutes an independent and adequate state ground.

I agree. In denying petitioner's first § 440 motion, the court held that Senor's claim that he did not voluntarily consent to accompany the police to the precinct station was procedurally barred under N.Y.Crim. Proc. Law § 440.10(2)(c), because petitioner based it on matters that appeared in the record, yet did not raise the claim on direct appeal and failed to offer a "reasonable excuse" for not doing so. The order of the Appellate Division denying, without comment, leave to appeal the denial of petitioner's § 440 motion does not alter this result. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ("[W]here ... the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

Senor does not show cause and prejudice for the default. Furthermore, considering the paucity of evidence supporting his claim that his arrest violated the Fourth Amendment, a miscarriage of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

justice will not result from my failure to review the claim.

4. The Claim That the Prosecutor Failed to Turn Over a Prior Witness Statement and *Violated a Pre–Trial Ruling*

During Senor's second trial, defense witness Yashika Jones testified on direct examination that, on the night Senor was arrested, she went to Putnam Avenue, where Senor usually hung out, to look for him. *See* Tr. at 259.[FN8] On cross-examination, the prosecutor asked Jones why she thought Senor would be at Putnam Avenue. Jones replied, "Because he sold drugs up there on Putnam Avenue." *Id.* at 264. Later on in the trial, when Senor testified, defense counsel asked him if he had ever been convicted of a felony. Senor answered yes. Defense counsel then asked if the conviction related to drugs. Senor replied, "Yes, it was possession." *Id.* at 295. On cross-examination, the prosecutor asked Senor, "Now, you were arrested for selling drugs for the case that you took five years probation for?" *Id.* at 305. Senor answered, "Yes." *Id.*

> FN8. "Tr." refers to the transcript of Senor's second trial.

**\*12** Senor claims that the prosecutor violated New York law as articulated in *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), by failing to turn over to the defense a statement Jones gave to the prosecutor prior to trial, in which she allegedly mentioned that Senor had sold drugs on Putnam Avenue. He further asserts that, by eliciting from Jones that Senor sold drugs and by asking Senor on cross-examination about his drug activities, the prosecutor violated the court's pre-trial ruling in a hearing pursuant to *People v. Sandoval,* 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974). During that *Sandoval* hearing, the trial court had ruled that if Senor testified on his own behalf at trial, the prosecution could inquire about his prior felony conviction, but could not elicit the underlying facts of that conviction, specifically that it was for possession of a controlled substance. Senor maintains that the prosecutor inten-

tionally withheld from the defense Jones' statement regarding Senor selling drugs, so that, at trial, the prosecutor could circumvent the court's *Sandoval* ruling and elicit from Jones facts related to Senor prior drug possession conviction. Senor contends that these actions deprived him of a fair trial.

Respondent contends that this Court cannot review this claim because it relates only to state, not federal, questions. That is not entirely correct. The Supreme Court has emphasized on several occasions that federal habeas relief does not lie for errors of state law. *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ; *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). In conducting habeas review, a federal court is limited to determining whether a conviction violated the Constitution, laws, or treaties of the United States. *See Estelle,* 502 U.S. at 67; 28 U.S.C. § 2241. A federal court, therefore, cannot review a habeas claim based on an alleged *Rosario* violation because the *Rosario* rule is purely a matter of state law. *See Green v. Artuz,* 990 F.Supp. 267, 274 (S.D.N.Y.1998); *Morrison v. McClellan,* 903 F.Supp. 428, 429 (E.D.N.Y.1995); *United States ex rel. Butler v. Schubin,* 376 F.Supp. 1241, 1247 (S.D.N.Y.1974), *aff'd,* 508 F.2d 837 (2d Cir.1975).

[7] A claim based on an alleged *Sandoval* violation, on the other hand, deals with an evidentiary question and may present an issue for habeas relief, but only if the petitioner establishes that the trial court committed error that constitutes a deprivation of a constitutionally recognized right. *See Rosario v. Kuhlman,* 839 F.2d 918, 924–25 (2d Cir.1988); *Benitez v. Senkowski,* No. 97–Civ–7819, 1998 WL 668079, at \*7 (S.D.N.Y. Sept.17, 1998); *Rojas v. Senkowski,* No. 95–CV–1866, 1996 WL 449321, at \*3 (E.D.N.Y. July 29, 1996) ("The decision to admit prior convictions ... [is] not redressable in a federal habeas corpus proceeding absent a showing that the particular errors were of constitutional

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

magnitude." (quotations omitted)).

**\*13** In order for an evidentiary error to be cognizable under habeas corpus review, the error must cause "actual prejudice" to the petitioner by having a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson,* 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (internal quotation marks omitted); *see also Loliscio v. Goord,* 263 F.3d 178, 185 (2d Cir.2001) (posing but not answering question whether, in light of AEDPA, a federal habeas court should continue to apply the *Brecht* standard or determine instead whether the state court's decision was contrary to, or involved an unreasonable application of, the harmless error standard established in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

Even assuming the trial court erroneously permitted the prosecutor to question Senor about his prior drug conviction, Senor has not demonstrated that the ruling influenced the jury's verdict in any way. The prosecution presented abundant evidence at trial pointing to petitioner's guilt. Furthermore, Senor's claim is meritless. On direct examination of Jones, the defense opened the door to questions regarding why Jones went to Putnam Avenue to look for Senor. In addition, when questioning Senor, the defense counsel, not the prosecutor, elicited the facts underlying Senor's prior felony conviction. The prosecutor, therefore, appropriately developed these facts on cross-examination of Senor.

[8] In any event, the claim is procedurally defaulted. Senor asserted this claim on direct appeal to the Appellate Division, but failed to include it in his leave application. Moreover, he failed to include it in any of his § 440 motions. Thus, the claim is unexhausted. *See Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991). Senor can no longer exhaust this claim because, under N.Y. Crim Proc. Law § 460.10(5), he had thirty days after November 6, 1995, the date the Appellate Division affirmed his conviction, to make an application for leave to appeal to the Court of Appeals. Thus, he can no

longer seek leave to appeal this claim. In addition, he cannot raise this claim in another § 440 motion because it relates to facts that appear on the record and, consequently, he should have asserted it on direct appeal and cannot do so now through a collateral challenge. *See* N.Y.Crim. Proc. Law § 440.10. Where it is clear that a state court would determine that an unexhausted claim is procedurally barred from state review, such a claim is deemed exhausted. *See O'Sullivan,* 119 S.Ct. at 1732–33; *Grey,* 933 F.2d at 120. Therefore, this claim is procedurally barred from federal review because Senor fails to show cause and prejudice or that a fundamental miscarriage of justice will result.

## CONCLUSION

For the reasons stated above, Senor's petition for a writ of habeas corpus is denied in its entirety. I hereby decline to issue a certificate of appealability, since Senor has not presented a "substantial showing of the denial of a constitutional right." *Reyes v. Keane,* 90 F.3d 676, 680 (2d Cir.1996).

**\*14** So Ordered.

E.D.N.Y.,2002.
Senor v. Greiner
Not Reported in F.Supp.2d, 2002 WL 31102612 (E.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Westlaw Delivery Summary Report for MCKEON, COURTENA**

| | |
|---|---|
| Date/Time of Request: | Monday, September 22, 2014 15:46 Central |
| Client Identifier: | O'HALLORAN |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 428 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Not Reported in F.Supp.2d, 2000 WL 709005 (S.D.N.Y.)
**(Cite as: 2000 WL 709005 (S.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Robert SMITH, Petitioner,
v.
Ernest EDWARDS, Superintendent, Respondent.

No. 98 Civ. 7962(DLC).
May 31, 2000.

Robert Smith, Otisville Correctional Facility, Otisville, NY, for Petitioner, pro se.

Mary C. Farrington, Assistant District Attorney, New York County, New York, NY, for Respondent.

*OPINION AND ORDER*

COTE, J.

**\*1** On November 6, 1998,[FN1] Robert Smith ("Smith") filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2554 challenging his conviction following trial for rape, sodomy, assault, and unlawful imprisonment. In the course of a collateral attack on the conviction in state court, Justice Arlene Silverman ordered DNA testing of semen samples taken after the rape from the victim. The testing excluded the petitioner as the donor. Smith's collateral attacks in state court were rejected, and on November 15, 1999, Magistrate Judge Kevin Fox recommended that the petition be dismissed. Based on the analysis which follows, this petition is dismissed.

> **FN1.** The petition was received by the Court's Pro Se Office on September 28, 1998, but was not filed until November 6, 1998.

BACKGROUND

The evidence at trial, which took place in July 1990, included the following. The victim testified that after a sexual liaison with her boyfriend on Saturday, February 10, 1990, she showered and later went to Smith's apartment that same night with her boyfriend and a woman friend. Smith and his friend William Webb ("Webb") were there, and all of the group drank alcohol and used drugs, including crack cocaine. After awhile only the victim, Smith, and Webb remained in the apartment. Smith then attacked the victim, beating, raping, and sodomizing her over the course of several episodes. The victim testified that she did not know whether Smith had ejaculated.

The victim tried unsuccessfully to escape from the apartment. At approximately 4:00 p.m. on Sunday, the building manager, who was walking past the apartment, heard screaming and investigated. The manager forced open the apartment door and heard a woman scream, "Let me out of here. Let me out of here. I'm going to die if you don't let me out of here." The victim ran past the manager and onto the street. Smith told the manager that nothing was going on and that the woman was crazy.

The victim used a telephone on the street to call the police and when they arrived, she reported that she had been beaten and raped. The police saw that she had been crying, that her nose was bleeding, that her face was swollen and puffy and that her clothes were in disarray. When she led them to Smith's apartment, Webb was there with another man, but Smith was not. The police arrested Smith in a nearby apartment, where he was crouching down in a closet holding a bottle of wine and wearing only a pair of pants.

An examination at the hospital confirmed that the victim had lacerations on her face and pelvic area. There were multiple tears or lacerations on the lining of her vagina, some of which were bleeding. The doctor concluded that they had resulted from forceful trauma or penetration and were consistent with rape. Forensic testing showed the presence of sperm on the victim's underwear and on the rectal and vaginal slides prepared at the hospital. No test-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

ing had been done, however, to link the semen to the defendant.

Smith called two witnesses on his behalf and also took the stand himself. One witness testified that he had stayed at Smith's apartment on Saturday night and that there were no women there. The second witness testified that he lives next door and did not hear anything through the common door that separates the two apartments. He added that at 8:00 a.m. on Sunday morning he met Smith and the victim on the street in front of the apartment building and bought wine for them. When he returned at approximately 4:00 p.m., he met Smith in the building's hallway and went with him out onto the street, where they saw the victim. Smith said, "Oh she must have called the cops on me." When he later returned to his apartment he discovered Smith inside a closet holding a wine bottle.

**\*2** Smith testified that he had spent Saturday night at home with only male friends. He remembered the victim coming to his apartment early Sunday morning to smoke crack with him. According to Smith, the victim had wanted to have sex, but he rebuffed her because his gonorrhea made intercourse too painful. The fact that he suffered from gonorrhea was corroborated by medical records. His recollection of what occurred during the day was confused, but Smith recalled that the victim eventually returned to his apartment complaining that she had been given drugs, at which point he had hit her and her nose began to bleed. The victim fell several times. At this point the manager forced her way into the apartment. Smith explained that he had hidden in the closet because the building manager had threatened to have him arrested if she discovered him drinking alcohol on a Sunday.

Smith was convicted on all counts and sentenced on October 1, 1990, to concurrent prison terms of seven to twenty-one years for each of the rape and sodomy counts, two and one-third to seven years for the assault count, and one year for the unlawful imprisonment. On appeal, Smith claimed that (1) he was denied effective assistance of coun-

sel for the failure to conduct DNA testing of the semen samples collected at the hospital and for the failure to call two potential defense witnesses; (2) the trial court erred in limiting argument on the state's failure to conduct DNA testing; (3) the state denied him exculpatory evidence by refusing to conduct DNA testing; and (4) the verdict was based on insufficient evidence. The Appellate Division affirmed the conviction in a published opinion, 612 N.Y.S.2d 13 (1st Dep't 1994), and leave to appeal was denied by the Court of Appeals.

While the appeal was pending, Smith filed a Section 440.10 motion *pro se* on the grounds that his trial counsel had been ineffective for failure to arrange DNA testing and to call the two defense witnesses. Assigned counsel filed a second such motion, raising the same claims. It was denied and Smith did not appeal.

Smith filed a third such motion *pro se,* focused solely on the failure of the prosecution and the court to arrange for DNA testing. The court assigned counsel for Smith and ordered the testing, which when done, excluded Smith as a donor. At a hearing, the prosecution's expert confirmed the lab tests and added that Webb was also eliminated as a donor and that all of the DNA material obtained by the hospital came from one source. The DNA material had been collected from the victim's pantyhose, vagina and rectum, and possibly from her mouth and hair. An expert explained that sperm could travel from the vagina to rectum. The state was unable to locate the victim's boyfriend, and there is no evidence as to whether he is the source of the sperm that was analyzed. Justice Silverman denied the motion based on a claim of ineffective assistance of counsel on the ground that it had been rejected by the Appellate Division and in the denial of Smith's second Section 440.10 motion. She concluded that the DNA evidence was not newly discovered evidence since it could have been obtained prior to trial. Finally, she reasoned that Smith would have been convicted even if the DNA evidence had been available at trial given the other

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 709005 (S.D.N.Y.)
**(Cite as: 2000 WL 709005 (S.D.N.Y.))**

evidence introduced at trial.

**\*3** Smith appealed the denial of his Section 440.10 motion. The decision was affirmed and leave to appeal to the Court of Appeals was denied on June 23, 1998. The Appellate Division ruled that the "DNA tests would not have probably resulted in a more favorable verdict" for Smith. *People v. Smith,* 665 N.Y.S.2d 648 (1st Dep't 1997).

Smith filed this petition on November 6, 1998. He raised four claims: (1) that he received ineffective assistance from trial counsel; (2) that the trial court erred in limiting argument regarding the absence of the DNA testing; (3) that the prosecution had an obligation conduct DNA testing; and (4) that the DNA evidence exonerates him. On January 15, 1999, this Court referred the petition to Magistrate Judge Fox for a Report and Recommendation. On November 15, 1999, the Magistrate issued his Report, recommending that the petition be dismissed ("Report"). Smith asked for an extension of his time to object to the Report and submitted his objections on March 1, 2000. Through a letter of March 9, 2000, the state asks the Court to accept the Report.

## DISCUSSION

In reviewing the Report, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Nelson v.. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985) (citations omitted). *See also Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991) (court may accept report if it is "not facially erroneous"). The Court shall make a *de novo* determination of those portions of the Report to which objection is made. *See id.; United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997).

Section 2254, as amended by the AEDPA,

provides for the following standard of review:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). As the Supreme Court has recently elaborated,

[u]nder the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

**\*4** *Williams v. Taylor,* 120 S.Ct. 1495, 1523 (2000). With respect to factual findings, Section 2254(e)(1) states that "a determination of a factual issue made by a State court shall be presumed to be correct" and that a petitioner is required to rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A. Ineffective Assistance of Trial Counsel

Smith contends in his petition that his trial counsel was ineffective in that he failed to arrange

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

for DNA testing and failed to call two potential defense witnesses. The Report found that these claims were procedurally barred whether one considered the record on the direct appeal or the Section 440.10 litigation. On direct appeal, the Appellate Division ruled that the remaining claims made by Smith which it had not yet discussed, and which included the claimed ineffectiveness of trial counsel, were "either unpreserved or without merit." Since a Section 440.10 motion is the "preferred avenue" for a claim of ineffective assistance, *Caballero v. Keane,* 42 F.3d 738, 740 (2d Cir.1994), it is presumed that the appellate division considered this particular argument to be "unpreserved." Although Smith properly brought these claims in a collateral attack on his conviction, he did not appeal from the denial of that Section 440.10 motion. Consequently, the Report analyzed whether Smith had shown cause and prejudice, and found that he had offered no explanation sufficient to establish either.

Despite the conclusion that Smith was procedurally barred from claiming ineffective assistance of counsel, the Report also addressed the claim on the merits. Smith's counsel for the Section 440.10 litigation explained that trial counsel had not conducted the DNA testing because of concerns about the expense of the testing and the availability of the results by the time of the trial, as well as its admissibility. The Report found that there was no ineffective assistance since, as a strategic matter, it was reasonable not to conduct testing when the results might be harmful to Smith or even if helpful might well be inadmissible. Using similar reasoning, the Report found that it was a reasonable and strategic decision by trial counsel not to call the two witnesses, both of whom trial counsel had interviewed.

Smith argues that his claims are not procedurally barred since the verdict represents a fundamental miscarriage of justice.[FN2] Since the Report was based on alternative analyses and Smith's objections do not raise the Report's alternative ground for dismissing the claimed ineffective assistance of counsel, the Court will review the Report for clear

error. Finding none, this portion of the Report is adopted.

> [FN2.] Smith adds a claim in his objections that his counsel was ineffective for failing to object to the following alleged violation of his Sixth Amendment right to confront the witnesses against him. Apparently, the Grand Jury testimony included his co-defendant's plea allocution that what had happened in Smith's apartment was "frightening". Wholly apart from whether this claim is properly presented, errors in the Grand Jury presentation are not cognizable in a federal habeas petition. *See Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989). *See also United States v. Eltayib,* 88 F.3d 157, 173 (2d Cir.1996) (noting that the guilty verdict of a petit jury cures any defect in the grand jury proceeding).

As to Smith's claim of a fundamental miscarriage of justice, when a

"state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."

**\*5** *Glenn v. Bartlett,* 98 F.3d 721, 724 (2d Cir.1996) (quoting *Coleman v. Thompson,* 501 U.S. 722, 750 (1991)). In the context of a federal habeas petition, a fundamental miscarriage of justice means that the " 'constitutional violation has probably resulted in the conviction of one who is actually innocent,' " *Reyes v. Keane,* 118 F.3d 136, 138 (2d Cir.1997) (quoting *Murray v. Carrier,* 477 U.S. 478, 496 (1986)). In order to demonstrate actual innocence in a collateral proceeding, a petitioner must present " 'new reliable evidence that was not presented at trial' " and " 'show that it is more

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." ' *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 114 (2d Cir.2000) (quoting *Schlup v. Delo,* 513 U.S. 298, 299, 327-28 (1995)) (brackets in original). Further, actual innocence means factual innocence, not mere legal insufficiency. *Rosario v. United States,* 164 F.3d 729, 733 (2d Cir.1998).

The facts to which petitioner points are insufficient to establish that his trial counsel's performance resulted in a miscarriage of justice. Even assuming that the evidence he points to could be characterized as "new reliable evidence," the facts Smith argues should have been presented at trial had he been represented effectively-the results of the DNA testing and the potentially exculpatory statements of two additional defense witnesses-are insufficient to establish his actual innocence. First, given the overall evidentiary strength of the prosecution's case, these facts do not present the situation in which the exclusion of petitioner as the source of semen recovered from the victim's body is dispositive of the trial issues. The jury was aware that the victim had had sex with her boyfriend prior to the sexual assaults and the police chemist testified at trial that no testing had been done to connect Smith to the semen recovered from the victim. As to the two witnesses defense counsel elected not to call, although the affidavits they submitted suggest that their trial testimony may have had some exculpatory value to petitioner, their statements were equally problematic to the extent that they conflicted with the petitioner's version of the events and even the theory of the defense. Defense counsel interviewed these witnesses prior to trial and thereafter determined not to call them. Because their testimony would have, at most, amounted to limited impeachment of the victim, the absence of such evidence is insufficient to establish actual innocence.

### B. The Trial Court Rulings

Smith contends in his petition that the trial court erred in not allowing him to point out to the jury that the prosecution had failed to conduct DNA testing. The Appellate Division ruled that

the trial court appropriately exercised its discretion in precluding cross-examination of the police chemist as to the absence of a particular chemical test (i.e., DNA testing), while permitting cross-examination regarding the inability of the tests actually performed to connect defendant with the crimes charged, as well as argument thereon in summation. By such ruling, the trial court properly discouraged undue speculation, while keeping the proceedings within the reasonable confines of the issues and encouraging clarity, rather than obscurity in the development of proof.

**\*6** 612 N.Y.S.2d at 14.

The Report recommends that this Court find no error since the trial court acted within its discretion to prevent jury speculation. Smith objects in a general fashion to the Report, but does not bring any specific objection to bear on this portion of the Report. Reviewing it for facial error, and finding none, the Report's recommendation is adopted.

### C. The Prosecution's Failure to Conduct DNA Testing

Relying on *Arizona v. Youngblood,* 488 U.S. 51 (1988), the Report rejected Smith's contention that the prosecution had any obligation to perform DNA testing. Smith objects to this analysis, contending as he did before the state courts that the prosecutor had an obligation under *Brady v. Maryland,* 373 U.S. 83 (1963), to disclose exculpatory evidence to him, and that the failure to conduct the DNA testing amounted to a violation of that obligation.

Under *Brady,* 373 U.S. at 87, the government has a due process obligation to disclose without delay evidence *in its possession* that is material to either guilt or punishment. *United States v. Avellino,* 136 F.3d 249, 255 (2d Cir.1998). The prosecution is not, however, required to disclose evidence it does not possess or of which it is not aware, *see United States v. Tillem,* 906 F .2d 814, 824 (2d

Not Reported in F.Supp.2d, 2000 WL 709005 (S.D.N.Y.)
**(Cite as: 2000 WL 709005 (S.D.N.Y.))**

Cir.1990), and there is no due process requirement that the government use any particular investigatory tool, including quantitative testing, to secure exculpatory evidence. *Youngblood,* 488 U.S. at 58-59. Because petitioner clearly does not contend that any exculpatory DNA evidence was within the prosecutor's possession, the fact that he couches the government's failure to perform DNA testing in terms of *Brady* does not convert a legitimate prosecutorial choice into a constitutional violation.

Moreover, the absence of a *Brady* violation is particularly clear where, as here, the evidence was equally available to the defense, which chose not to pursue this course of investigation. *Cf. Morgan v. Salamack,* 735 F.2d 354, 358 (2d Cir.1984). The rationale underlying *Brady* is that the defendant should not be denied access to exculpatory evidence only known to the government. *United States v. Zackson,* 6 F.3d 911, 918 (2d Cir.1993). *See also United States v. LeRoy,* 687 F.2d 610, 618 (2d Cir.1982) (no obligation to disclose exculpatory evidence "if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence"). Defense counsel had knowledge of the semen samples and, as discussed above, strategically opted not to pursue DNA testing as a means of garnishing potentially exculpatory evidence. Smith is not therefore entitled to habeas corpus relief on this claim.

D. Newly Discovered Evidence

Finally, Smith contends in his petition that he is entitled to a new trial because the DNA test results eliminating him as a donor of the semen recovered from the victim amount to newly discovered evidence. The Report rejects this claim on the ground that it constitutes a claim of innocence, FN3 which is not a basis for habeas relief in the absence of an independent constitutional violation.

> FN3. The Report finds that Smith's characterization of the DNA test results as "newly discovered evidence" is erroneous, because such physical evidence, although newly tested, is not newly discovered; its

existence was known to petitioner prior to and during the trial.

**\*7** Smith's objections to the Report principally address this issue. He argues that, as outlined above, the prosecution had a *Brady* obligation to conduct DNA testing, and that if it had done so, there would have been a different result at trial. In support of this contention, he points to the fact that the victim's testimony was inherently unreliable since she was, as she admits, under the influence of both drugs and alcohol at the time of the alleged rape.FN4 He also argues that one of the witnesses interviewed but not called by his attorney as a defense witness was the victim's boyfriend, and that that person would have denied having had sex with the victim before the attack.FN5 He further points to the fact that the semen found on the victim could not, in any event, be attributed to the boyfriend since the victim admitted that she took a shower after having had sexual relations with him.

> FN4. Smith may thereby be arguing the existence of a second constitutional error. He contends that the trial court should have charged the jury that they could consider the victim's level of intoxication in deciding whether her testimony was reliable, a charge that his trial counsel had requested. Since this argument is first raised in Smith's objections, however, it will not be further addressed.

> FN5. As the respondent points out, it is not altogether clear that the witness to whom Smith refers was the man the victim described in her testimony as her boyfriend. Among other things, he has a different surname.

Claims of newly discovered evidence that relate only to a petitioner's guilt or innocence do not warrant federal habeas relief absent an independent constitutional violation occurring in the state proceeding. *See Herrera v. Collins,* 506 U.S. 390, 400 (1993). Federal habeas courts sit to ensure that indi-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

viduals are not imprisoned in violation of the Constitution-not to correct errors of fact. *See id.* As discussed above, the alleged violations of constitutional rights-petitioner's claims of ineffective assistance of counsel and *Brady* violations-are without merit, and thus the factual results of the DNA testing do not present a cognizable federal habeas corpus claim.

In any event, it is far from clear that the results of the DNA test constitute newly discovered evidence, since the physical evidence on which the testing was done was available to petitioner before and during the trial. Moreover, even assuming *arguendo,* that this evidence may be classified as newly discovered due to the advances in both DNA testing methodology and such evidence's increasing acceptance and admissibility, petitioner has failed to establish that its admission would probably lead to an acquittal. That Smith was eliminated as the source of the semen recovered from the victim was consistent with the victim's testimony that she had had intercourse with her boyfriend shortly before the crimes at issue, and that she was uncertain whether Smith had ejaculated during his sexual assaults upon her. Moreover, the victim's testimony about the assaults and rapes was corroborated by the doctor who examined her shortly after the events at issue, the responding police officers' testimony as to her demeanor and physical appearance, the testimony of the building manager, the actions of the victim herself-including her flight from petitioner's apartment and her immediate call to 911 from the street-and the petitioner's own conduct, which was consistent with guilt. In light of such evidence, Smith is unable to establish that had the jury been informed that the semen recovered from the victim's body was not his, such information would probably have resulted in his acquittal.

CONCLUSION

**\*8** For the reasons stated, the petition for a writ of habeas corpus is denied. The Clerk of Court shall close the case. I find that the petitioner has not made a substantial showing of the denial of a con-

stitutional right and appellate review is therefore not warranted. *See Tankleff v. Senkowski,* 135 F.3d 235, 241 (2d Cir.1998); *Rodriguez v. Scully,* 905 F.2d 24 (2d Cir.1990). In addition, I find, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438 (1962).

SO ORDERED:

S.D.N.Y.,2000.
Smith v. Edwards
Not Reported in F.Supp.2d, 2000 WL 709005 (S.D.N.Y.)

END OF DOCUMENT

**Westlaw Delivery Summary Report for MCKEON, COURTENA**

| | |
|---|---|
| Date/Time of Request: | Monday, September 22, 2014 15:54 Central |
| Client Identifier: | O'HALLORAN |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 684 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Not Reported in F.Supp.2d, 2012 WL 4107825 (N.D.N.Y.)
**(Cite as: 2012 WL 4107825 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Randal E. STEWART, Petitioner,
v.
Carl HUNT, Respondent.

No. 9:09–CV–712 (MAD/TWD).
Sept. 19, 2012.

Randal E. Stewart, Riverside Motel, Fultonville, NY, pro se.

Office of the New York, State Attorney General, New York Office, Lisa E. Fleischmann, AAG, of Counsel, New York, NY, for Respondent.

**MEMORANDUM–DECISION AND ORDER**
MAE A. D'AGOSTINO, District Judge.
**I. INTRODUCTION**[FN1]

> **FN1.** To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

**\*1** Petitioner Randal E. Stewart, a state prisoner appearing *pro se,* filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, in which he challenges a November 27, 2007 judgment of conviction in Montgomery County Court, convicting him of Course of Sexual Conduct Against a Child in the Second Degree (New York Penal Law ("Penal Law") § 130.80(1)(a)). *See* Dkt. No. 1. Petitioner was sentenced to serve a determinate prison term of six years, to be followed by three-years' post-release supervision. *See id.*

Petitioner's conviction was affirmed by the Appellate Division, Third Department, on March 5, 2009, *see People v. Stewart,* 60 A.D.3d 1111 (3d

Dep't 2009), and the New York State Court of Appeals denied leave to appeal on May 21, 2009. *See People v. Stewart,* 12 N.Y.3d 860 (2009).

Petitioner raises the following claims: (1) the evidence presented at trial was legally insufficient to support his conviction; (2) the verdict was against the weight of the evidence; and (3) his statutorily-authorized sentence was excessive. For the reasons that follow, the petition is denied and dismissed.

**II. BACKGROUND**
**A. The Trial**

*1. The prosecution's case*

T.[FN2] and Petitioner married in 1999, and T. grave birth to their daughter, D., in December of 2001. *See* Trial Transcript ("Tr.") at 330–32.[FN3] Jennifer Cromer and her fiancé, Brandon Wehr, babysat D. while T. was at work. *See id.* at 317–18, 335. Beginning in February of 2006, Ms. Cromer and Mr. Wehr watched D. regularly, both during the week and on the weekends. *See id.* at 319, 334. The couple would watch D. until Petitioner picked her up after work. Petitioner would then watch his daughter until T. finished her shift. See *id.*

> **FN2.** To protect the privacy of the victim, and because the victim here was a minor, the Court will refer to the victim and to her family members by their first initials. *See* N.Y. Civ. Rts. Law § 50–b.

> **FN3.** The trial transcript and other state-court records have been filed under seal to protect the privacy of the victim and her family members.

On November 3, 2006, while Ms. Cromer was watching D., they began to talk about a game D. liked to play. D. called it the "belly bunker" game and explained to Ms. Cromer that she played it with her father. At trial, D. testified that when she and

Not Reported in F.Supp.2d, 2012 WL 4107825 (N.D.N.Y.)
**(Cite as: 2012 WL 4107825 (N.D.N.Y.))**

Petitioner played this game, he would pull down his pants, and that "[t]here was a great big thing." *See id.* at 304. Further, D. testified that the thing was "hard" and that, on the "second day" that she played with it, "[i]t got some white stuff on [her] shirt." *See id.* at 305. D. testified that the "white stuff" came from Petitioner's "belly bunker." *See id.* On direct examination, D. testified that she played the game with Petitioner 160 times, but on cross-examination when asked how often they played the game, she held up her fingers and said that she had played the game with Petitioner more than ten (10) times. *See id.* at 311.

On October 27, 2006, Petitioner went to Wichita Falls, Texas for an extended period, to train with the Air National Guard. *See id.* at 336. On November 3, 2006, while Petitioner was still in Texas, T. learned that she would have to work beyond her shift, so she asked Ms. Cromer if D. could spend the night at Ms. Cromer's home. *See id.* at 320–21, 337. That night, D. told Ms. Cromer that she and Petitioner would play the "belly bunker" game. *See id.* at 304, 321–22. Upon hearing about the "game," Ms. Cromer contacted T. and told her to come to her house immediately. *See id.* at 322, 337. When T. arrived at Ms. Cromer's home, and after D. was put to bed, Ms. Cromer told T. about the "belly bunker" game that Petitioner was playing with D. *See id.* at 322, 338.

**\*2** The next morning, T. spoke with D., who confirmed that she was playing the "belly bunker" game with Petitioner. *See id.* at 338. Later that day, T. and Ms. Cromer brought D. to the Montgomery County Sheriff's Department, where investigators interviewed each of them. *See id.* at 323, 325, 338–39. Thereafter, Investigator Joseph Kilmartin participated in the execution of a search warrant at the house in which Petitioner, T. and D. lived. *See id.* at 380. While investigators found no physical evidence of sexual abuse or pornography in the house, they recovered a handgun from a computer desk drawer, and two handguns from an armoire. *See id.* at 380–82.

Investigator Kilmartin contacted the Air National Guard in Texas and learned that Petitioner planned to return to New York on December 15, 2006. *See id.* at 354. He and Investigator Gilston met Petitioner at the Albany International Airport and told him that they wanted to talk to him about the handguns in his home. *See id* . at 356, 358, 385. Petitioner agreed to accompany them to the police station, and Investigator Gilston advised Petitioner of his *Miranda* rights while they were still in the airport. *See id.* at 356–57. Petitioner indicated, however, that he still wished to speak with the investigators. *See id.* While still at the airport, Petitioner informed Investigator Kilmartin that he had consumed two alcoholic beverages while on the plane. *See id.* at 386.

They arrived at the Sheriff's Office at 6:00 p.m., and Investigator Kilmartin again advised Petitioner of his *Miranda* rights. *See id.* at 358. Thereafter, the investigators spoke to Petitioner about the allegations regarding his daughter and Petitioner ultimately admitted that he engaged in the alleged activities with is daughter. *See id.* at 374–75. Investigator Kilmartin finished transcribing Petitioner's written statement at 7:25 p.m. *See id.* After Petitioner read and signed his statement, the investigators signed it as well. *See id.* at 365. This statement was read into the record at trial. *See id.* at 376–78. In the statement, Petitioner admitted that, in the past two years, he allowed his daughter to "play" with his penis as many as five times and, on occasion, he ejaculated. *See id.* Moreover, the statement indicates that Petitioner told D. not to tell anyone about their "game." *See id.* at 378.

### 2. Petitioner's case

At trial, Petitioner testified on his own behalf. Petitioner had previously served in the Navy and the reserves, and worked primarily as a truck driver. *See id.* at 398–99. In 2006, he transferred to the Air National Guard. *See id.* at 398. Petitioner and T. married eight years prior to trial. *See id.* at 399. Their marital problems began six-to-eight months after D. was born. *See id.* By November of

2006, they were discussing divorce. *See id.* at 401.

In 2006, Petitioner obtained a power generation job, which required him to take a training course with the Air National Guard in Texas. *See id.* at 402–05. Petitioner left for Wichita Falls, Texas, on October 27 or 28, 2006 to attend the course. *See id.* at 405. Petitioner testified that he owned three handguns which he stored in a locked cabinet in his computer desk. *See id.*

**\*3** While in Texas, Petitioner called his family often. *See id.* at 407. After about a month and a half of training, in early December, when Petitioner tried to call his family, no one answered the telephone and the answering machine did not pick up his call. *See id.* at 407–09. After failing to reach T. or leave a message for her, a chief pulled him out of a training class and suggested that he return to New York to make sure that his family was safe. *See id.* at 407–10.

On December 15, 2006, Petitioner boarded a 6:00 a.m. flight to Chicago. *See id.* at 410. Petitioner waited in Chicago for six or seven hours for his next flight to Albany. *See id.* at 410–11. While waiting in Chicago, Petitioner began to drink and eventually became so intoxicated at the first airport bar that he was "cut off" and had to move to another airport bar. *See id.* at 411–12. While on route to Albany, Petitioner consumed an additional two beers. *See id.* at 412–13.

When Petitioner arrived in Albany, two investigators stopped him at the airport and asked to speak with him about illegal handguns recovered from his home. *See id.* at 413–14. Petitioner testified that he did not recall whether the investigators advised him of his *Miranda* rights at the airport, but he did recall that he was advised of his rights at the Sheriff's Office, most likely after the investigators informed him that they wanted to discuss the allegations of sexual abuse made against him. *See id.* at 417.

Petitioner told the investigators that D. told him and T. about the "belly bunker" game at some point in 2003, after the Hughes family had babysat D. *See id.* at 420. Petitioner told the investigators that D. had indicated that the "game" had "been going on for quite awhile," and that he and T. had decided to hire other babysitters. *See id.* at 422–23. It was at this point that Petitioner and T. hired Ms. Cromer and Mr. Wehr to babysit D. *See id.* at 423.

According to Petitioner, the investigators were not interested in this information and instead wanted Petitioner to give them a statement that was consistent with the statements they had received from T. and D. *See id.* Petitioner testified that he had the investigators read T.'s statement to him so that he could tell them "what [they] wanted me to tell them." *See id.* at 424. Petitioner claimed that the investigators told him that "maybe" he could go home if he told them what they wanted to hear. *See id.* at 425. During his interrogation, Petitioner claimed that he was "pretty heavily intoxicated," "very, very overtired," and "underneath heavy mental duress" because he was worried about his family. *See id.* at 421–22, 432.

Petitioner also testified that the investigators "coach[ed]" him on what to say in the statement regarding the allegations of sexual misconduct. *See id.* at 426, 437. Petitioner claimed that he signed the statement so that he could go home, but that he "didn't even really read it." *See id.* at 427. After Petitioner signed the statement, the investigators placed him under arrest. *See id.*

**\*4** Petitioner also testified that when D. was approximately two-years old, she "laid right down in front of [him] stark naked and did a womanly sexual act," and that T.'s sister had been babysitting D. when this occurred. *See id.* at 428–29. Petitioner claimed that D. told him that her cousin taught her the act. *See id.* at 429. Thereafter, Petitioner told T. about the incident, and T. said that she would try to take care of the matter. *See id.*

**B. Verdict and sentencing**
On September 12, 2007, the jury found Peti-

tioner guilty of the sole count in the indictment, *i.e.,* Course of Sexual Conduct Against a Child in the Second Degree. *See id.* at 542–45. On November 27, 2007, the court sentenced Petitioner to a determinate prison term of six years, plus three years of post-release supervision.

## C. Petitioner's appeal

On March 5, 2009, the Appellate Division, Third Department unanimously affirmed Petitioner's conviction. *See People v. Stewart,* 60 A.D.3d 1111 (3d Dep't 2009). First, the court found that Petitioner's confession "clearly established the time frame of the events and that the sexual conduct occurred over the course of nearly two years," and that his confession was "sufficiently corroborated by the testimony of the child." *Id.* at 1112. Specifically, the court noted that the victim testified as follows:

that she played the belly bunker game with her father from the time that she was three years old until he left the house, which other evidence established was when he went to Texas for air national guard training in October 2006. Although the child initially testified that she played the belly bunker game 160 times, she later stated that it was 100 times, more than the number of fingers she could hold up.

*Id.* The Appellate Division therefore held that "a rational juror could conclude that the sexual conduct occurred for the necessary duration of time to satisfy the elements of the crime" of Course of Sexual Conduct Against a Child in the Second Degree. *Id* .

The Appellate Division also rejected Petitioner's claim that the evidence was insufficient because his daughter could not properly identify him at trial. *See id.* at 1113. The court explained that "[a]lthough the child, at some points during her testimony, expressed uncertainty about whether her father was present in the courtroom, the child's mother testified that [Petitioner] had gained weight and that his appearance had changed significantly

since he had left for Texas nearly a year earlier." *Id.* The court noted further that "the child indicated that her father was the only person with whom she played the belly bunker game and she clearly identified him in the courtroom at the conclusion of her testimony." *Id.* Therefore, the court concluded that the evidence was legally sufficient to establish Petitioner had committed the crime. *See id.* The Appellate Division also rejected Petitioner's argument that the verdict was against the weight of the evidence. *See id.*

**\*5** Finally, the Appellate Division found Petitioner's claim that his sentence was harsh and excessive to be meritless, despite Petitioner's lack of criminal history. *See id.* Moreover, the court discerned no extraordinary circumstance warranting a reduction in sentence, "particularly in view of the disturbing nature of [Petitioner's] actions in which he essentially robbed his young daughter of her innocence." *Id.* at 1113–14.

By letter dated April 6, 2009, Petitioner's counsel sought leave to appeal to the New York State Court of Appeals. *See* Exhibit "E." Petitioner only requested that the court grant leave on the legal sufficiency claim argued before the Appellate Division. *See id.* at 1–2. On May 21, 2009, the Court of Appeals denied Petitioner's application. *See People v. Stewart,* 12 N.Y.3d 860 (2009).

## D. The petition before the Court

In his petition for a writ of *habeas corpus,* Petitioner raises three grounds for relief. In his first two grounds, Petitioner argues that the evidence proving his guilt was legally insufficient and that the conviction was against the weight of the evidence. *See* Dkt. No. 1 at ¶ 12(A)-(B). Petitioner argues that his daughter provided only "[v]ague testimony," who was three at the time of the alleged incident, and that her trial testimony two-years later is insufficient to support his conviction. *See id.* at ¶ 12(A). Moreover, Petitioner claims that there was no physical evidence, specific dates when the alleged incidents occurred, or any other first hand witnesses. *See id.* Further, Petitioner argues that his statement giv-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

en to the investigators, which corroborated the alleged conduct, was "given under questiona[ble] circumstances in which he was admittedly drunk, over-tired from a long day of airline travel, was worried about his family's well-being, and promises by investigators that he would be released if he admitted guilt." *See id.*

As to his claim that his conviction was against the weight of the evidence, Petitioner claims that his explanation of the events "was at least as rational as those used by the prosecution." *See id.* at ¶ 12(B). Specifically, Petitioner argues that (1) his confession was obtained under questionable circumstances; (2) he denied any sexual conduct under oath and during cross-examination; (3) he raised the issue that the incident was likely perpetrated by a male neighbor; and (4) that marital problems caused his wife to be vindictive and led her to coach his daughter about this fabricated story. *See id.*

Finally, Petitioner argues that, although his sentence was legally permissible, it was nevertheless unreasonable considering that this was his first felony offense, his status in the military and community, and his family status. *See id.* at ¶ 12(C).

### III. DISCUSSION
### A. Exhaustion and procedural default[FN4]

> FN4. Respondent concedes, and the Court agrees, that the petition before the Court is timely. *See* Dkt. No. 12 at 16–17.

A petitioner in custody pursuant to a judgment of a state court is entitled to federal habeas relief only if he has exhausted all available state-court remedies. *See* 28 U.S.C. § 2254(b)-(c). A claim has been exhausted if it was fairly presented in the state courts, thereby giving the state the "opportunity to pass upon and correct" alleged violations of federal rights. *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). A petitioner need not have cited " 'book and verse on the federal

Constitution' " in his claim in state court for the claim to have been exhausted. *Picard,* 404 U.S. at 278 (quotation omitted). Rather, a petitioner may have fairly presented his claim to the state courts through

> **\*6** (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney Gen. of the State of N.Y.,* 696 F.2d 186, 194 (2d Cir.1982).

As the Second Circuit has held, " 'to invoke "one complete round of the State's established appellate review process" ..., a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal.' " *Smith v. Duncan,* 411 F.3d 340, 345 (2d Cir.2005) (quoting *Galdamez v. Keane,* 394 F.3d 68, 74 (2d Cir.2005)) (internal quotation omitted). Applicants for leave to appeal must submit briefs and other documents to the Court of Appeals, identifying the issues upon which the application is based, and must focus upon identifying problems of reviewability and preservation of error. *See id.* (quotations omitted).

In *Smith v. Duncan,* the Court specifically stated that the New York Court of Appeals would construe a petitioner's leave application as abandoning any claims that were presented to the Appellate Division, but not included in the leave application. *See id.* (quotation omitted). In *Grey v. Hoke,* the Second Circuit held that where a petitioner requested review by the New York Court of Appeals of only one of three issues raised in the Appellate Division, the other two claims were not presented for exhaustion purposes. *See Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991). The court found that it

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

would undermine the principles of comity to consider a constitutional claim as to which no ruling was requested from the state court. *See id.* (citation omitted).

If a petitioner has not exhausted his state court remedies, but no longer has remedies available in state court with regard to these claims, they are "deemed" exhausted but are also procedurally defaulted. *See Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994) (citations omitted). A state prisoner who has procedurally defaulted on a federal claim in state court is entitled to federal habeas review of that claim only if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or that failure of the court to consider the claim will result in a miscarriage of justice. *See Coleman v. Thompson,* 501 U.S. 722, 748–50 (1991). A miscarriage of justice occurs if the constitutional violation has "probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496 (1986).

In the present matter, Petitioner fully exhausted his legal sufficiency claim, but failed to exhaust his weight of the evidence and excessive sentence claims. Petitioner raised all three of these claims in his direct appeal to the Appellate Division, Third Department. *See People v. Stewart,* 60 A.D.3d 1111 (3d Dep't 2009). In his application for leave to appeal to the New York State Court of Appeals, however, Petitioner only requested that the court grant leave as to his legal sufficiency claim. *See* Exhibit "E." Since Petitioner failed to raise his weight of the evidence and excessive sentence claims in the highest court available to him, those claims are unexhausted. *See Smith,* 411 F.3d at 345.

**\*7** Moreover, because Petitioner cannot return to state court, he has not only failed to exhaust his claims, but has also procedurally defaulted on them. As such, the Court may address the merits of these claims only if Petitioner establishes cause for the default and prejudice, or that to allow the conviction to stand would constitute a fundamental mis-

carriage of justice. *See Bossett,* 41 F.3d at 829 (citing *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977)). If a petitioner is not able to show cause for his procedural default, the court need not decide the issue of prejudice, because in order to qualify for habeas review under this exception, the petitioner must demonstrate both cause and prejudice. *See Long v. Lord,* No. 03–CV–461, 2006 WL 1977435, \*6 (N.D.N.Y. Mar. 21, 2006) (citing *Stepney,* 760 F.2d at 45) (footnote and other citations omitted).

In the present matter, Petitioner fails to establish cause for his procedural default, or prejudice resulting therefrom. In fact, Petitioner does not even attempt to argue in either his petition or his traverse that there was cause for his procedural default or that he has suffered prejudice therefrom. *See* Dkt. Nos. 1, 14. Furthermore, he has not made a demonstration of "actual innocence" so as to convince the Court that a fundamental miscarriage of justice will result if it declines to entertain his procedurally defaulted claims. As such, the Court grants Respondent's motion as to Petitioner's weight of the evidence and excessive sentence claims. *See Calderon v. Keane,* 115 Fed. Appx. 455, 458 (2d Cir.2004) (finding claims procedurally defaulted because the petitioner failed to raise them before the New York Court of Appeals and he failed to argue cause and prejudice, or a fundamental miscarriage of justice to allow the court to consider the merits of his claims).

Although the Court finds that Petitioner has procedurally defaulted on his weight of the evidence and excessive sentence claims, the Court will still address the merits of each of petitioner's claims. *See Lucas v. Conway,* No. 08 Civ. 8405, 2009 WL 2525489, \*5 (S.D.N.Y. July 16, 2009) (holding that "the law is clear that a habeas court may deny a claim on the merits despite a petitioner's failure to exhaust it fully before the state courts" (citing 28 U.S.C. § 2254(b)(2); *Rhines v. Weber,* 544 U.S. 269, 277 (2005)).

**B. Standard of review**

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 4107825 (N.D.N.Y.)
**(Cite as: 2012 WL 4107825 (N.D.N.Y.))**

The enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254. In discussing this deferential standard, the Second Circuit noted in *Rodriguez v. Miller,* 439 F.3d 68 (2d Cir.2006), *cert. granted, judgment vacated and cases remanded on other grounds by* 549 U.S. 1163 (2007), that

a federal court may award habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication resulted in an outcome that: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

**\*8** *Id.* at 73 (quoting 28 U.S.C. § 2254(d)) (footnote omitted); *see also DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005) (quotation omitted); *Miranda v. Bennett,* 322 F.3d 171, 178 (2d Cir.2003) (quotation omitted).

In providing guidance concerning the application of this test, the Second Circuit has observed that

a state court's decision is "contrary to" clearly established federal law if it contradicts Supreme Court precedent on the application of a legal rule, or addresses a set of facts "materially indistinguishable" from a Supreme Court decision but nevertheless comes to a different conclusion than the Court did. [ *Williams v. Taylor,* 529 U.S. 362] at 405–06, 120 S.Ct. 1495 [ ( 2000) ]; *Loliscio v. Goord,* 263 F.3d 178, 184 (2d Cir.2001).... [A] state court's decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts" of the case before it. *Williams,* 529 U.S. at 413,

120 S.Ct. 1495.

*Thibodeau v. Portuondo,* 486 F.3d 61, 65 (2d Cir.2007); *see also Williams v. Artuz,* 237 F.3d 147, 152 (2d Cir.2001) (citing *Francis S. v. Stone,* 221 F.3d 100, 108–09 (2d Cir.2000)).

Significantly, a federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." *Williams v. Taylor,* 529 U.S. 362, 409 (2000); *see also Sellan v. Kuhlman,* 261 F.3d 303, 315 (2d Cir.2001) (citation omitted). Courts have interpreted "objectively unreasonable" in this context to mean that " 'some increment of incorrectness beyond error' " is required for the habeas court to grant the application. *Earley v. Murray,* 451 F.3d 71, 74 (2d Cir.2006) (quotation omitted).

A state court determines a petitioner's federal claim "on the merits" and triggers the highly-deferential AEDPA standard of review when the state court "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan,* 261 F.3d at 312 (quotation omitted). In this regard, it is not necessary for the state court to refer explicitly to the particular federal claim or to relevant federal case law. *See id.*

If, however, a state court does not adjudicate a petitioner's federal claim "on the merits," the state-court's decision is not entitled to AEDPA deference; and, instead, the federal habeas court must apply the pre-AEDPA standard of *de novo* review to the state-court's disposition of the federal claim. *See Cotto v. Herbert,* 331 F.3d 217, 230 (2d Cir.2003) (quoting *Aparicio v. Artuz,* 269 F.3d 78, 93 (2d Cir.2001)).

### C. Legal sufficiency and weight of the evidence

Respondent argues that Petitioner is not entitled to relief because the Appellate Division's rejection of his legal sufficiency claim was not contrary to or an unreasonable application of clearly

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

established federal law. *See* Dkt. No. 12 at 23. In support of his claim, Petitioner argues that there was no forensic evidence offered at trial and no psychological testing on D. *See* Dkt. No. 14 at 9. Petitioner admits that there was "compelling testimony that daughter 'D' was subjected to some type of sexual abuse[,]" but argues that the evidence "points equally as probable to sources other than [him]." *See id.* Moreover, Petitioner claims that D .'s testimony was influenced by her mother and that, on cross-examination, when D. was asked whether this incident "may not have happened[,]" she answered "[y]es." *See id.* at 8–9 (quotation omitted).

**\*9** Review of a conviction as against the "weight of the evidence" is a product of New York state statute and, therefore, merely a state-law issue. *See* N.Y.Crim. Proc. Law § 470.15; *Ward v. Herbert,* 509 F.Supp.2d 253, 264 & n. 3 (W.D.N.Y.2007) (citations omitted). Since federal habeas corpus review is not available to remedy mere errors of state law, *see Estelle,* 502 U.S. at 67–69, no cognizable federal issue is presented by a habeas claim challenging the weight of the evidence adduced at trial, *see Ward,* 509 F.Supp.2d at 264 & n. 3 (citations omitted). As such, the Court denies the petition insofar as Petitioner argues that his conviction was against the weight of the evidence.

A challenge to the sufficiency of the evidence, however, is amenable to federal habeas review. *See Ponnapula v. Spitzer,* 297 F.3d 172, 179 (2d Cir.2002) (citing *Quirama v. Michele,* 983 F.2d 12, 14 (2d Cir.1993)). To analyze the sufficiency of the evidence of a state conviction, " '[a] federal court must look to state law to determine the elements of the crime.' " *Id.* (quotation omitted). A habeas petition claiming that the evidence was legally insufficient to support a statecourt conviction fails if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). This standard places a " 'heavy burden' " on a habeas

petitioner since a habeas court is required to consider the trial evidence in the light most favorable to the prosecution. *See United States v. Parkes,* 497 F.3d 220, 225 (2d Cir.2007) (quotation and other citations omitted); *see also Jackson,* 443 U.S. at 319 (citation omitted).

Petitioner was charged and convicted of Course of Sexual Conduct Against a Child in the Second Degree, in violation of New York State Penal Law § 130.80. "A person is guilty of course of sexual conduct against a child in the second degree when, over a period of time not less than three months in duration ... he or she engages in two or more acts of sexual conduct with a child less than eleven years old[.]" N.Y. Penal Law § 130.80(1)(a). "Sexual conduct" is defined as "sexual intercourse, oral sexual conduct, anal sexual conduct, aggravated sexual contact, or sexual contact." N.Y. Penal Law § 130.00(10). "Sexual contact" is defined as "any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party. It includes the touching of the actor by the victim, as well as the touching of the victim by the actor, whether directly or through clothing, as well as the emission of ejaculate by the actor upon any part of the victim, clothed or unclothed." N.Y. Penal Law § 130.00(3).

As the Appellate Division correctly determined, Petitioner's conviction was not based on legally insufficient evidence. At trial, D. testified that she and Petitioner played the "belly bunker" game at least more than ten times. *See* Tr. at 311. In the statement provided to the investigators, Petitioner confessed that he had sexual contact with his daughter at least four times, and that the contact began about two years before December 2006 (the time when he gave his statement) and that the last sexual contact occurred in October 2006. *See id.* at 376–78. Therefore, Petitioner admitted that the alleged sexual contact occurred over a span of almost two years. *See id.* D. also testified that she and Petitioner played the "game" until the time when Petitioner left for training in Texas, *i.e.,* October of

Not Reported in F.Supp.2d, 2012 WL 4107825 (N.D.N.Y.)
**(Cite as: 2012 WL 4107825 (N.D.N.Y.))**

2006. *See id.* at 305–06. Finally, D. testified that this "belly bunker" game consisted of Petitioner taking down his pants, that Petitioner had this "great big thing," that she touched it and it was "[a]ll hard," and that she got "some white stuff" on her shirt the second time this occurred. *See id.* at 304–05.

**\*10** In his signed statement, which was read into the record at trial, Petitioner admitted to the following conduct:

About two years ago, ... [m]y daughter, [D.], asked me about my belly bunker. I wasn't exactly sure what she was talking about. I asked her what it was. She pointed to my penis and touched it. [D.] kept trying to touch it. So I got up and told her it was wrong. About three or four weeks later, the same thing happened again. [D.] wanted to play with my penis, so I let her pull my pants down. [D.] would stroke my penis. I let her do this for three or four minutes, until I got up and told her it was wrong. I did get an erection, but I did not ejaculate. Another three or four weeks later, I was sitting in a chair with [D.]. I was wearing shorts. And [D.] wanted to play with my penis. She pulled my shorts down, began masturbating my penis. [D.] played with it for about two or three minutes. I got an erection and began to ejaculate, but stopped, because I knew it was wrong. [D.] got sperm on her shirt. I told her to take off her shirt and put it in the dirty clothes. The last time it occurred was October, of 2006.[D.] and I went to the dump in Randall. When we got back, [D.] asked me if we could play belly bunker. That's what she called it when she played with my penis. We were both in the kitchen, by the washer. [D.] grabbed my belt buckle and pulled it off. I unzipped my pants and pulled my pants down. My penis was almost hard, because I was excited about [D.] touching my penis. I let [D.] play with it for a minute or two, before I stopped her. I started to ejaculate, but stopped, because I knew what we were doing was wrong.

*See id.* at 377–78.

Taking the evidence and testimony presented at trial in the light most favorable to the prosecution, it is clear that a rational trier of fact could conclude that Petitioner engaged in the conduct underlying his conviction. D.'s testimony and Petitioner's sworn admission clearly establish each of the required elements of the crime Course of Sexual Conduct Against a Child in the Second Degree.

Moreover, to the extent that Petitioner is arguing that D.'s testimony and his sworn confession were unreliable because of inconsistencies presented, such arguments ask the Court to make credibility determinations that are outside of the scope of habeas review. Any claim by Petitioner that a witness' testimony was unworthy of belief is not reviewable in *habeas* proceedings since credibility determinations are the province of the jury. *See Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir.1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on [habeas] appeal" (citation omitted)).

Further, although Petitioner attacks the reliability and voluntariness of his signed confession to the police investigators, the trial court conducted a *Huntley* hearing and found that Petitioner voluntarily gave the confession and that, "while there was some testimony that [Petitioner] had been drinking earlier that day, the [Petitioner] was not intoxicated at any point during the encounter." *See* Exhibit "C" at RA 41. Nothing in the record supports the implication that Petitioner was coerced into confessing or that, even though he had been drinking, his confession was not knowingly and voluntarily made. *See Bruno v. Cunningham,* No. 03 Civ. 937, 2004 WL 2290503, \*10 (S.D.N.Y. Oct. 8, 2004) (holding that evidence of a criminal defendant's intoxication with alcohol does not render a statement involuntary where law enforcement officer testified that the defendant was clear and coherent when the confession was made) (citing cases); *see also United States v. Wyche,* 307 F.Supp.2d 453, 463

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

(E.D.N.Y.2004) (holding that "[a] statement may still be voluntarily given even when the speaker is intoxicated or under the influence of drugs, as there is no *per se* rule that a confession given under such circumstances is involuntary" (citation omitted)). A review of the hearing testimony makes clear that the trial court's decision was not an unreasonable application of the facts in light of the evidence presented or contrary to, or an unreasonable application of, clearly established Federal law.

**\*11** Finally, to the extent that Petitioner argues that D.'s testimony was insufficient to support his conviction, other courts have found that, even without corroborating evidence, the testimony of a child victim is sufficient to support a conviction beyond a reasonable doubt. *See Howard v. Potter,* No. 9:06–CV–0982, 2009 WL 3259080, *6 (N.D.N.Y. Oct. 7, 2009) (citations omitted); *see also Roe v. Senkowski,* No. 9:98–CV–0656, 2001 WL 1860884, *2–4 (N.D.N.Y. Feb. 20, 2001) (finding that testimony of a child victim, standing alone, was sufficient to support a conviction); *Arhin v. New York,* No. 94 Civ. 6921, 1995 WL 672488, *1 (S.D.N.Y. Nov. 9, 1995) (finding that no corroborating evidence was required to support a conviction of rape by forcible compulsion). Although Petitioner seems to argue that D.'s testimony was the only direct evidence presented against him, as discussed above, that was clearly not the case.

Based on the foregoing, the Court finds that the Appellate Division's determination that Petitioner's conviction was legally sufficient was not contrary to or an unreasonable application of clearly established federal law, and it was not based on an unreasonable determination of the facts in light of the evidence presented.

**D. Excessive sentence**

Petitioner was sentenced to a six-year prison term, to be followed by three-years postrelease supervision. Course of Sexual Conduct Against a Child in the Second Degree is a class D felony. *See* N.Y. Penal Law § 130.80. The sentencing range for a class D felony is between two and seven years.

*See* N.Y. Penal Law § 70.02(1)(c), (3)(c). Petitioner claims that his sentence was overly harsh and excessive in light his military service, community status, and because this was his first offense. *See* Dkt. No. 1 at ¶ 12(C).

It is firmly established that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992) (citation omitted); *Mayerhofer v. Bennett,* No. 02–CV–0074, 2007 WL 1624767, *7 (N.D.N.Y. Jun. 6, 2007).* As such, Plaintiff's claim is not cognizable on federal habeas review. *See id.* To the extent that Petitioner's claim could be viewed as a challenge under the Eighth Amendment's prohibition of cruel and unusual punishment, the claim must also fail. The Eighth Amendment forbids only extreme sentences which are "grossly disproportionate" to the crime of conviction. *See Lockyer v. Andrade,* 538 U.S. 63, 72–73 (2003) (citation omitted); *Harmelin v. Michigan,* 501 U.S. 957, 995 (1991) (citation omitted). It is well-established that a sentence of imprisonment that is within the limits of a valid state statute is not cruel and unusual punishment in the constitutional sense. *See White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992) (citation omitted); *Lou v. Mantello,* No. 98–CV–5542, 2001 WL 1152817, *13 (E.D.N.Y. Sept. 25, 2001) (citation omitted).

**\*12** Based on the foregoing, the Court finds that Petitioner's claim that his sentence was excessive is not cognizable on federal habeas review; and, therefore, the Court denies the petition as to this claim.

**E. Certificate of Appealability**

The Court notes that 28 U.S.C. § 2253(c)(1) provides, in relevant part, that, "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" [FN5] 28 U.S.C. § 2553(c)(1). A court may only issue a Cer-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

tificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

> FN5. Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R.App. P. 22(b) (1).

Since Petitioner has failed to make such a showing with regard to any of his claims, the Court declines to issue a Certificate of Appealability in this matter. *See Hohn v. United States,* 524 U.S. 236, 239–40 (1998) (quotation omitted). Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Petitioner's petition for a writ of habeas corpus is **DENIED** and DISMISSED; and the Court further

**ORDERS** that no Certificate of Appealability shall be issued with respect to any of Petitioner's claims; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum–Decision and Order on all parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Respondent's favor and close this case.

**IT IS SO ORDERED.**

N.D.N.Y.,2012.
Stewart v. Hunt
Not Reported in F.Supp.2d, 2012 WL 4107825 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Westlaw Delivery Summary Report for MCKEON, COURTENA**

| | |
|---|---|
| Date/Time of Request: | Monday, September 22, 2014 15:43 Central |
| Client Identifier: | O'HALLORAN |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 378 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Not Reported in F.Supp.2d, 2008 WL 2755833 (S.D.N.Y.)
**(Cite as: 2008 WL 2755833 (S.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Michael VERDEL, Petitioner,
v.
Superintendent Raymond J. CUNNINGHAM,
Woodbourne Correctional Facility; and Wood-
bourne Correctional Facility, Respondents.

No. 07 Civ. 837(JGK).
July 14, 2008.

### *MEMORANDUM OPINION AND ORDER*
JOHN G. KOELTL, District Judge.

**\*1** Petitioner Michael Verdel, pro se, seeks a
writ of habeas corpus pursuant to 28 U.S.C. § 2254.
The petitioner was convicted of Criminal Posses-
sion of a Controlled Substance in the Third Degree,
in violation of New York Penal Law § 220.16(1)
("Penal Law"), and Criminal Possession of a Con-
trolled Substance in the Fourth Degree, in violation
of Penal Law § 220.09(1). The petitioner was sen-
tenced to two concurrent indeterminate prison
terms of six to twelve years. For the reasons ex-
plained below, the petition is denied.

### I.

The record reflects the following relevant facts.
On September 13, 2000, New York City police of-
ficers William Meyer ("Meyer") and Jack Kon-
stantinidis ("Konstantinidis") arrested the petitioner
upon suspicion of possession of a controlled sub-
stance. (Hr'g Tr. 8-11, Jan. 22, 2002.) Prior to the
trial, the petitioner sought to exclude evidence
seized by Meyer. The trial court conducted a pretri-
al suppression hearing where Meyer testified to the
events that occurred leading up to the petitioner's
arrest.

According to Meyer, at approximately 4:10
a.m. on September 13, 2000, the officers observed
the petitioner kicking at the bottom of the doorway
of a supper club and approached the petitioner after
he crossed the street. (Hr'g Tr. 8.) Officer Meyer
testified that he held onto the petitioner while Kon-
stantinidis investigated the doorway. (Hr'g Tr. 8-9.)
Meyer testified that the petitioner was dragging his
right foot as they moved towards a wall, which
prompted Meyer to ask the petitioner to lift his foot,
under which he found a clear plastic bag containing
34 small, blue bags of what was later determined to
be cocaine. (Hr'g Tr. 9.) Following this discovery,
Meyer testified that he proceeded to search the peti-
tioner, where he recovered a similar bag in the peti-
tioner's waistband. (Hr'g Tr. 9-10.) At the station-
house, the petitioner was searched again and the po-
lice recovered a cell phone, $528 in United States
currency, and £100 in British pounds. (Hr'g Tr. 11.)

The petitioner moved to suppress the drugs and
money seized by the police. During the pretrial sup-
pression hearing, the petitioner's trial counsel, Fred-
erick C. Hayes ("Hayes"), requested additional time
to review material produced by the prosecution pur-
suant to *People v. Rosario,* 173 N.E.2d 881
(N.Y.1961). Defense counsel said he had only had
about five minutes to review the material, and the
court urged him to focus on what would be useful
for the hearing. (Hr'g Tr. 3-5.) The Judge denied
Hayes's requests for additional time and allowed
Meyer's testimony to proceed despite Hayes's refus-
al to participate. (Hr'g Tr. 4-5.) At the conclusion of
Meyer's brief direct testimony, which consumes
about seven pages of the transcript, the court
offered defense counsel another five minutes.
Hayes, however, refused to cross-examine the wit-
ness. (Hr'g Tr. 13-14.) As a result, Hayes's particip-
ation in the hearing was limited to an objection dur-
ing direct examination and two requests for Meyer
to repeat himself. (Hr'g Tr. 5, 10, 11.) At the con-
clusion of the hearing, the trial court denied the mo-
tion to suppress. (Hr'g Tr. 20.)

**\*2** Officer Meyer also testified at trial to the
events that occurred on September 13, 2000, and
was cross-examined by Hayes. At the conclusion of

the prosecution's case, the petitioner's trial counsel sought an adjournment to secure Konstantinidis's presence as a defense witness, which was denied. (Trial Tr. 407-408.) Alternatively, defense counsel moved to admit Konstantinidis's grand jury testimony. (Trial Tr. 400.) The court denied this motion but gave a missing witness charge to the jury in which the court instructed the jury that "you have a right ... to decide if you think it appropriate that his testimony would not-his testimony, rather, would contradict some aspect of the People's case ." (Trial Tr. 448.)

Following the petitioner's conviction, the trial judge sentenced the defendant to a term of six to twelve years for Criminal Possession of a Controlled Substance in the Third Degree, to run concurrently with a term of six to twelve years for Criminal Possession of a Controlled Substance in the Fourth Degree, and consecutive to the sentence imposed in another case. (Sent. Tr. 17-18, Jan. 16, 2003.)

The petitioner subsequently filed a motion to set aside the verdict pursuant to N.Y. CPL § 300.30 (1) on the grounds that it was error to fail to grant a continuance so that Konstantinidis could be called as a witness. The trial court denied the motion. (*See* Dannelly Decl. Ex. A.) The trial court found that there was no fault on the part of the prosecutor, who also sought the testimony of Konstantinidis. The trial court noted that the proposed testimony was not exculpatory and that at most the defense could have argued that inconsistencies were the "byproduct [of] a clumsy police attempt to frame [the defendant]," but there was "no other independent evidence of a frame-up...." (*Id.* at 6.)

The petitioner timely appealed the judgment to the New York State Supreme Court, Appellate Division, First Department. On appeal, the petitioner argued that: 1) his defense counsel was ineffective for refusing to participate in cross-examination and argument at the suppression hearing; 2) he was denied his due process right to a fair trial and to present a defense when the trial court refused to

grant additional time to review *Rosario* material, and refused to grant a one-day extension to secure Konstantinidis's presence at trial, or to admit his grand jury testimony; and 3) the interests of justice called for a reduction in the petitioner's sentence. (*See* Dannelly Decl. Ex. B.)

On October 13, 2005, the Appellate Division, First Department, unanimously affirmed the petitioner's conviction, *People v. Verdel,* 804 N.Y.S.2d 294 (App.Div.2005), and on February 14, 2006, Judge Graffeo denied leave to appeal to the New York Court of Appeals. *People v. Verdel,* 845 N.E.2d 1290 (N.Y.2006).

By petition dated January 19, 2007, the petitioner brought this timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner raises four grounds for relief. First, the petitioner claims that the state court's failure to grant an adjournment to secure Konstantinidis's presence at trial violated his right to confront or cross-examine a witness. Second, the petitioner claims that the prosecution withheld evidence that would have assisted the defendant at trial, in violation of *Brady v. Maryland,* 373 U.S. 83 (1963). Third, the petitioner argues that the trial court's refusal to grant him additional time to review the *Rosario* material violated his Fourth and Fourteenth Amendment rights to due process. Finally, the petitioner claims that he received ineffective assistance of counsel when his defense counsel refused to participate in the suppression hearing following the trial court's refusal to grant additional time for preparation.

II.

**\*3** Before obtaining relief under 28 U.S.C. § 2254, a petitioner must exhaust his available state remedies. 28 U.S.C. § 2254(b)(1); *see O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999); *Jimenez v. Walker,* 458 F.3d 130, 148 (2d Cir.2006). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also Hawkins v. Costello,* 460 F.3d 238, 242 (2d Cir.2006); *Walker v. Girdich,* 410 F.3d 120, 122 (2d Cir.2005).

A state court decision is "contrary to" clearly established law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Supreme Court's result. *Williams v. Taylor,* 529 U.S. 362, 405 (2000). A state court decision involves "an unreasonable application of ... clearly established Federal law" when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08.

To meet that standard, "the state court decision [must] be more than incorrect or erroneous"; it "must be objectively unreasonable ." *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). "[I]t is well established in [this] [C]ircuit that the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Cotto v. Herbert,* 331 F.3d 217, 248 (2d Cir.2003) (internal quotation marks omitted).

### A.

The petitioner first argues that the trial court deprived him of his right to cross-examine a witness who testified against him before the grand jury. Construing this argument liberally, the petitioner appears to be challenging the trial court's failure to grant additional time to secure Konstantinidis's presence at trial or to admit his grand jury testimony.

A petitioner's right to compulsory process for obtaining witnesses in his favor is violated when the State arbitrarily denies a defendant the opportunity to examine a witness whose testimony would be favorable and material to the defense. *Singleton v. Lefkowitz,* 583 F.2d 618, 623 (2d Cir.1978) (citing *Washington v.. Texas,* 388 U.S. 14, 23 (1967)). This requires some indication of what favorable evidence the witness could provide. *Id.* (citing *United States v. Taylor,* 562 F.2d 1345, 1361-62 (2d Cir.1977)). Therefore, it is within a trial court's discretion to deny a request for a continuance in order to secure a witness's testimony, if there is no showing that the witness is sufficiently material to the case. *See, e.g., Vasquez v. Walsh,* No. 06 Civ. 3112, 2008 WL 619043, at *5-6 (S.D.N.Y. Mar. 5, 2008); *see also United States v. Fields,* 263 F. App'x 156, 157 (2d Cir.2008).

**\*4** The trial court's decision to deny the petitioner's request for a continuance was not contrary to or an unreasonable application of clearly established Federal law. During the trial, defense counsel argued that there were inconsistencies between Meyer's and Konstantinidis's versions of the events surrounding the petitioner's arrest. Both the trial court and the Appellate Division, however, found that Konstantinidis's proposed testimony was not exculpatory and that any alleged inconsistencies in the officer's testimony were not material. *Verdel,* 804 N.Y.S.2d at 296. Because the petitioner has not sufficiently demonstrated that Konstantinidis's testimony was material to his defense, this Court cannot find that the state court's decision was contrary to or an unreasonable application of clearly established Federal law.

### B.

The petitioner next alleges that, in violation of the Fourteenth Amendment and *Brady,* the prosecution withheld evidence that could have helped the petitioner's case. There is no indication that this claim was presented to the state court, and therefore the claim is unexhausted. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan,* 526 U.S. at 842.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Under 28 U.S.C. § 2254(b)(2), the court has the discretion to deny claims on the merits despite a failure to exhaust. The Court of Appeals for the Second Circuit has yet to articulate a uniform standard for denying unexhausted claims:

[T]he majority of district court decisions in this Circuit have embraced a 'patently frivolous' test for dismissing unexhausted claims, while [a] minority of courts in this Circuit have expressed the test as whether 'it is perfectly clear that the [petitioner] does not raise even a colorable federal claim.'

*Linares v. New York,* No. 04 Civ. 2973, 2008 WL 2115231, at *2 (S.D.N.Y. May 14, 2008) (citing *Toland v. Walsh,* No. 02 Civ. 0399, 2008 WL 820184, at *15 (N.D.N.Y. Mar. 26, 2008)) (internal quotation marks omitted).

The Court, at this time, need not determine which test to adopt because the petitioner's claim fails under either standard. In order to establish a violation of *Brady,* a defendant must show that the Government failed to disclose favorable evidence, and that the evidence it suppressed was material. *United States v. Payne,* 63 F.3d 1200, 1208 (2d Cir.1995) (citing *Brady,* 373 U.S. at 87). The petitioner has not identified any potential undisclosed *Brady* materials and has yet to set forth any specific facts indicating that such evidence was withheld. Conclusory or speculative allegations that the Government failed to disclose evidence are insufficient to support a *Brady* violation. *See, e.g., Skinner v. Duncan,* No. 01 Civ. 6656, 2003 WL 21386032, at *25 and n.39 (S.D.N.Y. June 17, 2003) (collecting cases). Because the petitioner's claim rests entirely on conclusory statements it is both patently frivolous and does not state a colorable federal claim, and this claim must be denied.

C.

**\*5** The petitioner's third claim alleges that the trial court denied due process to the petitioner when it failed to afford his counsel sufficient time to review *Rosario* material prior to Meyer's testimony in the suppression hearing. Based on the records submitted, the Court cannot find that the state court's refusal to grant additional time to review *Rosario* material is a basis for habeas relief.

Under 28 U.S.C. § 2254(e)(1), findings of fact by the state court are presumed correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. In this case, the trial court found that the petitioner had been given sufficient time to review the *Rosario* material for the purposes of the suppression hearing. (Hr'g Tr. 15.) The petitioner's trial counsel was familiar with the facts of the case and had represented the petitioner for sixteen months. The Appellate Division found that:

Only a small portion of [the *Rosario* ] material related to the hearing, and this portion could easily have been read prior to the hearing, or in the time the court was prepared to give. We note that counsel was already familiar with defendant's grand jury testimony, and his request for a delay to read the minutes of that testimony and discuss it with his client was unjustified.

*Verdel,* 804 N.Y.S.2d at 295-96. The petitioner does not sufficiently refute this factual finding. Therefore, the Court cannot find that the state court's finding that the defendant had sufficient time to review the *Rosario* material for the purposes of cross examination was an unreasonable finding of fact, or that the decision to uphold the denial of a continuance was contrary to or an unreasonable application of clearly established Federal law.

Moreover, any error in failing to provide additional time was harmless error. On collateral review of a state court criminal judgment under 28 U.S.C. § 2254, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Fry v. Pliler,* 127 S.Ct. 2321, 2325 (2007) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 631 (1993) (internal quotations marks and citation omitted). The petitioner has failed to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

explain how any additional time would have aided in the cross examination of Officer Meyer or how any cross examination could have resulted in suppression. *See, e.g., Zimmerman v. Burge,* 492 F.Supp.2d 170, 194 n.3 (E.D.N.Y.2007); *Rosario v. Att'y Gen. of N.Y.,* No. 00 Civ. 6681, 2001 WL 267641, at *16-17 (S .D.N.Y. Mar. 19, 2001). It is well established that officers may approach a person, upon reasonable suspicion, for the purposes of investigating possible criminal behavior, even when there is no probable cause to make an arrest. *Terry v. Ohio,* 392 U.S. 1, 22 (1968); *United States v. Mc-Cargo,* 464 F.3d 192, 197 (2d Cir.2006). Police, however, must be able to point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant the intrusion on a citizen's liberty interest. *Terry,* 392 U.S. at 21; *see also United States v. Elmore,* 482 F.3d 172, 178-79 (2d Cir.2007).

**\*6** The record indicates that the officers recovered the first bag of cocaine lawfully, in compliance with the standards set forth in *Terry.* At the pretrial suppression hearing, Officer Meyer testified that he witnessed the petitioner kicking the bottom of the doorway to a supper club at approximately 4:10 a.m. (Hr'g Tr. 8.) Meyer proceeded to restrain the petitioner while his partner, Konstantinidis, checked the doorway. (Hr'g Tr. 9.) According to his testimony, Meyer observed the petitioner acting strangely and dragging his right foot; when Meyer asked the petitioner to raise his foot, Meyer saw the narcotics under his foot. (Hr'g Tr. 9.) Following this discovery, Officer Meyer conducted a search in he found a second bag of cocaine, and the officers found the currency during a subsequent search at the stationhouse. (Hr'g Tr. 9-11.)

Based on the testimony offered at the hearing, the discovery of both bags of cocaine and the currency was admissible and the petitioner has not presented any evidence to indicate otherwise. Officer Meyer discovered the first bag during the initial investigation of a possible act of vandalism, in compliance with *Terry.* Officer Meyer then secured the second bag of cocaine after conducting a lawful search incident to arrest. *See United States v. Robinson,* 414 U.S. 218, 235 (1973).

The state court's determination that no additional time was required to review the *Rosario* material was not clearly erroneous and any potential error in refusing to grant additional time to the petitioner's trial counsel was harmless beyond a reasonable doubt. Therefore, the petitioner's claim does not furnish a basis upon which federal habeas relief can be granted.

### D.

Finally, the petitioner argues that he was deprived of his right to a suppression hearing and his right to counsel when his trial counsel "waived the hearing." Because the petitioner did receive a hearing, the Court construes the petitioner's argument liberally to imply ineffective assistance of counsel based on the defense counsel's failure to cross-examine Officer Meyer at the suppression hearing.

To establish a claim of ineffective assistance of counsel, the petitioner must show that: (1) his counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time, and (2) that his counsel's deficient performance was prejudicial to his case. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984) ; *Bunkley v. Meachum,* 68 F.3d 1518, 1521 (2d Cir.1995).

The petitioner cannot meet the first prong of this test merely by showing that his counsel employed poor strategy or made a wrong decision. Instead, the defendant must establish that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *See Strickland,* 466 U.S. at 687.

To meet the second prong of the *Strickland* test, the petitioner must show that "[t]here is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694; *see also Blumenberg v. United States,* Nos. 05 Civ. 9416, 01 Cr. 571, 2008 WL 1944012, at *2 (S.D .N.Y. April 30, 2008).

**\*7** The petitioner's claim does not satisfy the first prong of the *Strickland* test. The state court found that the defense counsel had sufficient time to review the *Rosario* material and prepare for cross-examination. *Verdel,* 804 N.Y.S.2d at 296. The court also found that the defense counsel's failure to cross-examine Meyer was a strategic attempt to develop an issue on appeal. *Id.* As the Appellate Division explained:

> Although we find this conduct to be inappropriate, it appears to have been a strategic decision, seeking to create delay or establish an appellate issue, or made simply in recognition that cross-examination or further argument would have been fruitless.

*Id.* These findings are adequately supported by the record and, thus, are not clearly erroneous.

In addition, the petitioner's claim of ineffective assistance of counsel fails because there is no basis to find that the petitioner was prejudiced by the actions of his trial counsel. As explained above, the evidence subject to the suppression motion was obtained lawfully pursuant to a *Terry* stop and a subsequent search incident to an arrest. The petitioner has not presented any evidence demonstrating that the result of the proceeding would have been different but for the defense counsel's alleged ineffective assistance.

Because the defense counsel's actions were strategic and the admitted evidence was lawfully obtained, the petitioner suffered no prejudice. Therefore, the petitioner's claim of ineffective assistance of counsel provides no basis for granting habeas corpus relief.[FN1]

> FN1. The petitioner's reply brief refers to a

claim of insufficiency of evidence upon which to base a conviction. *Jackson v. Virginia,* 443 U.S. 307, 318-19 (1979). This claim was raised for the first time in a reply brief and is therefore not a proper basis to grant the petition. *See Evangelista v. Ashcroft,* 359 F.3d 145, 156, n.4 (2d Cir.2004). In any event, the claim is without merit. The drugs at issue were recovered from under the petitioner's foot and from a search of his person, and the prosecution presented eyewitness testimony from Officer Meyer. As a result, the evidence is sufficient to support a conviction.

## CONCLUSION

The Court has considered all of the petitioner's arguments. To the extent not specifically addressed above, they are either moot or without merit. The petition is therefore **denied.** Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

The Clerk is directed to enter judgment and to close this case.

**SO ORDERED.**

S.D.N.Y.,2008.
Verdel v. Cunningham
Not Reported in F.Supp.2d, 2008 WL 2755833 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.